ROY M. BRISBOIS, SB# 53222
  E-Mail: brisbois@lbbslaw.com
ERIC Y. KIZIRIAN, SB# 210584
  E-Mail: kizirian@lbbslaw.com
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
221 North Figueroa Street, Suite 1200
Los Angeles, California 90012
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Defendant American Honda
Motor Co., Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MICHAEL MAZZA, JANET MAZZA, and DEEP KALSI, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN HONDA MOTOR COMPANY, INC., <br><br> Defendant. | CASE NO. CV07-07857 VBF JTLx <br><br> Hon. Valerie Baker Fairbank <br><br> **DEFENDANT AMERICAN HONDA MOTOR CO., INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** <br><br> Date:      September 11, 2008 <br> Time:     3:00 p.m. <br> Courtroom:  9 <br><br> [Filed concurrently with (1) Defendant American Honda Motor Co., Inc.'s State Law Variations Appendix, (2) Declaration of Eric Y. Kizirian, (3) Declaration of David Heath, (4) Declaration of David Crowe] |

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

FACTUAL SUMMARY ........................................................................................2

ARGUMENT ..........................................................................................................5

I.     STANDARD FOR CLASS CERTIFICATION............................................5

II.    INDIVIDUAL QUESTIONS OF LAW AND FACT
PREDOMINATE .........................................................................................6

    A.   Variations In State Consumer Protection And Unjust Enrichment
Laws Preclude A Finding That Common Legal Issues
Predominate.........................................................................................6

        1.   California Law Conflicts With The Laws of Other
Jurisdictions ................................................................................8

        2.   Other Jurisdictions Have Significant Interests In Applying
Their Own Laws To The Claims Of Consumers In Their
State............................................................................................13

        3.   California's Interests Do Not Outweigh The Interests of
Other States................................................................................15

        4.   State Law Variations Preclude A Finding Of
Predominance.............................................................................16

    B.   Individual Issues Predominate Plaintiffs' Claims Under the UCL,
FAL, and CLRA .................................................................................17

III.   RULE 23(B)(2) CERTIFICATION IS NOT APPROPRIATE .................21

IV.   PLAINTIFFS ARE NEITHER ADEQUATE NOR TYPICAL
CLASS REPRESENTATIVES...................................................................23

V.    A CLASS ACTION IS NOT SUPERIOR ................................................24

VI.   CONCLUSION ...........................................................................................25

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

<u>Cases</u>

*4934, Inc. v. District of Columbia Dep't of Emp. Servs.,*
    605 A.2d 50 (D.C. 1992) ..................................................................11

*Aberdeen-Springfield Canal Co. v. Peiper,*
    982 P.2d 917 (Idaho 1999) ............................................................13

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ...................................................................6, 18

*American Univ. v. Forbes,*
    183 A. 860 (N.H. 1936) ..................................................................11

*Amoco Prod. Co. v. EM Nominee P'ship Co.,*
    2 P.3d 534 (Wyo. 2000) .................................................................12

*Anthony Corrado, Inc. v. Menard & Co. Bldg. Contractors,*
    589 A.2d 1201 (R.I. 1991) .............................................................13

*Apache Corp. v. MDU Res. Group, Inc.,*
    603 N.W.2d 891 (N.D. 1999) ........................................................12

*Aurigemma v. Arco Petroleum Prods.,*
    734 F. Supp. 1025 (D. Conn. 1990) ................................................9

*Bailie Communications, Ltd. v. Trend Bus. Sys., Inc.,*
    810 P.2d 12 (Wash. Ct. App. 1991) ..............................................12

*Bashara v. Baptist Mem. Hosp.,*
    685 S.W.2d 307 (Tex. 1985) .........................................................12

*Blake v. Federal Way Cycle Ctr.,*
    698 P.2d 578 (Wash. Ct. App. 1985) ..............................................9

*Buckland v. Threshold Enterprises, Ltd.,*
    155 Cal. App. 4th 798 (2007) ........................................................18

*Califano v. Yamasaki,*
    442 U.S. 682 (1979) ........................................................................5

*Caro v. Proctor & Gamble.*
    18 Cal. App. 4th 644 (1993) ....................................................20, 21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

# TABLE OF AUTHORITIES

*Chamberlan v. Ford Motor Co.,*
   369 F. Supp. 2d 1138 (N.D. Cal. 2005)............................................................19

*Chin v. Chrysler Corp.,*
   182 F.R.D. 448 (D.N.J. 1998) ............................................................15, 17, 25

*Clay v. American Tobacco Co.,*
   188 F.R.D. 483, 492 (S.D. Ill. 1999)..............................................................23

*Clothesrigger, Inc. v. GTE Corp.,*
   191 Cal. App. 3d 605 (1987) ..........................................................................17

*Community Guardian Bank v. Hamlin,*
   898 P.2d 1005 (Ariz. Ct. App. 1995) .............................................................12

*County Comm'rs of Caroline County v. J. Roland Dashiell & Sons, Inc.,*
   747 A.2d 600 (Md. 2000) ................................................................................13

*Dahmer v. Bristol-Myers Squibb Co.,*
   183 F.R.D. 520 (N.D. Ill. 1998) .....................................................................10

*Dep't Rev., Child Support Enforcement Div. v. Mitchell,*
   930 P.2d 1284 (Alaska 1997) ..........................................................................13

*Dep't of Legal Affairs v. Father & Son Moving & Storage, Inc.,*
   643 So. 2d 22 (Fla. Ct. App. 1994) ...................................................................9

*Ernst v. Ford Motor Co.,*
   813 S.W.2d 910 (Mo. Ct. App. 1991) ............................................................13

*Firemen's Annuity & Benefit Fund v. Municipal Employees', Officers',& Officials'
Annuity & Benefit Fund*
   579 N.E.2d 1003 (Ill. Ct. App. 1993).............................................................10

*Georgia Title Distribs., Inc. v. Zumpano Enters., Inc.*
   422 S.E.2d 906 (Ga. Ct. App. 1992) ..............................................................11

*Georgine v. Amchem Prod., Inc.,*
   83 F.3d at 618 .............................................................................................7, 10

*Guarantee Elec. Co. v. Big Rivers Elec. Corp.,*
   669 F. Supp. 1371 (W.D. Ky. 1987) ..............................................................12

*Haley v. Medtronic, Inc.,*
   169 F.R.D. 643 (C.D. Cal. 1996).....................................................................16

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

# TABLE OF AUTHORITIES

*Harding v. Tambrands, Inc.*,
     165 F.R.D. 623 (D. Kan. 1996) .................................................................10

*Haskell v. Time, Inc.*,
     857 F. Supp. 1392 (E.D. Cal. 1994) .........................................................10

*In re American Medical Sys.*,
     75 F.3d 1069 (6th Cir. 1996) ......................................................................7

*In re Baycol Prods. Litig.*,
     218 F.R.D. 197 (D. Minn. 2003) ...............................................................14

*In re Bridgestone/Firestone, Inc.*,
     288 F.3d 1012 (7th cir. 2002) ........................................................8, 10, 15

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*,
     174 F.R.D. 332 (D.N.J. 1997) ...............................................14, 15, 16, 25

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*,
     194 F.R.D. 474 (D.N.J. 2000) ...................................................................10

*In re Ford Motor Co. Vehicle Paint Litigation*,
     182 F.R.D. 214 (E.D. La. 1998) ................................................................17

*In re St. Jude Medical, Inc.*,
     425 F.3d 1116 (8th Cir. 2005) ..........................................................7, 8, 10

*J.W. Thompson Co. v. Welles Prods. Corp.*,
     758 P.2d 738 (Kan. 1988) ..........................................................................13

*Kanter v. Warner-Lambert Co.*,
     265 F.3d 853 (9th Cir. 2001) ......................................................................22

*Korea Supply Co. v. Lockheed Martin Corp.*,
     29 Cal. 4th 1134 (2003) .......................................................................10, 16

*Landry v. Landry*,
     697 A.2d 843 (Me. 1997) ...........................................................................13

*Lilly v. Ford Motor Co.*,
     2002 WL 507126 (N.D. Ill. 2002) .............................................................14

*Lyon v. Caterpillar, Inc.*,
     194 F.R.D. 206 (E.D. Pa. 2000) ................................................................14

TABLE OF AUTHORITIES

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

# TABLE OF AUTHORITIES

*Maruho Co. v. Miles, Inc.*
    1993 WL 81453 (D. Mass. 1993) ...................................................................11

*Massachusetts Mutual Life Ins. Co. v. Sup. Ct.,*
    97 Cal. App. 4th  1282 (2002) ................................................................18, 19

*Mayer v. Bishop*
    158 A.D.2d 878 (N.Y. App. Div. 1990) .........................................................11

*Minyard v. Curtis Prods., Inc.,*
    205 So.2d 422 (La. 1967) .............................................................................12

