ROY M. BRISBOIS, SB# 53222
   E-Mail: brisbois@lbbslaw.com
ERIC Y. KIZIRIAN, SB# 210584
   E-Mail: kizirian@lbbslaw.com
**LEWIS BRISBOIS BISGAARD & SMITH** LLP
221 North Figueroa Street, Suite 1200
Los Angeles, California 90012
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Defendant American Honda
Motor Co., Inc.



FILED
CLERK, U.S. DISTRICT COURT

NOV 1 0 2008
4:40

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MICHAEL MAZZA, JANET MAZZA, and DEEP KALSI, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>   v.<br><br>AMERICAN HONDA MOTOR COMPANY, INC.,<br><br>       Defendant. | CASE NO. CV07-07857 VBF JTLx<br><br>Hon. Valerie Baker Fairbank<br><br>**DEFENDANT AMERICAN HONDA MOTOR CO., INC.'S OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION**<br><br>Date:      December 8, 2008<br>Time:     2:00 p.m.<br>Courtroom:  9<br><br>[Filed concurrently with (1) Defendant American Honda Motor Co., Inc.'s State Law Variations Appendix, (2) Declaration of Eric Y. Kizirian; (3) Objections to Declarations of Michael Mazza, Deep Kalsi, and Payam Shahian] |

TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................... 1

FACTUAL SUMMARY ........................................................................................... 2

    A.   Honda Introduces the CMBS on the 2006 Model Year RL. ....... 2

    B.   Honda's Repeated Disclosures Of The "Concealed" Information. ......................................................................................... 2

ARGUMENT ............................................................................................................. 5

I.     STANDARD FOR CLASS CERTIFICATION. .................................. 5

II.    INDIVIDUAL FACTUAL ISSUES PRECLUDE CERTIFICATION. ................................................................................ 5

    A.   Plaintiffs' UCL, FAL, and CLRA Claims Present Individualized Issues Not Suitable for Class Treatment. ............ 5

        1.   Plaintiffs' CLRA Claims Require Claimant-Specific Inquiries ................................................................................ 5

        2.   Materiality Cannot Be Shown By Classwide Proof Under the UCL ........................................................................ 8

    B.   Unjust Enrichment Claims Require Claimant-Specific Proof. .................................................................................................. 9

III.   STATE LAW VARIATIONS PRECLUDE CLASS CERTIFICATION. .............................................................................. 10

    A.   Irreconcilable State Law Conflicts Present A Second Obstacle to Certification. ...................................................................... 10

    B.   California Law Conflicts With The Laws of Other Jurisdictions. ............................................................................................ 11

        1.   California's UCL Conflicts With CPS of Other Jurisdictions. ............................................................................ 12

        2.   California's CLRA Conflicts With CPS of Other Jurisdictions. ............................................................................ 14

        3.   State Unjust Enrichment Laws Conflict. ......................... 15

    C.   Other Jurisdictions Have Significant Interests In Applying Their Laws To The Claims Of Consumers In Their State......... 16

    D.   Other Jurisdictions' Interests Will Be More Impaired If California Law Applies. .................................................................... 17

    E.   State Law Variations Preclude A Finding of Predominance. .................................................................................. 26

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

TABLE OF CONTENTS

IV.   RULE 23(B)(2) OR 23(C)(4) CERTIFICATION IS NOT
      APPROPRIATE. ........................................................ 27

V.    PLAINTIFFS ARE NEITHER ADEQUATE NOR TYPICAL
      CLASS REPRESENTATIVES. ..................................... 28

VI.   THERE IS NO ASCERTAINABLE CLASS. ..................... 29

VII.  A CLASS ACTION IS NOT SUPERIOR. ......................... 29

VIII. CONCLUSION............................................................ 30

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

# TABLE OF AUTHORITIES

Page(s)

## <u>Cases</u>

*Am. Suzuki Motor Corp., Inc. v. Sup. Ct.*,
   37 Cal. App. 4th 1291 (1995) ................................................30

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................27

*Arbino v. Johnson & Johnson*,
   880 N.E.2d 420 (Ohio 2007) ................................................21

*Barbara's Sales, Inc. v. Intel Corp.*,
   879 N.E. 2d 910 (Ill. 2007) ................................................12

*Blake v. Federal Way Cycle Ctr.*,
   698 P.2d 578 (Wash. Ct. App. 1985) ................................................13

*Brack v. Omni Loan Co., Ltd.*,
   164 Cal. App. 4th 1312 (2008) ................................................18

*Buckland v. Threshold Enterprises, Ltd.*,
   155 Cal. App. 4th 810 (2007) ................................................5, 15, 25

*Buzzard v. Bolger*,
   453 N.E.2d 1129 (Ill. Ct. App. 1983) ................................................26

*Califano v. Yamasaki*,
   442 U.S. 682 (1979) ................................................5

*Caro v. Proctor & Gamele*,
   18 Cal. App. 4th 644 (1993) ................................................7

*Castano v. Am. Tobacco, Inc.*,
   84 F.3d 734 (5th Cir. 1996) ................................................10, 28

*Chin v. Chrysler Corp.*,
   182 F.R.D. 448 (D.N.J. 1998) ................................................17, 31

*Church v. Consolidated Freightways, Inc.*,
   1992 U.S. Dist. LEXIS 18234 (N.D. Cal. 1992) ................................................11, 27

*Clay v. American Tobacco Co.*,
   188 F.R.D. 483 (S.D. Ill. 1999) ................................................9, 16, 29

*Clothesrigger, Inc. v. GTE Corp.*,
   191 Cal. App. 3d 605 (1987) ................................................27

*Com. of Mass. v. V & M Management, Inc.*,
   752 F. Supp. 519 (D. Mass. 1990) ................................................22

*Commonwealth v. Monumental Properties, Inc.*,
   329 A.2d 812 (Pa. 1974) ................................................21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

CV07-07857 VBF JTLx

OPPOSITION TO RENEWED MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

Page

*Commonwealth v. Percudani,*
    825 A.2d 743 (Pa. Commw. 2003)..............................................21

*Consumer Prot. Div. v. Luskin's, Inc.,*
    726 A.2d 702 (Md. App. 1999)..............................................24

*Cooper v. GGGR Invest., LLC,*
    334 B.R. 179 (E.D. Va. 2005)..............................................12, 14

*DaBosh v. Mercedes Benz USA, Inc.,*
    874 A.2d 1110 (N.J. Super. Ct. App. 2005)..............................................13

*Debbs v. Chrysler Corp.,*
    810 A.2d 137 (Pa. Sup. Ct. 2002)..............................................13

*Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.,*
    693 So.2d 602 (Fla. App. 1997)..............................................20

*Dep't of Legal Affairs v. Father & Son Moving & Storage, Inc.,*
    643 So.2d 22 (Fla. App. 1994)..............................................13

*Dreier Co. v. Unitronix Corp.,*
    527 A.2d 875 (N.J. Super. 1986)..............................................20

*Dwyer v. J.I. Kislak Mortgage Corp.,*
    13 P.3d 240 (Wash. App. 2000)..............................................25

*Egwuatu v. South Lubes, Inc.,*
    976 So.2d 50 (Fla. App. 2008)..............................................12

*Einhorn v. Ford Motor Co.,*
    548 N.E.2d 933 (Ohio 1990)..............................................21

*Expansion Pointe Properties Ltd. Partnership v. Procopio, Cory, Hargreaves &
    Savitch, LLP,*
    152 Cal. App. 4th 42 (2007)..............................................18

*FTC v. Sperry & Hutchinson Co.,*
    405 U.S. 233 (1972)..............................................13

*Galden v. Guardian Life Ins. Co. of Am.,*
    750 N.E.2d 1078 (N.Y. 2001)..............................................14

*Georgine v. Amchem Prod., Inc.,*
    83 F.3d 610 (3d Cir. 1996)..............................................10

*Goshen v. Mutual Life Ins. Co. of New York,*
    774 N.E.2d 1190 (N.Y. 2002)..............................................22

*Gredell v. Wyeth Lab., Inc.,*
    854 N.E.2d 752 (Ill. Ct. App. 2006)..............................................26

*Guess v. Brophy,*
    517 N.E.2d 693 (Ill. Ct. App. 1987)..............................................26

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

iv

# TABLE OF CONTENTS

Page

*Gunn Infiniti, Inc. v. O'Bryne,*
996 S.W.2d 854 (Tex. 1999) ............................................................24

*Guth v. Allied Home Mtg. Capital Corp.,*
2008 WL 2635521 (Ohio. App. 2008) ..............................................12

*Haley v. Medtronic, Inc.,*
169 F.R.D. 643 (C.D. Cal. 1996) .....................................................26

*Heindel v. Pfizer, Inc.,*
381 F. Supp.2d 364 (D.N.J. 2004) ...................................................18

*Houston Livestock Show v. Hamrick,*
125 S.W.3d 555 (Tex. App. 2003) ....................................................25

*Hundred East Credit Corp. v. Schuster,*
515 A.2d 246 (N.J. Super. 1986) ......................................................20

*In re Baycol Prods. Litig.,*
218 F.R.D. 197 (D. Minn. 2003) ......................................................11

*In re Bridgestone/Firestone, Inc.,*
288 F.3d 1012 (7th Cir. 2002) ..........................................................11

*In re Ford Motor Co. Ignition Switch Prod. Liab. Litig.,*
174 F.R.D. 332 (D.N.J. 1997) .....................................................17, 30

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.,*
194 F.R.D. 484 (D.N.J. 2000) ..........................................................11

*In re Pharmaceutical Indus. Avg. Wholesale Price Litig.,*
233 F.R.D. 229, 230 (D. Mass 2006) ...............................................14

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.,*
214 F.R.D. 614 (W.D. Wash. 2003) ...................................................9

*In re Prempro,*
230 F.R.D. 555 (E.D. Ark.2005) .......................................................11

*In re Relafen Antitrust Litigation,*
221 F.R.D. 260 (D. Mass. 2004) ......................................................17

*In re Rezulin Prods. Liab. Litig.,*
210 F.R.D. 61 (S.D.N.Y. 2002) ..........................................................9

*In re St. Jude Medical,*
522 F.3d 836 (8th Cir. 2008) .............................................................7

*In re St. Jude Medical, Inc.,*
425 F.3d 1116 (8th Cir. 2005) ..........................................................10

*In re Vioxx Prods. Liab. Litig.,*
239 F.R.D. 450 (E.D. La. 2006) .......................................................18

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

CV07-07857 VBF JTLx
OPPOSITION TO RENEWED MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

Page

*Kanter v. Warner-Lambert Co.,*
265 F.3d 853 (9th Cir. 2001) ................................................... 27

*Kearney v. Salomon Smith Barney, Inc.,*
39 Cal. 4th 95 (2006) ........................................................... 18

*Korea Supply v. Lockheed Martin Corp.,*
29 Cal. 4th 1134 (2003) ........................................................ 12

*Leardi v. Brown,*
474 N.E. 2d 1094 (Mass. 1985) ............................................. 22

*Lilly v. Ford Motor Co.,*
2002 WL 507126 (N.D. Ill. 2002) ......................................... 11

*Lyon v. Caterpillar, Inc.,*
194 F.R.D. 206 (E.D. Pa. 2000) ....................................... 11, 17

*Massachusetts Mutual Life Ins. Co. v. Sup. Ct.,*
97 Cal. App. 4th 1282 (2002) ............................................. 5, 6

*Mitchell v. Lone Star Ammunition, Inc.,*
913 F.2d 242 (5th Cir.1990) .................................................. 24