*Paschall's, Inc. v. Dozier,*
    407 S.W.2d 150 (Tenn. 1966) ......................................................................13

*Petrie-Clemons v. Butterfield*
    441 A.2d 1167 (N.H. 1982) ..........................................................................11

*In re Prempro,*
    230 F.R.D. 555 (E.D. Ark. 2005) ..................................................................14

*Rutledge v. Electric Hose & Rubber Co.,*
    511 F.2d 668 (9th Cir. 1975) ..........................................................................5

*Servicemaster of St. Cloud v. GAB Bus. Servs., Inc*
    544 N.W.2d 302 (Minn. 1996) ......................................................................10

*Styer v. Hugo,*
    619 A.2d 347 (Pa. Super. Ct. 1993) ............................................................13

*Swindell v. Crowson,*
    712 So.2d 1162 (Fla. Dist. Ct. App. 1998) ...................................................13

*Taylor v. Flagstar Bank, FSB,*
    181 F.R.D. 509 (M.D. Ala. 1999) .................................................................23

*Topaz Mut. Co. v. Marsh,*
    839 P.2d 606 (Nev. 1992) .............................................................................13

*TVL Assocs. v. A & M Constr. Corp.*
    474 A.2d 156 (D.C. 1984) .............................................................................12

*Valentino v. Carter-Wallace, Inc.,*
    97 F.3d 1227 (9th Cir. 1996) ....................................................................5, 25

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

# TABLE OF AUTHORITIES

*Vezina v. Nautilus Pools, Inc.,*
    610 A.2d 1312 (Conn. Ct. App. 1992) ................................................. 9

*Walsh v. Ford Motor Co.,*
    807 F.2d 1000 (D.C. Cir. 1986) .................................................. 6, 8

*Wash. Mutual Bank, FA v. Sup.Ct.,*
    24 Cal. 4th 906 (2001) ...................................................... 6, 8, 16

*Watts v. Watts,*
    405 N.W.2d 303 (Wis. 1987) ........................................................ 13

*Wershiba v. Apple Computer,*
    91 Cal. App. 4th 224 (2001) ....................................................... 17

*Zinser v. Accufix Research Inst., Inc.,*
    253 F.3d 1180 (9th Cir. 2001) .............................................. 5, 6, 7, 16

## Statutes

Ala. Code § 8-19-5 ................................................................ 8

Alaska Stat. § 45.50.471 .......................................................... 8

Ark. Code Ann. § 4-88-113(f) ..................................................... 10

Cal. Bus. & Prof. Code § 17204 ................................................... 18

Cal. Bus. & Prof. Code § 17535 ................................................... 18

Cal. Civ. Code § 1780 ............................................................ 18

Fla. Stat. Ann. § 501.201 ......................................................... 8

Fla. Stat. Ann. § 501.204 ......................................................... 9

Ga. Code Ann. § 10-1-372 .......................................................... 8

Kan. Stat. Ann. § 50-626 .......................................................... 8

Mass. Gen. Laws ch. 93A, § 9(3) ................................................... 9

Mich. Comp. Laws § 19.418(11) .................................................... 10

Miss. Code Ann. § 75-24-5 ......................................................... 8

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

# TABLE OF AUTHORITIES

N.C. Gen. Stat. § 75-1.1(a) ............................................................8

N.J. Rev. Stat. § 56:8-2 ................................................................8

N.J. Stat Ann. § 56:8-2.12 ...........................................................10

Or. Rev. Stat. § 646.150...............................................................10

Pa. Stat. Ann. tit. 73, § 201-9.2(a) ...............................................16

S.C. Code Ann. § 39-5-20.............................................................8

S.D. Codified Laws Ann. § 37-24-6 ..............................................8

Wyo. Stat. Ann. § 40-12-108(a) ...................................................16

Wyo. Stat. Ann. § 40-12-109 .......................................................10

## Other Authorities

Candace S. Kovacic, *A Proposal to Simplify Quantum Meruit Litigation*, 35 Am. U.
L. Rev. 547, 558 (1986)..........................................................11, 13

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

**INTRODUCTION**

Plaintiffs Michael Mazza, Janet Mazza, and Deep Kalsi ("plaintiffs") allege that Honda violated California Business & Professions Code §§ 17200 ("UCL") and 17500 ("FAL"), California Civil Code § 1750 *et seq.* ("CLRA"), and was unjustly enriched because it allegedly failed to disclose that:

- "the [Collision Mitigation Braking System ("CMBS")] and its three separate stages of alert and mitigation may deploy late and fail to timely alert the driver to avoid a collision;"

- "the CMBS System may fail to deploy and alert the driver with any or all three separate stages of alert and mitigation before a collision;"

- "the CMBS will not deploy in response to some obstacles on the road ahead." (Comp. ¶ 4). Once plaintiffs conducted discovery, however, it became readily apparent to them that Honda disclosed the allegedly concealed information long before the first Acura RL was ever sold. Confronted with these facts, plaintiffs dropped one of the named plaintiffs as a class representative,[1] cobbled together a new theory of liability – that Honda should have disseminated the allegedly concealed information differently – and now ask that the Court certify an unwieldy nationwide class action on the wholly unsupportable presumption that all consumers were uniformly ignorant of the facts plaintiffs admit Honda has already disclosed.

Plaintiffs' Motion for Class Certification ("Motion") does not satisfy any of the requirements of Rule 23. In particular:

- ***Individual Legal Issues Predominate***: The requisite choice-of-law analysis (ignored by plaintiffs) reveals that plaintiffs' claims must be decided under the varying laws of fifty states and the District of Columbia. (Sec. II(A), *below*).

- ***Individual Factual Issues Predominate***: Because Honda disclosed the facts plaintiffs allege were "concealed," a presumption of reliance does not apply because

---

[1] *See* note 75, *infra.*

1    there were no uniform misrepresentations to the class, requiring claimant-specific

2    inquiries on materiality and reliance. (Sec. II(B), *below*).

3        • ***Rule 23(b)(2) Certification Is Not Appropriate:*** Rule 23(b)(2) certification is

4    inappropriate because plaintiffs seek predominantly money damages. (Sec. III, *below*).

5        • ***The named plaintiffs are neither typical nor adequate representatives***:

6    Plaintiffs are two of just four Acura RL owners (out of 1,958 Acura RL vehicles with

7    CMBS sold in the United States) who complained to Honda that the CMBS system

8    does not function as Honda represented. (Sec. IV, *below*).

9        • ***A class action is not "superior"***:  There is no evidence of widespread

10   discontent concerning the CMBS system, and to the extent plaintiffs are primarily

11   concerned about "safety," NHTSA provides superior relief. (Sec. V, *below*).

12       In short, plaintiffs' speculative claims are unsuitable for class treatment and their

13   Motion should be denied.

14                          **FACTUAL SUMMARY**

15       In the fall of 2005, Honda introduced the CMBS system as one of several

16   optional features included in the "Technology Package" on the 2006 model year Acura

17   RL.[2]  Contrary to plaintiffs' claim, Honda did not "transform the CMBS System from a

18   mere internal proposal in February of 2005" to a new feature included on the 2006

19   Acura RL "a mere seven months later." (Motion at 1:12-14).  Indeed, while the CMBS

20   system was a new feature for Acura vehicles sold in the United States, Honda had been

21   developing the technology for over 10 years and had marketed and sold the system on

22   Honda vehicles in Japan beginning in 2003.[3]

23

24   [2]   Declaration of Eric Y. Kizirian ("Kizirian Decl.") ¶ 2, Ex. 1 (AHM-M00001558).

25   In 2007 and 2008 model year RL vehicles, CMBS was included in the "CMBS/PAX

26   Package" which included options in the separate "Technology Package" as well as the
     CMBS System, Adaptive Cruise Control, and Michelin® PAX® System Run-Flat

27   Technology. (Kizirian Decl. ¶¶ 3, 4, Exs. 2, 3 (AHM-M00001607, 1657)).

28   [3]   Kizirian Decl. ¶ 5, Ex. 4 (AHM-M0001797).

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

1    The CMBS system is a revolutionary safety feature that alerts drivers of potential

2  collisions or, if a collision is unavoidable, automatically applies the brakes to minimize

3  the impact of a collision.[4]  The system uses a millimeter-wave radar unit that monitors

4  the distance and closing rate between the RL and the vehicle or object directly in front

5  of it.[5]  Because timing and distance at which any of the warning stages of the CMBS

6  system are triggered depends on a number of factors (such as the speed of the vehicle

7  and the relative speed of the vehicle ahead),[6] Honda did not (and could not) make any

8  representations or predictions about when any particular stage of the CMBS system

9  would be triggered in response to a potential collision.[7]   Nevertheless, there is no

10  dispute that the CMBS system works and prevented as many as *five* potential collisions

11  for the named plaintiffs alone![8]

12    As with most technological advancements, the CMBS system had its limitations.

13  For this reason, Honda cautioned consumers that the CMBS System "*may not activate*

14  *in every dangerous situation.*"[9]   Moreover, Honda prepared a DVD that, *inter alia,*

15  discussed the system's limitations and disclosed that:

16    • ". . . various alert stages [in the CMBS system] can overlap depending on

17    the rate of closure of your vehicle and the vehicle ahead;"[10]

18  _____

19  [4]  Kizirian Decl. ¶ 2, Ex. 1 (AHM-M00001549).