*N.Y. Public Int. Research Group, Inc. v. Insurance Inf. Institute,*
531 N.Y.S.2d 1002 (N.Y. Sup. 1998) .................................... 23

*New Mea Constr. Corp. v. Harper*
497 A.2d 534 (N.J. Super. 1985) ........................................... 19

*Offshore Rental Co. v. Continental Oil, Co.,*
22 Cal. 3d 157 (1978) ..................................................... 17, 18

*Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc.,*
754 F.2d 10 (1st Cir. 1985) ................................................... 13

*Puentes v. Wells Fargo Home Mortg., Inc.,*
160 Cal. App. 4th 638 (2008) ............................................... 13

*Robinson v. Avis Rent-A-Car Sys., Inc.,*
22 P.3d 818 (Wash. Ct. App. 2001) ....................................... 12

*Sebago, Inc. v. Beazer East, Inc.,*
18 F. Supp. 2d 70 (D. Mass. 1998) ....................................... 12

*Siegel v. Levy Org. Dev. Co.,*
607 N.E.2d 194 (Ill. 1992) ................................................... 13

*Spence v. Glock, Ges.m.b.H.,*
227 F.3d 308 (5th Cir. 2000) ............................................ 16,17

*State Farm Mut. Auto Ins. Co. v. Campbell,*
538 U.S. 408 (2003) ...................................................... 18, 26

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

# TABLE OF CONTENTS

Page

*Stutman v. Chem. Bank,*
750 N.E.2d 608 (N.Y. 2000) ......................................................23

*Super Glue Corp. v. Avis Rent A Car Sys., Inc.,*
132 A.D.2d 604 (N.Y. App. Div. 1987) ......................................12

*Tallmadge v. Aurora Chrysler Plymouth, Inc.,*
605 P.2d 1275 (Wash App. 1979) ..............................................25

*Taylor v. Flagstar Bank, FSB,*
181 F.R.D. 509 (M.D. Ala. 1999) ..............................................28

*Telular Corp. v. Vitech America, Inc.,*
1996 WL 616590 (N.D. Ill. 1996) ..............................................26

*Thomas v. Sun Furniture & Appliance Co.* (1978),
399 N.E.2d 567 (Ohio Ct. App. 1977) ......................................21

*Thompson v. Am. Tobacco Co.,*
189 F.R.D. 544 (D. Minn. 1999) ..............................................13

*Tracker Marine, L.P. v. Ogle,*
108 S.W.3d 349 (Tex. App. 2003) ........................................11, 25

*Wash. Mutual Bank, FA v. Superior Ct.,*
24 Cal. 4th 906 (2001) ........................................10, 16, 17, 20, 26

*Wershiba v. Apple Computer,*
91 Cal. App. 4th 224 (2001) ......................................................27

*Zinser v. Accufix Research Inst., Inc.,*
253 F.3d 1180 (9th Cir. 2001) ............................................passim

## Codes

15 U.S.C. § 45 ..............................................................................13

Cal. Bus. & Prof. Code § 17203 ..................................................12

Cal. Bus. & Prof. Code § 17204 ..............................................22, 23

Cal. Bus. & Prof. Code §17208 ..................................................14

Cal. Civ. Code § 1761 ................................................................14

Cal. Civ. Code § 1782 ................................................................15

Ga. Code Ann. § 10-1-399 ..........................................................14

Idaho Code § 48-603 ..................................................................13

Mass. Gen. Law ch. 260, § 5 ......................................................14

OPPOSITION TO RENEWED MOTION FOR CLASS CERTIFICATION

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

Page

Mass. Gen. Laws ch. 93A, § 9(3) ...................................................... 12, 13, 14

Md. Code Ann. § 13-102 ........................................................................ 24

Md. Code Ann. Cts. & Jud. Proc. § 5-101 ............................................. 14

Md. Code Ann., Com. Law § 13-408 .................................................. 12, 13

Md. Com. Law Code Ann. § 13-101 ....................................................... 14

Mich. Comp. Laws Ann. § 445.911 ........................................................ 13

Ohio Rev. Code § 1345.10 ..................................................................... 14

Ohio Rev. Code Ann. § 1345.03 ............................................................ 15

Ohio Rev. Code Ann. § 1345.09 ......................................................... 12, 13

Tex. Bus. & Com. Code § 17.50 ...................................................... 12, 13, 14, 15

Tex. Bus. & Com. Code § 17.505 .......................................................... 14

Tex. Bus. & Com. Code § 17.565 .......................................................... 14

Tex. Bus. & Com. Code Ann. § 17.44 .................................................... 24

Tex. Bus. & Com. Code Ann. § 17.45 .................................................... 14

Utah Code §§ 13-11-4 ............................................................................ 13

Utah Code §§ 13-11-5 ............................................................................ 13

Va. Code Ann. § 59.1-196 .................................................................. 14, 23

Va. Code Ann. § 59.1-197 .................................................................. 23, 24

Va. Code Ann. § 59.1-204.1 ................................................................... 13

W. Va. Code § 46A-6-103 ...................................................................... 14

Wash. Rev. Code § 19.86.120 ................................................................ 14

Wash. Rev. Code Ann. § 19.86.090 ................................................... 12, 13, 25

## Rules

Fed. R. Civ. P. 23 ........................................................................... 27, 28, 29

## Statutes

42 Pa. Cons. Stat. § 5525 ...................................................................... 14

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

# TABLE OF CONTENTS

Page

73 Pa. Cons. Stat. § 201-9.2 ...................................................12, 13

815 Ill. Comp. Stat. 505 ...............................................13, 14, 26

Colo. Rev. Stat. 6-1-105.............................................................13

Fla. Stat. Ann. § 501.201 ...........................................................15

Fla. Stat. Ann. § 501.211 .......................................................12, 13

Kan. Stat. Ann. §§ 50-634 ..........................................................13

Kan. Stat. Ann. §§ 50-636 ..........................................................13

N.J. Rev. Stat. § 56:8-1 ..........................................................14, 20

N.J. Rev. Stat. § 56:8-2 ..........................................................13, 15

N.J. Rev. Stat. § 56:8-19 .........................................................12, 13

N.J. Stat. Ann. § 2A ...................................................................14

Nev. Rev. Stat. Ann. 598.0915....................................................13

Or. Rev. Stat. § 646.638............................................................13, 14

## Other Authorities

James A. Reed, *Legislating for the Consumer: An Insider's Analysis of the Consumers Legal Remedies Act*, 2 Pac. L.J. 1 (1971)...................................19

Jonathan Sheldon & Carolyn Carter, *Unfair and Deceptive Acts and Practices* (National Consumer Law Center 6th Ed. 2004) .........................................................................................14

Restatement (Second) Conflict of Laws § 148 .....................................18

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CV07-07857 VBF JTLx

OPPOSITION TO RENEWED MOTION FOR CLASS CERTIFICATION

# INTRODUCTION

Plaintiffs' Renewed Motion for Class Certification ("Motion") hinges entirely on the unsupportable premise that Defendant American Honda Motor Co., Inc. ("Honda") failed to disclose the operational range and limitations of the Collision Mitigation Braking System ("CMBS") on 2006 through 2009 model year Acura RL vehicles. But discovery since plaintiffs filed this lawsuit indisputably shows that Honda disclosed the allegedly concealed information in *both* pre-sale and post-sale materials throughout the class period. Desperate to salvage a lawsuit that clearly is different than the one plaintiffs envisioned when they filed their complaint, plaintiffs ignore Honda's repeated pre-sale and post-sale disclosures, and unveil a new alleged omission *for the first time* in their Motion[1] in seeking certification of an unwieldy "nationwide" class action.

Even a cursory review of the Motion demonstrates plaintiffs have not satisfied their burden of establishing that the requirements of Rule 23 are met:

- ***Individual Factual Issues Predominate***: A presumption of reliance does not apply here, and plaintiffs' claims for violations of Cal. Bus. & Prof. Code §§ 17200 ("UCL") and 17500 ("FAL"), Cal. Civil Code § 1750 *et seq.* ("CLRA"), and for unjust enrichment require individualized proof on diverse issues.

- ***Individual Legal Issues Predominate:*** Variations in state consumer protection statues ("CPS") and unjust enrichment laws provide a second and independent basis to deny certification because California's governmental interest analysis points to the substantive laws of each plaintiff's home state.

---

[1] Plaintiffs' claim that Honda failed to disclose that the "CMBS shuts off in bad weather" is found nowhere in their complaint. Further, when Honda asked in interrogatories that plaintiffs identify "each material omission regarding the CMBS System," plaintiff Mazza referred Honda to paragraphs "4, 24, 33-35, 37-38" of the complaint, and plaintiff Kalsi referred Honda to paragraphs 4, 24, 28, 33-35, 37-38" of the complaint. (Kizirian Decl. ¶ 5, Ex. 4 (p. 5, Interrog. 2); ¶ 6, Ex. 5 (p. 5, Interrog. 2). None of these paragraphs discuss the alleged omission plaintiffs raise for the first time in their Motion. Plaintiffs have not supplemented their interrogatory responses to include this new alleged omission, which cannot now be used as a basis for certification.

- ***A class action is not "superior"***:  There is no evidence of widespread discontent concerning the CMBS system, and any "safety" concerns should be handled by the National Highway Traffic Safety Administration ("NHTSA").

- ***The proposed class is not ascertainable:***  Individual inquiries are necessary to identify consumers who purchased RL vehicles for "personal, family, or household purposes" under the CLRA, and it is impossible to identify consumers who bought used RLs, who are included in plaintiffs' proposed class definition.

## FACTUAL SUMMARY

### A.    Honda Introduces the CMBS on the 2006 Model Year RL.

In the fall of 2005, Honda introduced the CMBS – a revolutionary safety feature – as one of several optional features on the 2006 model year Acura RL.[2]   CMBS provides exceptional safety benefits to RL owners.  The system uses a millimeter-wave radar unit that monitors the distance and closing rate between the RL and the vehicle or object directly in front of it.[3]  If CMBS detects a possible collision, it alerts the driver to take evasive action, or if a collision is unavoidable, automatically applies the brakes to minimize the impact of a collision.[4]  CMBS works, as demonstrated by plaintiff Kalsi's admission that it helped him avoid five potential collisions![5]

### B.    Honda's Repeated Disclosures Of The "Concealed" Information.

The CMBS System, like most technological advancements, has limitations. Honda, therefore, disclosed the system's limitations and range of functions – including the *very information* plaintiffs claim Honda concealed – in both pre-sale and post-sale materials it made available to Acura dealers and consumers alike.

***Acura Dealerships:*** The "Customer Information Center" or "CIC" is an intranet

---

[2]    In 2006, CMBS was included in the "Technology Package," and in 2007 and 2008 model year RL vehicles, CMBS was included in the "CMBS/PAX Package." (Kizirian Decl. ¶¶ 2, 3, 4, Exs. 1-3 (AHM-M00001558, 1607, 1657)).
[3]    Kizirian Decl. ¶ 7, Ex. 6 (AHM-M0001798-99).
[4]    *Id.* (AHM-M0001797-99).
[5]    Kizirian Decl. ¶ 8, Ex. 7 (Deposition of Deep Kalsi ("Kalsi Depo.") at 127:17-21).

based "interactive sales tool" that "assist[s] sales consultants and customers at every stage of the sales process."[6] Concurrent with the launch of the Acura RL with CMBS in October 2006, and continuing throughout the class period until March 2008, Honda made available to dealers on the CIC two videos that explained how CMBS works.[7] Honda recommended that dealers show the first CMBS video to explain the "features and benefit" of CMBS.[8]  The second video, which consumers would view at the dealership *before* finalizing their purchase, explained in detail how CMBS works and disclosed, *inter alia*:

- "...***various alert stages [in the CMBS system] can overlap*** depending on the rate of closure of your vehicle and the vehicle ahead;"
- "...[CMBS] is not a substitute for attentive, defensive driving.  The system does have limitations, and ***will not detect all possible accident causing situations....***"[9]

Because Acura salespersons had access to this information, they too were aware of the allegedly concealed information, and could share it with consumers.