20  [5]  Kizirian Decl. ¶ 5, Ex. 4 (AHM-M0001798-99).
     [6]  Kizirian Decl. ¶ 5, Ex. 4 (AHM-M0001800).

21  [7]  Although plaintiffs allege that the CMBS system may fail to alert drivers about an

22  object "15-20 car lengths ahead" (Comp. ¶ 34), Mazza and Kalsi both admitted that
     Honda never represented that the CMBS system would alert drivers about vehicles or

23  objects at a particular distance.  Kizirian Decl. ¶ 16, Ex. 15 (Mazza Depo. at 97:20-25;

24  121:3-14); ¶ 17, Ex. 16 (Kalsi Depo. at 55:18-56:2).
     [8]  Kizirian Decl. ¶ 17, Ex. 16 (Kalsi Depo. at 100:6-23).

25  [9]  Kizirian Decl. ¶ 8, Ex. 7 (AHM-M0000809), ¶ 9, Ex. 8 (AHM-M0001298), ¶ 10,

26  Ex. 9 (AHM-M0002256) (emphasis added).
     [10]  Kizirian Decl. ¶ 6, Ex. 5.  Honda did not disclose this information for the first time

27  in the "2008 Owner's Manual DVD" as plaintiffs claim.  (Motion at 8:6-7).  Instead,

28  the DVD for the 2008 model year Acura RL merely provided the *additional*
     (footnote continued)

4835-1430-0930.1

3

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

1   • "... [CMBS] is not a substitute for attentive, defensive driving. The
2   system does have limitations, and will not detect all possible accident
3   causing situations. ..."[11]

4   • "... the system also may not detect small vehicles such as bicycles or
5   motorcycles among others" and that "generally speaking, [CMBS] is more
6   likely to detect objects that present broad reflective surfaces ...."[12]

7   Honda posted the DVD on "Owner Link"—a website that is available to *both*
8   vehicle owners and *prospective vehicle owners* alike[13]—and provided a copy of the
9   DVD to consumers in the glove box of every Acura RL.[14]  Honda also posted the
10  DVD on the interactive network – an intranet website available to all dealership
11  sales personnel at their workstations – and encouraged dealers to show the DVD to
12  consumers who had questions about particular features such as the CMBS system.[15]

13      Honda's disclosures concerning the CMBS system did not end with the DVD.
14  In the RL Owner's Manual, Honda stated that "[t]he CMBS may not activate under
15  some conditions. ... [such as when] [t]he vehicle ahead of you is a motorcycle or
16  other small vehicle."[16]  Further, in the summer of 2007, Honda published an article
17  that highlighted the CMBS system in its "Acura Style" magazine – a publication
18  that is available to vehicle owners and prospective vehicle owners, and that Honda
19  also provided to dealers for display in their showrooms.[17]  The Acura Style article

20  _____

21  information (identified by the italics) that "various alert stages [in the CMBS system]
22  can overlap depending on the rate of closure of your vehicle and the vehicle ahead,
    *meaning that a sudden potential crash may cause CMBS to start out at Stage 3.*"
23  [11] Kizirian Decl. ¶ 6, Ex. 5.
    [12] *Id.*
24  [13] Kizirian Decl. ¶ 7, Ex. 6 (Howell Depo.) at 50:21-51:2; 90:20-91:12).
25  [14] *Id.* (Howell Depo. at 50:25-51:2).
    [15] Declaration of David Heath ¶¶ 3, 4.
26  [16] Kizirian Decl. ¶ 8, Ex. 7 (AHM-M0000806), ¶ 9, Ex. 8 (AHM-M0001295), ¶ 10,
27  Ex. 9 (AHM-M0002253).
    [17] Kizirian Decl. ¶ 6, Ex. 5 (Howell Depo. at 31:20-32:2).
28

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

1  stated that ". . .[w]hen the closing rate drops below the system's threshold, CMBS

2  responds with *any or all three* increasingly dramatic imperatives . . . ."[18]

3      Confronted with these disclosures at deposition, plaintiffs admitted that

4  Honda did in fact disclose the *very information* they allege Honda "concealed," and

5  focused on their *individual* concern that they *personally* were not aware of Honda's

6  disclosures at the time of purchase.[19]  Plaintiffs now ask that the Court certify a

7  nationwide class based on the untenable presumption that all RL owners uniformly

8  were ignorant of facts Honda indisputably disclosed.  As demonstrated below,

9  plaintiffs' motion should be denied.

10                              **ARGUMENT**

11  **I.    STANDARD FOR CLASS CERTIFICATION.**

12      Class actions are an "exception to the usual rule that litigation is conducted by

13  and on behalf of the individual named parties only." *Califano v. Yamasaki*, 99 S.Ct.

14  2545, 442 U.S. 682, 700-01, (1979).  The party seeking certification bears the burden of

15  demonstrating that "each of the four requirements of Rule 23(a) and at least one of the

16  requirements of Rule 23(b)" have been met. *Zinser v. Accufix Research Inst., Inc.*, 253

17  F.3d 1180, 1186 (9th Cir. 2001); *Rutledge v. Electric Hose & Rubber Co.*, 511 F.2d

18  668, 673 (9th Cir. 1975) (same).  A district court may certify a class only if it is

19  satisfied "after a rigorous analysis" that all of the prerequisites of Rule 23 are met.

20  *Zinser*, 253 F.3d at 1186 (citing *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1233

21  (9th Cir. 1996)).  In addition to meeting the prerequisites of subsection (a), Rule 23 also

22  mandates that plaintiffs satisfy at least one provision of subsection (b). *Zinser*, 253

23  F.3d at 1186.  Plaintiffs here seek certification primarily under Rule 23(b)(3),[20] which

24  requires that common issues predominate over individual issues, and that a class be

25

26  [18]  Kizirian Decl. ¶ 9, Ex. 10 (MAZ0010).
    [19]  Kizirian Decl. ¶ 16, Ex. 15 (Mazza Depo. at 117:13-17, 146:14-147:5, 150:19-

27  151:3; 153:16-22); ¶ 17, Ex. 16 (Kalsi Depo. at 120:21-121:6).

28  [20]  Alternatively, plaintiff Deep Kalsi seeks certification under Rule 23(b)(2).

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

1   superior to other methods for resolving the case. *See* Fed. R. Civ. P. 23(b)(3); *Amchem*

2   *Prods., Inc. v. Windsor,* 117 S.Ct. 2231, 521 U.S. 591, 615 (1997).  Plaintiffs fail to

3   meet these standards in numerous respects.

**II.    INDIVIDUAL QUESTIONS OF LAW AND FACT PREDOMINATE.**

**A.    Variations In State Consumer Protection And Unjust Enrichment Laws Preclude A Finding That Common Legal Issues Predominate.**

7   Plaintiffs' Motion is stunningly silent on one of the most critical obstacles to

8   class certification:  how a trial of this proposed nationwide class could possibly proceed

9   given innumerable variations in state consumer protection and unjust enrichment laws

10  that would govern the claims putative class members.[21]  Of course, "nationwide class

11  movants must creditably demonstrate, through an 'extensive analysis' of state law

12  variances, 'that class certification does not present insuperable obstacles.'"  *Walsh v.*

13  *Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C. Cir. 1986) (citations omitted).  Despite this

14  charge, plaintiffs do nothing.  Instead, plaintiffs seek the wholesale application of

15  California law based solely on their incorrect *conclusion* that "no 'true conflict' exists

16  among the consumer protection laws of the various states."  (Motion at 22:8-9.)[22]

17  The conflicts-of-law analysis is a critical and required component in any decision

18  to certify a nationwide class.  Indeed, "[u]nderstanding which law will apply before

---

[21]  Plaintiffs incorrectly focus on whether "applying California law to the nationwide class is ***constitutional.***" (Motion at 18-21.) Although the Court, in denying Honda's motion to dimiss, held that plaintiffs had pled sufficient California contacts to overcome *constitutional* or due process obstacles to invoking California law (*See* Court Order Re: Defendant's Motion to Dismiss [Filed 1/24/2008] ("Order") at 3), "***even where its own law may be constitutionally applied***, California follows a three-step 'governmental interest analysis' to address conflict of laws claims and ascertain the most appropriate law applicable to the issues" *Wash. Mut. Bank, FA v. Sup. Ct.*, 24 Cal. 4th 906, 919 (2001) (emphasis added).  The Court recognized as much when it stated that "***choice of law will certainly be an issue for class certification* . . . .**" (Order at 4) (emphasis added).