***Acura Style Magazine***: "Acura Style" magazine is a publication that Honda sends to Acura dealers, subscribing Acura owners, and interested consumers twice each year.[10]  Honda published a CMBS-specific article in the Summer 2007 Acura Style magazine in which it disclosed that "CMBS responds with ***any or all three*** increasingly dramatic imperatives" in response to a potential collision.[11] Every Acura dealership in the country received *ten* copies of the Summer 2007 Acura Style magazine in July 2007 for use and display at dealerships.[12]

---

[6]  Kizirian Decl. ¶ 9, Ex. 8 (AHM-M-0001509).
[7]  Kizirian Decl. ¶ 10, Ex. 9 (AHM-P2-00838) & ¶ 28, Ex. 27 (p. 15, Interrog. 22).
[8]  Kizirian Decl. ¶ 9, Ex. 8 (AHM-M-001509).
[9]  Kizirian Decl. ¶ 10, Ex. 9 (AHM-P2-00838).
[10]  Kizirian Decl. ¶ 28, Ex. 27 (p. 5, Interrog. 20).
[11]  Kizirian Decl. ¶ 11, Ex. 10 (MAZ0010).
[12]  Kizirian Decl. ¶ 12, Ex. 11 (AHM-P2-00773-779); ¶ 13, Ex. 12 (Deposition of Jenny (footnote continued)

1    ***Acura RL Media Day***:  On August 17, 2005, Honda invited the media to test

2    drive the 2006 Acura RL during a press event at the Rose Bowl.[13]  In addition to

3    receiving the press release for the 2006 RL, reporters viewed a PowerPoint presentation

4    which explained that CMBS *may* not operate in "inclement weather,"[14] and that

5    included a video clip explaining that CMBS stages can overlap.[15]  Reports also test

6    drove the RL to experience all three stages of the CMBS first-hand.[16]

7    ***OwnerLink***:  "Owner Link" (currently known as "MyAcura.com"), a website

8    that consumers can access through links in Acura.com, was available to *both* vehicle

9    owners and prospective vehicle owners alike throughout the class period.[17]  Consumers

10    who logged on to Owner Link could view, without entering a vehicle identification

11    number, CMBS video clips that disclosed the "overlap" between various stages of the

12    CMBS System.  Consumers also could learn about the system's limitations (including

13    the possibility that CMBS may periodically disengage during inclement weather) in

14    online copies of the owner's manuals for the 2006-2009 model year RL vehicles.[18]

15    ***"Glovebox DVD"***:  Honda provided a DVD in the glovebox of every 2006, 2007,

16    2008 and 2009 RL that discussed the CMBS system's limitations and range of

17    functions, including circumstances when the CMBS may not work, and disclosed that

18    various CMBS alert stages can overlap depending on the accident threat.[19]

19

20

21

───────────────

22    Howell ("Howell Depo.") at 31:20-32:2); Kizirian Decl. ¶ 28, Ex. 27 (p. 5, Interrog. 20).

23    [13]  Kizirian Decl. ¶ 14, Ex. 13 (Deposition of Michael Spencer ("Spencer Depo.") at 28:17-25).

24    [14]  Kizirian Decl. ¶ 15, Ex. 14 (AHM-P2-0276).

25    [15]  Kizirian Decl. ¶ 14, Ex. 13 (Spencer Depo. at 30:7-31:19; 61:24-62:19; 68:12-70:24).
      [16]  Kizirian Decl. ¶ 14, Ex. 13 (Spencer Depo. at 31:6-19).

26    [17]  Kizirian Decl. ¶ 13, Ex. 12 (Howell Depo. at 50:21-51:2; 90:20-91:12); ¶ 28, Ex. 27 (pp. 5-14, Interrog. 20).

27    [18]  Kizirian Decl. ¶ 28, Ex. 27 (pp. 5-10, Interrog. 20).

28    [19]  Kizirian Decl. ¶¶ 16, 17, Exs. 15, 16 (AHM-M0004278, AHM-M0004279).

## ARGUMENT

### I.    STANDARD FOR CLASS CERTIFICATION.

Class actions are an "exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 99 S.Ct. 2545, 442 U.S. 682, 700-01, (1979). The party seeking certification bears the burden of demonstrating that "each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)" have been met.[20] *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Thus, a district court must conduct "a rigorous analysis" to ensure all of the prerequisites of Rule 23 are met. *Id.* at 1186 (citations omitted). Plaintiffs fail to meet these standards in numerous respects.

### II.    INDIVIDUAL FACTUAL ISSUES PRECLUDE CERTIFICATION.

**A.    Plaintiffs' UCL, FAL, and CLRA Claims Present Individualized Issues Not Suitable for Class Treatment.**

Plaintiffs' abbreviated and conclusory analysis does not establish that "common questions predominate" with respect to their UCL, FAL, and CLRA claims.

**1.    *Plaintiffs' CLRA Claims Require Claimant-Specific Inquiries*.**

CLRA claims "sounding in fraud" require proof of "actual reliance." *Buckland v. Threshold Enterprises, Ltd.*, 66 Cal. Rptr. 3d 543, 155 Cal. App. 4th 810 (2007). No doubt aware that "actual reliance" cannot be established through classwide proof, plaintiffs rely entirely on an "inference of reliance" under *Mass. Mutual Life Ins. Co. v. Sup. Ct.*, 119 Cal.Rptr.2d 190, 97 Cal. App. 4th 1282 (2002), that does not apply here.

In *Massachusetts Mutual*, purchasers of defendant's "vanishing premium" insurance policies brought a class action claiming that defendant had failed to disclose that it intended to change the policies so that dividends would be insufficient to cover premiums. *Id.* at 1286. The putative class members in *Massachusetts Mutual*

---

[20] Plaintiffs seek certification primarily under Rule 23(b)(3), and alternatively, under Rule 23(b)(2) or 23(c)(4).

1  purchased defendant's policies after they all heard the same "sales presentation"
2  through defendant's agents. *Id.* While the court held that a presumption of reliance
3  was appropriate under these specific facts (*Id.* at 1294-95), it also noted that an
4  inference of reliance would *not* arise if subsequent discovery revealed that policy
5  holders were provided with "such a variety of information" as to make "a single
6  determination as to materiality" impossible. *Id.* at 1294 n. 5. Thus, far from making
7  the CLRA immune from serious inquiry into whether reliance, causation, and damages
8  can be satisfied on a classwide basis, *Massachusetts Mutual* holds only that this inquiry
9  *can* be satisfied by a presumption *when the record permits*.

10        A "single determination of materiality" is not possible here. Consumers who
11  viewed the CMBS video on the CIC at Acura dealerships, read the Summer 2007 Acura
12  Style Magazine, or reviewed the information on "OwnerLink" or "MyAcura" before
13  purchasing an RL could not have been misled in the manner plaintiffs allege. The
14  critical distinction between *Massachusetts Mutual* and this case is that consumers here
15  were indeed exposed to "a variety of information," which *Massachusetts Mutual*
16  advises precludes a presumption of reliance. Moreover, unlike *Massachusetts Mutual*,
17  where all consumers heard the same sales presentation, there is no evidence that every
18  class member received, much less was misled, by the advertising plaintiffs identify.
19  For example, plaintiffs cannot prove that every class member saw the first version of
20  the CMBS commercial that Mazza stated was critical to his decision to purchase an
21  RL.[21]   Indeed, the first version of the commercial (which stated the RL driver is
22  "warned, and warned again") aired for one week before it was modified with new
23  voice-over stating "the driver is warned so he can react," and re-aired over several
24  months.[22]   Not surprisingly, plaintiff Kalsi did not recall whether he saw the first or

25

26  ───────────────────

27  [21]  Kizirian Decl. ¶ 18, Ex. 17 (Deposition of Michael Mazza ("Mazza Depo.") at 83:4-6).
     [22]  Kizirian Decl. ¶¶ 19, 20, Exs. 18, 19 (AHM-M0002247); Kizirian Decl. ¶ 21, Ex. 20
28  (Deposition of Susie Rossick ("Rossick Depo.") at 169:13-18; 171:20-172:3).

1  second version of the RL commercial, or both.[23]  Undoubtedly, there are consumers

2  who saw neither commercial.  Similarly, there can be no classwide proof that every

3  consumer read the press releases on Honda's *media* website, but remained ignorant of

4  Honda's disclosures concerning the allegedly concealed facts.

5       *Caro v. Proctor & Gamble*, 18 Cal. App. 4th 644 (1993) is instructive.  *Caro*

6  affirmed denial of certification of a CLRA claim asserting that consumers overpaid for

7  orange juice due to deceptive labeling that misrepresented the orange juice was "fresh"

8  and contained "no additives."  *Id.* at 668.  The *Caro* court concluded that whether any

9  particular misrepresentation was "material" – *i.e.*, whether the consumer was deceived

10  by it and relied upon it – turned upon consumers' "personal assumptions about the

11  nature of the products they wanted to buy and upon reading various portions of the

12  [orange juice carton] labels."  *Id.* at 668-69.  This was especially true where the

13  manufacturer also disclosed on the carton that the orange juice was "from concentrate."

14  *Id.* at 665, 668.  Thus, "whether any asserted misrepresentation induced the purchase of

15  [] orange juice would vary from consumer to consumer" and the issue of liability was

16  not susceptible to classwide proof.  *Id.* at 668.

17       The same reasons compel denying plaintiffs' Motion.  There can be no classwide

18  proof that all consumers who purchased an Acura RL with the CMBS system uniformly

19  were ignorant of Honda's disclosures.  Nor can there be classwide proof that *every*

20  consumer interpreted Honda's advertising to mean that the CMBS always would

21  proceed through three warning stages.[24]  Finally, even *if* a presumption of reliance

22  applied, it would not eliminate Honda's right to present individual evidence negating

23  such the presumption as to each purported class member.  *See In re St. Jude Medical*,

24  522 F.3d 836, 840 (8th Cir. 2008) (relaxed reliance standards do not " eliminate the

25  

26  [23] Kizirian Decl. ¶ 8, Ex. 7 (Kalsi Depo. at 110:6-9.)

27  [24] *See, e.g., Caro*, 18 Cal. App. 4th at 668 (although the named plaintiff "personally was misled into believing the juice contained 'no additives,'" individualized proof was needed to

28  determine whether others who read the label came to the same conclusion as plaintiff.)

1  right of a defendant to present evidence negating a plaintiff's direct or circumstantial

2  showing of causation and reliance" and that the "need for such plaintiff-by-plaintiff

3  determinations means that common issues will not predominate ….").

4          2.    ***Materiality Cannot Be Shown By Classwide Proof Under the UCL.***

5         Although the issue whether "reliance" is an element under the UCL is currently

6  before the California Supreme Court in *In Re Tobacco II Cases* (Case No. S147345),

7  California law requires that the omission or misrepresentation be "material." Plaintiffs

8  gloss over the materiality requirement for UCL and FAL claims with a passing

9  reference to *Massachusetts Mutual* and a disingenuous claim that "[w]here omission of

10  material information is alleged, individual inquiry into reliance is simply superfluous

11  under California law." (Motion at 18:11-12.)[25] Indeed, plaintiffs are stunningly silent

12  on how materiality can be shown through classwide proof – because it cannot.