[22]  Plaintiffs ignore their unjust enrichment claims (Comp. ¶¶ 96-99), which also implicate significant state law variation concerns.

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

1  making a predominance determination is important when there are variations in
2  applicable state law." *Zinser*, 253 F.3d at 1189.  Further, "[i]n a multi-state class
3  action, variations in state law may swamp any common issues and defeat
4  predominance." *Castano v. Am. Tobacco, Inc.*, 84 F.3d 734, 741 (5th Cir. 1996).[23]
5  Thus, "[a] district court's duty to determine whether the plaintiff has borne its burden
6  on class certification requires that [the] court consider variations in state law when a
7  class action involves multiple jurisdictions." *Id.*  This is so because "'to make the
8  findings required to certify a class action under Rule 23(b)(3) . . . one must initially
9  identify the substantive law issues which will control the outcome of the litigation.'"
10 *Id.* (citation omitted).  In short, a district court cannot certify a nationwide class without
11 considering "how variations in state law affect predominance and superiority [under
12 Rule 23]." *Id.*[24]  As the Ninth Circuit notes, "[u]nderstanding which law will apply
13 *before making a predominance decision* is important when there are variations in
14 applicable state law." *Zinser*, 253 F.3d at 1189 (citations omitted) (emphasis added).

15     "A federal court sitting in diversity must look to the forum state's choice of law
16 rules to determine the controlling substantive law." *Id.* at 1187 (citation omitted).
17 California requires that courts undertake "a three-step 'governmental interest analysis'
18 to address conflict of laws claims and ascertain the most appropriate law applicable to
19 the issues . . . ." *Wash. Mut.*, 24 Cal. 4th at 919 (emphasis added).  This analysis
20 requires that courts determine (1) whether California law actually conflicts with the law

21

22   [23] *Georgine v. Amchem Prod., Inc.*, 83 F.3d 610, 618 (3d Cir. 1996) (legal and factual
23 differences in the plaintiffs' claims, "when exponentially magnified by choice of law
24 considerations, eclipse any common issues in this case"); *In re American Medical Sys.*,
   75 F.3d 1069, 1085 (6th Cir. 1996) (granting mandamus in a multi-state products
25 liability action, in part because "[t]he district judge . . . failed to consider how the law
26 of negligence differs from jurisdiction to jurisdiction").
   [24] *In re St. Jude Med., Inc.* (*"St. Jude Med."*), 425 F.3d 1116, 1120 (8th Cir. 2005)
27 (certification was in error because district court "did not conduct a thorough conflicts-
28 of-law analysis" before applying one state's law).

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

1   of the other jurisdiction, (2) "what interest, if any, each state has in having its own law

2   applied to the case" if a conflict exists, and (3) which state's interest "would be 'more

3   impaired' if its law were not applied." *Id.* at 919-20.   This analysis reveals that

4   plaintiffs' claims must be decided under the varying legal standards of various states.

5               **1.     *California Law Conflicts With The Laws of Other Jurisdictions.***

6               Citing no authority and without *any* legal analysis, plaintiffs claim that "no 'true

7   conflict' exists among the consumer protection laws of the various states." (Motion at

8   22:8-9.) But "[a] court cannot accept such an assertion 'on faith.'" *Walsh*, 807 F.2d at

9   1016.   As demonstrated by Honda's concurrently-filed Appendix of State Law

10  Variations ("State Law Appendix"), and as highlighted below, state consumer

11  protection statutes ("CPS") and unjust enrichment laws conflict in significant respects.

12              It is well-settled that "[s]tate consumer-protection laws vary considerably, and

13  courts must respect these differences rather than apply one state's law to sales in other

14  states with different rules." *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th

15  cir. 2002); *St. Jude Med.*, 425 F.3d at 1120.   Some CPS focus narrowly on "deceptive"

16  behavior,[25] while others cover additional rubrics such as "unfair" or "unconscionable"

17  behavior.[26]   The various statutes also incorporate wholly different legislative

18  approaches and elements.   For example, the New Jersey Consumer Fraud Act, N.J. Rev.

19  Stat. § 56:8-2 (2004), proscribes several broad categories of behavior, including "[t]he

20  act, use or employment by any person of any *unconscionable* commercial practice,

21  deception, fraud, false pretense, false promise, misrepresentation, . . . with intent that

22

23

---

24  [25]   *See, e.g.*, Ga. Code Ann. § 10-1-372 (deceptive practices); Kan. Stat. Ann. § 50-626
    (2004) (deceptive acts); S.D. Codified Laws Ann. § 37-24-6 (deceptive acts).

25  [26]   *See, e.g.*, Ala. Code § 8-19-5 (unconscionable or deceptive acts or practices); Alaska

26  Stat. § 45.50.471 (unfair or deceptive acts); Fla. Stat. Ann. § 501.201 (unconscionable
    or unfair or deceptive acts); Miss. Code Ann. § 75-24-5 (unfair or deceptive acts); N.J.

27  Rev. Stat. § 56:8-2 ("unconscionable" conduct); N.C. Gen. Stat. § 75-1.1(a) (unfair

28  methods of competition); S.C. Code Ann. § 39-5-20 (unfair or deceptive acts).

---

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

1  others rely upon such concealment, suppression or omission . . . ."  In contrast, the

2  California legislature *excluded* any vague reference to *unconscionable* behavior in the

3  CLRA because it wanted to define unlawful practices "in a fair and specific manner,"[27]

4  and focused on 23 specific prohibited activities.  Meanwhile, the Florida Deceptive and

5  Unfair Trade Practices Act, Fla. Stat. Ann. § 501.204 (2000), contains a simpler

6  prohibition and specifically cross-references interpretive sources, requiring that "due

7  consideration and great weight . . . be given to the interpretations of the Federal Trade

8  Commission and the federal courts relating to § 5(a)(1) of the Federal Trade

9  Commission Act, 15 U.S.C. § 45(a)(1)."

10       Differences in the enacted statutory provisions are only the beginning.  Non-

11  common threshold issues such as what constitutes "unfair" or "unconscionable"

12  behavior,[28] the perspective from which deception is to be evaluated,[29] and whether and

13  what form of notice is required,[30] all have different answers depending on the state law

14

15

[27]  The first draft of the CLRA (Assembly Bill ("AB") 292) outlawed eighteen specific
practices and also declared unlawful any act or practice that was either *"[o]ppressive or
otherwise unconscionable in any respect . . . ."* Kizirian Decl. ¶¶ 12, 13, Exs. 11, 12
(emphasis added).  But the legislature *deleted* this proposed language from AB 292
because it wanted to *"define [unlawful] practices in a fair and specific manner."* *Id.* at
¶ 14, Ex. 13 (emphasis added).

[28]  *Compare, e.g., Dep't of Legal Affairs v. Father & Son Moving & Storage, Inc.*, 643
So. 2d 22, 26 (Fla. Ct. App. 1994) *with, e.g., Blake v. Federal Way Cycle Ctr.*, 40 Wa.
App. 302, 698 P.2d 578, 583 (Wash. Ct. App. 1985) (adopting FTC's emphasis on
consumer injury) *and, e.g., Vezina v. Nautilus Pools, Inc.*, 27 Conn. App. 810, 610
A.2d 1312, 1317 (Conn. Ct. App. 1992) (using FTC standard to refine the meaning of
"substantial injury").

[29]  *Compare, e.g., Aurigemma v. Arco Petroleum Prods.*, 734 F. Supp. 1025, 1029
(D. Conn. 1990) (capacity to deceive is measured by effect on least sophisticated) *with,
e.g., Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1398-99 (E.D. Cal. 1994) (adopting
reasonable consumer standard for evaluating deceptive advertising).

[30]  *Compare, e.g.,* Mass. Gen. Laws ch. 93A, § 9(3) (requiring 30-day written demand
describing the unfair or deceptive act or practice relied upon) *with, e.g.,* Wyo. Stat.
Ann. § 40-12-109 (precluding action unless the consumer gives notice in writing to the
(footnote continued)

1  that applies.  Further, some CPA's expressly provide for a private cause of action,[31]

2  while others make no such provision.  Among those CPA's that provide for private

3  causes of action, some allow private causes of action for damages only,[32]  whereas

4  states like California limit recovery to restitution and disgorgement.[33]  These and other

5  significant variations in CPS as outlined in Honda's State Law Appendix explain why

6  many courts have refused to certify multi-jurisdiction classes pursuing CPS claims.[34]

7      Similar variations permeate state unjust enrichment laws.  For example, there is

8  no uniform definition for "unjust."  Minnesota defines unjust to "mean illegally or

9  unlawfully."[35]  Illinois expressly rejects Minnesota's approach, finding that "a cause of

10  action based on unjust enrichment does not require fault or illegality on the part of the

11  defendant."[36]  New York[37] and the District of Columbia do not require a finding of

12  "fault on the part of the recipient of the benefit" to prove unjust enrichment.[38]

13  Similarly, New Hampshire, while agreeing with Minnesota that unjust enrichment

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

---

alleged violator).