13         Plaintiffs Mazza and Kalsi raise an idiosyncratic concern:  they claim to have

14  interpreted Honda's advertising to mean that in response to *every* potential collision,

15  CMBS *always* would proceed through a sequential, three-stage warning system,

16  *regardless* of the imminence of the potential collision.  Apparently for the named

17  plaintiffs, the CMBS *process*, rather than the actual *result* – alerting drivers to the risk

18  of collision, or reducing impact if a collision is unavoidable – was material to their

19  purchasing decision.  But there is no basis to assume that over 2,000 purported class

20  members interpreted Honda's advertising the same way as plaintiffs, [26] or that they

21  even cared how CMBS works so long as it achieved its advertised purpose, as

22  demonstrated by the lack of consumer complaints about Honda's alleged

23

24

---

25  [25] Plaintiffs' argument also rests on the discredited claim that Honda made "uniform omission[s]" concerning material facts, which as demonstrated above, simply cannot stand.

26  [26] Indeed, Mazza admitted at deposition that when he posted his concerns on the internet, a number of consumers *disagreed* with his conclusion that Honda misrepresented the CMBS,

27  and attributed Mazza's complaints to his misunderstanding of how CMBS works. Kizirian

28  Decl. ¶ 18, Ex. 17 (Mazza Depo. at 175:19-25; 179:18-22).

1  misrepresentations.[27] Thus, to establish that the alleged omissions were material, each

2  class member must testify concerning his or her interpretation of Honda's advertising,

3  and whether in purchasing an RL with CMBS, they were concerned about *how* CMBS

4  works instead of the system's advertised objective of alerting drivers to the risk of

5  collision, or reducing impact if a collision is unavoidable. *See, e.g., Thorogood v Sears,*

6  *Roebuck and Co.,* ___ F.___, 2008 WL 4709500 (7th Cir., October 28, 2008) (Circuit

7  Judge Posner) (in reversing class certification, court found it is "implausible" that all

8  class members interpreted label on dryer the same way as the named plaintiff and

9  concluded "[e]ach class member ...will have to testify to what he understands to be the

10  meaning of a label … that identifies a clothes dryer as containing a stainless steel

11  drum").

12  **B.    Unjust Enrichment Claims Require Claimant-Specific Proof.**

13  Unjust enrichment claims are by their nature extraordinarily difficult to

14  adjudicate on a classwide basis.[28] "Under a typical, but certainly not uniform,

15  definition of unjust enrichment, a party may recover if he or she proves 'an unjust

16  retention of a benefit, including money, by one party to the detriment of another party,

17  against the fundamental principles of justice, equity, and good conscience.'" *Clay v.*

18  *American Tobacco Co.,* 188 F.R.D. 483, 501 (S.D. Ill. 1999) (citations omitted).

19  Because "'[u]njust enrichment is an equitable doctrine[,]" liability for unjust

20  enrichment turn on "the analysis of each individual situation." *Id.*

21  Given the inherently context-specific nature of unjust enrichment claims, it is

22  highly unlikely that a single plaintiff's unjust enrichment claim can serve as a proxy for

23  the claims of an entire class.[29] For example, it would not be "unjust" for Honda to

_____

25  [27] *See infra* note 99.

26  [28] California courts are split on whether California even recognizes a cause of action for "unjust enrichment." *See infra* note 59.

27  [29] *See, e.g., In re Rezulin Prods. Liab. Litig.,* 210 F.R.D. 61, 69 (S.D.N.Y. 2002) ("[T]he

28  question whether an individual class member got his or her money's worth *[i.e.,* whether they (footnote continued)

1  retain a "benefit" from consumers who were fully aware of the system's limitations and

2  range of functions at the time of purchase, or did not care how CMBS works so long as

3  it achieves its advertised purpose of alerting drivers to the risk of collision, or reducing

4  impact if a collision is unavoidable.  The same holds true for consumers who purchased

5  an RL because they were interested in some other feature such as the "Adaptive Cruise

6  Control" feature in the "CMBS/ACC Package" and got exactly what they wanted.

7  **III.    STATE LAW VARIATIONS PRECLUDE CLASS CERTIFICATION.**

8      **A.    Irreconcilable State Law Conflicts Present A Second Obstacle to**

9          **Certification.**

10        Variations in state law provide a second and independent basis for denying class

11  certification.  It is well-established that the need to apply numerous states' laws defeats

12  certification because "variations in state law may swamp any common issues and defeat

13  predominance." *Castano v. Am. Tobacco, Inc.*, 84 F.3d 734, 741 (5th Cir. 1996).[30]

14  Well-aware of the fate that has befallen similar class actions requiring application of

15  laws from multiple jurisdictions, plaintiffs (who live in Florida and Maryland) seek the

16  wholesale application of California law based on their unsupported claim that other

17  state's laws are "virtually indistinguishable" from California law.  (Motion at 21:15).

18  But a district court cannot certify a nationwide class without considering "how

19  variations in state law affect predominance and superiority [under Rule 23]." *Castano*,

20  84 F.3d at 741.[31]  "A federal court sitting in diversity must look to the forum state's

21  choice of law rules to determine the controlling substantive law." *Zinser*, 253 F.3d at

22  1187 (citations omitted).  California applies "a three-step 'governmental interest

23  analysis' to address conflict of laws claims and ascertain the most appropriate law

24  ────────────────

25  paid too much for Rezulin] is inherently individual"); *Clay*, 188 F.R.D. at 501; *In re*

   *Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 214 F.R.D. 614, 620 n.8 (W.D. Wash. 2003);

26  *Lilly v. Ford Motor Co.*, 2002 WL 507126, *2 (N.D. Ill. 2002).

[30]  *See also Zinser*, 253 F.3d at 1189; *Georgine v. Amchem Prod., Inc.*, 83 F.3d 610, 618 (3d

27  Cir. 1996).

[31]  *See also In re St. Jude Med., Inc.*, 425 F.3d 1116, 1120 (8th Cir. 2005).

28

1   applicable to the issues . . . ." *Wash. Mut. Bank FA v. Sup. Ct.*, 15 P.3d 1071, 24 Cal.

2   4th 906, 919 (2001) (emphasis added).   This analysis reveals that plaintiffs' claims

3   must be decided under the varying legal standards of various states.

4       **B.**    **California Law Conflicts With The Laws of Other Jurisdictions.**

5       Virtually every court that has analyzed CPS and unjust enrichment laws of the

6   fifty states has concluded that state CPS and unjust enrichment laws vary

7   considerably.[32]  Plaintiffs ask this Court to spurn the wisdom of numerous courts that

8   have refused to apply a single state's law to a nationwide class, and follow the 16 year

9   old memorandum decision in *Church v. Consolidated Freightways, Inc.*, 1992 U.S.

10  Dist. LEXIS 18234 (N.D. Cal. 1992), a case that easily is distinguished on its facts.

11      Although styled as a "nationwide" class action, just 44 of the 51 jurisdictions

12  (including the District of Columbia) are implicated by plaintiffs' claims, and over

13  seventy-five percent (75.9%) of purported class members live in twelve states.[33]

14  Because Honda is limited to 30-pages for this opposition brief, it focuses its analysis on

15  the "primary jurisdictions" where over 75% of the purported class members reside,[34]

16  _____

17  [32]  Consumer protection laws vary from state-to-state. *See, e.g., In re Bridgestone/Firestone,*

18  *Inc.*, 288 F.3d 1012, 1018 (7th cir. 2002); *In re St. Jude Med., Inc.*, 425 F.3d at 1120 (relying
    on analysis in *In re Bridgestone*); *In re Prempro*, 230 F.R.D. 555, 564 (E.D. Ark.2005); *Lyon*

19  *v. Caterpillar, Inc.*, 194. F.R.D. 206, 219 (E.D. Pa. 2000); *In re Ford Motor Co. Ignition*
    *Switch Prods. Liab. Litig.*, 194 F.R.D. 484, 489 (D.N.J. 2000); *Tracker Marine, L.P. v. Ogle*,

20  108 S.W.3d 349, 352-55 (Tex. App. 2003).  State unjust enrichment laws display similar

21  variation. *See, e.g., In re Prempro*, 230 F.R.D. 555, 563, 565 (E.D. Ark. 2005); *In re Baycol*
    *Prods. Litig.*, 218 F.R.D. 197, 215 (D. Minn. 2003); *Lilly v. Ford Motor Co.*, 2002 WL

22  507126, at \*2 (N.D. Ill. Apr. 2, 2002).

23  [33]  Honda did not sell *any* Acura RL vehicles equipped with the CMBS System in Wyoming,
    Montana, North Dakota, South Dakota, Washington D.C., Maine, or Alaska. 1,529 out of the

24  2,012 purported class members reside in California (398), Washington (86), Texas (103),
    Illinois (85), Ohio (62), Virginia (107), Florida (203), Maryland (83), Pennsylvania (99), New

25  York (128), New Jersey (106), Massachusetts (69). Sixteen of the remaining states have less
    than ten potential class members, ten states have between 10-25 potential class members, and

26  five states have between 25-60 purported class members. Kizirian Decl. ¶ 22, Ex. 21 (AHM-

27  P2-00779 – AHM-P2-00780).

    [34]  Honda has provided an appendix of state law variations that highlights the how state

28  (footnote continued)

and submits a detailed state law variations appendix ("Appendix") highlighting conflicts in CPS and unjust enrichment laws for all states where class members reside.

1. ***California's UCL Conflicts With CPS of Other Jurisdictions.***

- ***Reliance***:    The California Supreme Court in *In re Tobacco II Cases* (S147345) soon will decide whether reliance is required for UCL claims.  Regardless of the outcome in *In re Tobacco II*, California law will conflict with the CPS of the primary jurisdictions (and the CPS of other states included in the Appendix) on the critical issue of reliance because while reliance is required for a CPS claim in Washington, Texas, Illinois, Virginia, and Pennsylvania,[35] it is not required under the CPS in Ohio, Florida, New Jersey, and Massachusetts, New York.[36]

- ***Available Remedies***:  Plaintiffs suing under the UCL are limited to restitution and injunctive relief.  Cal. Bus. & Prof. Code § 17203; *Korea Supply v. Lockheed Martin Corp.*, 63 P.3d 937, 29 Cal. 4th 1134, 1144 (2003).  In contrast, the CPS in virtually all of the primary jurisdictions (and elsewhere) permit greater forms of relief including actual damages,[37] treble damages,[38] punitive damages,[39] and attorney's fees.[40]

---

consumer protection statutes and unjust enrichment laws vary for all states.  If, however, the Court is interested in additional analysis on the choice of law issue, Honda respectfully requests that it be permitted to submit supplemental briefing on the choice-of-law issue alone with significantly greater page limits.

[35]    *Robinson v. Avis Rent-A-Car Sys., Inc.*, 106 Wash. App. 104, 22 P.3d 818, 823 (Wash. Ct. App. 2001) (Washington law); Tex. Bus. & Com. Code § 17.50(a) (Texas law); *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 879 N.E. 2d 910, 919 (Ill. 2007) (Illinois law); *Cooper v. GGGR Invest., LLC*, 334 B.R. 179, 188 (E.D. Va. 2005) (Virginia law); *Toy v Metro Life Ins. Co.*, 2004 PA Super 404, 863 A.2d 1, 11 (Pa. Super. 2004) (Pennsylvania law).