[31] *See, e.g.*, Mich. Comp. Laws § 19.418(11); N.J. Stat Ann. § 56:8-2.12; Or. Rev. Stat. § 646.150.

[32] *See, e.g.*, Ark. Code Ann. § 4-88-113(f); Or. Rev. Stat. § 646.150.

[33] *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1150 (2003).

[34] *See, e.g., St. Jude Med.,* 425 F.3d at 1119-21; *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 288 F.3d 1012 (7th Cir. 2002); *Castano*, 84 F.3d at 742 n.15 & 743; *Georgine*, 83 F.3d at 627; *In re Ford Motor Co. Ignition Switch Prod. Liab. Litig.* ("*Ignition Switch II*"), 194 F.R.D. 484, 489-90 (D.N.J. 2000); *Dahmer v. Bristol-Myers Squibb Co.*, 183 F.R.D. 520, 532 (N.D. Ill. 1998); *Harding v. Tambrands, Inc.*, 165 F.R.D. 623, 632 (D. Kan. 1996).

[35] *Servicemaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 306 (Minn. 1996) (internal quotations omitted).

[36] *Firemen's Annuity & Benefit Fund v. Municipal Employees', Officers', & Officials' Annuity & Benefit Fund*, 219 Ill. App. 3d 707, 579 N.E.2d 1003, 1007 (Ill. Ct. App. 1993).

[37] *See Mayer v. Bishop*, 551 N.Y.S.2d 673, 158 A.D.2d 878, 880 (N.Y. App. Div. 1990).

[38] *4934, Inc. v. District of Columbia Dep't of Employment Servs.*, 605 A.2d 50, 56 (D.C. 1992).

1  follows from "unlawful" acts,[39] also allows for unjust enrichment claims when the

2  defendant has "innocently receive[d] a benefit and passively accept[ed] it."[40]

3      The standards of proof for unjust enrichment claims also vary by state. Some

4  states simply apply sweeping standards that give little content to the notion of unjust

5  enrichment.[41]  In this regard, unjust enrichment is proven under Georgia law, for

6  example, when "the party sought to be charged has been conferred a benefit by the

7  party contending an unjust enrichment which the benefited party equitably ought to

8  return or compensate for."[42]   In Massachusetts, it arises where "the plaintiff

9  demonstrates that [the] defendant was enriched under circumstances which make

10  retention of money unjust."[43]  Some states offer a more refined standard of unjust

11  enrichment in the guise of a particular set of elements.[44] These states, however, show

12  marked differences in the required elements for unjust enrichment. For example:

13  • *Texas, Washington, Wyoming,* and *District of Columbia* require that
14     (1) Valuable services were rendered or materials furnished; (2) for the person
15     sought to be charged; (3) which services and materials were accepted by the
16     person sought to be charged, used and enjoyed by him; and (4) under such
17     circumstances as reasonably notified the person sought to be charged that
18     plaintiff in performing such services or furnishing such materials was
19     expecting to be paid by the person sought to be charged.[45]

---

[39] *American Univ. v. Forbes*, 88 N.H. 17, 183 A. 860, 862 (N.H. 1936).
[40] *Petrie-Clemons v. Butterfield*, 122 N.H. 120, 441 A.2d 1167, 1172 (N.H. 1982).
[41] *See* Candace S. Kovacic, *A Proposal to Simplify Quantum Meruit Litigation*, 35 Am. U. L. Rev. 547, 558 (1986).
[42] *Georgia Title Distribs., Inc. v. Zumpano Enters., Inc.*, 205 Ga. App. 487, 422 S.E.2d 906, 908 (Ga. Ct. App. 1992).
[43] *Maruho Co. v. Miles, Inc.*, 1993 WL 81453, at *6 (D. Mass. 1993).
[44] *See* Kovacic, *supra* note 41 at 558.
[45] *See TVL Assocs. v. A & M Constr. Corp.*, 474 A.2d 156, 159 (D.C. 1984); *Bashara v. Baptist Mem. Hosp.*, 685 S.W.2d 307, 310 (Tex. 1985); *Bailie Communications, Ltd. v. Trend Bus. Sys., Inc.*, 61 Wash. App. 15, 1810 P.2d 12, 17 (Wash. Ct. App. 1991); (footnote continued)

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

- *Arizona, Delaware, Louisiana*, and *North Dakota* articulate the elements in very different terms, requiring (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) an absence of "justification" or "cause" for the enrichment and impoverishment; and (5) the absence of a remedy provided by law.[46]

- *Idaho, Kentucky, Rhode Island*, and *Tennessee* identify the following elements for unjust enrichment: (1) A benefit conferred upon the defendant by the plaintiff; (2) the defendant's appreciation of the benefit; and (3) the defendant's acceptance of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof.[47]

- *Alaska, Florida, Missouri, Nevada*, and *Pennsylvania* also apply a three-part standard, but require an addition showing of defendant's acceptance ***and retention*** of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof.[48]

- *Kansas, Maine, Maryland,* and *Wisconsin* define unjust enrichment in terms of the same three elements, but with two notable differences that require the

---

*Amoco Prod. Co. v. EM Nominee P'ship Co.*, 2 P.3d 534, 541-42 (Wyo. 2000).

[46] *See Guarantee Elec. Co. v. Big Rivers Elec. Corp.*, 669 F. Supp. 1371, 1380-81 (W.D. Ky. 1987) (Kentucky law);*Community Guardian Bank v. Hamlin*, 182 Ariz. 627, 898 P.2d 1005, 1008 (Ariz. Ct. App. 1995); *Jackson Nat'l Life Ins. Co. v. Kennedy*, 741 A.2d 377, 393-94 (Del. Ch. 1999); *Minyard v. Curtis Prods., Inc.*, 251 La. 624, 205 So.2d 422, 432 (La. 1967); *Apache Corp. v. MDU Res. Group, Inc.*, 603 N.W.2d 891, 894-95 (N.D. 1999).

[47] *See Aberdeen-Springfield Canal Co. v. Peiper*, 133 Idaho 82, 982 P.2d 917, 923 (Idaho 1999); *Anthony Corrado, Inc. v. Menard & Co. Bldg. Contractors*, 589 A.2d 1201, 1201-02 (R.I. 1991); *Paschall's, Inc. v. Dozier*, 219 Tenn. 45, 407 S.W.2d 150, 155 (Tenn. 1966).

[48] *See State Dep't Rev., Child Support Enforcement Div. v. Mitchell*, 930 P.2d 1284, 1289 (Alaska 1997); *Swindell v. Crowson*, 712 So.2d 1162, 1163 (Fla. Dist. Ct. App. 1998) (per curiam); *Ernst v. Ford Motor Co.*, 813 S.W.2d 910, 918 (Mo. Ct. App. 1991); *Topaz Mut. Co. v. Marsh*, 108 Nev. 845, 839 P.2d 606, 613 (Nev. 1992); *Styer v. Hugo*, 422 Pa. Super. 262, 619 A.2d 347, 350 (Pa. Super. Ct. 1993).

1    defendant's ***appreciation or knowledge*** of the benefit and ***acceptance or***
2    ***retention*** of the benefit under circumstances that make it inequitable for him
3    to retain it without paying the value thereof.[49]

4    These variations across states manifest more than differences in semantics; they reflect
5    substantive incongruities that create the potential for inconsistent and unpredictable
6    outcomes across jurisdictions.[50] The resulting manageability problems such variations
7    inevitably create are one reason why several courts have refused to certify nationwide
8    class actions involving unjust enrichment claims.[51]

9         **2.**    ***Other Jurisdictions Have Significant Interests In Applying Their***
10        ***Laws To The Claims Of Consumers In Their State.***

11        According to plaintiffs, "no other state has an interest in applying its own law"
12   because "California has the foremost interest in policing corporations residing and
13   conducting business in the state."[52] (Motion at 22:18, 23-24.)  Plaintiffs' reasoning,

14

15

---

16   [49]  *See J.W. Thompson Co. v. Welles Prods. Corp.*, 243 Kan. 503, 758 P.2d 738, 745
     (Kan. 1988); *Landry v. Landry*, 1997 ME 173, 697 A.2d 843, 845 (Me. 1997); *County*
17   *Comm'rs of Caroline County v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 747 A.2d
     600, 607 n.7 (Md. 2000); *Watts v. Watts*, 137 Wis. 2d 506, 405 N.W.2d 303, 313 (Wis.
18   1987).