[36]    *Guth v. Allied Home Mtg. Capital Corp.*, 2008 WL 2635521, *6-*7 (Ohio. App. 2008) (Ohio law); *Egwuatu v. South Lubes, Inc.*, 33 Fla. L. Weekly D415, 976 So.2d 50, 53 (Fla. App. 2008) (Florida law); *DaBosh v. Mercedes Benz USA, Inc.*, 378 N.J. Super. 105, 874 A.2d 1110, 1121 (N.J. Super. Ct. App. 2005) (New Jersey law); *Sebago, Inc. v. Beazer East, Inc.*, 18 F. Supp. 2d 70, 103 (D. Mass. 1998) (Massachusetts law); *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 731 N.E.2d 608, 611-12 (N.Y. 2000) (New York law).

[37]    Wash. Rev. Code Ann. § 19.86.090 (Washington); Tex. Bus. & Com. Code § 17.50(b), (d) (Texas); 73 Pa. Cons. Stat. § 201-9.2(a) (Pennsylvania); Ohio Rev. Code Ann. § 1345.09(A) (footnote continued)

- ***Scope of Actionable Conduct***: The definition of "unfair" under the UCL is an open question.[41]  Although the issue is more settled under the CPS in the primary jurisdictions, divergent standards apply.   While some of the primary jurisdictions follow the FTC standard set out in *FTC v. Sperry & Hutchinson Co.*, 92 S. Ct. 898, 405 U.S. 233, 244-45, (1972) (Florida and Massachusetts), others follow the FTC's more recent three-part test found at 15 U.S.C. § 45(n) (Washington).[42]

- ***Scienter***: Although scienter is not a required element for a UCL claim, some form of scienter is required under the CPS of many states,[43] including New Jersey, Illinois, Pennsylvania, and Virginia among the primary jurisdictions.[44]

---

& (B) (Ohio); *Super Glue Corp. v. Avis Rent A Car Sys., Inc.*, 517 N.Y.S.2d 764, 132 A.D.2d 604, 606 (N.Y. App. Div. 1987) (New York); N.J. Stat. Ann. § 56:8-19 (New Jersey); Mass. Gen. Laws ch. 93A § 9(3) (Massachusetts); Md. Code Ann., Com. Law § 13-408(a) (Maryland); 815 Ill. Comp. Stat. 505/2S & 10n (Illinois); Fla. Stat. Ann. § 501.211 (Florida).
[38]   Wash. Rev. Code Ann. § 19.86.090 (Washington); 73 Pa. Cons. Stat. § 201-9.2(a) (Pennsylvania); Ohio Rev. Code Ann. § 1345.09(B) (Ohio); N.J. Stat. Ann. § 56:8-19 (New Jersey).
[39]   Tex. Bus. & Com. Code § 17.50 (Texas); 815 Ill. Comp. Stat. 505/2AA (Illinois).
[40]   Wash. Rev. Code Ann. § 19.86.090 (Washington); Tex. Bus. & Com. Code § 17.50 (Texas); 73 Pa. Cons. Stat. § 201-9.2(a) (Pennsylvania); Ohio Rev. Code Ann. § 1345.09(F) (Ohio); N.J. Stat. Ann. § 56:8-19 (New Jersey); Mass. Gen. Laws ch. 93A § 9(4) (Massachusetts); Md. Code Ann., Com. Law § 13-408(b) (Maryland); 815 Ill. Comp. Stat. 505/2S, 2w, 2AA, & 10n (Illinois); Fla. Stat. Ann. § 501.211 (Florida).
[41]   *Puentes v. Wells Fargo Home Mortg., Inc.*, 72 Cal. Rptr. 3d 903, 160 Cal. App. 4th 638, 646 (2008) (definition of unfair under the UCL "in a consumer action is uncertain.")
[42]   *Compare Dep't of Legal Affairs v. Father & Son Moving & Storage, Inc.*, 19 Fla. L. Weekly D 1879, 643 So.2d 22, 26, (Fla. Ct. App. 1994) (Florida law) & *Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc.*, 754 F.2d 10, 17 (1st Cir. 1985) (Mass. Law) (applying *Sperry & Hutchinson* standard) and *Blake v. Federal Way Cycle Ctr.*, 40 Wn. App. 302, 698 P.2d 578, 583 (Wash. Ct. App. 1985) (adopting new FTC unfairness standard).
[43]   Scienter is required in Nevada (Nev. Rev. Stat. Ann. 598.0915), Oregon (Or. Rev. Stat. 646.638(1)), Utah (Utah Code §§ 13-11-4(2), 13-11-5(3)), West Virginia (W. Va. Code § 46A-6-103), Colorado (Colo. Rev. Stat. 6-1-105(1)(e), (g), (u)), Minnesota (*Thompson v. Am. Tobacco Co.*, 189 F.R.D. 544, 553 (D. Minn. 1999)), Idaho (Idaho Code § 48-603), Kansas (Kan. Stat. Ann. §§ 50-634(b), 50-636(a), and Michigan (Mich. Comp. Laws Ann. § 445.911(6)).
[44]   *See* 815 Ill. Comp. Stat. 505/2; *Siegel v. Levy Org. Dev. Co.*, 153 Ill.2d 534, 607 N.E.2d (footnote continued)

- ***Pre-Filing Notice***:  While the UCL has no pre-filing notice requirements, the CPS in Massachusetts, Texas and elsewhere require written pre-filing notice.[45]

- ***Statute of Limitations***:  The limitations period for the UCL is four years (Cal. Bus. & Prof. Code §17208) compared to 1 to 6 years in the primary jurisdictions.[46]

- ***Class Actions***:  Although UCL claims may be prosecuted on a class basis, several states do not permit class actions under their CPS,[47] including Virginia.[48]

   2.  ***California's CLRA Conflicts With CPS of Other Jurisdictions***.

- ***Persons Protected Under CPS***:  There is "little uniformity from state to state" on how "personal, household, or family use" is defined.[49]  The CLRA defines a "consumer" as persons buying goods or services for personal, family, or household use,[50] whereas several primary jurisdictions (Maryland, Texas, and New Jersey) provide a more expansive definition to include purchases made for agricultural, partnership, corporate and other uses.[51]

---

194, 198 (Ill. 1992); N.J. Stat. Ann. § 56:8-2; *Debbs v. Chrysler Corp.*, 2002 Pa. Super. 325, 810 A.2d 137, 155 (Pa. Sup. Ct. 2002) (Pennsylvania); *Cooper*, 334 B.R. at 188.

[45]  Mass. Gen. Laws ch. 93A, § 9(3) (30 days); Tex. Bus. & Com. Code § 17.505 (60 days). Among the non-primary jurisdictions, Alabama and Georgia also impose pre-lawsuit notice requirements. Ala. Code § 8-19-10(3)(e); Ga. Code Ann. § 10-1-399(b).

[46]  Fla. Stat Ann. § 95.11(3)(f) (4 years); 815 Ill. Comp. Stat. 505/10a(e) (3 years); Md. Code Ann. Cts. & Jud. Proc. § 5-101 (3 years); Mass. Gen. Law ch. 260, § 5(A) (4 years); N.J. Stat. Ann. § 2A:14-1 (6 years); *Galden v. Guardian Life Ins. Co. of Am.*, 750 N.E.2d 1078, 1082 (N.Y. 2001) (3 years); Ohio Rev. Code § 1345.10(c) (2 years); Or. Rev. Stat. § 646.638(6) (1 year from deceptive practice); 42 Pa. Cons. Stat. § 5525(8) (6 years); Tex. Bus. & Com. Code § 17.565 (2 years); Va. Code Ann. § 59.1-204.1(A) (2 years); Wash. Rev. Code § 19.86.120 (4 years).

[47]  Alabama, Georgia, Iowa, Kentucky, Louisiana, and Mississippi (among states where class members reside) also do not permit class action under their CPS. *See In re Pharmaceutical Indus. Avg. Wholesale Price Litig.*, 233 F.R.D. 229, 230 (D. Mass 2006).

[48]  Va. Code Ann. § 59.1-196.

[49]  Jonathan Sheldon & Carolyn Carter, *Unfair and Deceptive Acts and Practices* § 2.8.1.1, p.16 (National Consumer Law Center 6th Ed. 2004)

[50]  Cal. Civ. Code § 1761(d).

[51]  *See* Md. Com. Law Code Ann. § 13-101(2)(d); Tex. Bus. & Com. Code Ann. § 17.45(4); *See* N.J. Rev. Stat. Ann. § 56:8-1.

1    • ***Reliance***:  While reliance is a required element for any CLRA "sounding in

2    fraud,"[52] the CPS in Ohio, Florida, New Jersey, and Massachusetts among the primary

3    jurisdictions do not require reliance.[53]

4    • ***Scope of Actionable Conduct:***  Whereas the CLRA provides a narrowly

5    defined list of 23 prohibited acts or practices, the CPS in the primary jurisdictions cover

6    significantly broader forms of conduct,[54] including "unconscionable" conduct that the

7    California legislature specifically *excluded* from the CLRA.[55]

8    • ***Scienter***:  Although scienter is not a required element for a CLRA claim, the

9    CPS in several states require scienter under their CPS.[56]

10    • ***Statute of Limitations***:  The limitations period for the CLRA is three years

11    (Cal. Civ. Code § 1782) compared to the 1 to 6 year under other CPS.[57]

12    • ***Pre-Filing Notice***:  Section 1782(a) of the CLRA requires a pre-filing notice

13    and an opportunity to cure the allegedly deceptive practice before any action for

14    damages may be maintained.  Although two of the primary jurisdiction states require

15    similar pre-lawsuit notices,[58] the remaining nine primary jurisdictions do not.

16          3.    ***State Unjust Enrichment Laws Conflict.***

17    California courts are split on whether California recognizes a cause of action for

18    "unjust enrichment."[59]  Thus, even at a threshold level, California law conflicts with

19    _____

20    [52] *Buckland*, 155 Cal. App. 4th at 811.

21    [53] *See supra* note 36.

22    [54] *See, e.g.*, Fla. Stat. Ann. § 501.201; N.J. Rev. Stat. § 56:8-2; Ohio Rev. Code Ann. § 1345.03; Tex. Bus. & Com. Code Ann. § 17.50.

23    [55] The first draft of the CLRA (Assembly Bill ("AB") 292) declared unlawful any act or practice that was either *"[o]ppressive or otherwise unconscionable in any respect . . . ."*

24    Kizirian Decl. ¶¶ 23, 24, Exs. 22, 23 (emphasis added).  But the legislature *deleted* this proposed language from AB 292 because it wanted to *"define [unlawful] practices in a fair*

25    *and specific manner." Id.* at ¶ 25, Ex. 24 (emphasis added).

26    [56] *See supra* note 44.

27    [57] *See supra* note 46.
      [58] *See supra* note 45.

28    [59] *See* Appendix at p 81.

1  the laws of each primary jurisdiction, which permit stand-alone unjust enrichment

2  claims.[60]  Beyond this initial hurdle, some states permit unjust enrichment claims at

3  law, while others only permit unjust enrichment claims in equity.[61]  Moreover, the

4  primary jurisdictions impose varying statute of limitations and measure unjust

5  enrichment recovery under widely varying standards.[62]  Even "[t]he actual definition of

6  'unjust enrichment' varies from state to state." *Clay*, 188 F.R.D. at 501.  "Some states

7  do not specify the misconduct necessary to proceed, while others require that the

8  misconduct include dishonesty or fraud.   Other states allow a claim of unjust

9  enrichment when no adequate legal remedy exists." *Id.*  Thus, *if* California permitted

10  unjust enrichment claims, the disparities in state law present irreconcilable conflicts.