19   [50]  *See* Kovacic, *supra* note 41 at 559 ("When the courts do use elements, . . . they do
     not articulate a single set of elements by which they may obtain consistent results.").
20   [51]  *See, e.g., In re Prempro*, 230 F.R.D. 555, 563, 565 (E.D. Ark. 2005) (denying class
21   certification of unjust enrichment and consumer protection claims because state laws
22   vary); *In re Baycol Prods. Litig.*, 218 F.R.D. 197, 215 (D. Minn. 2003) (denying class
     certification based on variations in unjust enrichment laws); *Lilly v. Ford Motor Co.*,
23   2002 WL 507126, at *2 (N.D. Ill. Apr. 2, 2002).

24   [52]  Although plaintiffs do not explain the basis for this conclusion, Honda anticipates
     that plaintiffs will argue that California has an interest in protecting consumers from
25   conduct "emanating" from California.  This *very* argument has been rejected by other
26   courts.  *See Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206, 217 (E.D. Pa. 2000) (rejecting
     plaintiffs' claim that Illinois law should apply because, *inter alia*, the common
27   misrepresentations all originated from defendant's management in Illinois); *see also In*
28   *re Ford Motor Co. Ignition Switch Prods. Liab. Litig. ("Ignition Switch I")*, 174 F.R.D.
     (footnote continued)

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

4835-1430-0930.1

13

CV07-07857 VBF JTLx

1  however, would strip all other states of their ability to regulate the sale and marketing

2  of products to their resident consumers whenever a California company sold or

3  marketed the product in question.  As the Seventh Circuit notes, no state would refuse

4  to apply its own substantive consumer protection law to in-state consumer sales:

> 5  State consumer-protection laws vary considerably, and courts must respect these
>
> 6  differences rather than apply one state's law to sales in other states with different
>
> 7  rules.  We do not for a second suppose that Indiana would apply Michigan law to
>
> 8  an auto sale if Michigan permitted auto companies to conceal defects from
>
> 9  customers; nor do we think it likely that Indiana would apply Korean law (no
>
> 10  matter what Korean law on the subject may provide) to claims of deceit in the
>
> 11  sale of Hyundai automobiles, in Indiana, to residents of Indiana, or French law to
>
> 12  the sale of cars equipped with Michelin tires.

13  *In re Bridgestone/Firestone Tires*, 288 F.3d at 1018.

14      Although California has a strong interest in having its consumer protection laws

15  applied to the claims of *California* residents, it has a lesser interest in having those laws

16  applied to claimants who do not reside in California, purchased their vehicles outside of

17  California, heard representations about a product outside California, and do not claim to

18  have suffered any damages in California.  Indeed, "[e]ach plaintiff's home state has an

19  interest in protecting its consumers from in-state injuries caused by foreign corporations

20  and in delineating the scope of recovery of its citizens under its own laws."  *Ignition*

21  *Switch I*, 174 F.R.D. at 348; *Chin v. Chrysler Corp.,* 182 F.R.D. 448, 457 (D.N.J. 1998)

22  (same).

23

24

25

---

26  332, 348-49 (D.N.J. 1997) (laws of plaintiffs' home states applies even though
plaintiffs alleged that Ford's headquarters are located in Michigan, decisions relating to

27  the allegedly defective ignition switches were made there, and any misrepresentations,
statements or advertisements regarding the Ford vehicles originated in Michigan).

28

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

3. *California's Interests Do Not Outweigh The Interests of Other States.*

The interest of the non-resident plaintiffs' home jurisdictions would be more impaired if California law is applied to non-resident plaintiffs' claims. Each state's choice about the standards applicable to the sale and marketing of products to its residents represents a policy choice about the costs and benefits of particular regulatory schemes. Plaintiffs' proposal would work a major change in the power of every state to regulate consumer transactions, in effect transforming every state's consumer fraud law into a statute that always applies to sales by that state's resident manufacturers, disregarding the policy choices other states have made concerning conduct occurring within their borders.

Moreover, applying California law in states that have enacted legislation with an *increased* level of deterrence would mean *less protection* for these state's residents, undermining that state legislature's intent to provide their consumers with greater protection. Thus, states like Florida and New Jersey, for example, which specifically prohibit "unconscionable" acts or practices under their CPS, would yield to less stringent standards California has established under the CLRA, which does not cover "unconscionable" conduct.[53]   Similarly, states like Pennsylvania, Wyoming, and Wisconsin, which permit recovery of actual damages under their CPS,[54] would yield to California's policy of limiting remedies under the UCL to restitution and disgorgement.[55]   State interests in protecting their residents are not overcome by showing that applying California law serves plaintiffs' class action objectives.

---

[53] *See supra* note 27.
[54] Pa. Stat. Ann. tit. 73, § 201-9.2(a); Wyo. Stat. Ann. § 40-12-108(a); Wis. Stat. Ann. § 100.18).
[55] *See Korea Supply*, 29 Cal. 4th at 1150.

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

### 4.    *State Law Variations Preclude A Finding of Predominance.*

Because plaintiffs' nationwide class claims require applying the consumer protection and unjust enrichment laws of multiple jurisdictions, plaintiffs' nationwide class action becomes unmanageable.[56]   As the California Supreme Court noted in *Washington Mutual*, courts almost invariably find that, in proposed nationwide class actions, the inability to instruct a jury due to the variation among the state laws makes the case unmanageable and thereby precludes plaintiffs from meeting the superiority requirement.  24 Cal. 4th at 924 (citing numerous cases refusing to certify nationwide classes).  Here, this analysis could involve hundreds of issues and sub-issues, requiring the Court to examine, state-by-state, each issue on which there was a conflict with California law.  This is a far cry from the mandate under Rule 23 that common issues must "predominate."

Plaintiffs' reliance on California decisions that purportedly certified nationwide classes applying California law do not alter this analysis.  First, plaintiffs vastly overstate what the court in *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605 (1987), did and said.  The holding in *Clothesrigger* is that the trial court erred in failing to conduct a proper choice-of-law analysis.[57]   Consequently, the appellate court ordered

---

[56]   *See Zinser*, 253 F.3d at 1189 ("[W]here the applicable law derives from the law of the 50 states, . . . differences in state law will compound the disparities among class members from the different states") (internal quotation marks omitted); *see also Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 653-54 (C.D. Cal. 1996) ("the problems and complexities raised by having to consider so many different state laws . . . convince the Court that class certification would be inappropriate"); *Ignition Switch I*, 174 F.R.D. at 349 ("no federal court ha[s] tried a class action that would require the application of the laws of fifty-one jurisdictions").

[57]   *Id.* at 614-15 (citations omitted) (". . . in denying Clothesrigger's motion, the court did not identify any proper reason California law would not likely apply to nonresident plaintiffs.  [¶]  The superior court did not determine whether a true conflict existed between California's interestsand those of any other state and, if so, which state's law should apply . . . .").

1   the trial court to undertake a full choice-of-law analysis upon remand.[58] *Wershiba v.*

2   *Apple Computer*, 91 Cal. App. 4th 224 (2001) also is distinguishable because it

3   involved a *settlement* class, not a litigation class.  Indeed, the *Wershba* court went no

4   further than to state that the "idiosyncratic differences between state consumer

5   protection laws" do not "preclude certification of a nationwide *settlement* class." *Id.* at

6   244 (emphasis added).  Thus, the *Wershba* court understood that its choice-of-law

7   analysis was academic in that the court would never have to wrestle with the conflicts

8   that would inevitably result if either case was actually litigated.  It is therefore not

9   surprising that courts routinely dismiss the significance of settlement class cases in

10  ruling on motions for class certification.[59]

### B.     Individual Issues Predominate Plaintiffs' Claims Under the UCL, FAL, and CLRA.

13       The UCL and FAL authorize lawsuits only by persons who have suffered "injury

14  in fact" and have lost money or property "as a result of" unfair competition. Cal. Bus.

15  & Prof. Code §§ 17204, 17535.  The CLRA similarly limits claims to persons who

16  suffered "any damage *as a result of* . . . a method, act, or practice declared to be

17  unlawful by Section 1770 . . . ." Cal. Civ. Code § 1780.  A plaintiff suffers injury "as a

18  result" of a misrepresentation under the CLRA if he or she "actually relied on the

---

[58]   *Id.* at 619 ("[T]he court should consider the degree of complexity arising from the need to apply other states' laws" and "may decline to certify the nationwide class if it determines such complexity results in common legal questions not predominating or makes nationwide class litigation unmanageable.").

[59]   *See, e.g., In re Ford Motor Co. Veh. Paint. Litig.*, 182 F.R.D. 214, 225 (E.D. La. 1998) (a district court confronted with a request for a settlement-only class certification "***need not inquire whether the case, if tried, would present intractable management problems. . . . For these reasons, the Court does not find the settlement class cases compelling***") (citations omitted; emphasis added); *Chin*, 182 F.R.D. at 459  (same); *Amchem Prods.*, 521 U.S. at 620 (In settlement-only class certifications "a district court need not inquire whether the case, if tried, would present intractable management problems, [ ] for the proposal is that there be no trial.").