11  **C.    Other Jurisdictions Have Significant Interests In Applying Their**

12  **Laws To The Claims Of Consumers In Their State.**

13  Because California's UCL/FAL, CLRA, and unjust enrichment laws conflict

14  with the laws of other jurisdictions, the Court must consider "what interest, if any, each

15  state has in having its own law applied to the case . . . ." *Washington Mutual*, 24 Cal.

16  4th at 919.   Although California has an interest in regulating the conduct of

17  corporations headquartered within its borders, several courts – including the Ninth

18  Circuit – recognize that the home states of the non-resident plaintiffs also have a

19  profound interest in protecting their citizens from allegedly fraudulent conduct within

20  their state, and in delineating the scope of recovery for their citizens.[63]  Indeed, the

21  primary purpose of state consumer protection laws is to compensate consumers – not to

22

23

---

24  [60]  *See* Appendix at pp. 86, 91, 98, 100, 109, 112, 114, 119, 124, 128, 129.

25  [61]  *Compare, e.g.*, Appendix at pp. 86 (Florida) and 98 (Maryland) *with* p. 91 (Illinois).

[62]  *See* Appendix at pp. 86, 91, 98, 100, 109, 112, 114, 119, 124, 128, 129.

26  [63]  *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001) (noting that

27  every state has an interest in having its own laws applied to its residents), *as amended by* 273
F.3d 1266 (9th Cir. 2001); *Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 314 (5th Cir. 2000)

28  (same); *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 457 (D.N.J. 1998) (same).

1   police corporate conduct.[64] Not surprisingly, courts refuse to apply a single state's law

2   based solely on the assertion (identical to the one plaintiffs make here) that the

3   allegedly wrongful conduct "emanated" from the state where the defendant is

4   headquartered.[65]   To hold otherwise would strip all other states of their ability to

5   regulate the sale and marketing of products to their resident consumers any time a

6   California company sold or marketed the product in question.   It also would impede

7   each jurisdiction's "interest in protecting its consumers from in-state injuries caused by

8   foreign corporations and in delineating the scope of recovery of its citizens under its

9   own laws." *Ignition Switch I*, 174 F.R.D. at 348; *Chin v. Chrysler Corp.*, 182 F.R.D.

10  448, 457 (D.N.J. 1998) (same).

11          **D.    Other Jurisdictions' Interests Will Be More Impaired If California**

12                  **Law Applies.**

13          Because both California and the non-resident plaintiffs' home jurisdictions have

14  an interest in having their laws apply, the Court next must decide "which state's interest

15  would be more impaired if its policy were subordinated to the policy of the other state."

16  *Offshore Rental Co. v. Continental Oil, Co.*, 22 Cal. 3d 157, 164-65 (1978);

17  *Washington Mutual*, 24 Cal. 4th at 920. This "does not involve the court in 'weighing'

18  the conflicting governmental interests 'in the sense of determining which conflicting

19  law manifest[s] the 'better' or the 'worthier' social policy on the specific issue" because

20  "'[a]n attempted balancing of conflicting state policies in that sense ... [would be]

21  difficult to justify in the context of a federal system in which, within constitutional

22  limits, states are empowered to mold their policies as they wish.'" *Offshore Rental*, 22

23  Cal. 3d at 165 (citations omitted).   Instead, the comparative impairment inquiry

---

[64]  *See, e.g.*, *In re Relafen Antitrust Litigation*, 221 F.R.D. 260, 278 (D. Mass. 2004).
[65]  *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 348 (D.N.J. 1997) ("*Ignition Switch I*") (rejecting claim that "Michigan has the greater interest in having its law applied because Ford's headquarters are located in Michigan" and "any misrepresentations, statements or advertisements regarding the Ford vehicles originated in Michigan"); *see also Spence*, 227 F.3d at 312-13; *Lyon*, 194 F.R.D. at 217.

allocates respective spheres of lawmaking influence "to achieve the maximum attainment of underlying purpose by *all* governmental entities." *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 124 (2006) (internal quotations omitted; emphasis added). This is best achieved by applying the law of each consumer's home jurisdiction because:

- Each state's choice about the standards that apply to the sale and marketing of products to its residents represents a policy decision about the costs and benefits of particular regulatory schemes – interests that will be compromised if California law is applied to all plaintiffs' claims;[66]

- "Each plaintiff's home jurisdiction has a stronger interest in deterring foreign corporations from … injuring its citizens and ensuring … its citizens are compensated than [defendant's home state] does in deterring its corporate citizens' wrongdoing[;]"[67]

- Even *assuming* all class members relied upon Honda's alleged representations, plaintiffs' alleged reliance or receipt of such representations occurred in their home state, which under the Restatement (Second) of Conflicts § 148 alone justifies application of the laws of each plaintiff's home jurisdiction;[68]

---

[66]   *See State Farm Mut. Auto Ins. Co. v. Campbell*, 123 S.Ct. 1513, 155 L.Ed.2d 585, 538 U.S. 408, 422 (2003) (it is "[a] basic principle of federalism … that each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders").

[67]   *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 456 (E.D. La. 2006) (citations omitted); *Heindel v. Pfizer, Inc.*, 381 F. Supp.2d 364, 378 (D.N.J. 2004) ("the deterrence of interest of New Jersey as the domicile and locus of the defendant manufacturer must yield in this case to the compensation interest of Pennsylvania").

[68]   California courts rely the Restatement (Second) Conflict of Laws for guidance on choice of law issues. *See, e.g., Brack v. Omni Loan Co., Ltd.*, 80 Cal. Rptr. 3d 275, 164 Cal. App. 4th 1312 (2008); *Expansion Pointe Properties Ltd. Partnership v. Procopio, Cory, Hargreaves & Savitch, LLP*, 61 Cal. Rptr. 3d 166, 152 Cal. App. 4th 42, 59 (2007). Under Section 148 of the Restatement, courts consider "(a) the place … where the plaintiff acted in reliance upon the defendant's representations, (b) the place where the plaintiff received the representations, (c) the place where the defendant made the representations, (d) the … place of incorporation and place of business of the parties." *Ibid.* Where "any two of the above-mentioned contacts, *apart from the defendant's domicil, state of incorporation or place of business*, are located (footnote continued)

- Applying the laws of each non-resident plaintiff's home state (including applying California law to claims by California residents) both will advance California's interests in deterring allegedly wrongful conduct by corporations headquartered in California, while allowing "maximum attainment of underlying purpose" of CPS in states where the non-resident plaintiffs reside;

- Even *assuming* California law could apply to the nationwide class under established choice-of-law principles, non-resident plaintiffs will have no claim under the CLRA because the statute's legislative history shows the CLRA only protects "consumers *in this state* [of California];"[69]

- Because the primary jurisdictions each recognize claims for unjust enrichment, applying California law where no such cause of action may exist clearly would impair the interests of the jurisdictions that have elected to permit such claims.

In addition to these general impairment concerns applicable to all jurisdictions, each primary jurisdiction has state-specific interests that will be "more impaired":

(1) **New Jersey:** "The available legislative history [of the New Jersey Consumer Fraud Act ("NJCFA")] demonstrates that the act was intended to be 'one of the strongest consumer protection laws in the nation.'" *New Mea Constr. Corp. v. Harper*, 203 N.J.Super. 486, 497 A.2d 534, 543 (N.J. Super. 1985) (citations omitted). This intent is reflected not only in the extended remedies available to consumers for NJCFA violations,[70] but also by the statute's broad definition of "consumers," which includes

---

wholly in a single state, *this will usually be the state of the applicable law with respect to most issues*." Restatement (Second) Conflict of Laws § 148, Comment j.

[69] James A. Reed, *Legislating for the Consumer: An Insider's Analysis of the Consumers Legal Remedies Act*, 2 Pac. L.J. 1, 7 fn. 21 (1971) (quoting testimony of Assemblyman James A. Hayes, author of the CLRA, stating the CLRA "represents an extended and thorough effort to arrive at legislation which will give <u>consumers in this state</u> much needed remedies against deceptive practices in the market-place …") (emphasis added).

[70] *See supra* notes 37, 38, 40.

commercial entities (i.e. corporations and companies) as well as natural persons.[71] New Jersey's interest in protecting a broader class of "consumers" clearly would be more impaired if a more limited class of "consumers," as defined by California's CPS, only could seek relief. Further, because the NJCFA does not require proof of reliance,[72] New Jersey's interest in remedying deceptive business practices in cases where common law fraud may not be present also would be "more impaired" if the CLRA, (which requires reliance), and the UCL (reliance issue currently undecided) applied.

(2) **Florida:**  The Florida legislature enacted the Florida Deceptive and Unfair Trade Practice Act ("FDUTPA") in 1973 to, *inter alia*, "protect consumers from suppliers who commit deceptive and unfair trade practices." *Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*, 22 Fla. L. Weekly D744, 693 So.2d 602, 605 (Fla. App. 1997).  In 1993, the Florida legislature amended the FDUTPA "to strengthen . . . the original goal of the FDUTPA . . . . by adding language [intended to protect] the 'consuming public' from those who engage in *'unconscionable' acts or practices*[,]"[73] the *same* conduct the California legislature in 1970 elected to *exclude* from CLRA.[74] California's interests in the application of its law are not so compelling as to prevent an accommodation of the stronger, more current interest of Florida in providing relief for broader forms of alleged misconduct under the FDUTPA.[75]

(3) **Pennsylvania:**  The Pennsylvania legislature enacted "the Consumer Protection Law [("UTPCPL")] to benefit the public at large by eradicating, among other things, 'unfair or deceptive' business practices." *Commonwealth v. Monumental*

---

[71] *See* N.J. Stat. Ann. § 56:8-1(d); *Hundred East Credit Corp. v. Schuster*, 212 N.J.Super. 350, 515 A.2d 246, 248 (1986); *Dreier Co. v. Unitronix Corp.*, 218 N.J.Super. 260, 527 A.2d 875, 882 (1986).

[72] *See supra* note 36.

[73] *Delgado*, 693 So.2d at 606-07.

[74] *See supra* note 55.

[75] *See Washington Mutual*, 24 Cal. 4th at 920 (courts must consider "the relative commitment of the respective states to the laws involved" and "the history and current status of the states' laws" and "the function and purpose of those laws.")

*Properties, Inc.,* 459 Pa. 450, 460, 329 A.2d 812, 816 (Pa. 1974).   But in December 1996, Pennsylvania enhanced the UTPCPL's protections by expanding the statute's "catch all" provision to include "any other fraudulent *or deceptive* conduct which creates a likelihood of confusion or misunderstanding." *Commonwealth v. Percudani,* 825 A.2d 743, 746 (Pa. Commw. 2003).   This amendment removed earlier requirements that UTPCPL claimants satisfy the elements of common law fraud to obtain relief under the UTPCPL (*Id.* at 747), thereby offering increased protection to Pennsylvania consumers.  Pennsylvania's decision to expand the reach of the UTPCPL while lowering the standard of proof for UTPCPL claims demonstrates a renewed commitment in providing maximum relief to consumers.[76]  There is no question that Pennsylvania's interests will be "more impaired" if California's CPS such as the CLRA (which requires reliance) and UCL (reliance issue currently undecided) are applied.