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

1    relevant representations or omissions." *Buckland v. Threshold Enterprises, Ltd.*, 155

2    Cal. App. 4th 798, 810 (2007).  Although the issue whether "reliance" is an element

3    under the UCL is currently before the California Supreme Court in *In Re Tobacco II*

4    *Cases* (Case No. S147345), California law requires that the omission or

5    misrepresentation be "material."[60]

6        Plaintiffs attempt to avoid the individual issues presented by the UCL, FAL, and

7    CLRA claims by arguing, without any legal or factual analysis, that "Honda's omission

8    of the CMBS System's critical limitations require a finding of 'common reliance' under

9    governing authority." (Motion at 2:6-7).  But the evidence clearly shows that this case

10   is easily distinguished from cases (such as *Massachusetts Mutual Life Ins. Co. v. Sup.*

11   *Ct.*, 97 Cal. App. 4th 1282 (2002)) where a "presumption of reliance" has been applied.

12       In *Massachusetts Mutual*, purchasers of defendant's "vanishing premium"

13   insurance policies brought a class action claiming that defendant had failed to disclose

14   that it intended to change the policies so that dividends would be insufficient to cover

15   premiums.  *Id.* at 1286.  The putative class members in *Massachusetts Mutual*

16   purchased defendant's policies after they all heard a "sales presentation" by defendant's

17   agents.  *Id.*  While the court held that the trial court did not abuse its discretion in

18   presuming reliance (*Id.* at 1294-95), it also observed that an inference of reliance would

19   not arise in the event that subsequent discovery revealed that policy holders were

20   provided with such a variety of materials as to make "a single determination as to

21   materiality" impossible.  *Id.* at 1294 n. 5.  Thus, far from making the CLRA (or UCL)

22

23   [60]  In its Order denying Honda's motion to dismiss, the Court stated that "17200 and

24   17500 require that the misrepresentation be *material*."  (Order at 5) (emphasis in
     original).  The Court also found—relying (as it must on a motion to dismiss) on

25   plaintiffs' allegations that Honda made material misrepresentations to all consumers—

26   that "reliance on a material misrepresentation is presumed" under *Massachusetts*
     *Mutual Life Ins. Co. v. Sup. Ct.*, 97 Cal. App. 4th 1282 (2002).  (Order at 5).  But as

27   discussed in Section II(B) above, discovery since the Court's ruling on Honda's motion

28   to dismiss reveals that a presumption of reliance no longer applies.

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

1   immune from serious inquiry into whether their elements – including reliance,
2   causation, and damages – can be satisfied on a classwide basis, *Massachusetts Mutual*
3   holds only that this inquiry *can* be satisfied by a presumption *when the record permits*.

4        A "single determination of materiality" is not possible here.[61]   First, there is no
5   evidence that Honda made uniform misrepresentations to the class.   To the contrary,
6   plaintiffs admit that Honda *did in fact disclose* the information they previously alleged
7   Honda "concealed" from consumers.   Thus, the issue presented here is quite different
8   from cases finding a presumption of reliance could apply:   Can there be a classwide
9   presumption of reliance or materiality when Honda publicly disclosed in its owner's
10  manual, in the DVD that Honda encouraged dealers show to consumers and that was
11  available online to all consumers prior to purchase, and in publications made available
12  to dealers and consumers alike, the capabilities and limitations of the CMBS system
13  that plaintiffs allege Honda concealed?   The answer is clearly no.

14       In *Caro v. Proctor & Gamble*, 18 Cal. App. 4th 644 (1993), the court affirmed
15  denial of certification of a CLRA claim asserting that consumers overpaid for orange
16  juice as a result of a deceptive advertising and labeling campaign that misrepresented
17  the orange juice as "fresh" and contained "no additives."   *Id.* at 668.   The *Caro* court
18  concluded that whether any particular misrepresentation was "material" – *i.e.*, whether
19  the consumer was deceived by it and relied upon it – turned upon consumers' "personal
20  assumptions about the nature of the products they wanted to buy and upon reading
21  various portions of the [orange juice carton] labels."   *Id.* at 668-69.   Therefore,
22  "whether any asserted misrepresentation induced the purchase of [] orange juice would
23  vary from consumer to consumer" and the issue of liability was not susceptible to
24  classwide proof. *Id.* at 668.

25  
26  [61]  *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138 (N.D. Cal. 2005), also cited
     by plaintiffs, is easily distinguished because, unlike this case, there was no evidence in
27  *Chamberlan* (unlike here) that the defendant had in fact disclosed the information
28  plaintiffs claimed was concealed.

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

1    The same reasons compel denying plaintiffs' Motion.  First, there can be no

2  classwide proof that all consumers who purchased an Acura RL with the CMBS system

3  were ignorant of the system's capabilities and limitations.  Dealers were encouraged to

4  show the DVD on the interactive network to consumers prior to purchase.[62]  Consumers

5  also had access to the allegedly concealed information in the RL owner's manual, in

6  magazines that dealers were asked to display in showrooms, and in the DVD that was

7  available to all consumers online.  Thus, as in *Caro*, individualized proof is necessary

8  to determine whether the allegedly concealed information constituted a material

9  misrepresentation to class members who, unlike plaintiffs, could have read Honda's

10  disclosures concerning the CMBS system prior to purchase and bought their vehicles

11  with full knowledge of these facts.

12    Further, although Mazza and Kalsi claim they interpreted Honda's advertising to

13  mean that the CMBS would always proceed through three warning stages in every

14  possible situation where a collision was possible, there can be no classwide proof that

15  *every* consumer was misled in the same way.  *See, e.g., Caro*, 18 Cal. App. 4th at 668

16  (stating that "although Caro's deposition testimony might be construed as suggesting he

17  personally was misled into believing the juice contained 'no additives,'" it would be a

18  matter of individualized proof whether others who read the label came to the same

19  conclusion as plaintiff.)  Indeed, Mazza stated that a number of consumers on the

20  internet disagreed with his conclusions concerning the CMBS system,[63] and attributed

21  Mazza's complaints to his misunderstanding of the CMBS system:

22    • "Although I haven't used your car, *I really think your problem is a*

23    *misunderstanding of the system.*  The system does not have to go through

24    the stages."[64]

25

26  [62]  Heath Decl. ¶¶ 3, 4.

27  [63]  Kizirian Decl. ¶ 16, Ex. 15 (Mazza Depo. at 175:19-25).

28  [64]  *Id.* (Mazza Depo. at 179:18-22) (emphasis added).

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

1  · ". . . overall, *I think the system works exactly how they advertise it*, you

2  simply have to get used to its parameters."[65]

3  Finally, there can no classwide proof all consumers viewed the same television

4  advertising as plaintiffs, much less interpreted it in the same way.  Mazza testified that

5  the "fog" commercial—which stated that the RL driver is "warned, and warned again"

6  ("Fog I")—was critical to his decision to purchase the Acura RL with CMBS.[66]  But

7  "Fog I" aired *just twice* in November 2005—once in a thirty-second spot on a

8  nationally televised football game on CBS, and another time in a thirty-second spot on

9  a regional football broadcast on DIRECTV®—before it was taken off the air, modified,

10  and re-aired again from February 2006 to August 2006 ("Fog II") using a different

11  voice-over script and different visuals.[67]  Unlike Mazza, Kalsi did not recall whether

12  the commercial he saw Fog I, Fog II, or both.[68]  Thus, individual inquiries are necessary

13  just to determine if consumers (1) saw either "Fog I" or "Fog II" prior to purchase, (2)

14  based their purchasing decision on either commercial, and (3) who saw "Fog I"

15  interpreted the commercial in the same way as plaintiffs—a determination that requires

16  claimant-specific inquiries and claimant-specific proof.

17  **III.    RULE 23(B)(2) CERTIFICATION IS NOT APPROPRIATE.**

18  Plaintiff Deep Kalsi's request, in the alternative, to certify a class under Rule

19  23(b)(2) must also be denied.  Rule 23 (b)(2) certification is appropriate where

20  (1) defendant "has acted or refused to act on grounds generally applicable to the class,"

21  and (2) the appropriate final relief does not relate exclusively or predominantly to

22  money damages.  *See* Fed. R. Civ. P. 23(b)(2) (Adv. Comm. Notes). Neither

23  requirement is met here.

24

25

---

26  [65] *Id.* (Mazza Depo. at 180:10-16; 181:20-23) (emphasis added).
   [66] *Id.* (Mazza Depo. at 83:4-6).

27  [67] *Id.* ¶ 15, Ex. 14 (Rossick Depo. at 167:24-168:3; 169:16-19; 171:20-172:3).
   [68] Kizirian Decl. ¶ 17, Ex. 16 (Kalsi Depo. at 110:6-9.)