(4) **Ohio**:  The Ohio legislature enacted the Ohio Consumer Sales Practices Act ("CSPA") in 1972 to "protect consumers from suppliers who commit deceptive or unconscionable sales practices"[77] and "to punish violators and to deter future violations by allowing recovery of treble damages."[78]   To implement this policy, the Ohio legislature amended the CSPA in 1978 "to provide strong and effective remedies, both public and private, to assure that consumers will recover *any* damages caused by such acts and practices, and to eliminate *any* monetary incentives for suppliers to engage in such acts and practices." *Einhorn v. Ford Motor Co,* 48 Ohio St.3d 27, 548 N.E.2d 933, 936 (Ohio 1990) (emphasis added).  Ohio, therefore, permits recovery for actual damages, treble damages, and attorney's fees under the CSPA.[79]  Ohio's interest in delineating a broad set of remedies for "any damage" sustained by Ohio consumers will

---

[76]  *See id.*
[77]  *Thomas v. Sun Furniture & Appliance Co.* (1978), 61 Ohio App.2d 78, 399 N.E.2d 567, 569 (Ohio Ct. App. 1977).
[78]  *Arbino v. Johnson & Johnson,* 116 Ohio St.3d 468, 880 N.E.2d 420, 450 (Ohio 2007).
[79]  *See supra* notes 37, 39, 40

1  be "more impaired" if Ohio residents were forced to litigate their claims under
2  California's more restrictive CPS (UCL).

3       (5) **Massachusetts:** The Massachusetts Legislature enacted the Massachusetts
4  Consumer Protection Act (Mass.Gen.L. ch. 93A) ("MCPA") in 1967 "to ensure an
5  equitable relationship between consumers and persons engaged in business by
6  protecting consumers from 'unfair or deceptive acts or practices in the conduct of any
7  trade or commerce.'" *Com. of Mass. v. V & M Management, Inc.*, 752 F. Supp. 519,
8  520 (D. Mass. 1990).  Although the original version of the MCPA – like the *current*
9  version of UCL – limited claims to individuals who suffer a "loss of *money or property*
10 . . . as a result of . . . an unfair or deceptive practice," the Massachusetts legislature
11 amended this provision in 1979, requiring only that claimants show some form of
12 "injury" due to an "act or practice declared to be unlawful" by the statute.  *Leardi v.*
13 *Brown*, 394 Mass. 151, 474 N.E. 2d 1094, 1101 (Mass. 1985).  This amendment
14 "substantially broadened the class of persons who could maintain actions under G.L. c.
15 93A, § 9."  *Id.* (citations omitted).  In sharp contrast, California citizens in 2005
16 approved Proposition 64 and limited the UCL by inserting the *identical* language the
17 Massachusetts legislature *deleted* to "substantially broaden" the MCPA.[80]  There is no
18 question that Massachusetts' interest will be more impaired if Massachusetts residents
19 had to meet standing requirements under California law that the Massachusetts
20 legislature deleted from the MCPA nearly 30 years ago.

21      (6) **New York**: New York enacted its Consumer Protection Act ("NYCPA") "to
22 provide consumers with a means of redress for injuries caused by unlawfully deceptive
23 acts and practices." *Goshen v. Mutual Life Ins. Co. of New York*, 98 N.Y.2d 314, 774
24 N.E.2d 1190, 1194-95 (N.Y. 2002) (citations omitted).  The statute "is intentionally
25 broad, applying 'to virtually all economic activity'" and "seeks to secure an 'honest
26 market place' where 'trust,' and not deception, prevails."  *Id.* at 1195 (citations

27
28 [80]  *See* Cal. Bus. & Prof. Code § 17204.

1  omitted).    The New York "[l]egislature specifically chose to word [the Consumer

2  Protection Act] broadly" and envisioned it "as a mechanism to protect the public from

3  'all' deceptive acts and practices." *N.Y. Public Int. Research Group, Inc. v. Insurance*

4  *Inf. Institute*, 140 Misc. 2d 920, 531 N.Y.S.2d 1002, 1006 (N.Y. Sup. 1998).

5  Consistent with this objective, the NYCPA has relaxed standing requirements which

6  require that plaintiffs prove actual injury, but not necessarily pecuniary harm. *Stutman*

7  *v. Chem. Bank*, 95 N.Y.2d 24, 750 N.E.2d 608, 612 (N.Y. 2000). In contrast, the UCL

8  requires proof of *both* injury in fact and loss of "money or property."[81]  Imposing the

9  UCL's heightened standing requirements on New York residents impairs New York's

10  policy of affording relief for injuries beyond the loss of "money or property."

11      (7) **Virginia:**  The Virginia legislature enacted the Virginia Consumer Protection

12  Act ("VCPA") in 1977 "as remedial legislation to promote fair and ethical standards of

13  dealings between suppliers and the consuming public." Va. Code Ann. § 59.1-197. To

14  that end, the statute makes it unlawful for a supplier involved in a "consumer

15  transaction" to "[m]isrepresent[s] that goods or services have certain quantities,

16  characteristics, ingredients, uses, or benefits." *Id.* § 59.1-200(A)(5).  A key distinction

17  between the VCPA and California's CPS is that the VCPA does not permit class

18  actions.  (Va. Code Ann. § 59.1-196).  This prohibition demonstrates the Virginia

19  legislature's choice to calibrate the deterrent effect of the VCPA by removing the

20  possibility of class action judgments.  Further, while the statutory remedies under the

21  VCPA and CLRA are similar, consumers' remedies if the UCL applies would

22  significantly be curtailed.  California's interest in providing remedies to out-of-state

23  residents under the UCL pales in comparison to Virginia's interest in compensating its

24  residents under its statutory scheme.

25      (8) **Maryland**: Maryland enacted the Maryland Consumer Protection Act

26  ("MCPA") due to "mounting concern over the increase of deceptive practices in

27  _____

28  [81]  *See id.*

1   connection with sales of merchandise, real property, and services and the extension of

2   credit." Md. Code Ann. § 13-102(a). While aware that other "federal and state laws"

3   offer protection "in these areas," Maryland found such laws "inadequate, poorly

4   coordinated and not widely known or adequately enforced" (Md. Code Ann. § 13-

5   102(a)(2) (Commercial Law Article). Maryland, therefore, elected to "take strong

6   protective and preventive steps to investigate unlawful consumer practices, to assist the

7   public in obtaining relief from these practices, and to prevent these practices from

8   occurring in Maryland."[82] Thus, plaintiff Kalsi's home state has already expressed a

9   strong distrust for "existing laws" and enacted a consumer protection statute it feels

10   best protects Maryland residents. Maryland's interest in implementing the law it

11   "trusts" easily outweighs any interest California may have in applying its laws to the

12   claims of Maryland residents. Just as important, the "existing law" (UCL) plaintiffs

13   want to apply would provide less remedies than those available under the MCPA.

14       (9) **Texas:** The "Texas legislature and courts have developed an almost

15   paternalistic interest in the protection of consumers." *See Mitchell v. Lone Star*

16   *Ammunition, Inc.,* 913 F.2d 242, 249 (5th Cir.1990). Consistent with its "paternalistic

17   approach" to consumer protection, Texas enacted the Texas Deceptive Trade Practices

18   Act (DTPA) to shield consumers from false, misleading, and deceptive business

19   practices and unconscionable actions. Tex. Bus. & Com. Code Ann. § 17.44. Not

20   surprisingly, the DTPA affords broader forms of relief than that permitted under either

21   the UCL or CLRA.[83] Thus, consumers suing under the DTPA may recover for actual

22   damages, mental anguish, mandatory attorney's fees, and punitive damages of not more

23   than three times actual damages for intentional acts,[84] neither of which is available

24   _____

25   [82]   *See* Md. Code Ann. § 13-102(b)(3); *Consumer Prot. Div. v. Luskin's, Inc.,* 120 Md. App.

26   1, 706 A.2d 102, 114 (Md. App. 1998) (*rev'd in part on other grounds, Luskin's, Inc. v. Consumer Prot. Div.,* 353 Md. 335, 726 A.2d 702 (Md. 1999)).

27   [83]   *See supra* notes 37, 39, 40.

28   [84]   *See* Texas Bus. & Com. Code § 17.50(b), (d); *Gunn Infiniti, Inc. v. O'Byrne,* 42 Tex. Sup. (footnote continued)

1 under the UCL (and only some are available under the CLRA).  Not surprisingly, Texas

2 courts have found it "hard to see how the interests of each state could be met any better

3 than by allowing each [state] to apply its own laws." *Tracker Marine,* 108 S.W. 3d at

4 358. There can be no "maximum attainment" of "all governmental interests" if Texas'

5 paternalistic approach to consumer protection is shunned in favor of California law.

6      (10) **Washington:**  Washington courts have held that "the protection of legal

7 rights of Washington residents is a legitimate state interest." *Sorb Oil Corp. v Batalla*

8 *Corp,* 32 Wash. App. 296, 647 P.2d 514, 517 (Wash. App. 1982).  Washington

9 advanced this state interest by enacting the Washington Consumer Protection Act

10 ("WCPA") (Wash. Rev. Code § 19.86 (1996) *et. seq.*) in 1961 for the "laudable purpose

11 [of] protect[ing] Washington citizens from unfair and deceptive commercial practices."

12 *Dwyer v. J.I. Kislak Mortgage Corp.,* 103 Wash. App. 542, 13 P.3d 240, 243 (Wash.

13 App. 2000).  The "laudable purpose" of the WCPA would be significantly more

14 impaired if California law applied because while Washington allows recovery for actual

15 damages, attorney's fees, and discretionary treble damages under the WCPA (*see*

16 Wash. Rev. Code Ann. § 19.86.090), applying California's UCL would limit

17 Washington residents to restitutionary and injunctive relief.  Similarly, if the CLRA

18 applied, each Washington plaintiff would have to prove reliance[85] on Honda's alleged

19 misrepresentations when reliance is not required under the WCPA.[86] This undermines

20 Washington's interest that its residents obtain recovery under less stringent standards

21 for pleading and proof.

22      (11) **Illinois:** The Illinois legislature "enacted the [Illinois Consumer Fraud and

23 Deceptive Business Practice Act ("ICFBPA")] 'a regulatory and remedial statute for the

---

25 Ct. J. 828, 996 S.W.2d 854, 860-61 (Tex. 1999); *Houston Livestock Show v. Hamrick,* 125

26 S.W.3d 555, 584 (Tex. App. 2003.)

  [85]  *Buckland,* 155 Cal. App. 4th at 811 (2007).

27 [86]  *See Tallmadge v. Aurora Chrysler Plymouth, Inc.,* 25 Wn. App. 90, 93, 605 P.2d 1275

28 (Wash. App. 1979).

1  purpose of protecting consumers and others against fraud, unfair methods of

2  competition, and unfair or deceptive acts or practices in the conduct of any form of

3  trade or commerce.'" *Gredell v. Wyeth Lab., Inc.*, 367 Ill. App. 3d 287, 854 N.E.2d

4  752, 755 (Ill. Ct. App. 2006) (citations omitted).  Advancing this purpose, Illinois

5  courts have found "that there is a clear mandate from the legislature to the courts to use

6  the Consumer Fraud Act to the utmost degree to eradicate all forms of deception and

7  unfair business practices."[87] Thus, Illinois permits virtually *all* forms of relief under the

8  ICFBPA including statutory and compensatory damages, injunctive relief, attorney's

9  fees, and punitive damages.[88] If the UCL governed the claims of Illinois residents, they

10  would be limited to restitution and injunctive relief under the UCL, which would

11  frustrate Illinois' deterrence objectives in permitting punitive damages.[89]

12      **E.**    **State Law Variations Preclude A Finding of Predominance.**

13      Plaintiffs' failure to even suggest that this purported class action be certified

14  absent the application of California law speaks for itself.  As the Ninth Circuit and

15  several other courts have recognized, state law variances will overwhelm any common

16  issues and preclude a finding of predominance where the laws of multiple jurisdictions

17  apply.[90]  Here, plaintiffs' claims would involve hundreds of issues and sub-issues,

18  _____

19  [87] *Buzzard v. Bolger,* 117 Ill. App. 3d 887, 453 N.E.2d 1129, 1132 (Ill. Ct. App. 1983);

20  *Telular Corp. v. Vitech America, Inc.*, 1996 WL 616590 (N.D. Ill. 1996) (personal jurisdiction case recognizing that "Illinois also has an interest in preventing out-of-state businesses from

21  violating state statutes, such as the Illinois Consumer Fraud and Deceptive Trade Practices Act, to the detriment of Illinois citizens and businesses.")