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

1   First, plaintiffs cannot establish that defendants have acted or refused to act on

2   grounds generally applicable to the class.  Honda disclosed the allegedly concealed

3   information *before the first Acura RL was sold*.  Indeed, Kalsi testified that if he had

4   read this information, he would not have purchased a CMBS-equipped Acura RL.[69]

5   Further, the putative class consists of individuals who have nothing to gain from an

6   injunction.  An order compelling "Honda to disclose to *prospective purchasers* of the

7   CMBS System its limitations" (Motion at 18:2-3) will not benefit a class consisting of

8   individuals who have already purchased an Acura RL.[70]

9   Second, plaintiffs have failed to establish that money damages are only incidental

10   to their claim for injunctive relief as required by Rule 23(b)(2).[71]  Although Kalsi states

11   that he is primarily interested in injunctive relief, Mazza wants to get paid and made

12   "whole."[72]  Indeed, plaintiffs seek "disgorgement" of profits,[73] restitution, "actual

13   damages" (Motion at 25:5-12), and punitive damages. (Comp. at p. 27-28).  Plaintiffs

14   therefore cannot claim that damages are "merely incidental to the litigation"—a fact

15   made clear by their request that the Court certify a class under Rule 23(b)(2) only if

16   they "are not successful in certifying their claims under rule 23(b)(3) . . . ." (Motion at

17   17:11-12).  While the Ninth Circuit has refused to adopt a bright-line rule barring Rule

18   23(b)(2) certification where damages are the primary relief sought, the court does

19   require that district courts examine the "specific facts and circumstances of each case"

20   to determine whether an injunction is the predominant form of relief. *Molski v. Gleich*,

21

22

23   [69] Kizirian Decl. ¶ 17, Ex. 16 (Kalsi Depo. at 124:6-21).

24   [70] *See, e.g., Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 978 (5th Cir.2000)
    (certification inappropriate where class has "nothing to gain from an injunction, and

25   the declaratory relief they seek serves only to facilitate the award of damages.")

26   [71] *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 860 (9th Cir. 2001).
    [72] Kizirian Decl. ¶ 16, Ex. 15 (Mazza Depo. at 252:19-253:9).

27   [73] *Taylor v. Flagstar Bank, FSB*, 181 F.R.D. 509, 519 (M.D. Ala. 1999)

28   (disgorgement are not considered "injunctive relief" under Fed. R. Civ. P. 23(b)(2)).

1   318 F.3d 937, 950 (9th Cir. 2003).   The record here makes clear that damages are the

2   primary relief plaintiffs seek.

## IV.   PLAINTIFFS ARE NEITHER ADEQUATE NOR TYPICAL CLASS REPRESENTATIVES.

5   Rule 23(a)(3) requires that the "claims or defenses of the representative parties

6   [be] typical of the claims or defenses of the class." Typicality is not met by a

7   conclusory claim that "Honda's omission of the CMBS System's limitations gives rise

8   to the same injury type [sic], class-wide." (Motion at 15:5-6).[74] By that measure, every

9   putative class representative who asserts any cause of action would have "typical"

10  claims.   To be typical, plaintiffs must demonstrate that the claims of the class

11  representative and class members are sufficiently alike that proof of the class

12  representative's individual case will necessarily also prove the claims of the class

13  members.  Plaintiffs cannot make such a showing here.[75]

14  First, there is no evidence that members of the purported class share plaintiffs'

15  concerns about Honda's advertising for the CMBS system.  As of May 2008, Honda

16  has sold 1,958 Acura RL vehicles with the CMBS system in the United States, but just

17  just four consumers—*including* plaintiffs Mazza and Kalsi—complained to Honda that

18  the CMBS system does not function as Honda represented in its advertising or product

---

21  [74] *See, e.g., Clay v. American Tobacco Co.,* 188 F.R.D. 483, 492-93 (S.D. Ill. 1999)

22  (rejecting typicality based on bare allegation that plaintiffs' "claims are typical to the

23  proposed class members because each class member's claims have arisen from the same practices and course of conduct.")

24  [75] Plaintiffs no longer propose one named plaintiff, Janet Mazza, as a class

25  representative, presumably because her deposition testimony alone highlights the disparity in facts class members knew about the CMBS system. Mrs. Mazza did not

26  read or review *any* CMBS-related publications or websites either before or after purchase. In fact, there had not been a single instance prior to filing this lawsuit where

27  Mrs. Mazza felt the CMBS should have responded and it did not. Kizirian Decl. ¶ 18,

28  Ex. 17 (Janet Mazza Depo. at 19:4-20:1; 46:10-49:5; 54:23-55:12; 59:2-15.)

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

1  literature.[76]  Thus, plaintiffs' claims are not typical of an overwhelming number of
2  vehicle owners.

3       Second, plaintiffs base their claims primarily on their own experience with the
4  CMBS System in which they drove up on parked cars in the street or cars traveling on
5  the highway.[77]  It is highly unlikely that members of the purported class are trying to
6  replicate potential accident situations to prove that a safety feature on their vehicle
7  "comes on too late."  As one consumer responding to Mazza's internet blog post stated:
8  "Based on how I've seen the system react in a few situations . . . I'm willing to trust
9  that the system will function as described should I ever actually find myself in the kind
10  of situation it's designed to minimize."[78]

11       Finally, plaintiffs are not adequate class representatives.  Prior to filing this
12  lawsuit, Mazza filed a complaint with the National Highway Traffic and Safety
13  Administration ("NHTSA").[79]  In his complaint, Mazza stated he "was introduced to
14  [the CMBS] feature with [his] friends [sic] 2006 RL . . . . [and his] 07 does not function
15  the same. . . . [and] does not alert [him] of potential accidents with sufficient warning
16  like the 06."[80]  Because both Mazza and Kalsi own 2007 model year vehicles, they
17  cannot adequately represent 2006 model year vehicle owners when plaintiffs believe
18  2006 model year vehicles function as expected.

19  **V.    A CLASS ACTION IS NOT SUPERIOR.**

20       To certify a class, the Court must find that "a class action is superior to other
21  available methods of fair and efficient adjudication of the controversy." Fed. R. Civ. P.
22  23(b). This element is clearly lacking here. First, as discussed above (Sec. IV, *supra*),

23

24  [76]  Declaration of Daniel G. Crowe ¶ 5.
25  [77]  Kizirian Decl. ¶ 16, Ex. 15 (Mazza Depo. at 206:25-209:3); ¶ 17, Ex. 16 (Kalsi
26  Depo. at 88:18-90:9).
   [78]  Kizirian Decl. ¶ 20, 19 (Post #47).
27  [79]  Kizirian Decl. ¶ 16, Ex. 15 (Mazza Depo. at 227:20-228:11).
28  [80]  Kizirian Decl. ¶ 20, Ex. 19.

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

1  there is no groundswell of discontent or threatened litigation over Honda's alleged

2  misrepresentations. Second, if Kalsi's primary motivation for this lawsuit is ensuring

3  consumer safety, the superior method for resolving motor vehicle safety issues lies with

4  the National Highway Traffic and Safety Administration ("NHTSA"), the federal

5  agency created by the Federal Motor Vehicle Safety Act, 49 U.S.C. § 30101 *et seq.* (the

6  "Safety Act") and that is given the authority to investigate complaints by consumers

7  and others relating to alleged safety concerns.[81]

8       Finally, plaintiffs' consumer fraud and unjust enrichment claims each require

9  claimant-specific litigation. Consequently, the litigation would devolve into a series of

10  individualized mini-trials, thereby creating overwhelming manageability concerns. In

11  this regard, it is not surprising that plaintiffs' memorandum fails to provide any

12  roadmap for how their claims would be litigated and adjudicated consistent with the

13  due process rights of all parties.[82]

14  ## VI.   CONCLUSION.

15       For the foregoing reasons, Honda respectfully requests that plaintiffs' motion

16  for class certification be denied.

17

18

19

20

---

21  [81] *See Chin*, 182 F.R.D. at 464 ("the administrative remedy provided by NHTSA,
22  including recall of vehicles for inspection and/or repair, is more appropriate than civil
   litigation seeking equitable relief and money damages in a federal court"); *Ignition*
23  *Switch I*, 174 F.R.D. at 353 (same); *Am. Suzuki Motor Corp., Inc. v. Sup. Ct.*, 37 Cal.
24  App. 4th 1291, 1299-1300 (1995) ("The remedy which will best promote consumer
   safety . . . is to petition [NHTSA] for a defect investigation.")
25  [82] The trial plan requirement is a well-established requirement of class certification as
26  a necessary tool for evaluating whether common issues indeed predominate over those
   that require sub-classing or individual trials. *See Valentino*, 97 F.3d at 1234 (abuse of
27  discretion where "[t]here has been no showing by Plaintiffs of how the class trial could
28  be conducted").

1 | DATED: July 14, 2008

ROY M. BRISBOIS
ERIC Y. KIZIRIAN
LEWIS BRISBOIS BISGAARD & SMITH LLP

By: _____
Eric Y. Kizirian
Attorneys for Defendant American Honda
Motor Co., Inc.

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800