22  [88]  *See* 815 Ill. Comp. Stat. 505/2s & 10n; 815 Ill. Comp. Stat. 505/7; 815 Ill. Comp. Stat.

23  505/2S, 2w, 2AA, & 10h; 815 Ill. Comp. Stat. 505/2AA; *Guess v. Brophy*, 164 Ill. App. 3d 75, 81, 517 N.E.2d 693, 697 (Ill. Ct. App. 1987).

24  [89]  *See State Farm v. Campbell*, 538 U.S. at 421-22 ("A basic principle of federalism is that

25  each state may make its own reasoned judgment about what conduct is permitted or proscribed within its borders ....").

26  [90]  *See Zinser*, 253 F.3d at 1189 ("[W]here the applicable law derives from the law of the 50

27  states, ... differences in state law will compound the disparities among class members from the different states") (internal quotation marks omitted); *see also Washington Mutual*, 24 Cal.

28  4th at 924; *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 653-54 (C.D. Cal. 1996).

1  requiring the Court to examine, state-by-state, each issue on which there was a conflict,
2  which is a far cry from the mandate that common issues "predominate."

3      Plaintiffs' reliance on the sixteen year old memorandum opinion in *Church* does
4  not alter this analysis. First, *Church* did not involve claims for violations of state CPS
5  or unjust enrichment. Instead, plaintiffs in *Church* asserted claims for common law
6  fraud and negligent misrepresentation. 1992 WL 370829 at *4-5. Thus, the district
7  court did not analyze, much less decide, that California's CPS or unjust enrichment
8  laws could apply to a nationwide class. Further, as plaintiffs admit, the *Church* court
9  did not conduct any serious inquiry into "the other two choice-of-law prong" (Motion at
10 21:8) because it found that defendants in that case had not met their burden of
11 establishing a true conflict in state common law for fraud and negligent
12 misrepresentation. *Id.* at *5. *Church* is no authority for issues it did not address or
13 decide.[91]

14 **IV.    RULE 23(B)(2) OR 23(C)(4) CERTIFICATION IS NOT APPROPRIATE.**

15     Plaintiffs' request that the Court, in the alternative, certify a class under Rule
16 23(b)(2) or 23(c)(4) also must be denied. Rule 23(b)(2) certification is appropriate only
17 when a claim for money damages is only incidental to a claim for injunctive relief.[92]
18 That clearly is not the case here because plaintiffs seek "disgorgement" of profits,[93]
19 restitution, and punitive damages. (Complaint at p. 27-28). Further, unlike Kalsi,

20

21 ───────────────

[91]  Plaintiffs previously have relied on *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d
22 605 (1987) and *Wershiba v. Apple Computer*, 91 Cal. App. 4th 224 (2001), which clearly are
23 distinguishable. The holding in *Clothesrigger* is that the trial court erred in failing to conduct
   a proper choice-of-law analysis. *Clothesrigger*, 191 Cal. App. 3d at 614-15 (citations
24 omitted). *Wershiba* involved a *settlement* class, which has little significance to courts ruling
   on motions for class certification. *See, e.g., Amchem Prods.*, 521 U.S. at 620 (In settlement
25 class certifications "a district court need not inquire whether the case, if tried, would present
   intractable management problems, [ ] for the proposal is that there be no trial.").
26 [92]  *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 860 (9th Cir. 2001).
27 [93]  *Taylor v. Flagstar Bank, FSB*, 181 F.R.D. 509, 519 (M.D. Ala. 1999) (disgorgement not
28 considered "injunctive relief" under Fed. R. Civ. P. 23(b)(2)).

1  Mazza made clear that he wants to get paid and made "whole."[94] Thus, damages are
2  not "merely incidental to the litigation"—a fact made clear by plaintiffs' request that
3  the Court certify a class under Rule 23(b)(2) *only if* plaintiffs "are not successful in
4  certifying their claims under rule 23(b)(3) ...." (Motion at 25:10-11).[95]

5      Plaintiffs' request for Rule 23(c)(4) certification also must be denied. "A district
6  court cannot manufacture predominance through the nimble use of subdivision (c)(4)."
7  *Castano*, 84 F.3d at 745 n. 21. "The proper interpretation of the interaction between
8  subdivisions (b)(3) and (c)(4) [of Rule 23] is that a *cause of action*, as a whole, must
9  satisfy the predominance requirement of (b)(3) and that (c)(4) is a housekeeping rule
10 that allows courts to sever the common issues for a class trial." *Id.*  Indeed, "[r]eading
11 rule 23(c)(4) as allowing a court to sever issues until the remaining common issue
12 predominates over the remaining individual issues would eviscerate the predominance
13 requirement of rule 23(b)(3)," the result of which "would be automatic certification in
14 every case where there is a common issue, a result that could not have been intended."
15 *Id.* As demonstrated above, plaintiffs' UCL, FAL, CLRA and unjust enrichment causes
16 of action, as a whole, do not satisfy the predominance requirements of Rule 23(b)(3).
17 Plaintiffs cannot use Rule 23(c)(4) to spring past the Rule 23(b)(3) predominance
18 requirement.

19 **V.  PLAINTIFFS ARE NEITHER ADEQUATE NOR TYPICAL CLASS**
20     **REPRESENTATIVES.**

21     Rule 23(a)(3) requires that the "claims or defenses of the representative parties
22 [be] typical of the claims or defenses of the class."  Typicality is not met by a
23 conclusory claim that "Honda's omission of the CMBS System's limitations gives rise

24

25

26 [94]  Kizirian Decl. ¶ 18, Ex. 17 (Mazza Depo. at 252:19-253:9).
27 [95]  The second prong of Rule 23(b)(2) also is not met because plaintiffs cannot establish Honda has acted or refused to act on grounds applicable to the class when Honda indisputably
28 disclosed the allegedly concealed information *before the first Acura RL was sold*.

1  to the same injury type, class-wide." (Motion at 19:2-4).[96] By that measure, every

2  putative class representative who asserts any cause of action would have "typical"

3  claims.    To be typical, plaintiffs must demonstrate that proof of the class

4  representative's individual case will necessarily also prove the claims of the class

5  members. Plaintiffs fail to explain how this standard is met here. Further, one of the

6  named plaintiffs does not even know who he represents, and offered a startling response

7  at deposition that he only represents himself "and that's it" until a class is certified.[97]

8  ## VI.    THERE IS NO ASCERTAINABLE CLASS.

9      Plaintiffs' claim that there is ascertainable class also is wide of the mark for

10  two reasons. Plaintiffs' class definition does not distinguish between consumers

11  who purchased new or *used* 2006-2009 model year Acura RLs with CMBS. But

12  plaintiffs do not explain how Honda could identify consumers who purchased used

13  RL vehicles in private party sales,[98] or why Honda would be liable for used car

14  transactions that did not involve Honda or any Acura dealerships. Further, although

15  plaintiffs limit their CLRA class to consumers who purchased vehicles for

16  "personal, family, or household purposes" (Motion at 15:5-7), plaintiffs do not

17  provide any basis for identifying such consumers without individualized inquires

18  concerning each class member's intended use for their RL.

19  ## VII.  A CLASS ACTION IS NOT SUPERIOR.

20      Plaintiffs fail to establish that "a class action is superior to other available

21  methods of fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b).

22  First, it is highly unlikely that duplicative lawsuits will be filed unless a class is

23  certified because there is no groundswell of discontent or threatened litigation over

24

25  [96] *See, e.g., Clay,* 188 F.R.D. at 492-93 (rejecting typicality based on bare allegation that
    plaintiffs' "claims are typical to the proposed class members because each class member's
26  claims have arisen from the same practices and course of conduct.")

27  [97] Kizirian Decl. ¶ 18, Ex. 17 (Mazza Depo. at 258:19-260:25)

28  [98] The consumers plaintiffs claim Honda has already identified (Motion at 15:10), are those
    who purchased *new* 2006-2009 model year RL vehicles.

1   Honda's alleged misrepresentations.  Indeed, aside from the named plaintiffs, just two

2   other consumers have complained to Honda that the CMBS does not work as

3   advertised.[99]    Second, if Kalsi's primary motivation is, as he testified in deposition,

4   ensuring consumer safety,[100] the superior method for resolving motor vehicle safety

5   issues lies with the NHTSA, which has primary responsibility for investigating

6   complaints relating to alleged safety concerns.[101]  But Kalsi has not contacted NHTSA

7   regarding his safety concerns.[102] Finally, plaintiffs' CPS and unjust enrichment claims

8   each require claimant-specific litigation.  Consequently, the litigation would devolve

9   into a series of individualized mini-trials, thereby creating overwhelming manageability

10  concerns.

11  **VIII.  CONCLUSION.**

12          For the foregoing reasons, Honda respectfully requests that plaintiffs' Motion be

13  denied.

14

15  DATED: November 10, 2008          ROY M. BRISBOIS
                                      ERIC Y. KIZIRIAN
16                                    LEWIS BRISBOIS BISGAARD & SMITH LLP

17

18                                    By: _____
19                                        Eric Y. Kizirian
                                          Attorneys for Defendant American Honda
20                                        Motor Co., Inc.

21

22

23

24

---

25  [99]  Kizirian Decl. ¶ 26, Ex. 25.
26  [100]  Kizirian Decl. ¶ 8, Ex. 7 (Kalsi Depo. at 127:24-128:4).
    [101]  *See Chin*, 182 F.R.D. at 464; *Ignition Switch I*, 174 F.R.D. at 353 (same); *Am. Suzuki
27  Motor Corp., Inc. v. Sup. Ct.*, 44 Cal. Rptr. 2d 526, 37 Cal. App. 4th 1291, 1299-1300 (1995).
    [102]  Kizirian Decl. ¶ 8, Ex. 7 (Kalsi Depo. at 128:5-8).
28

# FEDERAL COURT PROOF OF SERVICE

Mazza v. Honda - File No. 20159-191

STATE OF CALIFORNIA, COUNTY OF Los Angeles

At the time of service, I was over 18 years of age and not a party to the action. My business address is 221 North Figueroa Street, Suite 1200, Los Angeles, California 90012. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On November 10, 2008, I served the following document(s): **DEFENDANT AMERICAN HONDA MOTOR CO., INC.'S OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION**. I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

Mark Yablonovich, Esq.
Marc Primo, Esq.
Monica Balderrama, Esq.
Payam Shahian, Esq.
Orlando Arellano, Esq.
INITIATIVE LEGAL GROUP, LLP
1800 Century Park East, Second Floor
Los Angeles, CA 90067
310/556-5637
FAX: 310/861-9051

MBalderrama@initiativeLegal.com

The documents were served by the following means:

☒ (BY MESSENGER SERVICE) I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed above and providing them to a professional messenger service. (A proof of service executed by the messenger will be filed in compliance with the Code of Civil Procedure.)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 10, 2008, at Los Angeles, California.

_____
Edwina G. Martinez