Robert Byrnes (SBN 200761)
RByrnes@InitiativeLegal.com
Payam Shahian (SBN 228406)
PShahian@InitiativeLegal.com
Sang Park (SBN 232956)
SPark@InitiativeLegal.com
Initiative Legal Group APC
1800 Century Park East, 2nd Floor
Los Angeles, California 90067
Telephone: (310) 556-5637
Fax: (310) 861-9051

Attorneys for Plaintiffs Michael Mazza, Janet Mazza and
Deep Kalsi, and Others Similarly Situated

Roy M. Brisbois (SBN 53222)
brisbois@lbbslaw.com
Eric Y. Kizirian (SBN 210584)
kizirian@lbbslaw.com
Lewis Brisbois Bisgaard & Smith LLP
221 North Figueroa Street, Suite 1200
Los Angeles, California 90012
Telephone: (213) 250-1800
Fax: (213) 250-7900

Attorneys for Defendant American Honda
Motor Co., Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MICHAEL MAZZA, JANET MAZZA, and DEEP KALSI, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> AMERICAN HONDA MOTOR COMPANY, INC., <br><br> Defendant. | Case No.: CV07-07857 VBF JTLx <br><br> Hon. Valerie Baker Fairbank <br><br> **CLASS ACTION** <br><br> **JOINT STATUS REPORT** <br><br> Date:  January 4, 2010 <br> Time:  8:30 a.m. <br> Place:  Courtroom 9 |

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1    Plaintiffs Michael Mazza, Janet Mazza, and Deep Kalsi ("Plaintiffs") and

2    Defendant American Honda Motor Co., Inc. ("Honda" or "Defendant") hereby

3    respectfully submit the following Joint Status Report in advance of the January

4    4, 2010 non-appearance status review.

5    **I.    OBJECTIVE SUMMARY OF CASE**

6        Plaintiffs have filed this class action alleging that the Collision Mitigation

7    Braking System ("CMBS") on Acura RL vehicles does not warn drivers in time

8    to avoid an accident because its purported stages of operation commonly overlap

9    and the system may shut off in bad weather, including fog, rain and snow.

10   Plaintiffs allege that Honda knew, but failed to disclose in pre-purchase

11   advertising and marketing, the limitations of the CMBS.  Instead, Plaintiffs

12   allege that such disclosures were only made in post-purchase materials.  Honda

13   disputes Plaintiffs' allegations and maintains that it disclosed the CMBS'

14   operation parameters and limitations in both pre and post purchase materials.

15       Plaintiffs allege that Honda's omissions violated California's Unfair

16   Competition and False Advertising Laws; Consumer Legal Remedies Act; and

17   common laws of unjust enrichment.

18       On December 16, 2008, this Court granted Plaintiffs' Renewed Motion for

19   Class Certification, finding that Plaintiffs met their burden of showing that their

20   proposed class satisfied the requirements of Rule 23(a) and Rule 23(b)(3).   On

21   January 2, 2009, Honda petitioned the United States Court of Appeals for the

22   Ninth Circuit pursuant to Federal Rules of Civil Procedure 23(f) for permission

23   to appeal this Court's December 16, 2008 certification order.  The Ninth Circuit

24   granted Honda's Rule 23(f) petition on March 12, 2009.

25   **II.    PROCEDURAL STATUS**

26       **A.    Honda's Appeal**

27   Honda filed its Opening Brief in the Unites States Court of Appeals for the

28

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1   Ninth Circuit on July 29, 2009.  (*See* Exhibit A).  The Product Liability Advisory

2   Council filed its *Amicus Curiae* Brief in support of Honda on August 7, 2009.

3   (*See* Exhibit B).

4         Plaintiffs timely submitted their Answering Brief on October 28, 2009,

5   and the brief was "filed" on December 3, 2009.  (*See* Exhibit C).  Consumer

6   Attorneys of California submitted its *Amicus Curiae* Brief in support of Plaintiffs

7   on November 4, 2009.  (*See* Exhibit D).  Public Citizen, Inc. filed its *Amicus*

8   *Curiae* Brief in support of Plaintiffs on November 6, 2009.  (*See* Exhibit E).

9         Honda's Reply Brief in the Ninth Circuit is due, pursuant to order of the

10  Ninth Circuit clerk, on or before December 31, 2009.

11        Based on past experience with similar appeals, the parties anticipate that

12  the Ninth Circuit will hear Honda's appeal some time in the fourth quarter of

13  2010.

14  **III.   TRIAL MATTERS**

15        Plaintiffs and Honda agree that the stay currently in effect should continue

16  until the Ninth Circuit issues its decision on Honda's appeal.  The parties agree

17  to apprise the Court promptly of any developments in the Ninth Circuit.

18  Dated:  December 28, 2009              Respectfully submitted,

19                                         Initiative Legal Group APC

20

21                                         By: S/ Sang Park_____
                                           Robert Byrnes
22                                         Payam Shahian
                                           Sang Park
23                                         Attorneys for Plaintiffs

24  Dated:  December 28, 2009              Lewis Brisbois Bisgaard & Smith LLP

25

26                                         By: S/ Eric Kizirian_____
                                           Roy M. Brisbois
27                                         Eric Y. Kizirian

28                                         Attorneys for Defendant

JOINT STATUS REPORT

EXHIBIT A

No. 09-55376

———————————

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

———————————

Michael Mazza, Janet Mazza and Deep Kalsi,
*Plaintiffs-Appellees,*

*v.*

American Honda Motor Co., Inc.,
*Defendant-Appellant.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
THE HONORABLE VALERIE BAKER FAIRBANK, JUDGE
CASE NO. 2:07-CV-07857-VBF (JTLx)

———————————

# OPENING BRIEF OF AMERICAN HONDA MOTOR CO., INC.

———————————

| | |
|---|---|
| LEWIS BRISBOIS BISGAARD & SMITH LLP | MAYER BROWN LLP |
| ROY M. BRISBOIS | DONALD M. FALK |
| ERIC Y. KIZIRIAN | TWO PALO ALTO SQUARE, SUITE 300 |
| 221 SOUTH FIGUEROA STREET, SUITE 1200 | 3000 EL CAMINO REAL |
| LOS ANGELES, CA 90012 | PALO ALTO, CA 94306 |
| TELEPHONE: (213) 250-1800 | TELEPHONE: (650) 331-2000 |
| FACSIMILE: (213) 250-7900 | FACSIMILE: (650) 331-2060 |

*Attorneys for Defendant-Appellant American Honda Motor Co., Inc.*

# CORPORATE DISCLOSURE STATEMENT

American Honda Motor Co., Inc. is a wholly owned subsidiary of Honda Motor Co., Ltd., a publicly held company in Japan.

# TABLE OF CONTENTS

Page

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF ISSUES ..................................................................2

STATEMENT OF THE CASE ..............................................................3

STATEMENT OF FACTS ...................................................................4

    A.    The Features of the CMBS System. ......................................4

    B.    Honda Unveils the Acura RL with CMBS for the Media And Discloses That The System's Alert Stages May "Overlap" And That It May Temporarily Disengage In "Inclement Weather.". ..........5

    C.    Honda Provides Varying Marketing and Informational Materials for the 2006-2009 Model Years. ...........................6

        1.    Promotional Materials for the 2006 Acura RL .........................6

        2.    Promotional Materials for 2007-2009 Model Year Acura RL ...............................................................10

    D.    Four of 2,000 CMBS Purchasers—Including Two Named Plaintiffs—Complain to Honda That the System Did Not Operate As Advertised. ..................................................12

    E.    Plaintiffs Bring This Action and The District Court Certifies A Nationwide Class. ..................................................12

SUMMARY OF ARGUMENT ..............................................................15

STANDARD OF REVIEW ..................................................................17

ARGUMENT ...................................................................................17

I.    The District Court Improperly Curtailed The Predominance Analysis Under Rule 23 By Applying California Law To The Claims Of A Nationwide Class. ..................................................................17

# TABLE OF CONTENTS - Continued

Page

A. California's Choice-of-Law Rules Preclude Nationwide Application of California Law Here. ..................................................19

    1. The Substantial and Outcome-Determinative Variations Among State Consumer Protection And Unjust Enrichment Laws Are "Material." ..........................................20

        a. State Consumer Protection Laws Vary Materially........20

        b. State Unjust Enrichment Jurisprudence Varies Materially....................................................................25

B. The District Court Compounded Its Error By Concluding That No State Other Than California Has An Interest In This Litigation. .........................................................................29

C. Other States' Interests Would Be "More Impaired" If California Law Applied Nationwide. ..................................................34

D. The Need to Apply The Laws Of Multiple Jurisdictions Precludes Predominance Of Any Common Legal Issues. ................38

II. The Class Certification Rests On Unsound Presumptions That Each Class Member Was Exposed To The Same Representations About The CMBS, Arrived At The Same Misunderstanding As The Named Plaintiffs, Found That Misunderstanding Equally Material, And Relied On It In The Same Way. ..................................................39

A. The District Court Improperly Presumed Reliance To Find That Common Questions Of Fact Predominate Under the CLRA............39

    1. No Presumption of Reliance Is Available Under California Law. .......................................................40

    2. The District Court Improperly Allocated To Honda The Burden of Rebutting Improperly Presumed Predominance.........................................................45

## TABLE OF CONTENTS - Continued

**Page**

       3.    Rule 23 Bars The Application Of A Presumption Of Reliance To Find Predominance. ............................................. 46

   B.   The Predominance Finding For Plaintiffs' UCL And FAL Claims Also Rested On Legally Invalid Presumptions ...................... 50

   C.   The Unjust Enrichment Claims Are Not Susceptible To Classwide Proof .................................................................................. 56

CONCLUSION ...................................................................................... 60

# TABLE OF AUTHORITIES

**Cases**                                                               **Page(s)**

*Aberdeen-Springfield Canal Co. v. Peiper*, 982 P.2d 917 (Idaho 1999)...............28

*Abogados v. AT&T, Inc.*, 223 F.3d 932 (9th Cir. 2000) ...................................30, 31

*Adashunas v. Negley*, 626 F.2d 600 (7th Cir. 1980)................................................53

*Am. Online v. Sup. Ct.*, 108 Cal. Rptr. 2d 699 (Cal. App. 2001)...........................23

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)....................... 17, 19, 52, 55

*Anthony Corrado, Inc. v. Menard & Co. Bldg. Contractors*,
    589 A.2d 1201 (R.I. 1991)..............................................................................28

*Arnold v. Microsoft Corp.*, 2001 WL 193765 (Ky. Cir. Ct. July 21, 2000) .........23

*Bailie Communications, Ltd. v. Trend Bus. Sys., Inc.*,
    810 P.2d 12 (Wash. App. 1991) ....................................................................27

*Bashara v. Baptist Mem. Hosp.*, 685 S.W.2d 307 (Tex. 1985) ..............................27

*BMW of North Am. v. Gore*, 517 U.S. 559 (1996)............................................31, 33

*Buckland v. Threshold Enterprises, Ltd.*,
    66 Cal. Rptr. 3d 543 (Cal. App. 2007) ....................................................21, 39

*Caro v. Procter & Gamble Co.*, 22 Cal. Rptr. 2d 419 (Cal. App. 1993)...............39

*Castano v. American Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996) ...........................38

*Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939 (S.D. Cal. 2007).................39

*Chisholm v. House*, 183 F.2d 698 (10th Cir. 1950)................................................33

*Clay v. American Tobacco Co.*, 188 F.R.D. 483 (S.D. Ill. 1999)...............26, 54, 57

*Commonwealth v. Percudani*, 825 A.2d 743 (Pa. Commw. 2003) ........................36

## TABLE OF AUTHORITIES - Continued

**Cases**                                                                            **Page(s)**

*Community Guardian Bank v. Hamlin*, 898 P.2d 1005 (Ariz. 1995) .....................28

*Cooper v. GGGR Invest., LLC*, 334 B.R. 179 (E.D. Va. 2005)..............................22

*County Comm'rs of Caroline County v. J. Roland Dashiell & Sons, Inc.*,
    747 A.2d 600 (Md. 2000) ...............................................................................28

*DaBosh v. Mercedes Benz USA, Inc.*, 874 A.2d 1110 (N.J. Super. App. 2005) ....22

*Debbs v. Chrysler Corp.*, 810 A.2d 137 (Pa. Super. 2002) ....................................22

*Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*,
    693 So.2d 602 (Fla. App. 1997) ...................................................................31

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006)..................................52

*Discover Bank v. Sup. Ct.*, 36 Cal. Rptr. 3d 456 (Cal. App. 2005) ........................35

*Edgar v. MITE Corp.*, 457 U.S. 624 (1982) ...........................................................35

*Egwuatu v. South Lubes, Inc.*, 976 So.2d 50 (Fla. App. 2008)...............................22

*Einhorn v. Ford Motor Co.*, 548 N.E.2d 933 (Ohio 1990).....................................36

*Ernst v. Ford Motor Co.*, 813 S.W.2d 910 (Mo. App. 1991) .................................28

*Fairbanks v. Sup. Ct.*, 205 P.3d 201 (Cal. 2009) ....................................................41

*Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*,
    414 F.3d 325 (2d Cir. 2005) .........................................................................20

*Firemen's Annuity & Benefit Fund v. Municipal Employees' Annuity &*
    *Benefit Fund*, 579 N.E.2d 1003 (Ill. App. 1991)..........................................26

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167 (2000)......52

*Galden v. Guardian Life Ins. Co. of Am.*, 750 N.E.2d 1078 (N.Y. 2001) ..............23

## TABLE OF AUTHORITIES - Continued

**Cases**                                                                 **Page(s)**

*Georgia Title Distribs., Inc. v. Zumpano Enters., Inc.*,
    422 S.E.2d 906 (Ga. App. 1992) ................................................................. 26

*Guarantee Elec. Co. v. Big Rivers Elec. Corp.*,
    669 F. Supp. 1371 (W.D. Ky. 1987) .......................................................... 28

*Guth v. Allied Home Mtg. Capital Corp.*,
    2008 WL 2635521 (Ohio. App. 2008) ........................................................ 22

*Hawkins v. Comparet-Cassani*, 251 F.3d 1230 (9th Cir. 2001) ............................. 17

*Hernandez v. Burger*, 162 Cal. Rptr. 564 (Cal. App. 1980) .................................. 30

*In re Bankers Trust Co.*, 752 F.2d 874 (3d Cir. 1984) ........................................... 20

*In re Baycol Prods. Litig.*, 218 F.R.D. 197 (D. Minn. 2003) ................................ 26

*In re Bridgestone/Firestone*, 288 F.3d 1012 (7th Cir. 2002) ................................. 20

*In re ConAgra Peanut Butter Prods. Liab. Litig.*,
    251 F.R.D. 689 (N.D. Ga. 2008) ................................................................ 26

*In re Copper Antitrust Litig.*, 196 F.R.D. 348 (W.D. Wis. 2000) .......................... 54

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*,
    174 F.R.D. 332 (D.N.J. 1997) .................................................................... 32

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*,
    194 F.R.D. 484 (D.N.J. 2000) .................................................................... 21

*In re GMC Dex-Cool Prods. Liab. Litig.*, 241 F.R.D. 305 (S.D. Ill. 2007) .......... 45

*In re Grand Theft Auto Video Game Consumer Litig.*,
    251 F.R.D. 139 (S.D.N.Y. 2008) ........................................................ *passim*

*In re Hydrogen Peroxide Antitrust Litig.*,
    552 F.3d 305 (3d Cir. 2008) .................................................. 39, 40, 50, 55

# TABLE OF AUTHORITIES - Continued

**Cases**                                                                    **Page(s)**

*In re Neurontin Marketing, Sales Practices and Products Liability Litig.*,
    257 F.R.D. 315, 2009 WL 1323835 (D. Mass. May 13, 2009)...................46

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
    214 F.R.D. 614 (W.D. Wash. 2003) ..............................................................57

*In re Prempro*, 230 F.R.D. 555 (E.D. Ark. 2005) ...........................................21, 26

*In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61 (S.D.N.Y. 2002)........................57

*In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474 (2d Cir. 2008) ..............39

*In re St. Jude Medical, Inc.*, 425 F.3d 1116 (8th Cir. 2005)..................................21

*In re TJX Cos. Retail Security Breach Litig.*, 246 F.R.D. 389 (D. Mass. 2007) ....53

*In re Tobacco II Cases*, 207 P.3d 20 (Cal. 2009) .......................................... *passim*

*Jackson Nat'l Life Ins. Co. v. Kennedy*, 741 A.2d 377 (Del. Ch. 1999)................28

*J.W. Thompson Co. v. Welles Prods. Corp.*, 758 P.2d 738 (Kan. 1988)...............28

*Kearney v. Salomon Smith Barney, Inc.*, 137 P.3d 914 (Cal. 2006).......................35

*Korea Supply v. Lockheed Martin Corp.*, 63 P.3d 937 (Cal. 2003) .......................23

*Lilly v. Ford Motor Co.*, 2002 WL 507126
    (N.D. Ill. Apr. 3, 2002) .............................................................................57

*Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206 (E.D. Pa. 2000)...............................21, 32

*Leardi v. Brown*, 474 N.E. 2d 1094 (Mass. 1985).................................................32

*Maruho Co. v. Miles, Inc.*, 1993 WL 81453 (D. Mass. March 8, 1993) ...............27

**TABLE OF AUTHORITIES - Continued**

**Cases**          **Page(s)**

*Massachusetts Mutual Life Insurance Co. v. Superior Court*,
119 Cal. Rptr. 2d 190 (Cal. App. 2002) .......................................... 41, 43, 44

*Mayer v. Bishop*, 551 N.Y.S.2d 673 (N.Y. App. Div. 1990)..................................26

*McBride v. Boughton*, 20 Cal. Rptr. 3d 115 (Cal. App. 2004) ........................25, 56

*McElhaney v. Eli Lilly & Co.*, 93 F.R.D. 875 (D.S.D. 1982) ................................54

*McLaughlin v. American Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008).............46, 47

*Meyer v. Sprint Spectrum L.P.*, 200 P.3d 295 (Cal. 2009) .....................................43

*Minyard v. Curtis Prods., Inc.*, 205 So.2d 422 (La. 1967) ....................................28

*Mirkin v. Wasserman*, 858 P.2d 568 (Cal. 1993).............................................43, 49

*Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003) .....................................................17

*Nedlloyd Lines, B.V. v. Superior Court*, 824 P.2d 1148 (Cal. 1992).....................29

*New Mea Constr. Corp. v. Harper*, 497 A.2d 534 (N.J. Super. 1985)...................31

*N.Y. Public Int. Research Group, Inc. v. Insurance Inf. Institute*,
531 N.Y.S.2d 1002 (N.Y. Sup. 1988) .........................................................36

*Occidental Land, Inc. v. Superior Court*, 556 P.2d 750 (Cal. 1976)...............41, 42

*Offshore Rental Co. v. Continental Oil, Co.*, 583 P.2d 721 (Cal. 1978) ...............34

*O'Neill v. Gourmet Sys. Of Minn. Inc.*, 219 F.R.D. 445 (W.D. Wis. 2002)...........53

*Oshana v. Coca-Cola Co.*, 472 F.3d 506 (7th Cir. 2006)................................53, 57

*Paschall's, Inc. v. Dozier*, 407 S.W.2d 150 (Tenn. 1966)......................................28

## TABLE OF AUTHORITIES - Continued

**Cases**                                                                                     **Page(s)**

*Petrie-Clemons v. Butterfield*, 441 A.2d 1167 (N.H. 1982) ...................................26

*Poulos v. Caesars World, Inc.*, 379 F.3d 654 (9th Cir. 2004) ...............................49

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*,
    244 F. Supp. 2d 289 (S.D.N.Y. 2003) .........................................................53

*Rivera v. Bio Engineered Supplements & Nutrition, Inc.*,
    2008 WL 4906433 (C.D. Cal. Nov. 13, 2008) .....................................20, 25

*Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208 (1974) ........53

*Sebago, Inc. v. Beazer East, Inc.*, 18 F. Supp. 2d 70 (D. Mass. 1998)..................22

*Servicemaster of St. Cloud v. GAB Bus. Servs., Inc.*,
    544 N.W.2d 302 (Minn. 1996) ...................................................................26

*Siegel v. Levy Org. Dev. Co.*, 607 N.E.2d 194 (Ill. 1992) ....................................22

*Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308 (5th Cir. 2000)..................................29

*State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408 (2003)..................25, 31

*Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*,
    17 Cal. Rptr. 2d 713 (Cal. App. 1993) ........................................................20

*Stutman v. Chem. Bank*, 95 N.Y.2d 24, 731 N.E.2d 608 (N.Y. 2000) .............22, 36

*Styer v. Hugo*, 619 A.2d 347 (Pa. Super. 1993)...................................................28

*Super Glue Corp. v. Avis Rent A Car Sys., Inc.*,
    517 N.Y.S.2d 764 (N.Y. App. Div. 1987)....................................................23

*Swindell v. Crowson*, 712 So.2d 1162 (Fla. App. 1998) .......................................28

*Thompson v. Am. Tobacco Co.*, 189 F.R.D. 544 (D. Minn. 1999) ........................22

# TABLE OF AUTHORITIES - Continued

**Cases**                                                                 **Page(s)**

*Thompson v. Bayer Corp.*, 2009 WL 362982 (E.D. Ark. Feb. 12, 2009)...............26

*Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742 (7th Cir. 2008) ..........19, 47, 48

*Topaz Mut. Co. v. Marsh*, 839 P.2d 606 (Nev. 1992).............................................28

*Tucci v. Club Mediterranee, S.A.*, 107 Cal. Rptr. 2d 401 (Cal. App. 2001)...........34

*Vasquez v. Superior Court*, 484 P.2d 964 (Cal. 1971) .....................................41, 42

*Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009).........................56, 57

*Vuyanich v. Republic Nat'l Bank of Dallas*, 723 F.2d 1195 (5th Cir. 1984)..........53

*Washington Mut. Bank, NA v. Sup. Ct.*, 15 P.3d 1071 (Cal. 2001) ............... *passim*

*Watts v. Watts*, 405 N.W.2d 303 (Wis. 1987)........................................................28

*Zelman v. JDS Uniphase Corp.*, 376 F. Supp. 2d 956 (N.D. Cal. 2005)................53

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, *amended*,
    273 F.3d 1266 (9th Cir. 2001) ............................................................. *passim*


**Statutes and Rules**                                                    **Page(s)**

28 U.S.C. § 1282......................................................................................................1

28 U.S.C. § 1332(d)(2)(A).................................................................................1, 15

28 U.S.C. § 2072(b) ...............................................................................................55

Fed. R. Civ. P. 23(a)...............................................................................................18

Fed. R. Civ. P. 23(b) ..............................................................................................18

## TABLE OF AUTHORITIES - Continued

**Statutes and Rules**          **Page(s)**

Fed. R. Civ. P. 23(b)(3) ................................................................ *passim*

Fed. R. Civ. P. 23(f) ............................................................................1

Ala. Code § 8-19-10(f) ......................................................................23

Cal. Bus & Prof. Code § 17200 *et seq.* ............................................3

Cal. Bus & Prof. Code § 17200 ........................................................24

Cal. Bus & Prof. Code § 17203 ............................................23, 51, 54

Cal. Bus & Prof. Code § 17204 ..................................................32, 51

Cal. Bus & Prof. Code § 17208 ........................................................23

Cal. Bus & Prof. Code § 17500 *et seq.* ............................................3

Cal. Bus & Prof. Code § 17535 ........................................................54

Cal. Civil Code § 1750 *et seq.* ..........................................................3

Cal. Civil Code § 1780(a) .................................................................39

Cal. Civil Code § 1783 ......................................................................23

Colo. Rev. Stat. 6-1-105(1)(e) ..........................................................22

Colo. Rev. Stat. 6-1-105(1)(g) ..........................................................22

Colo. Rev. Stat. 6-1-105(1)(u) ..........................................................22

Fla. Stat Ann. § 95.11(3)(f) ..............................................................23

Fla. Stat. Ann. § 501.211 ..................................................................24

# TABLE OF AUTHORITIES - Continued

**Statutes and Rules**                                                **Page(s)**

Ga. Code Ann. § 10-1-399 (a) ...................................................................23

Idaho Code § 48-603 ...............................................................................22

815 Ill. Comp. Stat. 505/2 .......................................................................22

815 Ill. Comp. Stat. 505/2AA ..................................................................24

815 Ill. Comp. Stat. 505/10a(a)................................................................23

815 Ill. Comp. Stat. 505/10a(c)................................................................24

815 Ill. Comp. Stat. 505/10a(e)................................................................23

Kan. Stat. Ann. § 50-626(a) .....................................................................22

Kan. Stat. Ann. § 50-626(b)(2)(4) ...........................................................22

La. Rev. Stat. Ann. § 51:1409(A) .............................................................23

Md. Code Ann., Com. Law § 13-408(a).....................................................23

Md. Code Ann., Com. Law § 13-408(b).....................................................24

Md. Code Ann. Cts. & Jud. Proc. § 5-101 ................................................23

Mass. Gen. Laws ch. 93A § 9(3) ..............................................................23

Mass. Gen. Laws ch. 93A § 9(4) ..............................................................24

Mass. Gen. Law ch. 260, § 5(A) ...............................................................23

Mich. Comp. Laws Ann. § 445.911(6) ......................................................22

Miss. Code Ann. § 75-24-15(4) ................................................................23

## TABLE OF AUTHORITIES - Continued

**Statutes and Rules**                                          **Page(s)**

Nev. Rev. Stat. Ann. 598.0915 ........................................................22

N.J. Stat. Ann. § 2A:14-1 ..............................................................23

N.J. Stat. Ann. § 56:8-2 ................................................................22

N.J. Stat. Ann. § 56:8-19 ..............................................................24

Ohio Rev. Code Ann. § 1345.09(A) ................................................23

Ohio Rev. Code Ann. § 1345.09(B) ............................................23, 24

Ohio Rev. Code Ann. § 1345.09(F) ................................................24

Ohio Rev. Code § 1345.10(c) ........................................................23

Or. Rev. Stat. § 646.638(1) ............................................................22

Or. Rev. Stat. § 646.638(6) ............................................................23

42 Pa. Cons. Stat. § 5525(8) ..........................................................23

73 Pa. Cons. Stat. § 201-9.2(a) ..................................................23, 24

Tex. Bus. & Com. Code § 17.50 ....................................................24

Tex. Bus. & Com. Code § 17.50(b) ................................................24

Tex. Bus. & Com. Code § 17.50(d) ................................................24

Tex. Bus. & Com. Code § 17.565 ..................................................23

Utah Code § 13-11-4(2) ................................................................22

Utah Code § 13-11-5(3) ................................................................22

## TABLE OF AUTHORITIES - Continued

**Statutes and Rules**                                                    **Page(s)**

Va. Code Ann. § 59.1-204 ...................................................................23

Va. Code Ann. § 59.1-204.1 ................................................................23

Va. Code Ann. § 59.1-204.1(A) ...........................................................23

Wash. Rev. Code Ann. § 19.86.090......................................................24

Wash. Rev. Code § 19.86.120...............................................................23

W. Va. Code § 46A-6-102(M) .............................................................22


**Other Authorities**                                                     **Page(s)**

Candace S. Kovacic, *A Proposal to Simplify Quantum Meruit Litigation*,
    35 Am. U.L. Rev. 547 (1986)......................................................25

Restatement (Second) of Conflict of Laws § 148...................................30

S. Rep. No. 109-14 (2005) ....................................................................18

## JURISDICTIONAL STATEMENT

The district court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2)(A).  The diversity of citizenship requirement is satisfied because plaintiffs Michael Mazza and Janet Mazza are Florida residents, plaintiff Deep Kalsi is a Maryland resident, and defendant American Honda Motor Co., Inc. ("Honda") is a California corporation with its principal place of business in Torrance, California.  The amount-in-controversy requirement is satisfied because plaintiffs allege that the value of the aggregate claims of putative class members exceed $5 million, exclusive of interests and costs.  Less than one-third of the putative class members are citizens of California, the state in which the action originally was filed.

This Court has jurisdiction under Fed. R. Civ. P. 23(f) and 28 U.S.C § 1282. Honda filed its petition for permission to appeal on January 2, 2009, within 10 court days from the December 17, 2008 entry of the order granting plaintiffs' renewed motion for class certification.  This Court granted Honda's petition on March 12, 2009.

## STATEMENT OF ISSUES

1. Whether California consumer protection statutes and unjust enrichment law may be applied to the claims of a purported nationwide class notwithstanding the widely recognized material variations in the laws of the 44 states implicated by plaintiffs' claims, and other states' recognized interests in having their laws apply to the claims of their residents.

2. Whether a finding that common issues predominate may rest on a presumption (rather than evidence) that all putative class members were exposed to, found material, and relied on particular alleged representations and omissions in advertising that changed over time and was supplemented by substantial and varying point-of-sale and online communications, in claims

    a. under the California Consumers Legal Remedies Act, notwithstanding the requirement of proof of causation and actual damage as result of the challenged practice;

    b. under the California Unfair Competition Law and False Advertising Law notwithstanding the requirement, for restitutionary relief, for proof that money or property was lost as a result of the challenged practice;

    c. under California unjust enrichment law notwithstanding the need to determine whether Honda's retention of benefits would be "unjust" in light of the equities in each particular case.

-2-

## STATEMENT OF THE CASE

Florida residents Michael and Janet Mazza and Maryland resident Deep Kalsi filed this action in the United States District Court for the Central District of California on behalf of a putative nationwide class of consumers who purchased or leased vehicles equipped with the Collision Mitigation Braking System ("CMBS"). (ER448.)  Asserting that Honda misrepresented the capabilities and limitations of the CMBS, the complaint sought recovery under the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL")), False Advertising Law (*id.* § 17500 *et seq.* ("FAL"), and Consumers Legal Remedies Act (Cal. Civil Code § 1750 *et seq.* ("CLRA")), and for unjust enrichment.

After denying without prejudice plaintiffs' initial motion to certify a nationwide class under the three statutes (ER30-32), the district court granted plaintiffs' renewed motion for a nationwide class to press claims under those statutes and the California law of unjust enrichment.  (ER5-29.)  In an order entered December 17, 2008, the district court certified the following class:

> All persons in the United States, who between August 17, 2005 and class certification, purchased or lease, not for resale, Acura RL vehicles equipped with the Collision Mitigation Braking System.

(ER2-10.)[1]  The order did not designate class representatives or appoint class counsel.

-3-

Honda petitioned this Court for permission to appeal that order on January 2, 2009.  While the petition was pending, on January 8, 2009, the district court issued a revised order that, among other things, appointed plaintiffs as class representatives and designated their attorneys as class counsel.  (ER2.)

## STATEMENT OF FACTS

### A.    The Features of the CMBS System.

Honda introduced the CMBS in the fall of 2005 as part of the optional "Technology Package" for the 2006 model year Acura RL.  (ER261.)  CMBS uses a millimeter-wave radar unit mounted on the RL's front grille to monitor for potential rear-end collisions. (ER258, 280-81, 285.)  The system measures the distance and closing rate between the Acura RL and the vehicle or object directly in front of it.  (*Id*.)  When triggered, the CMBS responds with any or all of the following (ER300):

- A "Stage 1" alert, which sounds a tone and flashes a visual "BRAKE" warning on the dashboard display;

- A "Stage 2" alert, which includes the Stage 1 warnings but also brakes lightly and tugs on the driver's seat belt; and

---

[1]  The CLRA class "applied only to vehicles purchased for 'personal, family or household purposes.'"  (ER2, 10.)

-4-

- A "Stage 3" alert—issued if an accident is unavoidable—which includes the Stage 1 warnings but brakes hard and retracts the seat belts of the driver and front passenger to secure them for impact.

The timing for the deployment of the CMBS stages varies depending on factors that include the speed of the vehicle and the relative speed of the vehicle ahead. (ER282.) As the owner's manual explained, the CMBS might shut off temporarily under conditions including "[a]n abnormal tire condition," "[e]xtended off-road or mountainous driving," or "[d]riving … in bad weather[,]" but the "CMBS indicator in the instrument panel" will alert the driver to the temporary shut-off. (ER442, 444, 446.)

Honda included the CMBS in the "Technology Package" for the 2006 RL, and in the "CMBS/ACC Package" in subsequent model years. (ER261, 267, 271.) These packages included Adaptive Cruise Control and Michelin PAX "run flat" tires (except that the run-flat tires were not offered in the 2009 model year), and added approximately $4000 to the list price. (ER261, 267, 271.)

**B. Honda Unveils the Acura RL with CMBS for the Media And Discloses That The System's Alert Stages May "Overlap" And That It May Temporarily Disengage In "Inclement Weather."**

On August 17, 2005, just before the vehicle went on sale, Honda introduced the 2006 Acura RL with CMBS at a Rose Bowl event where media representatives were invited to experience all three stages of the CMBS first-hand in test drives.

(ER315-17.)  At that event, Honda distributed the press release for the 2006 RL.[2]
(ER315, 420-22.)  Honda also provided a PowerPoint presentation explaining that
the system may temporarily disengage in "inclement weather" and a video
explaining that the alert stages may "overlap depending on the rate of the closure
of [the RL] and the vehicle ahead."  (ER316-19, 344.)

### C. Honda Provides Varying Marketing and Informational Materials for the 2006-2009 Model Years.

Honda's promotional materials for the CMBS have varied significantly.
Some promotional materials did not discuss any CMBS "stages," while others
specifically disclosed that the system's alert stages may "overlap" or provided
more detail on alerts issued in each alert stage.  The Mazzas and Kalsi each bought
a 2007 Acura RL in April and May 2007 respectively.  (ER450.)  Most of Honda's
CMBS promotion occurred during the prior model year.

### 1. Promotional Materials for the 2006 Acura RL

a. The *2006 Acura RL product brochure* stated that CMBS "is designed to
help alert the driver of a pending collision or—if it's unavoidable—to reduce the
severity of impact by automatically applying the brakes if an impending collision
is detected."  (ER258.)  The brochure described the CMBS in these terms:

---

[2]  Honda issued a press release for each model year Acura RL and posted the
releases on Honda's media websites, "Hondanews.com" and "Acuranews.com."
(ER323-33, 396-98.)

> If the system senses a vehicle, it determines the distance and closing speed. If the closing speed goes above a programmed threshold, the system will immediately alert the driver with an audible alarm and a flashing indicator on the instrument panel. If the driver takes no action to reduce speed, the system will automatically tug at the driver's seat belt and lightly apply the brakes. When the system senses that a frontal collision is unavoidable and the driver still takes no action, the front seat belts are retracted tightly and strong braking is applied automatically to lower impact speed and help reduce damage and the severity of the injury.

(ER258.) The brochure also described the system's response during each of the three warning stages. (ER259.) An image of an RL following a large truck had this text between the vehicles: "CMBS evaluates a possible collision. It will first provide audio and visual alert and then apply the brakes automatically if a collision seems imminent." (ER259.)

b. *"The Distance" television commercial*, the only CMBS television commercial, had two versions. The first aired only for one week in early November 2005 (ER398-99) with this voice-over:

> So much can happen in the space of a few seconds. The Acura Collision Mitigation Braking System detects an object ahead. The driver is warned, and warned again. If necessary, the system even applies the brakes to lessen the potential impact. The Acura RL, it gives your reflexes a head start.

(ER360.) Honda modified the commercial and re-aired it from February 2006 through September 2006 (ER363-65) with this voice-over:

> So much can happen in the space of a few seconds. The Acura Collision Mitigation Braking System detects a potential hazard

-7-

> ahead. The driver is warned so he can react. If necessary, the system would have even applied the brakes to lessen a potential impact. The Acura RL, it gives your reflexes a head start.

(ER361.) Plaintiff Michael Mazza testified that he saw the first version of the commercial, which stopped airing 17 months before he bought his RL; Kalsi did not recall whether he saw the first version, the second version, or both. (ER288, 352.)

c. *The "What Might Happen" print advertisement* promoted the CMBS in various magazines from March through September 2006. (ER438-39.) The ad explained:

> CMBS uses a radar signal to help detect potential hazards ahead. Then, after a series of instantaneous calculations, including distance and closing speed, they system *can* react. It *can* give you auditory and visual warnings, a tug on the seat belt, and *when necessary*, even initiate strong braking in order to lessen the severity of an inevitable impact.

(ER434) (emphasis added).

d. *The Customer Information Center ("CIC")* is an intranet-based "interactive sales tool" on kiosks at Acura dealerships "to assist sales consultants and customers at every stage of the sales process." (ER292.) The CIC was available without a password to all dealership customers once the kiosk was activated at the start of each business day. (ER96.)

From the launch of the Acura RL with CMBS until March 2008—when Honda discontinued use of the kiosks because the same information was available to consumers online (ER94)—the CIC had two videos that explained how CMBS works.  (ER111, 298.)  The second CMBS video specifically disclosed that:

- …various alert stages [in the CMBS system] can overlap depending on the rate of closure of your vehicle and the vehicle ahead.

- …[CMBS] is not a substitute for attentive, defensive driving.  The system does have limitations, and will not detect all possible accident causing situations….

(ER360.)

e. *The Owner Link website*, now known as "MyAcura.com," was linked to Acura.com throughout the class period.  (ER101-10, 310-11.)  Consumers could log on to Owner Link without entering a vehicle identification number. (*Id.*) There, they could view video clips that disclosed the "overlap" between various stages of the CMBS System, and review the RL's owner's manual, which disclosed that CMBS may disengage temporarily during inclement weather. (ER101-06.)

f. *The Acura.com website* included an RL section with written and video content about the CMBS.  (ER417.)

-9-

## 2. *Promotional Materials for 2007-2009 Model Year Acura RL*

Honda had no CMBS-specific television commercials or magazine advertisements after the end of the 2006 model year. While the CIC and the Acura.com and Owner Link websites continued to be available, Honda's other promotional materials for CMBS were less extensive.

a. *The 2007 Acura RL product brochure*, available at dealerships, described the CMBS in these terms (ER264-65):

> 1. *Recognition of possible collision*
>
> CMBS has a radar system with a transmitter mounted behind the RL's grille. When CMBS first determines that a collision is possible, it warns the driver with audio and visual alerts.
>
> 2. *Belts tighten and light braking*
>
> If the driver takes no action to reduce speed, the system will automatically tug at the driver's seat belt to increase the level of warning. The system will also begin light braking.
>
> 3. *Strong braking*
>
> When the system determines an impact is unavoidable, the front belts tighten and strong braking is automatically applied to reduce impact velocity and collision forces.

b. *The Acura Style magazine* is sent to all Acura dealerships, subscribing Acura owners, and interested consumers twice each year. (ER101.) An article in the Summer 2007 edition described the CMBS and explained that it "responds" to a potential collision "with *any or all three* increasingly dramatic imperatives."

-10-

(ER300 (emphasis added).)  Every Acura dealership received ten copies of this

magazine in July 2007 for use and display.  (ER101, 301-06, 308-09.)

    c.    The *2008 Acura RL product brochure* explained the CMBS in these

terms (ER270):

> Collision Mitigation Braking System™ (CMBS) on CMBS/PAX
> models uses radar to detect objects in front of the RL.  If it determines
> that a collision is possible, it warns the driver by displaying the word
> "BRAKE" and sounding a tone.  If the system senses that a collision
> is probable, it tugs the driver's seatbelt and begins light braking.  If
> the impact is imminent, the system tightens the front belts and
> automatically applies hard braking to help reduce impact velocity and
> collision force.

    d.  A new *CMBS video on Acura.com for the 2009 Acura RL* explained that:

> …if CMBS determines that a collision is likely, a series of beeps
> sound, and the word "BRAKE" flashes on the RL's  multi-
> informational display.  If the driver responds appropriately by turning
> the wheel and/or braking to avoid the collision, CMBS will disengage.
> If the driver does not respond sufficiently, the CMBS system will
> trigger a brake actuator to apply light brake force, and will produce a
> slight tug on the driver's seatbelt.  The system will disengage again if
> the driver undertakes sufficient evasive action.  However, *if at any
> point* CMBS determines that a collision is unavoidable, the system
> *immediately enters* its third stage.  It will apply stronger brake force to
> mitigate the force of impact, and apply stronger seatbelt retraction for
> the driver and if present, for the front passenger, to better position
> them prior to the collision….

(ER419) (emphasis added).

D. **Four of 2,000 CMBS Purchasers—Including Two Named Plaintiffs—Complain to Honda That the System Did Not Operate As Advertised.**

Honda sold approximately 2,000 Acura RL vehicles equipped with CMBS through authorized Acura dealerships during the class period. (ER366-67.) Only four purchasers—*including* plaintiffs Kalsi and Michael Mazza—called Honda to complain that CMBS does not function as Honda advertised. (ER376-77.) Mazza also posted his CMBS concerns on an Internet blog, but several consumers disagreed with his contention that Honda misrepresented the CMBS. (ER353.) One commenter even attributed Mazza's complaints to his idiosyncratic understanding of how the system should work:

> Although I have not used your car, I really think your problem is a misunderstanding of the system. The system does not have to go through the stages. Depending on the situation it can instantly go to any stage depending on the situation.

(ER116, 354.) There is no dispute that CMBS works; it helped the named plaintiffs avoid as many as five potential collisions. (ER289.)

E. **Plaintiffs Bring This Action and The District Court Certifies A Nationwide Class.**

Plaintiffs allege that they interpreted Honda's marketing materials for the CMBS to mean that the system *always* would proceed through a sequential three-stage warning system, no matter how imminent the potential collision. (ER448-49.) Because in real-world driving conditions Stage Three may deploy without

-12-

progressing through Stage One and Stage Two, plaintiffs claim they were deceived. (ER456.) In particular, plaintiffs allege that Honda misrepresented the operation of CMBS and failed to disclose that it:

- "and its three separate stages of alert and mitigation may deploy late and fail to timely alert the driver to avoid a collision";

- "may fail to deploy and alert the driver with any or all three separate stages of alert and mitigation before a collision"; and

- "will not deploy in response to some obstacles on the road ahead."

(ER449.) In their renewed certification motion, plaintiffs also contended for the first time that Honda failed to disclose that CMBS may temporarily disengage in inclement weather. This theory is not in the complaint or plaintiffs' interrogatory responses. (ER274-75, 277-78.)

As noted above, the district court certified a nationwide class under the UCL, FAL, CLRA, and California's unjust enrichment law; the class encompassed all persons who bought or leased a new or used Acura RL with CMBS between August 17, 2005 and December 17, 2008. (ER1-29.) First, the district court held that California law applied to all claims of the entire nationwide class. Although the California statutes differed from the consumer protection statutes of other states on reliance, scienter, statute of limitations, standing, and available remedies, the district court—which addressed only the differences in remedies—concluded that

-13-

the conflicts were not "material." (ER18.)  In any event, the court held, because Honda is headquartered in California, the non-resident class members' home states do not "have any interest in applying *their* laws in this case" (ER19-21), and any interest those states might have is not "more impaired" than California's interest because other states' interests are not "implicated *in this litigation.*" (ER23.)

Second, the district court held that common issues predominated over individualized issues.  The court rested on presumptions of reliance and materiality. The court found a presumption of reliance permissible because, "[a]lthough the information about the limitations of the CMBS system may have been available in some media, there is little-to-no evidence that this information was made available or *reached* consumers prior to their purchase of the RL with CMBS System."  (ER26.)   In a related finding under the UCL, the court held that Honda's alleged representations and omissions about CMBS in various promotional materials were "material" to all class members even though evidence Honda presented showed that "a number of consumers disagreed with [the named plaintiffs'] conclusion that Honda had misrepresented the CMBS." (ER27.)   And the court concluded that the unjust enrichment claims could be tried on a class basis because Honda's promotional materials induced a "greater propensity" to purchase the CMBS.  (ER28.)

-14-

## SUMMARY OF ARGUMENT

To certify the nationwide class here, the district court presumed away the individualized inquiries required under the varying laws of 44 jurisdictions. At the behest of plaintiffs from Florida and Maryland—plaintiffs who account for half of the four buyers who complained to Honda about CMBS—the district court certified a nationwide class under *California* law: the UCL, the FAL, the CLRA, and the California common law of unjust enrichment. That did away with the diversity of law that otherwise applied to the claims of residents of 44 states. And the court then used broad presumptions to submerge the necessarily individual inquiries under each cause of action. That resolution of the predominance inquiry under Rule 23(b)(3) was a clear abuse of discretion.

First, contrary to the great weight of federal authority, the district court concluded that outcome-determinative variations in state consumer protection and unjust enrichment laws did not present "material" conflicts that might preclude the nationwide application of California law. Moreover, the court concluded that the nonresident class members' home states have no interest in having their laws applied to the claims of in-state consumers. Those legally erroneous assessments reflect the cavalier state-court approach toward nationwide classes that prompted Congress to enact the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), and bring Rule 23 to bear. The class certification process should not override other

states' policy decisions by extending California law nationwide—particularly in the absence of a single Californian who claims to have been deceived in the way plaintiffs allege.

Second, the district court disregarded the individualized questions of fact on the related issues of reliance, materiality and causation. Plaintiffs bore the burden of establishing predominance by a preponderance of the evidence. Yet the district court placed the burden on Honda to rebut a seemingly conclusive presumption that all members of the purported class found Honda's alleged misrepresentations and omissions material and relied on them. The district court did so even though plaintiffs provided no evidence of exposure to the challenged advertising, or reliance on it, that pertained to anyone besides the named plaintiffs themselves. To the contrary, unrebutted evidence showed both that Honda's advertisements varied widely over the years at issue, and that more thorough information was available to consumers at dealerships and in publicly available media. Indeed, only 4 persons—0.2% of the putative class—complained to Honda about any supposed misrepresentations about CMBS, and many buyers took issue with plaintiffs' theory of deception when one plaintiff aired it on the Internet. Nor is the result affected by the California Supreme Court's recent decision in the *Tobacco II Cases*, 207 P.3d 20 (Cal. 2009). That decision applied unique California state-law class certification principles that conflict with Rule 23 and Article III. In federal

-16-

class actions, not only the class representative, but class members as well must be injured and have standing. Finding predominance under the unjust enrichment claim required a further stretch because the equitable considerations important to that claim are especially individualized. The "close look" that Rule 23(b)(3) requires, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997), would have precluded certification because there was no evidence of predominance. Because it rests on improper factual and legal shortcuts, the certification should be vacated.

## STANDARD OF REVIEW

A district court's decision to certify a class is reviewed for abuse of discretion. *Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1237 (9th Cir. 2001). A court abuses its discretion if it applies an impermissible legal criterion or relies on clearly erroneous finding of fact. *See Molski v. Gleich*, 318 F.3d 937, 946 (9th Cir. 2003). The district court's choice-of-law determination is reviewed *de novo*. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187, *amended*, 273 F.3d 1266 (9th Cir. 2001).

## ARGUMENT

## I. THE DISTRICT COURT IMPROPERLY CURTAILED THE PREDOMINANCE ANALYSIS UNDER RULE 23 BY APPLYING CALIFORNIA LAW TO THE CLAIMS OF A NATIONWIDE CLASS.

An action may be certified for class treatment under Rule 23 only if the individual claims of each plaintiff involve questions of law or fact common to

-17-

every plaintiff's claim (Fed. R. Civ. P. 23(a)) and those common questions predominate over individual issues (*id.* 23(b)). The approximately 2,000 members of the nationwide class assert claims for recovery under three California statutes— the UCL, FAL, and CLRA—and the California law of unjust enrichment. All of the named plaintiffs and the vast majority of class members live outside California; they encountered the alleged misrepresentations, and bought their vehicles, in other states. The analysis of commonality and predominance must begin by determining which law governs each class member's claims. *See Zinser*, 253 F.3d at 1189.

Most federal courts have refused to certify nationwide classes under a single state's consumer protection and unjust enrichment laws. Indeed, "[a] principal purpose of the Class Action Fairness Act is to correct what former Acting Solicitor General Walter Dellinger has labeled a wave of 'false federalism[,]'" in which "state courts faced with interstate class actions have undertaken to dictate the substantive laws of other states by applying their own laws to ... other states." S. Rep. No. 109–14, at 61 (2005); *see id.* at 23-27. Congress understood and intended that federal courts would not follow this course. *Id.* at 63-64. The district court here went its own way in holding that all claims against Honda could be governed

by California law, shortcutting the predominance analysis and easing the path to certification.[3]

The Seventh Circuit recently warned of "the tendency, when the claims in a federal class action are based on state law, to undermine federalism." *Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742, 745 (7th Cir. 2008). The certification in this case sacrificed federalism for expedience.

### A. California's Choice-of-Law Rules Preclude Nationwide Application of California Law Here.

The district court's finding of predominance rested in large part on its decision to apply California law to the claims of the out-of-state plaintiffs and putative class members from 43 jurisdictions. Although it properly "look[ed] to the forum state's choice of law rules to determine the controlling substantive law," *Zinser*, 253 F.3d at 1187, the court misapplied California's choice-of-law analysis.

That three-step "governmental interest analysis" first considers whether "the applicable rule of law in each potentially concerned state … materially differs from the law of California." *Washington Mut. Bank, NA v. Sup. Ct.*, 15 P.3d 1071, 1080 (Cal. 2001). If there are material differences, the court must determine whether each other state "has an interest in having its own law applied," and, if so, whether

---

[3] Some courts have certified nationwide *settlement* classes under a single state's law. Those decisions should be disregarded in deciding whether to certify a litigation class because "a district court need not inquire whether the case, if tried,

-19-

the interests of that state or those of California would be "'more impaired' if its law were not applied." *Id.* at 1081.

**1.** ***The Substantial and Outcome-Determinative Variations Among State Consumer Protection And Unjust Enrichment Laws Are "Material."***

Unless "the relevant laws of each state are identical," the court must determine whether the laws of the other implicated states "materially differ[] from the law of California." *Washington Mutual*, 15 P.3d at 1080. No binding California precedent defines "material" for this purpose, but courts applying similar analyses have found material those differences that "have a significant *possible* effect on the outcome of the trial." *Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 331 (2d Cir. 2005) (emphasis in original) (internal quotation marks omitted); *In re Bankers Trust Co.*, 752 F.2d 874, 882 (3d Cir. 1984) ("significant effect on the outcome of the trial"). *Cf. Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.,* 17 Cal. Rptr. 2d 713, 718 (Cal. App. 1993) (engaging in full choice-of-law analysis because the "substantive law of California leads to a different result than the substantive law of Wisconsin"). *See also Rivera v. Bio Engineered Supplements & Nutrition, Inc.*, 2008 WL 4906433, at *2 (C.D. Cal. Nov. 13, 2008).

---

would present intractable management problems, ... for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

a. *State Consumer Protection Laws Vary Materially.*

As court after court has held in declining to certify similar nationwide classes, state consumer laws "vary considerably." *In re Bridgestone/Firestone*, 288 F.3d 1012, 1018 (7th Cir. 2002). Indeed, "the different states have material variances between their consumer protection laws …." *In re St. Jude Medical, Inc.*, 425 F.3d 1116, 1120 (8th Cir. 2005).[4]

In reaching the contrary conclusion, the district court ignored numerous potentially outcome-determinative variations notwithstanding the comprehensive explication of the divergences in Honda's comprehensive appendix of state law variations. (ER117-256.) Almost every element of every claim reflects substantial variation among jurisdictions.

For example, reliance is required for CLRA claims "sounding in fraud." *Buckland v. Threshold Enterprises, Ltd.*, 66 Cal. Rptr. 3d 543, 551 (Cal. App. 2007). Under the UCL, named plaintiffs in class actions must plead and prove "actual reliance" to have standing to press a UCL claim (*Tobacco II*, 207 P.3d at

---

[4]   Many district courts have reached the same conclusion. *See In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 147 (S.D.N.Y. 2008) (some "differences" in state consumer-fraud law "are outcome determinative"); *In re Prempro*, 230 F.R.D. 555, 564 (E.D. Ark. 2005) ("consumer fraud and unfair competition laws of the states differ with regard to the defendant's state of mind, type of prohibited conduct, proof of injury-in-fact, available remedies, and reliance"); *Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206, 219 (E.D. Pa. 2000); *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 194 F.R.D. 484, 489 (D.N.J. 2000).

-21-

39), although under the unique California representative action they need not demonstrate that absent class members also have standing (*id.* at 34).[5] Yet this reliance requirement materially conflicts with the consumer protection statutes of Ohio, Florida, New Jersey, and Massachusetts, and New York, among others, which do not require reliance.[6] Given the significant questions regarding which class members saw or cared about which advertisements, distinctions in the reliance standard could be dispositive.

The district court did not address these outcome-determinative variations or those in other claim elements. For example, although scienter is not required for a UCL, FAL, or CLRA claim, the consumer protection statutes of many states do require some form of scienter, whether knowledge, intent, or willfulness.[7]

---

[5] For most purposes we treat questions under the UCL and the FAL together.

[6] *See Guth v. Allied Home Mtg. Capital Corp.*, 2008 WL 2635521, at *6-*7 (Ohio. App. 2008); *Egwuatu v. South Lubes, Inc.*, 976 So.2d 50, 53 (Fla. App. 2008); *DaBosh v. Mercedes Benz USA, Inc.*, 874 A.2d 1110, 1121 (N.J. Super. App. 2005); *Sebago, Inc. v. Beazer East, Inc.*, 18 F. Supp. 2d 70, 103 (D. Mass. 1998) (Massachusetts law); *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 731 N.E.2d 608, 611-12 (N.Y. 2000).

[7] *See*, *e.g.*, Colo. Rev. Stat. 6-1-105(1)(e), (g), (u) (knowingly); Idaho Code § 48-603 (knowledge) ; 815 Ill. Comp. Stat. 505/2 (construed in *Siegel v. Levy Org. Dev. Co.*, 607 N.E.2d 194, 198 (Ill. 1992) (intent to induce reliance)); Kan. Stat. Ann. §§ 50-626(a), (b)(2)-(4) (willful, knowing, or with reason to konw); Mich. Comp. Laws Ann. § 445.911(6) (intent to deceive); Nev. Rev. Stat. Ann. 598.0915 (knowingly); N.J. Stat. Ann. § 56:8-2 (knowledge and intent for omissions); Or. Rev. Stat. § 646.638(1) (willful for damages); Utah Code §§ 13-11-4(2), 13-11-5(3) (knowing or intentional); W. Va. Code § 46A-6-102(M) (intent to induce reliance). *See also Thompson v. Am. Tobacco Co.*, 189 F.R.D. 544, 553 (D. Minn.

Differing mental states, of course, require differing proof. Many more states do not permit class actions under their consumer protection statutes.[8] And the statutes of limitations for the UCL (4 years, Cal. Bus. & Prof. Code § 17208) and the CLRA (3 years, Cal. Civ. Code § 1783) conflict with the 1- to 6-year limitations periods of similar statutes in other states, which may bar some class members' claims.[9]

There also are material variations in the remedies available under different state consumer protection laws. Restitution and injunctive relief are the only remedies available under the UCL. Cal. Bus. & Prof. Code § 17203; *Korea Supply v. Lockheed Martin Corp.*, 63 P.3d 937, 943 (Cal. 2003). Yet other states'

---

1999) (intent to induce reliance) (Minnesota law); *Debbs v. Chrysler Corp.*, 810 A.2d 137, 155 (Pa. Super. 2002) (knowledge or reckless disregard); *Cooper v. GGGR Invest., LLC*, 334 B.R. 179, 188 (E.D. Va. 2005) (Virginia law) (intent).

[8] *See* Ala. Code § 8-19-10(f); Ga. Code Ann. § 10-1-399 (a); *Arnold v. Microsoft Corp.*, 2001 WL 193765, at * 6 (Ky. Cir. Ct. July 21, 2000); La. Rev. Stat. Ann. § 51:1409(A); Miss. Code Ann. § 75-24-15(4); Va. Code Ann. § 59.1-204, -204.1 ("individual action"); *Am. Online v. Sup. Ct.*, 108 Cal. Rptr. 2d 699, 712 (Cal. App. 2001) (noting "absence of any provision" permitting class actions under Virginia Act).

[9] Fla. Stat Ann. § 95.11(3)(f) (4 years); 815 Ill. Comp. Stat. 505/10a(e) (3 years); Md. Code Ann. Cts. & Jud. Proc. § 5-101 (3 years); Mass. Gen. Law ch. 260, § 5(A) (4 years); N.J. Stat. Ann. § 2A:14-1 (6 years); *Galden v. Guardian Life Ins. Co. of Am.*, 750 N.E.2d 1078, 1082 (N.Y. 2001) (3 years); Ohio Rev. Code § 1345.10(c) (2 years); Or. Rev. Stat. § 646.638(6) (1 year from deceptive practice); 42 Pa. Cons. Stat. § 5525(8) (4 years); Tex. Bus. & Com. Code § 17.565 (2 years); Va. Code Ann. § 59.1-204.1(A) (2 years); Wash. Rev. Code § 19.86.120 (4 years).

consumer protection statutes permit actual damages,[10] treble damages,[11] punitive damages,[12] and attorney's fees.[13]

The district court disregarded the variations in remedies on the ground that "a CLRA violation, which serves as a predicate UCL violation under the UCL's 'unlawful' prong, provides for each of the remedies [Honda] contends would be unavailable with the application of California law to a nationwide class."  (ER19.) That effort to mix and match causes of action to gloss over material differences was improper:  the "conflicts test must be applied to *each* claim upon which certification is sought." *Zinser*, 253 F.3d at 1188 (emphasis in original).  And plaintiffs also seek UCL relief for conduct that allegedly is "fraudulent" or "unfair" rather than "unlawful" (Cal. Bus. & Prof. Code § 17200).  *See* ER 465-69.

More fundamentally, even if plaintiffs recovered punitive damages under the

---

[10]  Fla. Stat. Ann. § 501.211; 815 Ill. Comp. Stat. 505/10a(a); Md. Code Ann., Com. Law § 13-408(a); Mass. Gen. Laws ch. 93A § 9(3); N.J. Stat. Ann. § 56:8-19; *Super Glue Corp. v. Avis Rent A Car Sys., Inc.*, 517 N.Y.S.2d 764, 767 (N.Y. App. Div. 1987); Ohio Rev. Code Ann. § 1345.09(A) & (B); 73 Pa. Cons. Stat. § 201-9.2(a); Tex. Bus. & Com. Code § 17.50(b), (d); Wash. Rev. Code Ann. § 19.86.090.

[11]  N.J. Stat. Ann. § 56:8-19; Ohio Rev. Code Ann. § 1345.09(B); 73 Pa. Cons. Stat. § 201-9.2(a); Wash. Rev. Code Ann. § 19.86.090.

[12]  815 Ill. Comp. Stat. 505/2AA; Tex. Bus. & Com. Code § 17.50.

[13]  Fla. Stat. Ann. § 501.211; 815 Ill. Comp. Stat. 505/10a(c); Md. Code Ann., Com. Law § 13-408(b); Mass. Gen. Laws ch. 93A § 9(4); N.J. Stat. Ann. § 56:8-19; Ohio Rev. Code Ann. § 1345.09(F); 73 Pa. Cons. Stat. § 201-9.2(a); Tex. Bus. & Com. Code § 17.50; Wash. Rev. Code Ann. § 19.86.090.

CLRA, extending them to a nationwide class would violate the Due Process Clause because "[a] State cannot punish a defendant for conduct that may have been lawful where it occurred. … Nor, as a general rule, does a State have a legitimate interest in imposing punitive damages for unlawful acts committed outside of the State's jurisdiction." *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 421 (2003) (citations omitted). Thus, punitive damages could not be imposed based on a violation of one of the CLRA's substantive proscriptions if the conduct was lawful where it occurred.

      b.    *State Unjust Enrichment Jurisprudence Varies Materially.*

As most courts to address the matter have found, unjust enrichment jurisprudence varies materially from state to state. *See Rivera*, 2008 WL 4906433 at *2 (declining to certify nationwide class under California law for this reason). In California, a plaintiff must show (1) that the defendant was enriched at the plaintiff's expense, and (2) under the circumstances between the parties, it is unjust for the defendant to retain the benefit. *See McBride v. Boughton*, 20 Cal. Rptr. 3d 115, 122 (Cal. App. 2004). That is far from a universal standard; state courts "do not articulate a single set of elements by which they may obtain consistent results." Candace S. Kovacic, *A Proposal to Simplify Quantum Meruit Litigation*, 35 Am. U. L. Rev. 547, 559 (1986). For example,

> Some states do not specify the misconduct necessary to proceed, while others require that the misconduct include dishonesty or fraud. Other states only allow a claim of unjust enrichment when no adequate legal remedy exists. Many states, but not all, permit an equitable defense of unclean hands. Those states that permit a defense of unclean hands vary significantly in the requirements necessary to establish the defense.

*Thompson v. Bayer Corp.*, 2009 WL 362982, at *5 (E.D. Ark. Feb. 12, 2009) (quoting *Clay v. American Tobacco Co.,* 188 F.R.D. 483, 501 (S.D. Ill. 1999)).[14]

There is no uniform definition of "unjust." Minnesota defines unjust to "mean illegally or unlawfully." *Servicemaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 306 (Minn. 1996) (internal quotations omitted). Yet neither Illinois nor New York requires fault to prove unjust enrichment. *Firemen's Annuity & Benefit Fund v. Municipal Employees' Annuity & Benefit Fund*, 579 N.E.2d 1003, 1007 (Ill. App. 1991); *Mayer v. Bishop*, 551 N.Y.S.2d 673 (N.Y. App. Div. 1990). And New Hampshire allows unjust enrichment claims against a defendant who "innocently receive[d] a benefit and passively accept[ed] it." *Petrie-Clemons v. Butterfield*, 441 A.2d 1167, 1172 (N.H. 1982).

Other elements of unjust enrichment claims also vary. In Georgia, for example, unjust enrichment is proven when "the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the

---

[14] *See* also. *e.g..*, *In re ConAgra Peanut Butter Prods. Liab. Litig*., 251 F.R.D. 689, 695-96 (N.D. Ga. 2008) (highlighting several material differences in state

benefited party equitably ought to return or compensate for." *Georgia Title Distribs., Inc. v. Zumpano Enters., Inc.*, 422 S.E.2d 906, 908 (Ga. App. 1992). In Massachusetts, "the plaintiff" must "demonstrate[] that [the] defendant was enriched under circumstances which make retention of money unjust." *Maruho Co. v. Miles, Inc.*, 1993 WL 81453, at *6 (D. Mass. March 8, 1993).

The states that have articulated more precise elements differ markedly in their unjust enrichment standards. For example:

- Texas and Washington require that (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) who accepted, used and enjoyed them; and (4) under circumstances that provided reasonable notice that the plaintiff expected to be paid.[15]

- By contrast, Arizona, Delaware, and Louisiana require (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) an absence of "justification" or "cause" for the

---

unjust enrichment laws); *Prempro*, 230 F.R.D. at 563; *In re Baycol Prods. Litig.*, 218 F.R.D. 197, 214 (D. Minn. 2003).

[15] *See Bashara v. Baptist Mem. Hosp.*, 685 S.W.2d 307, 310 (Tex. 1985); *Bailie Communications, Ltd. v. Trend Bus. Sys., Inc.*, 810 P.2d 12, 17 (Wash. App. 1991).

enrichment and impoverishment; and (5) the absence of a remedy provided by law.[16]

- Idaho, Kentucky, Rhode Island, and Tennessee use these terms: (1) A benefit conferred upon the defendant by the plaintiff; (2) the defendant's appreciation of the benefit; and (3) the defendant's acceptance of the benefit under circumstances that make it inequitable for him to retain it without paying its value.[17] Florida, Missouri, Nevada, and Pennsylvania additionally require proof that the defendant **retained** the benefit under circumstances that make it inequitable for him not to pay its value.[18]

---

[16]   *See Community Guardian Bank v. Hamlin*, 898 P.2d 1005, 1008 (Ariz.. 1995); *Jackson Nat'l Life Ins. Co. v. Kennedy*, 741 A.2d 377, 393-94 (Del. Ch. 1999); *Minyard v. Curtis Prods., Inc.*, 205 So.2d 422, 432 (La. 1967).

[17]   *See Aberdeen-Springfield Canal Co. v. Peiper*, 982 P.2d 917, 923 (Idaho 1999); *Guarantee Elec. Co. v. Big Rivers Elec. Corp.*, 669 F. Supp. 1371, 1380-81 (W.D. Ky. 1987) (Kentucky law); *Anthony Corrado, Inc. v. Menard & Co. Bldg. Contractors*, 589 A.2d 1201, 1201-02 (R.I. 1991); *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 155 (Tenn. 1966).

[18]   *See Swindell v. Crowson*, 712 So.2d 1162, 1163 (Fla. App. 1998) (per curiam); *Ernst v. Ford Motor Co.*, 813 S.W.2d 910, 918 (Mo. App. 1991); *Topaz Mut. Co. v. Marsh*, 839 P.2d 606, 613 (Nev. 1992); *Styer v. Hugo*, 619 A.2d 347, 350 (Pa. Super. 1993).

- Kansas, Maryland, and Wisconsin permit proof that the defendant either appreciated or merely knew of the benefit and either accepted or retained it under circumstances making it inequitable for him not to pay for it.[19]

These divergences create the potential for inconsistent and unpredictable outcomes across jurisdictions.

The variations identified above are "material" under any reasonable choice-of-law analysis. *See In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 147, 150 (S.D.N.Y. 2008) (finding a "true conflict" between state consumer protection and unjust enrichment laws under California's choice-of-law analysis). The district court's contrary holding was erroneous.

## B. The District Court Compounded Its Error By Concluding That No State Other Than California Has An Interest In This Litigation.

When the relevant state laws materially differ, the trial court must "determine what interest, if any, each state has in having its own law applied to the case." *Washington Mutual*, 15 P.3d at 1080. The district court held that no state other than California has an interest in this litigation. This Court has held, to the contrary, that "every state has an interest in having its law applied to its resident claimants." *Zinser*, 253 F.3d at 1187. And class members' home states have an

---

[19] *See J.W. Thompson Co. v. Welles Prods. Corp.*, 758 P.2d 738, 745 (Kan. 1988); *County Comm'rs of Caroline County v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 607 n.7 (Md. 2000); *Watts v. Watts*, 405 N.W.2d 303, 313 (Wis. 1987).

interest not only in protecting consumers from in-state injuries caused by foreign corporations but also in delineating the scope of recovery under their laws, according to their often "different conceptions of what adequate compensation is." *Spence v. Glock, Ges.m.b.H.,* 227 F.3d 308, 314 (5th Cir. 2000).

The California courts seek guidance from "the modern, mainstream approach adopted in the Restatement [(Second) of Conflict of Laws]." *Nedlloyd Lines, B.V. v. Superior Court*, 824 P.2d 1148, 1151 (Cal. 1992). The Restatement analysis of comparative state interests considers "(a) the place ... where the plaintiff acted in reliance upon the defendant's representations, (b) the place where the plaintiff received the representations, (c) the place where the defendant made the representations, (d) the ... place of incorporation and place of business of the parties." Restatement (Second) of Conflict of Laws § 148.

In addition, whenever "any two of the above-mentioned contacts, *apart* from the defendant's domicile, state of incorporation or place of business, are located wholly in a single state, this will usually be the state of the applicable law with respect to most issues." *Id.*, Com. j. The district court summarily dismissed the interests of the class members' home jurisdictions even though in almost every instance each class member's home state—and not California—would be both "the place ... where the plaintiff acted in reliance upon the defendant's representations" and "the place where the plaintiff received the representations." *Id.* § 148. There

-30-

was no evidence that the named plaintiffs (or absent class members outside California) received the alleged representations or acted on them in California. Rather, those events—and any deception, reliance or injury—occurred at the time of purchase in other states. *See Grand Theft Auto*, 251 F.R.D. at 149. As this Court has recognized, "[a]lthough the situs of the injury is no longer the sole consideration in California choice-of-law analysis, California courts have held that, 'with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest.'" *Abogados v. AT&T, Inc.*, 223 F.3d 932, 935 (9th Cir. 2000) (quoting *Hernandez v. Burger,* 162 Cal. Rptr. 564, 568 (Cal. App. 1980)).

The Restatement analysis and *Abogados* lead to a straightforward result reinforced by constitutional considerations. The Supreme Court has recognized that, as a "basic principle of federalism[,] each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders." *State Farm*, 538 U.S. at 422. Most of the states have acted to protect their own citizens by prohibiting deceptive trade practices, but they "need not, and in fact do not, provide such protection in a uniform manner." *BMW of North Am. v. Gore*, 517 U.S. 559, 569 (1996). To the contrary, each state has made judgments about laws that will best protect its residents while balancing other state interests, resulting in

"a patchwork of rules representing the diverse policy judgments of lawmakers in 50 States." *Id.* at 570.

For example, New Jersey intended its Consumer Fraud Act "to be 'one of the strongest consumer protection laws in the nation.'" *New Mea Constr. Corp. v. Harper*, 497 A.2d 534, 543 (N.J. Super. 1985). Similarly, in 1993 Florida added language to its Deceptive and Unfair Trade Practice Act to protect "the 'consuming public' from those who engage in '*unconscionable' acts or practices*," *Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*, 693 So.2d 602, 606-06 (Fla. App. 1997)—a breadth deleted from early drafts of the CLRA by the California Legislature (ER369-74), which instead chose to "define [unlawful] practices in a fair and specific manner." (ER374.) Massachusetts likewise broadened its Consumer Protection Act to cover, not only individuals who suffer a "loss of *money or property* … as a result of … an unfair or deceptive practice," but also those who show any form of "injury" due to an "act or practice declared to be unlawful" by the statute. *Leardi v. Brown*, 474 N.E.2d 1094, 1101 (Mass. 1985). This amendment "substantially broadened the class of persons who could maintain actions." *Id.* (citations omitted). In stark contrast, California citizens approved Proposition 64 and inserted the same language that Massachusetts deleted. *See* Cal. Bus. & Prof. Code § 17204.

Against these state interests, plaintiffs contended that only California's interests are implicated because the allegedly deceptive advertising "emanated from" California. That one-factor test has attracted little judicial support.[20] That is because the primary focus of state consumer protection laws is to protect consumers in each state. The contrary view would allow California to supplant its sister states' regulation of the sale and marketing of products, and the protection of consumers, within their borders so long as a California company was involved.

Even if the alleged deceptive conduct "emanated from" California, that fact does not displace others states' interest in this litigation. There is no harm, and no cause of action, unless the alleged misrepresentation is communicated and has an effect. "Fraud in the air, so to speak, is not actionable. It is the operative effect of the fraud that gives rise to the cause of action and conditions the extent of recovery." *Chisholm v. House*, 183 F.2d 698, 703 (10th Cir. 1950). No consumer harm could occur until someone heard and acted upon the allegedly deceptive representations by buying a product that (plaintiffs claim) had been

---

[20] *See Lyon*, 194 F.R.D. at 217 (rejecting plaintiffs' claim that Illinois law should apply because the common misrepresentations all originated from defendant's management in Illinois); *see also In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 348-49 (D.N.J. 1997) (laws of plaintiffs' home states applied even though plaintiffs alleged that Ford's headquarters are located in Michigan, where any relevant decisions were made and any misrepresentations originated).

-33-

misrepresented. *See Grand Theft Auto*, 251 F.R.D. at 149. Yet those acts occurred in other states, and (plaintiffs claim) injured other states' citizens.

Finally, California has no legitimate interest in imposing its own sense of justice nationwide. There is a strong presumption *against* the extraterritorial application of state statutes. That presumption is grounded in the constitutional limitations on a state's power to regulate activities occurring outside its borders. *BMW*, 517 U.S. at 568-73. Under the logic of the decision below, California law applies nationwide to virtually any consumer action against a California corporation. But other states have greater interests in protecting their own citizens, and regulating commerce within their borders, than does California in extending its legal rules throughout the nation. The district court was wrong to conclude otherwise.

### C. Other States' Interests Would Be "More Impaired" If California Law Applied Nationwide.

The final step of the choice-of-law analysis requires a determination of "which state's interest would be more impaired if its policy were subordinated to the policy of the other state." *Offshore Rental Co. v. Continental Oil, Co.*, 583 P.2d 721, 726 (Cal. 1978); *Washington Mutual*, 15 P.3d at 1081. This "comparative impairment" analysis "does not involve the court in 'weighing' the conflicting governmental interests 'in the sense of determining which conflicting law manifest[s] the 'better' or the 'worthier' social policy on the specific issue"

-34-

because "'[a]n attempted balancing of conflicting state policies in that sense ... [would be] difficult to justify in the context of a federal system in which, within constitutional limits, states are empowered to mold their policies as they wish.'" *Offshore Rental*, 583 P.2d at 726 (citations omitted).

In concluding that "no state has an interest in *denying* its citizens recovery under California's potentially more comprehensive consumer protection laws" (ER20), however, the district court necessarily concluded that California law is better. Yet different states' consumer fraud statutes differ precisely because each state has chosen a different balance between protecting its residents and maintaining economic growth and business development, and each state, no doubt, views its statute as the best. *See* pp. 31-32, *supra*. *See also Tucci v. Club Mediterranee, S.A.*, 107 Cal. Rptr. 2d 401, 408-409, 411 (Cal. App. 2001) (noting that interests served by workers compensation laws include "fostering business investment and development" and "defining and limiting liability").

The comparative impairment inquiry allocates respective spheres of influence to achieve "the maximum attainment of underlying purpose by *all* governmental entities." *Kearney v. Salomon Smith Barney, Inc.*, 137 P.3d 914, 918 (Cal. 2006) (internal quotations omitted; emphasis retained). Just as a corporation's home state "has no legitimate interest in protecting nonresident share-holders" as opposed to "local investors" (*Edgar v. MITE Corp.*, 457 U.S. 624, 644

-35-

(1982)), "California has no greater interest in protecting other states' consumers than other states have in protecting California's." *Discover Bank v. Sup. Ct.*, 36 Cal. Rptr. 3d 456, 462 (Cal. App. 2005). California's interest in regulating unlawful conduct within its borders is fully served by allowing California residents to sue a California-based corporation under California law. Yet applying California law to the entire nationwide class asserted here would severely undermine the varying and equally considered policy judgments of 43 other jurisdictions.

In this regard, the governmental interest analysis requires that courts consider "the relative commitment of the respective states to the laws involved," "the history and current status of the states' laws," and "the function and purpose of those laws." *Washington Mutual*, 15 P.3d at 1081. This analysis reinforces the need to apply the law of each class member's state of purchase.

For example, the Pennsylvania legislature in December 1996 expanded the state's consumer protection law to include "any other fraudulent *or deceptive* conduct which creates a likelihood of confusion or misunderstanding," removing earlier requirements to satisfy the elements of common-law fraud. *Commonwealth v. Percudani*, 825 A.2d 743, 746-47 (Pa. Commw. 2003). The Ohio Consumer Sales Practices Act permits recovery for "any damages," and including actual damages, treble damages, and attorney's fees. *Einhorn v. Ford Motor Co*, 548

N.E.2d 933, 936 (Ohio 1990) (emphasis added). Similarly, the New York Consumer Protection Act provides "a mechanism to protect the public from 'all' deceptive acts and practices." *N.Y. Public Int. Research Group, Inc. v. Insurance Inf. Institute*, 531 N.Y.S.2d 1002, 1006 (N.Y. Sup. 1988). Consistent with this objective, the Act has relaxed standing requirements which require that plaintiffs prove actual injury, but not necessarily pecuniary harm. *Stutman v. Chem. Bank*, 731 N.E.2d 608, 612 (N.Y. 2000). The interests of these states will be "more impaired" if California's more restrictive consumer protection statutes are applied nationwide. Conversely, the interests in fostering business activity promoted by the states that limit liability to acts undertaken with scienter (*see* p. 22 & n.7, *supra*) would be more impaired by the imposition of California's looser liability standards.

Other states have made similar policy decisions on the amount and types of damages that will be available under their state consumer protection laws, who may sue, and whether a class action device is available. The states where class members saw or heard the alleged misrepresentations and made purchases as a result have the greater interest in enforcing their laws. *See Grand Theft Auto*, 251 F.R.D. at 150 ("the interests of the state of purchase would be most impaired if its consumer-fraud laws were not applied"). The district court's conclusion that "no state has an interest in denying its residents recovery under California law" asks

the wrong question and resulted in the court's application of the wrong substantive law to the varying claims of the out-of-state plaintiffs.

### D. The Need to Apply The Laws Of Multiple Jurisdictions Precludes Predominance Of Any Common Legal Issues.

As this Court has recognized, the "'proliferation of disparate factual and legal issues is compounded exponentially' when [the] law[s] of multiple jurisdictions apply." *Zinser*, 253 F.3d at 1190 (quoting *Castano v. American Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996)). Because the law of multiple jurisdictions must apply here, the variances in state law will overwhelm any common issues and preclude a finding of predominance.[21] Here, plaintiffs' claims would involve hundreds of issues and sub-issues, requiring the Court to examine, state by state, each issue on which there was a conflict. Indeed, plaintiffs did not even attempt, much less carry out, the "thorough analysis of the applicable state laws" that might have provided support for a conclusion "that state law variations will not swamp common issues and defeat predominance." *Washington Mutual*, 15 P.3d at 1085. The district court cannot sidestep this significant predominance hurdle by certifying a nationwide class under California laws that materially conflict with those of other interested states.

---

[21] *See Zinser*, 253 F.3d at 1189 ("[W]here the applicable law derives from the law of the 50 states, . . . differences in state law will compound the disparities among class members from the different states") (internal quotation marks omitted); *see also Washington Mutual*, 15 P.3d at 1083.

-38-

## II. THE CLASS CERTIFICATION RESTS ON UNSOUND PRESUMPTIONS THAT EACH CLASS MEMBER WAS EXPOSED TO THE SAME REPRESENTATIONS ABOUT THE CMBS, ARRIVED AT THE SAME MISUNDERSTANDING AS THE NAMED PLAINTIFFS, FOUND THAT MISUNDERSTANDING EQUALLY MATERIAL, AND RELIED ON IT IN THE SAME WAY.

Rule 23 requires a "definitive assessment" of predominance. *In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 485 (2d Cir 2008). The district court's finding that common issues predominated over individualized ones imposed a legally unwarranted presumption that excused plaintiffs' complete failure to establish that factor with evidence. This Court should vacate the class certification based on what effectively was a presumption of predominance.

### A. The District Court Improperly Presumed Reliance To Find That Common Questions Of Fact Predominate Under The CLRA.

Class certification analysis under Rule 23 requires a "careful, fact-based approach." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 326 (3d Cir. 2008). The district court failed to conduct that rigorous factual analysis, relying instead on the evidence-free application of a presumption of reliance to find that common issues both existed and predominated in plaintiffs' CLRA claims. That legal error invalidates the certification of the class.

"[A]ctual reliance is an element of a CLRA claim sounding in fraud." *Buckland*, 66 Cal. Rptr. 3d at 552; *see* Cal. Civ. Code § 1780 (a) (CLRA claimants must have sustained damage "as a result of the use or employment of a proscribed

-39-

method, act or practice"). Thus, "a plaintiff suing under the CLRA for misrep-

resentations in connection with a sale [must] plead and prove she relied on a

material misrepresentation." *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939,

946 (S.D. Cal. 2007) (citing *Caro v. Procter & Gamble Co*., 22 Cal. Rptr. 2d 419,

433 (Cal. App. 1993)).

In certifying a class, however, the district court entirely overlooked the

necessarily individualized inquiry into whether consumers were even *exposed* to

any particular advertising over a three-year period. Much less did the court

consider which consumers (if any) found the alleged misrepresentations and

omissions in certain advertising material to their decision to purchase the package

including CMBS, or which consumers in fact relied on the advertising, and which

consumers instead were aware of the allegedly concealed information because of

Honda's disclosures in other pre-sale materials—yet proceeded with a purchase

fully aware of the how CMBS works.

The district court avoided those factual inquiries by simply presuming that

each of the nearly 2,000 putative class members received and relied on Honda's

alleged representations and omissions while remaining unaware of Honda's pre-

sale materials disclosing the allegedly concealed information. This assumed away

individual distinctions in critical elements of plaintiffs' claims, and misapplied

both California law and the federal law of class certification. "[A]ctual, not

-40-

presumed, conformance with the Rule 23 requirements is essential." *Hydrogen Peroxide*, 552 F.3d at 326 (internal quotation marks omitted). The certification decision here falls short of established Rule 23 standards.

### 1. *No Presumption of Reliance Is Available Under California Law.*

The district court concluded that plaintiffs are "entitled to an inference of reliance" and that "common issues of fact predominated as to the question of materiality" even though it acknowledged that "information about the limitations of the CMBS system may have been available in some media" Honda made available to consumers pre-sale. (ER26.)

To presume away the individual communications and experiences, the district court relied primarily on *Massachusetts Mutual Life Insurance Co. v. Superior Court*, 119 Cal. Rptr. 2d 190 (Cal. App. 2002)—a decision that itself rested on a mistaken assumption that the CLRA applies to insurance contracts. *See Fairbanks v. Sup. Ct.*, 205 P.3d 201, 205 (Cal. 2009). The putative class members in *Massachusetts Mutual* purchased defendant's "vanishing premium" policies after they all heard the same scripted "sales presentation" through defendant's agents—a presentation that did not disclose the company's alleged intent not to provide sufficient dividends to cover premium payments, removing the reason for the purchase. 119 Cal. Rptr. 2d at 192. Although the *Massachusetts Mutual* court held that an "inference of reliance" was appropriate on those facts (*id.* at 198-99),

-41-

it also noted that no such inference could arise if subsequent discovery revealed that policy holders were provided with "such a variety of information" as to make "a single determination as to materiality" impossible. *Id.* at 198 n.5. Thus, rather than making class certification under the CLRA a matter of presumption rather than proof, the *Massachusetts Mutual* court found unusually strong and uniform facts establishing that reliance, materiality, causation, and damages could be satisfied on a class-wide basis. No such facts or findings are evident here.

The district court's far broader and more general presumption of reliance finds no more support in *Vasquez v. Superior Court*, 484 P.2d 964 (Cal. 1971) or *Occidental Land, Inc. v. Superior Court*, 556 P.2d 750 (Cal. 1976). Like *Massachusetts Mutual*, *Vasquez* involved an *identical* oral misrepresentation that was "recited by rote to every member of the class." 484 P.2d at 971. The court held that, in light of the allegations that identical misrepresentations were made to each class member, the plaintiffs could establish a false representation and justifiable reliance without individual testimony. *Id.* at 972-73.

In *Occidental*, the California Supreme Court emphasized that *Vasquez* permits a class-wide inference of reliance only when each class member heard an identical misrepresentation. The misrepresentation appeared in a public report that "[e]ach purchaser was *obligated to read* … and *state in writing* that he had done so." *Occidental*, 556 P.2d at 751 (emphasis added).

-42-

By contrast, in *Mirkin v. Wasserman*, 858 P.2d 568 (Cal. 1993), the California Supreme Court refused to extend a presumption of reliance to cases based on omissions. *Id.* at 574. The court also reiterated that a class-wide inference of reliance may arise, if at all, only "*when the same material misrepresentations have actually been communicated to each member of a class*." *Id.* at 575 (emphasis in original). Here, however, there is no evidence as to how many of the absent class members saw any of the varying communications about the CMBS, much less which they remembered at the time of purchase.

As authoritatively construed, the CLRA does not permit any presumption of reliance (and thus of causation and injury), much less a class-wide one. The California Supreme Court recently held that "in order to bring a CLRA action, not only must a consumer be exposed to an unlawful practice, but some kind of damage must result." *Meyer v. Sprint Spectrum L.P.*, 200 P.3d 295, 299 (Cal. 2009). The court observed that the CLRA's standing provision requires a "causal link between 'any damage' and the unlawful practice." *Id.* And the court further held that the CLRA does not provide a remedy for "situations in which an allegedly unlawful practice under the CLRA has not resulted in some kind of tangible increased cost or burden to the consumer." *Id.* at 301. *Meyer* makes clear that the CLRA encompasses only cases where actual damage was actually caused by the challenged business practice; causation and injury cannot be presumed.

-43-

Any contrary suggestion in *Massachusetts Mutual* is no longer valid as a matter of California law.

Plaintiffs' scant evidence fell far short of supporting a presumption of reliance even if one were available. They presented no evidence that a single other buyer of an Acura RL with CMBS actually saw *any* of the communications alleged to be misleading, much less that they all viewed the *same* communications. Plaintiffs also presented no evidence that a single other buyer understood the communications to mean that the CMBS system would always deploy all three possible stages in sequence and would never fail. Plaintiffs made no effort to prove that any absent class members, let alone most buyers, found the alleged omissions material, or would have altered their behavior had they known how the CMBS actually performed. And plaintiffs presented no evidence that the purchasers of *used* vehicles—many of whom had no transaction or communication with Honda at all—viewed, interpreted, or relied on the challenged communications.

Yet, as explained above (at 6-11), several sources of information about the CMBS were available during each model year. There was no standard script or formulation; rather, each source communicated something different. Even within the same model year, some promotional materials did not discuss the CMBS "stages," while others disclosed the very information plaintiffs claim was

-44-

concealed. (ER298, 438-39.) Indeed, the district court recognized that such disclosures were made in pre-purchase materials available at Acura dealerships on the CIC, online on OwnerLink, and in publications like "Acura Style" magazine (ER25-26.) That "variety of information" makes "a single determination as to materiality" impossible, and precludes the use of a class-wide inference of reliance even under *Massachusetts Mutual*. 119 Cal. Rptr. 2d at 198 n.5. More important, under Rule 23(b)(3), "a fraud case" of this kind is "unsuited for treatment as a class action" because "there was material variation in the representations made" and, so far as the evidence shows, equal variation likely "in the kinds or degrees of reliance by the persons to whom they were addressed." Fed. R. Civ. P. 23(b)(3), 1966 Adv. Comm. Notes. Consumers who reviewed the disclosures could not have been misled in the way plaintiffs allege, yet the district court assumed away the individualized inquiry necessary to resolve the materiality of Honda's alleged misrepresentations and omissions under those circumstances.

### 2. *The District Court Improperly Allocated To Honda The Burden of Rebutting Improperly Presumed Predominance.*

The district court's certification of CLRA claims also rested on an erroneous reversal of the burden of proof. Plaintiffs bore the burden of establishing each element required for class certification by a preponderance of the evidence. *Zinser*, 253 F.3d at 1186. Yet the district court instead placed the burden on Honda to rebut a presumption that *all* members of the purported class relied on

-45-

Honda's alleged misrepresentations and omissions notwithstanding the variety of communications and the lack of evidence as to the absent class members' exposure to them.  Having held plaintiffs to no evidentiary burden at all, the district court required Honda to rebut plaintiffs' showing—which rested entirely on the availability of certain varying communications—with a specific showing that particular consumers had viewed equally available information that disclosed what was allegedly concealed.  Once Honda presented evidence that it had in fact disclosed the allegedly concealed information, it is "the presumption" that should have been "destroyed, creating a myriad of issues of individual reliance." *In re GMC Dex-Cool Prods. Liab. Litig.,* 241 F.R.D. 305, 320-21 (S.D. Ill. 2007) (citations omitted).

Honda's rebuttal cannot be held to a higher standard of specific proof than plaintiffs' assumption-laden contention of predominance.  Plaintiffs did not carry their burden, and the district court court's certification should be vacated.

### 3.    *Rule 23 Bars The Application Of A Presumption Of Reliance To Find Predominance.*

The district court's use of a presumption of reliance to support its predominance finding sharply contrasts with the federal "courts' general unwillingness to permit a presumption of reliance/causation" to support class certification "in consumer fraud cases."  *In re Neurontin Marketing, Sales Practices and Products Liability Litig.*, 257 F.R.D. 315, 2009 WL 1323835, at *13

(D. Mass. May 13, 2009).  For example, the Second Circuit recently refused to apply a "presumption of reliance" in a purported class action where defendants had conducted a "national marketing campaign" that "represented that Light[] [cigarettes] were healthier than full-flavored cigarettes in a 'consistent, singular, uniform' fashion."  *McLaughlin v. American Tobacco Co.*, 522 F.3d 215, 223 (2d Cir. 2008).  As that court observed, even proof of "widespread and uniform misrepresentation … only satisfies half of the equation" because reliance on the misrepresentation requires individual proof "to overcome the possibility that a member of the purported class purchased Lights for some reason other than the belief that Lights were a healthier alternative."  *Id.*  In particular, the Second Circuit was "not blind to the indeterminate likelihood" that several class members "were *aware* that Lights are not, in fact, healthier than full-flavored cigarettes, and they therefore could not have relied on defendants' marketing materials in deciding to purchase Lights."  *Id.* at 226.

Unlike the district court in the present case, the Second Circuit did not shift the burden to the defendant to show that particular class members had received corrective disclosures.  Rather, the availability of accurate information, and the "indeterminate likelihood" that some absent class members knew of it, established sufficient differences "in plaintiffs' knowledge and levels of awareness [to] defeat the presumption of reliance."  *Id.*

By contrast, the district court here did disregard "the indeterminate likelihood" that absent class members were aware of the actual functioning of the CMBS before making their purchases. And the court certified a class notwithstanding the specific availability of that information online and at the point of sale, and the lack of evidence about what, if any, allegedly misleading communications the absent class members had received.

The Seventh Circuit has also rejected the use of a "presumption of reliance" as a shortcut to a finding of predominance in a consumer deception case. The plaintiff in *Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742 (7th Cir. 2008), contended that Sears misrepresented that the drum in its Kenmore drier was made of "Stainless Steel." The plaintiffs alleged he had understood the words "stainless steel" imprinted on the dryer and in point of sale advertising materials to mean that all of the steel in the drum was stainless. In reversing the district court's certification order, the court of appeals stated that "the proposition that [other dryer purchasers] shared [the plaintiff's] understanding of Sears' representation … is, to put it mildly, implausible, and so would require individual hearings to verify." *Id.* at 748.

The certification in this case rested on an assumption of common understanding that was at least as unfounded as that rejected in *Thorogood*. In presuming reliance on widely varying promotional materials by all class members,

the district court assumed not only that all class members were exposed to the same materials, but also that they shared a common interpretation of Honda's advertising.  The only evidence, however, was contrary:  one of the plaintiffs had to admit that, when he posted a complaint about the advertising on a website, other buyers commented that they had not misunderstood the operation of the CMBS.  (ER175.)  And only two persons apart from the named plaintiffs ever complained on that score to Honda.  (ER376-77.)

The district court further departed from federal class certification law in applying a presumption of reliance to "mixed claims" that are premised on both affirmative misrepresentations and omissions.  *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 666 (9th Cir. 2004).  This Court has explained that "[t]he shortcut of a presumption of reliance typically has been applied in cases involving securities fraud and, even then, … only in cases primarily involving 'a failure to disclose'— that is, cases based on omissions as opposed to affirmative misrepresentations."  *Id*.  But cases that "are best characterized as either affirmative misrepresentation or 'mixed claims' … would not be entitled to the presumption" even if any presumption were available outside the special context of the securities markets.  *Id.*

This is at best a "mixed claims" case.  Plaintiffs alleged that Honda "made" both "misrepresentations and material omissions about the CMBS' collision

avoidance assist system which Honda alleges to be comprised of three separate stages of alert and mitigation." (ER448.) Thus, plaintiffs alleged that Honda "consistently" had both "misrepresented and concealed material facts" about the deployment of CMBS. (ER454.) This is precisely the type of "mixed claim" case that "would not be entitled to the presumption" of reliance if this were a federal securities case. *See Poulos*, 379 F.3d at 666. And under state law, reliance cannot be presumed in an omissions case, either. *Mirkin*, 858 P.2d at 573-74.

Moreover, plaintiffs presented no evidence that any class member (let alone any significant majority) saw Honda's allegedly deceptive advertising before their purchases. Indeed, that is unlikely because most of that advertising was disseminated during the 2006 model year and did not continue afterward. But in presuming reliance, the district court necessarily concluded that consumers who purchased vehicles in 2007, 2008, or 2009—even consumers who purchased used vehicles—viewed and relied on advertising that was not available after 2006. That presumption was insupportable.

## B. The Predominance Finding For Plaintiffs' UCL And FAL Claims Also Rested On Legally Invalid Presumptions.

The district court also abused its discretion in holding that common issues of fact predominate over individual issues with respect to plaintiffs' UCL and FAL claims. As it did with plaintiffs' CLRA claim, the court concluded that "the question of materiality is a common one that could be determined on a class-wide

-50-

basis" because Honda did not present evidence that consumers actually viewed its pre-sale disclosures of the CMBS system's limitations. (ER27.) But as discussed above, the court's substitution of unfounded presumptions for evidence in the predominance inquiry under Rule 23 conflicts with federal law, which requires "[a]ctual, not presumed, conformance" with Rule 23 standards. *Hydrogen Peroxide*, 552 F.3d at 326 (internal quotation marks omitted).

There is no basis to presume that absent class members were exposed to the same communications, or were misled by them, much less that the communications bore a causal connection to the loss of any money or property that could be restored to them under the UCL. The California Supreme Court's recent decision in the *Tobacco II Cases*, 207 P.3d 20 (2009), does not relax Rule 23's requirements but rather reflects an aberration of California procedural law that cannot reach into the federal courts. In *Tobacco II*, the court addressed the standing requirements for bringing private class actions under the UCL. Before Proposition 64, the UCL and the FAL permitted anyone in California, even a person with no exposure to the alleged wrongful practice, to seek injunctive and restitutionary relief on behalf of the general public. Proposition 64 limits private party standing to "any person who has suffered an injury in fact and has lost money or property as a result of such unfair competition" (Cal. Bus. & Prof. Code § 17204) and requires compliance with class certification procedures whenever a private seeks to pursue

-51-

representative claims on behalf of others (*id.* § 17203).

In *Tobacco II*, the court held that the injury–in–fact and causation requirements for standing apply only to the individual class representatives, not to the unnamed class members. 207 P.3d at 38-39. That is, under California law, a named plaintiff who has suffered injury in fact and loss of property has standing to seek restitutionary relief on behalf of members of the public to whom the unfair practice may have caused no actual harm. That holding retained as much as possible of the former nonclass "representative" action under UCL.

The court also addressed the causation requirements for a plaintiff seeking to establish standing to pursue a UCL class action. The court refused to adopt a presumption of reliance. Rather, a representative plaintiff "must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions." 207 P.3d at 25-26. The court concluded that named plaintiffs need not necessarily establish individual reliance on specific representations, but limited that holding to the setting of an extensive and long-term advertising campaign— one that lasted over decades—that would make identifying particular communications "unrealistic." *Id.* at 26, 40. No such decades-long campaign is at issue in this case, which involves a small set of identified communications.

*Tobacco II* does not excuse the plaintiffs here from establishing that the

-52-

dispositive issues of exposure, materiality, reliance and causation are predominantly common. Rule 23—and the case-or-controversy requirement Article III of the Constitution—do not permit class actions on behalf of uninjured persons. *See Amchem*, 521 U.S. at 613 ("Rule 23's requirements must be interpreted in keeping with Article III constraints ... .").

Under *Tobacco II*, a class can include members who suffered no injury in fact. But to have Article III standing, a plaintiff must show an injury in fact, a causal connection between the harm and a defendant's complained-of-conduct, and a likelihood that requested relief will redress the harm. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000). And "no class may be certified that contains members lacking Article III standing." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006). The courts of appeals have uniformly rejected the notion that a federal class action may be brought against persons who lack standing in their own right. *See id.*; *Oshana v. Coca-Cola Co.* 472 F.3d 506, 514 (7th Cir. 2006) (affirming denial of class certification because "[c]ountless members of Oshana's putative class" lacked standing because they "could not show any damage, let alone damage proximately caused by Coke's alleged deception"); *Adashunas v. Negley*, 626 F.2d 600, 604 (7th Cir. 1980) (class certification properly denied where it was not clear "that the proposed class members have all suffered a constitutional or statutory violation warranting some

-53-

relief"). *See also Vuyanich v. Republic Nat'l Bank of Dallas*, 723 F.2d 1195, 1199 (5th Cir. 1984) ("a class representative must possess the same interest and suffer the same injury as the class members" (quoting *Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 216 (1974)). Likewise, the district courts have repeatedly recognized that only "those ascertainable individuals who have standing to bring the action" may be part of a class. *Zelman v. JDS Uniphase Corp.*, 376 F. Supp. 2d 956, 966 (N.D. Cal. 2005).[22]

Accordingly, *Tobacco II* cannot rescue the UCL class action here. Not only do the district court's presumptions of common exposure, materiality, and reliance go beyond the scope of *Tobacco II*, but a presumption that permits a class to include those without actual injury (and therefore standing) would violate Article III.

But the certification was not supported by evidence that absent class

---

[22]  *See also In re TJX Cos. Retail Security Breach Litig.* 246 F.R.D. 389, 392 (D. Mass. 2007) ("It is well-established that members of a plaintiff class must all have the legal right to bring suit against the defendant on their own … ."); *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 244 F.Supp.2d 289, 334 (S.D.N.Y. 2003) ("each member of the class must have standing with respect to injuries suffered as a result of defendants' actions"); *O'Neill v. Gourmet Sys. of Minn. Inc.*, 219 F.R.D. 445, 453 (W.D. Wis. 2002) ("the proposed class lacks standing"); *In re Copper Antitrust Litig.*, 196 F.R.D. 348, 353 (W.D. Wis. 2000) ("requirement that the plaintiffs and the class they seek to represent have standing"); *Clay*, 188 F.R.D. at 490 ("[t]he definition of a class should not be so broad . . . as to include individuals who are without standing to maintain the action on their own behalf"); *McElhaney v. Eli Lilly & Co.*, 93 F.R.D. 875, 878 (D.S.D. 1982) ("Each class member must have standing to bring the suit in his own right.").

members were exposed to the same representations as the class representatives, shared the same understanding of these communications, or acted upon that understanding to their detriment—in terms of the UCL remedial scheme, by delivering "money or property" that could be "restore[d]." *See* Cal. Bus. & Prof. Code § 17203; *see also id.* § 17535 (FAL). Indeed, there was no evidence that more than two additional buyers believed they had not been adequately informed about the CMBS. Class members who neither saw the communications nor found them misleading cannot have been injured by them. Because these persons have no standing to pursue a claim in federal court in their own right, allowing them to pursue claims through the class action device would impermissibly enlarge their substantive rights through procedural rules. *See Amchem*, 521 U.S. at 613 (noting that "Rule 23's requirements must be interpreted in keeping with ... the Rules Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge or modify any substantive right'") (quoting 28 U.S.C. § 2072(b)).

The district court's application of presumptions of reliance and materiality departs from "[p]roper analysis under Rule 23," which "requires rigorous consideration of all the evidence." *Hydrogen Peroxide*, 552 F.3d at 321. The two proposed class representatives presented no evidence that anyone other than themselves was exposed to, found material, and relied upon any particular alleged misrepresentations and omission. "[R]igorous consideration" of that evidentiary

gap requires a denial of certification, not a presumption to accomplish what the evidence did not.

###### C. The Unjust Enrichment Claims Are Not Susceptible To Class-wide Proof.

Rule 23(b)(3) requires "a close look at the case before it is accepted as a class action" (*Amchem*, 521 U.S. at 515), yet the district court barely acknowledged the individualized inquiries necessary to resolve plaintiffs' unjust enrichment claims. The same variations in exposure, understanding, and reliance that make individual issues predominant in the statutory claims preclude certification of the unjust enrichment claims as well. Unjust enrichment claims by their nature are exceptionally difficult to adjudicate on a collective basis; each claim requires consideration whether the totality of the circumstances between the plaintiff and the defendant makes it unjust to permit the defendant to retain a benefit even though no legal cause of action exists. *McBride*, 20 Cal. Rptr. 3d at 122. Thus, unjust enrichment claims are fundamentally context-specific and require an individualized examination and balancing of the equities.

As the Eleventh Circuit recently observed, "common questions will rarely, if ever, predominate an unjust enrichment claim, the resolution of which turns on individualized facts." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009). To adjudicate an unjust enrichment claim, a trial "court must examine the particular circumstances of an individual case and assure itself that, without a

-56-

remedy, inequity would result or persist. Due to the necessity of this inquiry into the individualized equities attendant to each class member, courts … have found unjust enrichment claims inappropriate for class action treatment." *Id.* (collecting cases).

It is rare, if not impossible, that one person's unjust enrichment claim is capable of serving as a proxy for another person's claim, much less as a proxy for the claims of an entire class. Whether it is unjust for one party to retain a purchase price depends on the benefits to the individual purchaser. That is why court after court has declined to certify classes for this purpose. *See id.*[23]

As in *Vega*, the equities surrounding each unjust enrichment claim here turn on "what each [class member] was told and understood." *Id.* at 1275. There is nothing unjust about an RL purchase by one who knew how the CMBS operates,

---

[23] *See also, e.g., In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 69 (S.D.N.Y. 2002) ("[T]he question whether an individual class member got his or her money's worth is inherently individual.... Would the defendants' retention of the price paid by class member X be 'unjust'? It depends on whether [the product] benefited that individual and whether the benefits sufficiently outweigh any harm, even in the form of enhanced risk, that the individual sustained."); *Clay*, 188 F.R.D. at 501 ("Thus, the defendants' liability for unjust enrichment to a particular plaintiff depends on the factual circumstances of the particular purchase at issue ... [T]he claim of unjust enrichment is packed with individual issues … ."); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 214 F.R.D. 614, 620 n.8 (W.D. Wash. 2003) (unjust enrichment claims "could require individualized factual inquiries into issues such as causation, materiality, notice, and/or breach"); *Lilly v. Ford Motor Co.*, 2002 WL 507126, at *2 (N.D. Ill. Apr. 3, 2002) ("Unjust enrichment is an equitable doctrine. There would be individual questions as to whether a particular class member is subject to equitable defenses.")

or who was indifferent to the supposed misrepresentations and omissions that form the basis of the lawsuit. Honda "cannot have been unjustly enriched without proof of deception," *Oshana*, 472 F.3d at 515, but plaintiffs provided no evidence that common issues predominated as to deception, instead hiding behind invalid presumptions.

Plaintiffs also cannot prevail without showing that it would be unjust for them not to recover a certain portion of their vehicles' purchase price from Honda. But whether equity requires that plaintiffs or any class member obtain this result cannot be determined without examining the circumstances surrounding each class member's acquisition of his or her RL. For example, equity may require different results (*a*) for a class member who purchased the CMBS option because he wanted a "three-stage warning" system in response to every threat and (*b*) for a class member who did not care how CMBS worked so long as it reduces the likelihood of rear-end collisions. Whether the operation of the CMBS in fact prevented potentially injurious collisions—as plaintiff Kalsi's system did (ER289)—also would affect the equities. As a further complication, consumers who purchased the safety package because they wanted the ACC or run-flat tire feature, and were indifferent to the CMBS, also would not have an unjust enrichment claim because they got exactly what they wanted.

-58-

The district court's abbreviated analysis dispensed with these necessarily individualized inquiries in favor of an evidence-free presumption that all 2,000-plus members of the class shared plaintiffs' concerns about the CMBS, relied on a common interpretation of varying marketing materials, purchased the safety package primarily for the CMBS feature, and were uniformly ignorant of Honda's disclosures concerning the system's capabilities and limitations. Indeed, the court conducted no analysis of these issues, instead simply quoting plaintiffs' assertion that the predominance inquiry was met because "Honda's [alleged] failure to reveal that the CMBS System does not perform reliably 'induces reliance on the part of consumers, which results in consumers' greater propensity to purchase the Acura RL with the $4,000 CMBS option." (ER28.) That variable "propensity" creates individualized issues under all plaintiffs' claims, and underscores plaintiffs' failure—indeed, their inability as a matter of law—to show that common issues predominate in the context-specific adjudication of unjust enrichment claims.

## CONCLUSION

The order of the district court certifying nationwide classes should be vacated and the case remanded for further proceedings on the plaintiffs' individual claims.

Respectfully submitted.


Dated:  June 29, 2009      ROY BRISBOIS
ERIC Y. KIZIRIAN
LEWIS BRISBOIS BISGAARD & SMITH LLP

DONALD M. FALK
MAYER BROWN LLP


By:  /s/ Donald M. Falk
Attorneys for Defendant-Petitioner
American Honda Motor Co., Inc.

# CERTIFICATE OF COMPLIANCE

1.     Pursuant to Fed. R. App. P. 29(d) and 9th Cir. R. 32-1, the undersigned hereby certifies that the attached brief is proportionally spaced, has a typeface of 14 points or more, and contains 13,929 words, exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(a)(7)(B).

2.     The brief has been prepared in proportionally-spaced typeface using Microsoft Word 2002 in 14-point Times New Roman font.  As permitted by Fed. R. App. P. 32(a)(7)(C), the undersigned has relied upon the word-count feature of this word-processing system in preparing this certificate.

July 29, 2009                  \_\_\_/s/ Donald M. Falk_____

DONALD M. FALK
MAYER BROWN LLP
Two Palo Alto Square
3000 El Camino Real, Suite 300
Palo Alto, CA 94306
(650) 331-2000
dfalk@mayerbrown.com

# EXHIBIT B

No. 09-55376

In the

# United States Court Of Appeals

for the Ninth Circuit

---

MICHAEL MAZZA ET AL.,

*Plaintiffs-Appellees*,

*v.*

AMERICAN HONDA MOTOR CO., INC.,

*Defendant-Appellant.*

---

On Appeal from the United States District Court
for the Central District of California

---

## BRIEF OF PRODUCT LIABILITY ADVISORY COUNCIL, INC. AS *AMICUS CURIAE* IN SUPPORT OF APPELLANT

---

*Of Counsel*:
HUGH F. YOUNG, JR.
PRODUCT LIABILITY
  ADVISORY COUNCIL, INC.
1850 Centennial Park Drive, Suite 510
Reston, Virginia 20191
(703) 264-5300

JOHN H. BEISNER
JESSICA DAVIDSON MILLER
GEOFFREY M. WYATT
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Ave., N.W.
Washington, D.C. 20005
(202) 371-7000

*Attorneys for Amicus Curiae*

# TABLE OF CONTENTS

**Page**

STATEMENT OF INTEREST ..............................................................................1

ARGUMENT.......................................................................................................1

I.    THE COURT'S ERRONEOUS CHOICE-OF-LAW RULING IS
      CONTRARY TO IMPORTANT FEDERALISM PRINCIPLES. .................2

      A.    The Court's Ruling Ignored Numerous And Material
            Differences Among The Forty-Four Relevant States' Laws. ...............2

      B.    The Court Undervalued Other States' Interests In Applying
            Their Own Consumer-Protection Laws To Transactions Within
            Their Borders. ...................................................................................7

II.   THE DISTRICT COURT'S RULING IS CONTRARY TO THE
      INTENT OF CAFA. .................................................................................12

III.  REVIEW IS ALSO WARRANTED BECAUSE THE DISTRICT
      COURT'S RULING IS CONTRARY TO THE RULES ENABLING
      ACT.........................................................................................................14

CONCLUSION ................................................................................................15

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*In re Air Crash Disaster near Chicago*,
   644 F.2d 594 (7th Cir. 1981) .......................................................................8

*Bigelow v. Virginia*,
   421 U.S. 809 (1975) ...................................................................................12

*In re Bridgestone/Firestone*,
   288 F.3d 1012 (7th Cir. 2002) .....................................................................8

*Cimino v. Raymark Industries*,
   151 F.3d 297 (5th Cir. 1998) .....................................................................15

*Edgar v. MITE Corp.*,
   457 U.S. 624 (1982) ....................................................................................8

*Gartin v. S&M Nutec LLC*,
   245 F.R.D. 429 (C.D. Cal. 2007) ...............................................................5

*In re HP Inkjet Printer Litigation*,
   No. 05-3850, 2008 WL 2949265 (N.D. Cal. July 25, 2008)..........................5

*Huntington v. Attrill*,
   146 U.S. 657 (1975) ...................................................................................12

*Lewallen v. Medtronic USA, Inc.*,
   No. 01-20395, 2002 WL 31300899 (N.D. Cal. Aug. 28, 2002)......................5

*Phillips Petrol. Co. v. Shutts*,
   472 U.S. 797 (1985) ...................................................................................12

*State Farm Mutual Automobile Insurance Co. v. Campbell*,
   538 U.S. 408 (2003) ...................................................................................12

*Zinser v. Accufix Research Institute*,
   253 F.3d 1180 (9th Cir. 2001) .....................................................................4

## STATE CASES

*Bernhard v. Harrah's Club*,
   546 P.2d 719 (Cal. 1976)........................................................................3, 4

*Hurtado v. Superior Court*,
   522 P.2d 666 (Cal. 1974)..............................................................................3

# TABLE OF AUTHORITIES

**Page**

*Offshore Rental Co. v. Continental Oil Co.,*
   583 P.2d 721 (Cal. 1978)...................................................................9

*Osborne v. Subaru of America, Inc.,*
   243 Cal. Rptr. 815 (Cal. Ct. App. 3d Dist. 1988)..............................4

*P.V. v. Camp Jaycee,*
   962 A.2d 453 (N.J. 2008) ...................................................................8

*Tracker Marine, L.P. v. Ogle,*
   108 S.W.3d 349, 358 (Tex. App. 2003).............................................9

*Wash. Mutual Bank v. Superior Court,*
   15 P.3d 1071 (Cal. 2001)...................................................................3

## FEDERAL STATUTES

28 U.S.C. § 2072.....................................................................................14

Pub. L. No. 109-2, 119 Stat. 4, 5..........................................................12

## OTHER AUTHORITY

2005 U.S.C.C.A.N. 3 ..............................................................................12

151 Cong. Rec. S1166 ...........................................................................13

# CORPORATE DISCLOSURE STATEMENT

*Amicus Curiae* The Product Liability Advisory Council, Inc. has no parent corporation, and no company owns 10% or more of its stock.

## STATEMENT OF INTEREST

The Product Liability Advisory Council, Inc. ("PLAC") is a non-profit association with 107 corporate members representing a broad cross-section of American and international product manufacturers.  These companies seek to contribute to the improvement and reform of the law in the United States and elsewhere, with emphasis on the law governing the liability of product manufacturers.  PLAC has a strong interest in the development of rational, fair standards for the certification of class actions in product liability cases.  Since 1983, PLAC has filed hundreds of briefs as *amicus curiae* in both state and federal courts, including this Court, presenting the broad perspective of product manufacturers seeking fairness and balance in the application and development of the law.  A list of PLAC's corporate members is attached as Appendix A.[1]

## ARGUMENT

*Amicus* PLAC agrees with Defendant American Honda Motor Co. ("American Honda") that the district court premised its class certification order on a flawed choice-of-law analysis, that the court improperly presumed reliance in contravention of California law, and that the California Supreme Court's ruling in *In re Tobacco II* does not support certification of plaintiffs' class under Federal Rule of Civil Procedure 23.

---

[1]     PLAC files this brief with the consent of both appellant and appellees.

- 1 -

Rather than repeat these arguments, PLAC submits this brief to focus on three far-reaching problems that flow from the district court's choice-of-law analysis. First, its decision contravened important federalism principles. Second, the decision undermines the goals of the Class Action Fairness Act. And third, the decision violates the Rules Enabling Act. For these additional reasons, the Court should reverse the ruling below.

## I.   THE COURT'S ERRONEOUS CHOICE-OF-LAW RULING IS CONTRARY TO IMPORTANT FEDERALISM PRINCIPLES.

The trial court's certification order contravened important federalism principles by:  (1) failing to credit important differences among state laws; and (2) undervaluing states' interests in regulating consumer transactions within their borders.

### A.   The Court's Ruling Ignored Numerous And Material Differences Among The Forty-Four Relevant States' Laws.

The trial court did not and could not dispute that different state laws vary in several respects. As to California's Unfair Competition Law ("UCL"), for example, American Honda pointed to numerous state law variations with respect to whether a showing of reliance is required to prevail, whether scienter is required, the applicable limitations period, and available remedies.  But while the trial court acknowledged that these differences were real, it summarily dismissed them as immaterial.  The trial court did not explain why these differences were not material

- 2 -

– or, for that matter, what differences it would consider material.  It did not

analyze, for example, whether scienter is relevant to this case or how a reliance

requirement would play into plaintiffs' claims.  Instead, it simply concluded that

the combined range of remedies available under the UCL and California Bus. &

Prof. Code § 17500 *et seq.*, and Consumer Legal Remedies Act ("CLRA") was as

broad as the range of remedies offered under any other state's laws.  (Op. 15.)

That is not the test for materiality, and the district court's analysis has troubling

implications for interstate comity.

      Courts typically hold that the materiality requirement is easy to satisfy.  In

*Hurtado v. Superior Court*, 522 P.2d 666 (Cal. 1974), for example, the California

Supreme Court found a material difference between the wrongful-death laws of

California and Mexico based solely on the existence of a damages cap under

Mexican law.  *Id.* at 669.  The court cautioned that the mere "fact that two states

are involved does not in itself indicate that there is a 'conflict of laws' or 'choice of

law' problem."  *Id.*  But where, as here, the laws of the two states "are not

identical" on a matter of law at issue in the case, materiality is likely established.

*Id.*; *accord Wash. Mut. Bank v. Superior Court*, 15 P.3d 1071, 1080 (Cal. 2001)

(explaining that "if the relevant laws of each state are identical, there is no problem

and the trial court may find California law applicable to class claims"); *Bernhard*

*v. Harrah's Club*, 546 P.2d 719, 721 (Cal. 1976) (finding first step of

governmental interest test satisfied because "the laws of the two states – California and Nevada – applicable to the issue involved are not identical"); *cf. Frontier Oil Corp. v. RLI Ins. Co.*, 63 Cal. Rptr. 3d 816, 841-42, 153 Cal. App. 4th 1436 (2007) (holding that difference in Texas and California laws was not "material" because the case involved only those aspects of the laws that were identical).

This policy furthers important federalism interests by recognizing that minor differences among state laws often reflect substantial policy disagreements. *See Bernhard*, 546 P.2d at 723 (noting that the assertion of "a conflict between the interests of the forum and the foreign state is a serious matter") (citation and internal quotation marks omitted). An assumption that all differences are immaterial until proven otherwise risks shutting off the conflicts analysis prematurely and mechanically applying the law of the forum state – even when doing so would substantially frustrate the policies of other states.

Not surprisingly, this Court and several others have found the differences in state laws identified by American Honda to be "material." *See, e.g., Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1186, 1188 (9th Cir. 2001) (rejecting nationwide class under governmental interest test because "the laws of negligence, product[s] liability, and medical monitoring all differ in some respects from state to state" and thus the law of a single state could not apply to all claims); *Osborne v. Subaru of America, Inc.*, 243 Cal. Rptr. 815, 822 (Cal. Ct. App. 3d Dist. 1988)

- 4 -

(rejecting the plaintiffs' assertion that differences among state laws had "become a fairly unified and consistent doctrine" such that any differences were simply immaterial for choice-of-law purposes and concluding that application of proper state laws would be a "monumental task"); *Gartin v. S&M Nutec LLC*, 245 F.R.D. 429, 439 (C.D. Cal. 2007) (applying California choice-of-law analysis and holding that "the possibility of applying foreign laws weighs heavily against class certification" in a putative consumer fraud class action); *Lewallen v. Medtronic USA, Inc.*, No. 01-20395, 2002 WL 31300899, at *5 (N.D. Cal. Aug. 28, 2002) (recognizing under California choice-of-law principles that "each of the fifty states may have an interest in seeing that its law is applied in an action involving one of its own injured citizens" in proposed nationwide class involving stent grafts).

In *In re HP Inkjet Printer Litigation*, for example, the Northern District of California considered a putative class proposed by plaintiffs who sought damages under the UCL and CLRA (among other causes of action) for alleged unfair and deceptive conduct in relation to marketing "smart chip" technology in the defendant's printer cartridges. No. 05-3850, 2008 WL 2949265 (N.D. Cal. July 25, 2008). The plaintiffs moved to certify a nationwide class and asserted that California law should apply to all class members. *Id.* at *6. The court denied the motion, citing substantial choice-of-law problems under California's governmental interest test. According to the court, there are "many differences among states with

- 5 -

respect to, for example, statutes of limitations, scienter requirements, and calculation of damages" – *i.e.*, precisely the sorts of differences identified by American Honda in this case. *Id.* at *7. The court further noted that "[o]ther courts have recognized that such differences are material." *Id.*

The trial court erred by not doing the same here. The court ignored most of the differences cited by American Honda, simply asserting without analysis that any differences were immaterial. And as to the one issue it did address, the trial court simply assumed that the availability of a broad range of remedies under California law rendered the fact that some states offer fewer remedies immaterial. In so doing, it cut short any analysis of the competing interests of those other states. As demonstrated in the next section, some states very intentionally limit remedies, and the policy interests underlying those limitations are frustrated when broader remedies are afforded to their citizens in foreign courts.

Similarly, the court failed to appreciate the very different showing that some states require in order for a plaintiff to prove causation. Specifically, some states require a showing of individual reliance. That requirement would essentially preclude class treatment of the claims asserted here because whether a given class member relied on a particular representation would depend on the facts of that class member's particular case. Other states, by contrast, require only a showing of causation. Different states thus apply dramatically different standards to the

- 6 -

sorts of consumer claims alleged here – standards that have a direct impact on plaintiffs' ability to prove their claims.  The trial court was wrong to deem these dispositive differences "immaterial," and its ruling should thus be reversed.

### B. The Court Undervalued Other States' Interests In Applying Their Own Consumer-Protection Laws To Transactions Within Their Borders.

The trial court also erred by holding that no other state has an interest in this litigation that is greater than California's.  The trial court reached this erroneous conclusion by mistakenly assuming that the question of which state has the strongest interest in the litigation is to be resolved by determining which state provides the greatest amount of consumer protection: "Defendant has not identified a state with an interest in denying its citizens recovery under California's potentially more comprehensive consumer protection laws, nor has Defendant identified prospective class members who will be less protected under California law than under their own states' consumer protection statutes." (Op. 16.) Meanwhile, it entirely discredited other states' interests in limiting liability: "states with a generalized interest in a consumer protection statute with, for example, a strict reliance requirement, cannot be said to have an interest in *this litigation*, because a reliance requirement can only be conceived as a provision intended to protect businesses, within a consumer protection statute." (*Id.*

(quotation marks omitted).)  If upheld, these conclusions would upset basic choice-of-law policies and run contrary to well-settled consumer expectations.

To begin, the trial court asked the wrong question in deciding which states' interests are strongest.  A state's interest – even under a consumer-protection statute – is not limited to the extent to which its consumers are protected.  Rather, consumer-protection statutes in every state reflect a balance of competing interests – those of businesses as well as consumers – and each of these interests is relevant to the choice-of-law analysis.

It is beyond dispute that every state has a strong interest in defining remedies for its own residents' injuries.  *See In re Air Crash Disaster near Chicago*, 644 F.2d 594, 612-13 (7th Cir. 1981).  In contrast, states have no interest in protecting out-of-state residents.  *See Edgar v. MITE Corp.*, 457 U.S. 624, 644 (1982) ("While protecting local investors is plainly a legitimate state objective, the State has no legitimate interest in protecting nonresident shareholders.").  Thus, until now, it has been well-settled that policy differences must be respected in a choice-of-law analysis.  *In re Bridgestone/Firestone*, 288 F.3d 1012, 1018 (7th Cir. 2002) ("State consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's law to sales in other states with different rules."); *P.V. v. Camp Jaycee*, 962 A.2d 453, 456 (N.J. 2008) (New Jersey has "continuously deferred to the rights of other jurisdictions to regulate conduct

- 8 -

within their borders"). Such respect is required because statutory differences

reflect efforts to balance numerous competing interests. As one court explained:

> Consumer protection statutes represent a balance of competing
> interests. The Texas statute, for example, provides remedies both for
> consumers subjected to deceptive practices and retailers subjected to
> frivolous consumer complaints. When states adopt differing attempts
> to strike a fair balance between the interests of manufacturers and
> consumers, our job is not to decide which policy overrides the other. .
> . . It is hard to see how the interests of each state could be met any
> better than by allowing each to apply its own laws.

*Tracker Marine, L.P. v. Ogle*, 108 S.W.3d 349, 358 (Tex. App. 2003) (footnotes

omitted).

In *Offshore Rental Co. v. Continental Oil Co.*, 583 P.2d 721 (Cal. 1978), for

example, the California Supreme Court considered whether the laws of California

or Louisiana should apply to a California resident's claim that a Louisiana

defendant had injured its employee while the employee was in Louisiana. The

question was dispositive; only California recognized a cause of action for loss of

an employee's services. *Id.* at 724. In comparing the governmental interests at

stake, the court noted that California had an interest in having its law applied

because doing so would further the state's interest in protecting employers from

financial harm, whether it occurred in or out of state. *Id.* at 725. But it also

recognized that enforcing Louisiana's law furthered that state's policy of

"protect[ing] negligent resident tortfeasors acting within Louisiana's borders from

- 9 -

the financial hardships caused by the assessment of excessive legal liability or exaggerated claims resulting from the loss of services of a key employee." *Id.*

Importantly, the court noted, the governmental interest "analysis does not involve the court in 'weighing' the conflicting governmental interests in the sense of determining which conflicting law manifest[s] the 'better' or the 'worthier' social policy on the specific issue." *Id.* at 726 (citation and some internal quotation marks omitted). Such weighing "is difficult to justify in the context of a federal system in which, within constitutional limits, states are empowered to mold their policies as they wish." *Id.* (citation and internal quotation marks omitted). Rather, the proper focus was on which state's interests would be most impaired by the other state's law. Under this analysis, the court concluded that Louisiana's law applied – despite the fact that it deprived the plaintiff of a remedy, and despite the fact that it obviously frustrated California's policy of providing compensation.

The trial court here engaged in the precise analysis that was condemned in *Offshore Rental*. Rather than consider whether the interests of states with less consumer-friendly laws would be frustrated by the application of California law, it simply assumed without analysis that all states would favor compensation over limitations on liability. That assumption was baseless, and the resultant expansion of liability it portends for this and future lawsuits will frustrate the carefully

- 10 -

calculated policy decisions of other states, whose consumers may well bear the ultimate burden in the form of higher product costs.

The trial court's ruling also runs contrary to fundamental consumer expectations. If the trial court's ruling were applied evenly, consumers would have no way of knowing what law applied to their claims. A California resident might find herself subject to Michigan law with respect to any vehicle grievances, New Jersey law for any pharmaceutical purchases and Connecticut law for insurance claims. That result would dramatically upset the expectations of the parties. The resident of a state who claims injury or loss in *that* state as a result of a sales transaction that occurred in *that* state would expect the protection of her state's consumer protection laws enacted by her elected officials – she would not expect to be left at the mercy of the manufacturer's home state's legislature.

In sum, the district court's holding that "Defendants have not shown that another state has an interest in this litigation" (Op. 17) took too narrow a view of the relevant state interests, assuming that only the extent of consumer protection afforded by state law was relevant to the inquiry – the more protective, the better. That is not the appropriate inquiry, as the vast majority of courts have held. For these reasons, the Court should reverse.

## II.   THE DISTRICT COURT'S RULING IS CONTRARY TO THE INTENT OF CAFA.

Reversal is also warranted because the district court's ruling is contrary to the intent of the Class Action Fairness Act ("CAFA"), the very basis invoked by plaintiffs for federal jurisdiction in this case.  (*See* Class Action Compl. ¶ 19.)

One of the key purposes of CAFA was to address the practice of state courts overruling the policy judgments of other states in nationwide class actions. *See* Findings, Class Action Fairness Act § 2 (a) (4), Pub. L. No. 109-2, 119 Stat. 4, 5 (2005) (expressing concern about state courts "making judgments that impose their view of the law on other States and bind the rights of the residents of those States"); *see also* S. REP. No. 109-14, at 64 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3 (noting that one goal of CAFA was to "end the 'false federalism' game that is occurring in the state court class action area"); *id.* at 62-63 (explaining that the Supreme Court has "repeatedly warned that courts should not attempt to apply the laws of one state to behaviors that occurred in other jurisdictions") (citing *Huntington v. Attrill*, 146 U.S. 657 (1892); *Bigelow v. Virginia*, 421 U.S. 809 (1975); *Phillips Petrol. Co. v. Shutts*, 472 U.S. 797 (1985); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003)).  These practices earned some particularly pro-certification courts reputations as "magnet jurisdictions."  S. Rep. No. 109-14, at 13 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 13-14.  In enacting CAFA, Congress recognized that it could minimize abuse of the class action device

- 12 -

by expanding federal jurisdiction over class actions. This was so because in contrast to the "false federalism" embraced by some state courts, federal courts "have consistently concluded that in a nationwide or multi-state class action, the choice-of-law rules of the state in which the action was originally filed must be applied." *Id*. at 63.

Choice-of-law issues were also debated on the Senate floor just prior to CAFA's passage. In the final hours of the CAFA debate, Senators Jeff Bingaman (D-N.M.) and Dianne Feinstein (D-Cal.) introduced an amendment to the bill that would have required federal courts to certify multistate class actions without regard to varying state laws. The amendment stated, in part: "the district court shall not deny class certification, in whole or in part, on the ground that the law of more than 1 state will be applied." 151 Cong. Rec. S1166 (Feb. 9, 2005) (Statement of Sen. Feinstein). During the debate over this amendment, several members argued that it would undermine existing class certification standards. Senator Charles Grassley (R-Ia.) explained that "[t]he net result of this amendment is that it would require Federal judges to hear dissimilar claims that do not belong together as a class action, and would not be allowed to proceed as a class action under current law." *Id*. at S1171 (Statement of Sen. Grassley). Senator Jeff Sessions (R-Ala.) expressed similar concerns that the amendment would "toss State laws and procedural fairness out of the window for the sake of allowing a nationwide class

- 13 -

action" and "reverse nearly 70 years of established Supreme Court case law that requires Federal courts to apply the proper State law when they hear claims between citizens of different States." *Id*. at S1174 (Statement of Sen. Sessions). After a vigorous floor debate, the amendment was defeated overwhelmingly – by a vote of 61-38.

The district court's ruling here reached the precise result that Congress rejected in enacting CAFA and in defeating the Bingaman-Feinstein amendment. Instead of respecting the differences among state laws, the court lamented the obstacles that those differences posed for class certification and chose California law to facilitate certification of the class. In so doing, it went a long way toward reviving the magnet-jurisdiction problem that Congress sought to eliminate. For this reason too, the ruling should be reviewed and reversed.

## III.   REVIEW IS ALSO WARRANTED BECAUSE THE DISTRICT COURT'S RULING IS CONTRARY TO THE RULES ENABLING ACT.

Finally, the Court should also reverse the certification order because the district court's choice-of-law ruling violates the Rules Enabling Act ("REA"). *See* 28 U.S.C. § 2072. The REA empowers the U.S. Supreme Court to establish procedural rules for the lower courts, provided that the rules do "not abridge, enlarge or modify any substantive right." *Id*. § 2072(b). Under the Act, the Federal Rules of Civil Procedure – including Rule 23 – cannot "alter the required

- 14 -

elements which must be found to impose liability and fix damages." *Cimino v. Raymark Indus.*, 151 F.3d 297, 312 (5th Cir. 1998).

The district court's ruling contravenes the REA because its choice-of-law analysis was driven by a desire to facilitate class certification. The trial court went out of its way to dismiss substantial legal and factual variations in the class members' claims in order to reach a finding that common issues predominated. This effort was likely influenced by the trial court's finding that the claims – valued at "approximately $4,000" – were too small to be litigated individually. (Op. 25.)  There can be no question that if the case at issue had been brought as an individual action, the plaintiffs – residents of Florida and Maryland – would have sued under their home state's laws, and the court would have applied those laws. Nonetheless, the court engaged in various gyrations to reach a contrary result here for one purpose:  to facilitate a finding of predominance under Rule 23.

The court's certification order thus violated the REA, and reversal is warranted on these grounds as well.

## **CONCLUSION**

For the foregoing reasons, and those set forth in American Honda's brief, the district court's order certifying a class action should be reversed.

- 15 -

Respectfully submitted,

/s/ John H. Beisner
JOHN H. BEISNER
JESSICA DAVIDSON MILLER
GEOFFREY M. WYATT
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Ave., N.W.
Washington, D.C. 20005
(202) 371-7000

*Of Counsel*:
HUGH F. YOUNG, JR.
PRODUCT LIABILITY
ADVISORY COUNCIL, INC.
1850 Centennial Park Drive, Suite 510
Reston, Virginia 20191
(703) 264-5300

*Attorneys for Amicus Curiae*

- 16 -

**CERTIFICATE OF COMPLIANCE PURSUANT TO FED. R. APP. P. 32(A)(7)(C) AND CIRCUIT RULE 32-1 FOR CASE NUMBER 09-55376**

I certify that, pursuant to Fed. R. App. P. 29(d) and 9th Cir. R. 32-1, the attached amicus brief is proportionally spaced, has a typeface of 14 points or more and contains 7000 words or less.

August 7, 2009          /s/ John H. Beisner
                                       John H. Beisner
                                       SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                                       1440 New York Ave., N.W.
                                       Washington, D.C. 20005
                                       (202) 371-7000
                                       John.Beisner@skadden.com

## CERTIFICATE OF SERVICE

Undersigned counsel hereby certifies that the Brief of Product Liability

Advisory Council, Inc. as *Amicus Curiae* in Support of Appellant was

electronically filed with the Clerk of the Court for the United States Court of

Appeals for the Ninth Circuit by using the appellate CM/ECF system on August 7,

2009.  Additionally, the following counsel were served by FedEx on August 7,

2009:

Eric Y. Kizirian
Lewis Brisbois Bisgaard & Smith LLP
221 North Figueroa Street, Suite 1200
Los Angeles, California 90012
(213) 580-3981

Counsel for Appellant American Honda Motor Co., Inc.

Donald M. Falk
Mayer Brown LLP
Two Palo Alto Square
3000 El Camino Real, Suite 300
Palo Alto, CA 94306
(650) 331-2000

Counsel for Appellant American Honda Motor Co., Inc.

Howard Scott Leviant
Initiative Legal Group LLP
1800 Century Park East, 2nd Floor
Los Angeles, CA 90067
(310) 556-5637

Counsel for Appellees

August 7, 2009

/s/ John H. Beisner
John H. Beisner
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Ave., N.W.
Washington, D.C. 20005
(202) 371-7000
John.Beisner@skadden.com

# Appendix A

# Corporate Members of the
# Product Liability Advisory Council
as of 7/27/2009

Total: 105

| | |
|---|---|
| 3M | Ford Motor Company |
| A.O. Smith Corporation | Genentech, Inc. |
| ACCO Brands Corporation | General Electric Company |
| Altec Industries | GlaxoSmithKline |
| Altria Client Services Inc. | The Goodyear Tire & Rubber Company |
| American Suzuki Motor Corporation | Great Dane Limited Partnership |
| Andersen Corporation | Harley-Davidson Motor Company |
| Anheuser-Busch Companies | Hawker Beechcraft Corporation |
| Arai Helmet, Ltd. | The Heil Company |
| Astec Industries | Honda North America, Inc. |
| BASF Corporation | Hyundai Motor America |
| Bayer Corporation | Illinois Tool Works, Inc. |
| Beretta U.S.A Corp. | International Truck and Engine Corporation |
| BIC Corporation | Isuzu Motors America, Inc. |
| Biro Manufacturing Company, Inc. | Jarden Corporation |
| BMW of North America, LLC | Johnson & Johnson |
| Boeing Company | Joy Global Inc., Joy Mining Machinery |
| Bombardier Recreational Products | Kawasaki Motors Corp., U.S.A. |
| BP America Inc. | Kia Motors America, Inc. |
| Bridgestone Americas Holding, Inc. | Koch Industries |
| Briggs & Stratton Corporation | Kolcraft Enterprises, Inc. |
| Brown-Forman Corporation | Kraft Foods North America, Inc. |
| Caterpillar Inc. | Leviton Manufacturing Co., Inc. |
| Chrysler LLC | Lincoln Electric Company |
| Continental Tire North America, Inc. | Magna International Inc. |
| Crown Equipment Corporation | Mazda (North America), Inc. |
| Daimler Trucks North America LLC | Medtronic, Inc. |
| The Dow Chemical Company | Merck & Co., Inc. |
| E.I. DuPont De Nemours and Company | Microsoft Corporation |
| Eli Lilly and Company | Mitsubishi Motors North America, Inc. |
| Emerson Electric Co. | Mueller Water Products |
| Engineered Controls International, Inc. | Newell Rubbermaid Inc. |
| Estee Lauder Companies | Nintendo of America, Inc. |
| Exxon Mobil Corporation | Niro Inc. |

# Corporate Members of the
# Product Liability Advisory Council
### as of 7/27/2009

Nissan North America, Inc.

Nokia Inc.

Novartis Pharmaceuticals Corporation

PACCAR Inc.

Panasonic

Pfizer Inc.

Porsche Cars North America, Inc.

Purdue Pharma L.P.

Remington Arms Company, Inc.

Rheem Manufacturing

RJ Reynolds Tobacco Company

Schindler Elevator Corporation

SCM Group USA Inc.

Senco Products, Inc.

Shell Oil Company

The Sherwin-Williams Company

Smith & Nephew, Inc.

St. Jude Medical, Inc.

Subaru of America, Inc.

Synthes (U.S.A.)

Terex Corporation

Textron, Inc.

TK Holdings Inc.

The Toro Company

Toshiba America Incorporated

Toyota Motor Sales, USA, Inc.

TRW Automotive

Vermeer Manufacturing Company

The Viking Corporation

Volkswagen of America, Inc.

Volvo Cars of North America, Inc.

Vulcan Materials Company

Watts Water Technologies, Inc.

Whirlpool Corporation

Yamaha Motor Corporation, U.S.A.

Yokohama Tire Corporation

Zimmer, Inc.

EXHIBIT C

No. 09-55376

---

IN THE
UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

---

MICHAEL MAZZA, JANET MAZZA and DEEP KALSI,
individually, and on behalf of other members
of the general public similarly situated,

*Plaintiffs-Appellees,*

v.

AMERICAN HONDA MOTOR CO., INC.,

*Defendant-Appellant.*

---

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
THE HONORABLE VALERIE BAKER FAIRBANK, JUDGE PRESIDING
COURTROOM 9
CASE NO. 2:07-CV-7857-VBF (JTLx)

---

## APPELLEES' BRIEF

---

MARC PRIMO (SBN 216796)
ROBERT BYRNES (SBN 200761)
PAYAM SHAHIAN (SBN 228406)
INITIATIVE LEGAL GROUP, APC
1800 CENTURY PARK EAST, 2ND FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: (310) 556-5637
FAX: (310) 861-9051

MICHAEL F. RAM (SBN 104805)
RAM & OLSON LLP
555 MONTGOMERY STREET, SUITE 820
SAN FRANCISCO, CALIFORNIA 94111
TELEPHONE: (415) 443-4949
FAX: (415) 433-7311

*Attorneys for Plaintiffs-Appellees*

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION.........................................................1

STATEMENT OF ISSUES ...................................................................1

STATEMENT OF THE CASE................................................................2

STATEMENT OF FACTS ......................................................................3

      A.    Honda and Its Advertising Agencies Are Based in
California.............................................................................3

      B.    Honda Introduced the CMBS in 2005 for Its Luxury
Acura Brand .......................................................................3

      C.    Honda Knew the CMBS Would Not Reliably Function......................4

      D.    Honda Promoted the New CMBS Across Multiple Media
Without Disclosing It Would Not Reliably Function ..........................6

      E.    Plaintiffs Filed the Present Class Action...............................................8

      F.    The District Court Certified a National Class Applying
California Law and Honda Appealed...................................................8

SUMMARY OF ARGUMENT ...............................................................9

STANDARD OF REVIEW ...................................................................13

ARGUMENT .......................................................................................13

      A.    The District Court's Class Certification Ruling Properly
Found the Predominance of Common Questions as to
Plaintiff's CLRA, UCL, FAL, and Unjust Enrichment
Claims...............................................................................13

              1.    The District Court's Class Certification Ruling
Properly Found the Predominance of Common
Questions as to Plaintiff's CLRA Claim...................................13

2.    The District Court's Class Certification Ruling
      Properly Found the Predominance of Common
      Questions as to Plaintiff's UCL Claim ..................................24

3.    The District Court's Class Certification Ruling
      Properly Found the Predominance of Common
      Questions as to Plaintiff's Unjust Enrichment
      Claim ........................................................................................28

B.    The District Court's Class Certification Ruling Properly
      Applied California Law to a National Class ......................................29

      1.    The District Court Properly Applied California's
            Choice-of-Law Rule..................................................................29

      2.    The District Court Properly Determined That No
            Material Variations Exist Among the Various
            State's Laws in This Litigation ................................................33

      3.    The District Court Properly Determined That No
            Other State Had an Interest in Having Its Laws
            Applied in This Litigation.........................................................41

      4.    The District Court Properly Determined That No
            Other State's Interests Would Be More Impaired
            Than California's in This Litigation .........................................43

CONCLUSION ......................................................................................................46

TABLE OF AUTHORITIES

**Cases**                                                                                                     **Page(s)**

*Binder v. Gillespie*, 184 F.3d 1059 (9th Cir. 1999) ...................................27

*Blount v. Peerless Chems. (P.R.), Inc.*, 316 F.2d 695 (2d Cir. 1963).....................41

*Brady v. Brown*, 50 F.3d 13 (9th Cir. 1995) ...........................................28

*Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798 (2007) .......................24

*Cartwright v. Viking Indus.*, 2009 U.S. Dist. LEXIS 83286 (E.D. Cal.
   2009) ..........................................................................*passim*

*Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138 (N.D. Cal
   2005) ..........................................................................*passim*

*Church v. Cons. Freightways, Inc.*, 1992 U.S. Dist. LEXIS 18234
   (N.D. Cal. 1992)....................................................................38

*Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605 (1987) ....................*passim*

*Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th
   1351 (2003)........................................................................18

*Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 612 N.E.2d 277, 595
   N.Y.S.2d 919 (N.Y. 1993) ..........................................................43

*Dal Pontev. American Mortg. Exp. Corp.*, 2006 U.S. Dist. LEXIS
   57675 (D.N.J. 2006) ...............................................................39

*Daugherty v. Amer. Honda Co., Inc.*, 144 Cal. App. 4th 824 (2006).....................36

*Day v. AT&T*, 63 Cal. App. 4th 325 (1998)..........................................6, 19

*Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951 (1997) ....................25

*Falk v. General Motors, Inc.*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007)............*passim*

*FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 92 S. Ct. 898, 31 L.
   Ed. 2d 170 (1972) .................................................................36

*Funk v. Sperry Corp.*, 842 F.2d 1129 (9th Cir. 1988) ..............................18

*Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330 (9th Cir. 1977) ..............................................................*passim*

*Hall v. Time Inc.*, 158 Cal. App. 4th 847, 70 Cal. Rptr. 3d 466 (2008) .................14

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .........................30, 34, 37

*Hawkins v. Comparet-Cassani*, 251 F.3d 1230 (9th Cir. 2001) ..............................13

*Hurtado v. Super. Ct.*, 11 Cal. 3d 574 (1974)...................................................*passim*

*In re Activision Securities Litigation*, 621 F. Supp. 415 (N.D. Cal. 1985) ...............................................................................................30

*In re General Motors Corp. Dex-Cool Prod. Liab. Litig.*, 241 F.R.D. 305 (S.D. Ill. 2007) .............................................................................26

*In re Pizza Time Theatre Sec. Litig.*, 112 F.R.D. 15 (N.D. Cal. 1986)...................42

*In re St Jude Medical, Inc.*, 425 F.3d 1116 (8th Cir. 2005).....................................34

*In re Tobacco Cases II*, 46 Cal. 4th 298 (Cal. 2009)......................................*passim*

*In re Mercedes-Benz Tele AID Contract Litigation*, 257 F.R.D. 46 (N.J. Dist. 2009)..................................................................................*passim*

*Kearney v. Solomon Smith Barney, Inc.*, 39 Cal. 4th 95 (2006)..............................46

*Kohen v. Pacific Inv. Mgmt Co.*, 571 F.3d 672 (7th Cir. 2009) ........................26, 27

*Lectrodryer v. Seoul Bank*, 77 Cal. App. 4th 723, 91 Cal. Rptr. 2d 881 (2000) ............................................................................................................28

*LiMandri v. Judkins*, 52 Cal. App. 4th 326 (1997)........................................*passim*

*Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85 (2001) .............................................21

*Marketing West Inc. v. Sanyo Fischer (USA) Corp.*, 6 Cal. App. 4th 603 (1992)......................................................................................................21

*Massachusetts Mutual Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1288 (2002)..............................................................................*passim*

*Mazza, et al. v. American Honda Motor Co.*, 254 F.R.D. 610 (C.D. Cal. 2009)..................................................................................................*passim*

iv

*Meyer v. Sprint Spectrum*, 45 Cal. 4th 634 (2009) ...........................................*passim*

*Mirkin v. Wasserman*, 5 Cal. 4th 1083 (1993).....................................................*passim*

*Morgan v. AT&T Wireless Services, Inc.*, 177 Cal. App. 4th 1235 (2009).........................................................................................................25

*Palmer v. Beverly Enter.*, 823 F.2d 1105 (7th Cir. 1987).......................................45

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985) ........................................................................29, 32

*Plascencia v. Lending 1st Mortgage*, 2009 WL 2569732 (N.D. Cal. Aug. 21, 2009) ..........................................................................................26

*Poulos v. Caesars World, Inc.*, 379 F.3d 654 (9th Cir. 2004) .........................*passim*

*Rivera v. Bio-Engineered Supplements & Nutrition*, 2008 U.S. Dist LEXIS 95083 (C.D. Cal. Nov. 13, 2008) .............................................29

*Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992)................................................20

*Occidental Land, Inc. v. Super. Ct.*, 18 Cal. 3d 355 (1976) ...................................15

*Reveles v. Toyota by the Bay*, 57 Cal. App. 4th 1139 (1997) .................................14

*Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144 (2000) ...........................................19

*Scibek v. Longette*, 339 N.J. Super. 72 (2001)........................................................42

*Stern v. AT&T Mobility Corp.*, 2008 U.S. Dist. LEXIS 110305 (C.D. Cal. 2008)...............................................................................................17

*Stickrath v. Globalstar, Inc.*, 2008 U.S. Dist. LEXIS 12190 (N.D. Cal. N.D. Feb. 6, 2008) ...........................................................................19

*Stone v. White*, 301 U.S. 532, 57 S. Ct. 851, 81 L. Ed. 1265, 1937-1 C.B. 224 (U.S. 1927) ...........................................................................40

*Townsend v. Sears, Roebuck and Co.*, 227 Ill. 2d 147 (2007)................................46

*Tull v. United States*, 481 U.S. 412, 107 S. Ct. 1831, 95 L. Ed. 2d 365 (U.S. 1987)...........................................................................................40

*Vasquez v. Super. Ct. of San Joaquin County*, 4 Cal. 3d 800 (1971) .......................15

*Wang v. Massey Chevrolet*, 97 Cal. App. 4th 856 (2002) .........................................14

*Washington Mutual Bank v. Super. Ct.*, 24 Cal. 4th 906 (Cal. 2001)..............*passim*

*Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224 (2001)......................*passim*

*Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180 (9th Cir.

2001) ........................................................................................13, 31, 32

## Statutes and Rules        Page(s)

15 U.S.C. § 45(n) ........................................................................36

28 U.S.C. § 1282 ..........................................................................1

28 U.S.C. § 1332(d)(2)(A) ..............................................................1

Ca. Bus. & Prof. Code § 17200 ................................................9, 36

Ca. Bus. & Prof. Code § 17205 .....................................................36

Ca. Bus. & Prof. Code § 17534.5 ..................................................36

Ca. Bus. & Prof. Code § 18208 .....................................................37

Ca. Civ. Code § 1750......................................................................9

Ca. Civ. Code § 1752.....................................................................36

Ca. Civ. Code § 1760.............................................................14, 42

Ca. Civ. Code § 1770.....................................................................14

Ca. Civ. Code § 1770(a) ................................................................36

Ca. Civ. Code § 1780(a)(1)............................................................36

Ca. Civ. Code § 1780(d) ...............................................................36

Ca. Civ. Code § 1783.....................................................................37

Fed. R. Civ. P. 23(a)........................................................................3

Fed. R. Civ. P. 23(b)(3)...............................................................3, 19

Fed. R. Civ. P. 23(f) ....................................................................1, 9

**Other Authorities**                                                             **Page(s)**

Newberg & Conte, Newberg on Class Actions (4th ed. 2002)................................26

Restatement (First) of Restitution (1937) .................................................................40

Va. Code. Ann. § 59.1 ............................................................................................44

## STATEMENT OF JURISDICTION

Plaintiffs/Appellees agree with Defendant/Appellant's Statement of Jurisdiction as to both the United States District Court's jurisdiction and the Court of Appeal's Jurisdiction. The district court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because all conditions for the exercise of diversity jurisdiction are satisfied. Plaintiffs Michael and Janet Mazza are Florida residents; plaintiff Deep Kalsi is a Maryland resident; defendant American Honda Motor Company, Inc. ("Honda") is a California corporation with its principal place of business in Torrance, California. The amount-in-controversy threshold for diversity actions is exceeded because the value of class members' aggregate claims is greater than $5 million, less costs and interest. Fewer than one-third of the class members are citizens of California, where the action was originally filed and is pending.

The Court of Appeal has jurisdiction pursuant to Fed. R. Civ. P. 23(f) and 28 U.S.C. § 1282.

## STATEMENT OF ISSUES

1. Whether the district court's conclusion that common questions predominate and the resulting grant of class certification was based on the district court's application of impermissible legal criteria or clearly erroneous findings of fact:

   a. under the California Consumer Legal Remedies Act in light of factual findings demonstrating a uniform, class-wide misrepresentation by way of omission of facts that a reasonable consumer would allegedly find material;

   b. under the California Unfair Competition and False Advertising Laws in light of factual findings that the class representatives alleged injury

1

in fact as a result of misrepresentation by way of omission of facts
that allegedly would likely deceive a reasonable consumer;

c.     under California unjust enrichment law in light of factual findings that
Honda's failure to reveal that the CMBS does not perform reliably
induces reliance on the part of consumers, which results in
consumers' greater propensity to purchase the Acura RL with the
$4000 CMBS option.

2.   Whether the district court's application of California consumer protection
statutes and unjust enrichment law to a nationwide class was based on an
improper application of California's choice of law rules or clearly erroneous
findings of fact.

## STATEMENT OF THE CASE

Plaintiffs brought this class action after discovering that the Acura RL's
Collision Mitigation Braking System ("CMBS"), which is manufactured and sold
by California-based Honda, does not warn drivers in time to avoid an accident
because its purported stages of operation commonly overlap and it shuts off in bad
weather, including fog, rain and snow, precisely when such a system would be
most helpful.

Honda knew, but did not reveal in *pre-purchase* advertising and marketing,
the limitations of the CMBS.  Instead, such disclosures were only made in *post-
purchase* materials.

Plaintiffs filed the instant action, alleging that Honda's omissions violated
California's Unfair Competition and False Advertising Laws; Consumers Legal
Remedies Act; and common law of unjust enrichment.

On December 16, 2008, the district court granted Plaintiffs' Renewed
Motion for Class Certification, finding that Plaintiffs met their burden of showing
that their proposed class satisfied the requirements of Rule 23(a) and Rule

23(b)(3).  *Mazza v. American Honda Motor Co.*, 254 F.R.D. 610 (C.D. Cal. 2009).
The Court had denied, without prejudice, Plaintiffs' initial class certification
motion, and requested that the parties submit supplemental briefing in connection
with a renewed motion for class certification.[1]  Accordingly, the parties
exhaustively briefed the class certification motion twice, the second time
specifically focusing on, among other things, the very predominance and choice of
law issues that Honda, now for a third time, avers ought to have been decided in its
favor.

STATEMENT OF FACTS

A.    Honda and Its Advertising Agencies Are Based in California

Honda is a California corporation, with its principal place of business and
corporate headquarters in Torrance, California, including its headquarters for sales,
marketing, research and development.  *See Mazza*, 254 F.R.D. at 620.  Virtually
every event connected with the CMBS — notably its marketing — happened in
and emanated from California.[2]  Acura's advertising headquarters is in Torrance,
California, as is Honda's Executive Management, which gives final approval of the
different versions of advertisements in consultation with Honda's legal department,
which is also in Torrance.[3]  Likewise, Honda's Sales Communications
Department, which is responsible for point-of-sale advertising, is also located in
Torrance, California.[4]

B.    Honda Introduced the CMBS in 2005 for Its Luxury Acura Brand

In reaction to internal research and competitive market pressures, certain

---

[1] Excerpts of Records in Support of Opening Brief of Appellant American
Honda Motor Co., Inc. ("ER") at 30-32.

[2] *See* Appellees' Supplemental Excerpts of Record ("SER") at 215:15-25.

[3] *See* SER at 281:2-14 and 284:23-286:21.

[4] *See* SER at 284:23-286:21.

Acura RL vehicles beginning with the 2006 model year have offered an optional
"Technology Package" that includes the CMBS.  For all model years since 2006,
the CMBS adds approximately $4000 to the cost of a new Acura RL.[5]

Honda's aggressive promotion of the CMBS's accident avoidance feature
was based on Honda's internal research, which concluded that "driver inattention"
is frequently a safety and purchasing consideration among United States
consumers.[6]  Honda advertising described the CMBS as consisting of three
separate stages or phases — emphasizing a sequential, multi-staged response from
the CMBS commencing well before a collision, beginning with lower-urgency
signals to the driver, and concluding with full brake deployment.[7]

C.      Honda Knew the CMBS Would Not Reliably Function

Honda knew that the CMBS did not operate in the reliable, sequential
manner exemplified by the "three stage" descriptions, videos, and diagrams.  Only
the Acura RL owner's manual and OwnerLink online resource, which purchasers
obtained *after* they purchased the Acura RL, explained the limitations of the
CMBS, including the fact that it "can shut off in bad weather."[8]

A Honda designee conceded as much, testifying that it is "virtually
impossible" for the CMBS to proceed as advertised—sequentially, from Stage One
to Stage Two to Stage Three.[9]  Only "in a perfect world" would all three stages
function sequentially.[10]

---

[5] *Mazza*, 254 F.R.D. at 627.

[6] *See* SER at 172-178 (April 2005 CMBS Study Meeting);179-181 (July
2005 CMBS Study Meeting).

[7] *See*, *e.g.*, SER at 132; ER at 426, 430, 433 (CMBS Internet
advertisements).

[8] ER at 441-446.

[9] SER at 229:2-19.

[10] SER at 231:6-23.

In its advertisements, Honda omitted the very CMBS limitations that in two internal meetings merited an internal document emphasizing that "**Overlap between Alert and Preparation Phases is possible.**"[11]  Indeed, customer relations documents produced before Plaintiffs' certification motion was filed and considered by the district court confirmed that "some early advertising materials for the CMBS were not 100% accurate."[12]

By contrast, all of Honda' advertisements and marketing intended to be received *pre-purchase* (*see* ER 396:16-ER 400:21, 438:6-439:4) showed or described multi-stage capability, without any reference to stage overlap or failure to activate in bad weather.[13]  And with the exception of the owner's manual, even those materials that were predominantly available *post-purchase* failed to disclose the fact that the CMBS can shut-off altogether in bad weather.[14]

So, to whatever limited extent Honda might have alluded to some of the omissions alleged, Honda never made the unflattering information about the limitations of the CMBS reasonably available to the putative class members *before* they bought the CMBS.  *See Day v. AT&T*, 63 Cal. App. 4th 325 (1998) (actionable omission where material consumer information is revealed only in materials predominantly available *post-purchase*).

Under the governing "reasonable consumer" standard, therefore, had Honda

---

[11] *See* SER 178 and 181; ER at 404:16-405:1-4 (Honda Study Meeting attended by Acura public relations, Acura advertising, RPA[Honda's print TV advertising agency], Genex [Honda's internet advertising agency], Acura Client Services, Acura sales, interactive marketing, and sales communications); ER at 403:8-24 (subsequent Study Meeting with same attendees).

[12] SER at 135.

[13] *See* ER at 258-259 (2006 Acura RL Brochure); ER at 264-265(2007 Acura RL Brochure); ER at 269-271 (2008 Acura RL Brochure); ER at 360 (Distance TV Ad, aka "Fog # 1); ER at 361 ("Fog # 2"); ER at 434 (print advertisement); SER at 132 & ER at 419 (Internet videos).  [This was #12 in the 8pm brief.]

[14] *See* SER at 47:11-48:2 (CIC video); SER at 61:3-12 (Owner-Link website); ER at 300 (Acura Style Magazine).

told the full story about the CMBS, the prospective class members either wouldn't have bought the CMBS, or they wouldn't have paid $4000 for it.[15]

D.    Honda Promoted the New CMBS Across Multiple Media Without Disclosing It Would Not Reliably Function

Honda has extensively promoted the CMBS across essentially all available media. The Rubin Postaer and Associates advertising agency, headquartered in Santa Monica, California, created "print, radio, and television" advertising for the Acura RL and CMBS.[16] For Internet-based advertising, Honda retained Genex, of Culver City, California.[17] Advertising and promotional materials for the CMBS included the "press release" copy, traditional television advertising, Internet-based video, and general advertising copy.[18]

CMBS television advertising commenced in November of 2005, in 28 national markets, and thereafter had a significant run of more than 2,000 airings in approximately 109 markets during 2006.[19] Internet-based CMBS advertising began running in August of 2005.[20] The most prevalent of the CMBS television advertisements, "Fog #2,"[21] ran more than 2200 times, in over 100 United States Markets.[22] Fog #2, a slight variation on Fog #1,[23] is particularly germane to the omission that is alleged with respect to the CMBS because fog is precisely the kind of weather condition in which the CMBS purported multi-stage capability would

---

[15] SER at 84:3-20; 88:24-89:14.

[16] ER at 395:9-396:10.

[17] SER at 313:10-314:15; 315:24-316:1.

[18] ER 396:16-400:21.

[19] ER at 398:25-400:21.

[20] *See* ER at 397:7-398:24.

[21] ER at 399:6-400:21.

[22] ER 398:25-400:21.

[23] SER at 292:7-293:2 and ER at 360.

be most necessary.

The dominant CMBS Internet video showing the System multi-stage capability ran from October 20, 2005 through June of 2008, and embodies each of the omissions alleged by Plaintiffs.[24] Additionally, Honda placed several "internet press releases," each of which featured the three deliberate and distinct stages described in the main internet video. The first of these press releases was posted from August 17, 2005 through September 11, 2006; the second from September 11, 2006 through September 17, 2007; the third from September 11, 2006 to February 6, 2008; and the fourth from February 6, 2008 to the present.[25]

Honda's "point-of-sale" advertising for the RL and CMBS was in the form of brochures available at dealerships, at no charge. New brochures were introduced for each model year.[26] Each of the Acura brochures discussed the CMBS multi-stage capability and referred prospective Acura purchasers to Acura.com's website for more information.[27]

After reviewing Honda's Acura Advance Technology Training Module,[28] all new Honda sales personnel were required to take a "CMBS Test"[29] that reprised the content of Honda's advertisements and training video, including the purported three-stage progression.[30] Additionally, dealer-based Acura sales personnel were expected to be familiar with the Acura Sales Training and Facts Guide, which was

---

[24] SER at 132.

[25] ER 397:7-398:14. *See also* SER at 182 (juxtaposing Honda's *internal* documents); SER 178 & 181 (showing the uncertainty of the CMBS System's three-stage deployment and press releases designed for *external* consumption).

[26] *See* ER at 258-259 (2006 brochures); ER 264-265 (2007 brochure); ER at 270; SER 147 (2008 brochure).

[27] *See*, *e.g.*, SER at 145 & 148.

[28] *See*, *e.g.*, SER at 260:21-263:23 (Training Module video, excerpted); SER at 150 (Acura Advance Technology Training Module video).

[29] SER at 151-163; 265:12-17.

[30] SER at 152.

updated for each of the model years since 2006.[31]

All of the CMBS pre-purchase marketing materials, as well as Honda's own sales training materials, failed to disclose that:

(1)    The three stages of the CMBS overlap and therefore will not function properly to prevent an accident;

(2)    The CMBS will not warn drivers in time to avoid an accident; and

(3)    The CMBS shuts off in bad weather.[32]

E.    **Plaintiffs Filed the Present Class Action**

Plaintiffs filed the instant action, alleging the foregoing omissions about the CMBS, and seeking all available remedies on behalf of a nation-wide class of Acura RL owners who bought the $4000 CMBS option under the California Consumers Legal Remedies Act (Cal. Civ. Code § 1750 *et seq.* (CLRA)); California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.* (UCL)); California False Advertising Law (Cal. Civ. Code § 1750 *et seq.* (FAL)); and under California's common law of unjust enrichment.

F.    **The District Court Certified a National Class Applying California Law and Honda Appealed**

In an Order issued following the parties' initial class certification briefing, the district court requested that three specific issues be addressed in supplemental briefing: (1) identification of the material omissions that are the basis for the action; (2) a clear statement of the class definition; and (3) the application of

---

[31] *See* SER 164-165, (2006 Acura Sales Training and Facts Guide); SER 166-168, (2007 Acura Sales Training and Facts Guide); SER 169-171, (2008 Acura Sales Training and Facts Guide); SER 374, (2009 Acura Sales Training and Facts Guide).

[32] Honda also references a 2009 CMBS video that for the first time attempts to inform consumers that the "*system immediately enters its third stage*." Opening Br. at 11. The video is essentially an admission that this information is material to consumers. Tellingly, it was released for the first time *after Plaintiffs' filed their certification brief.*

California law to a nationwide class, and the choice of law analysis attendant to that determination. Following that supplemental briefing, the district court certified a class of "[a]ll persons in the United States, who between August 17, 2005 and class certification, purchased or leased, not for resale, Acura RL vehicles equipped with the Collision Mitigation Braking System." *Mazza*, 254 F.R.D. at 615.

This appeal followed, pursuant to Fed. R. Civ. P. 23(f). Honda challenges the district court's application of California law to the claims of the certified nationwide class and also challenges the district court's predominance analysis, arguing that because reliance cannot be inferred from the allegedly material omissions, individual questions (concerning whether the class members did in fact rely on Honda's advertising) necessarily predominate. With this brief, Plaintiffs, as Appellees, oppose Honda's appeal, and seek a ruling affirming the district court's certification of the class.

## SUMMARY OF ARGUMENT

Plaintiffs bought Honda's Acura RL model, and paid $4000 for an optional package that included the "Collision Mitigation Braking System" (CMBS) only to discover performance deficiencies never referenced in any of Honda's pre-purchase CMBS marketing materials: (i) that the CMBS stages overlap; (ii) that the CMBS does not provide sufficient notice to allow drivers to avoid a collision; and, (iii) that the CMBS will spontaneously shut itself off when it is most needed, in bad weather such as fog, rain, and snow. Plaintiffs filed the present action on behalf of themselves and everyone else who had bought the CMBS in the United States, alleging violations of California's Consumer Legal Remedies Act (CLRA), Unfair Competition Law (UCL), and False Advertising Law (FAL), as well as a common law unjust enrichment claim. Plaintiffs moved for class certification and the application of California law to a nationwide class, and the motion was granted.

9

At issue in this appeal is the district court's ruling granting class certification as well as the district court's choice of law analysis that yielded the application of California law.  Because the class certification ruling did not rely on "clearly erroneous facts" or apply "impermissible legal criteria" (the two components of the abuse of discretion standard applied to appellate review of trial court class certification rulings) the class certification ruling was proper.  Likewise, the district court properly applied California's "governmental interest" choice of law analysis.  Accordingly, the district court's ruling should be affirmed.

With regard to the certification ruling, Honda challenges the finding that common questions of law or fact predominate.  Specifically, Honda argues that the district court made an "evidence free" determination that Plaintiffs had identified a mixed question of law and fact that can determine liability on a class-wide basis and that would give rise to a class-wide inference of reliance:  *whether Honda's omissions about the CMBS would be material to a reasonable consumer?  In other words, had the class members known of the omitted information, would they have paid less for the CMBS, or not bought it at all?*

Far from the cursory, "evidence free" analysis that Honda posits, the district court made extensive factual findings, compiling virtually every television advertisement, Internet video, pamphlet, magazine advertisement, and press release that Honda issued with any CMBS content whatsoever.  The district court fully considered Honda's contention that the CMBS's conceded limitations were disclosed and, thus, that there was not a uniform omission, and that the presumption of reliance flowing from a uniform omission would not be available.  The district court divided the CMBS promotional materials across multiple media into "pre-purchase" and "post-purchase" materials and concluded that "there is no evidence that these resources were consulted by consumers pre-purchase."  *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 626 (C.D. Cal. 2008).

With none of the foregoing factual determinations even plausibly "clearly erroneous," the district court proceeded to apply well-established legal criteria and concluded that "[b]ased on the facts of this case and the written and oral arguments presented by the parties, the Court concludes that Plaintiffs are entitled to an inference of reliance as to this claim. Accordingly, the Court finds that common issues of fact predominate as to the question of materiality" with respect to both Plaintiffs' CLRA and UCL[33] causes of action. *Id.* With all other elements of class certification easily met, and the presumption of reliance nullifying Honda's contention that thousands of individual reliance inquiries would destroy commonality, the class was properly certified.

Moreover, under the California Supreme Court's recent, unambiguous holding defining the elements of UCL and FAL claims and the requisite standing to bring them, reliance is not an element of a UCL cause of action, other than to establish standing, and only then as to the named plaintiff, not the unnamed class members. *See In Re Tobacco II Case*, 46 Cal.4th 298, 318 (2009). Thus even though Plaintiffs amply met the CLRA's standard for the application of presumed reliance, that presumption is superfluous for the UCL cause of action.

So, too, did the district court conduct the same exhaustive factual and legal inquiry as to Plaintiffs' unjust enrichment cause of action, and conclude that the requisite predominance was present and supported certification of the common law claim. *See Mazza*, 254 F.R.D. at 627.

With regard to the choice of law ruling, the district court, first, applied the forum state's — California's — choice of law analysis. *Id*. at 621. In fact, the district court's choice of law analysis was especially meticulous, insofar as Judge

_____

[33] The UCL cause of action comprises the FAL cause of action, as California's False Advertising Law is set forth under the rubric of the Unfair Competition Law.

11

Fairbank ordered a *second* round of class certification briefing, requiring that the parties answer legal and factual questions bearing on the choice of law analysis.

To determine whether California law is properly applied to a nationwide class, the district court undertook the three-part governmental-interest analysis. First, the district court determined that there were no material conflicts among the states implicated in this action. *Id*. at 621-22. Second — despite having found no material conflicts — the district court proceeded to the second step of the analysis, assuming in the alternative that Honda had established material differences. *Id*. at 622. Even then, however, Honda was unable to identify a state with an interest in having its laws applied to *this litigation*. *Id*. Finally, the district court determined that no state's interests would be "more impaired" by not applying its laws than California would be, as California was home to virtually every CMBS-related marketing and design decision and is the residence for a substantial plurality of class members. *Id*. at 622-23.

Thus contrary to Honda's contention that it somehow assumed burdens properly belonging to the class certification movant, Plaintiffs exhaustively presented through two rounds of briefing — and the district court meticulously considered — evidence of the totality of Honda's CMBS advertising and promotional materials. Additionally, Honda generated voluminous appendices comparing and contrasting the consumer protection laws of the states with interests potentially implicated here, which the district court also exhaustively studied. The district court's conclusion was grounded in sound law and factual analysis, and identified the question of materiality that will carry this class action into its liability phase: *with knowledge of Honda's omissions, would a reasonable consumer have paid less or not bought the CMBS?* If the answer to that question is in the affirmative, California's CLRA, UCL, FAL, and unjust enrichment common law are properly the measures of liability and damages.

STANDARD OF REVIEW

The district court's class certification ruling is reviewed for abuse of discretion, *Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1237 (9th Cir. 2001). The district court's choice of law determination is reviewed *de novo* while the factual findings underlying the district court's choice of law determination are reviewed pursuant to the "clearly erroneous" standard. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001).

ARGUMENT

A.   The District Court's Class Certification Ruling Properly Found the Predominance of Common Questions as to Plaintiff's CLRA, UCL, FAL, and Unjust Enrichment Claims

**1.   The District Court's Class Certification Ruling Properly Found the Predominance of Common Questions as to Plaintiff's CLRA Claim**

"The [CLRA], enacted in 1970, established a nonexclusive statutory remedy for 'unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer. . . .'" (*Reveles v. Toyota by the Bay*, 57 Cal. App. 4th 1139, 1154 (1997) *quoting* Cal. Civ. Code § 1770.) The self-declared purposes of the act are 'to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.' . . . The CLRA is supplemental to remedies available under other statutory and case law." *Wang v. Massey Chevrolet*, 97 Cal. App. 4th 856, 869 (2002).

Honda argues that the district court's finding of predominance in certifying Plaintiff's CLRA claim was improperly based on a presumption of class-wide reliance because "the CLRA does not permit any presumption of reliance (and thus

13

causation and injury),[34] much less a class-wide one." Opening Br. at 43.[35] With
this statement, Honda reveals a fundamental misunderstanding of California law.
As Honda would have it, the CLRA should require an individualized proof of
reliance, making a CLRA claim impossible to certify on a class-wide basis.

However, "[T]he causation required by Civil Code section 1780 does not
make plaintiffs' [CLRA] claims unsuitable for class treatment." *Mass. Mutual*, 97
Cal. App. 4th 1282, 1292-94 (2002). It is well-established that in omission cases
under the CLRA "causation as to each class member is commonly proved more
likely than not" through a showing of materiality. *Mass. Mutual*, 97 Cal. App. 4th
1282, 1292-94.[36] The *Mass. Mutual* court upheld certification of a 33,000-member
class where the defendant insurance company failed to disclose that it had no
intention of maintaining its then high discretionary dividend rate. *Id.* at 1286. In
response to defendant's argument that each class member was required to show
causation — the same argument that Honda makes here and made below — the
*Mass. Mutual* court responded:

> Causation as to each class member is commonly proved more
> likely than not by materiality. That showing will undoubtedly
> be conclusive as to most of the class. The fact a defendant may
> be able to defeat the showing of causation as to a few individual
> class members does not transform the common question into a
> multitude of individual ones; plaintiffs satisfy their burden of
> showing causation as to each by showing materiality as to all.

*Mass. Mutual*, 97 Cal. App. 4th at 1292, *quoting Blackie v. Barrack*, 524 F.2d 891,

---

[34] "Causation" and "reliance" [and injury] are often used interchangeably in
case law. *Hall v. Time Inc.*, 158 Cal. App. 4th 847 (2008).

[35] Appellant's Opening Brief is cited herein as "Opening Br."

[36] The conclusion that reliance can be presumed in a CLRA claim is not only
well-established in case law, but follows from the structure of the CLRA itself.
The statute specifies certain unfair or deceptive practices, Cal. Civ. Code § 1770, *et
seq.*, and expressly contemplates that class actions will be filed if such practices
have caused damage to a number of consumers similarly situated. Cal. Civ. Code
§ 1781.

907, fn. 22 (9th Cir. 1975) and *citing Vasquez v. Super. Ct. of San Joauin County*, 4 Cal. 3d 800, 814-15 (1971); *Occidental Land, Inc. v. Super. Ct. of Orange County*, 18 Cal. 3d 355, 363 (1976)). *See also Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1145-46 (N.D. Cal 2005) (causation in a CLRA omission case can be proven by a showing of materiality), *aff'd*, 402 F.3d 952 (9th Cir. Cal. 2005). If materiality is shown, therefore, reliance and causation may be inferred as to the entire class. *Mass. Mutual* at 1293.

Here, the district court found that "Plaintiffs are entitled to an inference of reliance [because] common issues of fact predominate as to the questions of materiality under the CLRA Cause of Action." *Mazza* at 626. Before reaching this conclusion, the district court noted that "in determining whether the inference of reliance arises, the trial court will have to consider whether other information which [the defendant] disclosed about its [product] provided buyers with all the material information they needed in making a decision to purchase [defendant's] product." *Mazza* at 624-625, *quoting Mass. Mutual* at 1286. Then, the district court proceeded to consider all the evidence, including Honda's argument which claimed that "a single determination of materiality is not possible …because Consumers who viewed the CMBS video on the CIC at Acura dealerships, read the Summer 2007 Acura Style Mgazine, or reviewed the information on 'OwnerLink' or 'MyAcura' before purchasing an RL could not have been misled in the manner alleged by Plaintiffs." *Mazza* at 625.[37] However, based on the evidence that was made available to it, the district court found Honda's argument unpersuasive because the broad dissemination of "any pre-purchase references to the omissions

---

[37] Honda refers to an internet posting that "attributed Mazza's complaints to his idiosyncratic understanding of how the [CMBS] system work[s]." Opening Br. at 12. However, had Honda identified the author in its papers, it would have been evident that the only person who disagreed with Mazza's complaints about the CMBS, identified himself as "RL06tech" and indicated he was a Honda service technician. ER 116.

were far less prominent than the resources only designed for, and generally only available to, people who had already paid $4000 extra for an RL with the CMBS." *Mazza* at 625-26.

Honda also argues that "while the *Massachusetts Mutual* court found unusually strong and uniform facts establishing that reliance, materiality, causation, and damages could be satisfied on a class-wide basis[,] [n]o such facts or findings are evident here." Opening Brief at 42. Not so. The district court, after reviewing all the evidence below, concluded that "there is little-to-no evidence that [information about the limitations of the CMBS] was available or reached consumers prior to their purchase of the RL with CMBS." *Mazza* at 626. For example, the district court found:

> The CIC videos…. are available only to Acura dealers, and can be accessed only through a dealer entered password [citation]. There is little evidence that any of these videos were ever viewed by the prospective class members prior to their purchase [citation]. *Acura Style* Magazine is a publication Honda sends to Acura dealers, subscribing Acura owners, and interested customers. A CMBS specific article was published in the Summer 2007 issue, disclosing that the CMBS responds with "any or all three" stages in response to a potential collision [citation]. Although Honda indicates that Acura dealerships received ten copies of the magazine in the Summer of 2007, there is no evidence that any consumers read or were likely to have read the magazine before buying an RL with the CMBS. Finally, Honda contends that there was some reference to the "overlap" of the three stages of the CMBS at the OwnerLink website (the membership-blocked MyAcura.com) and in the GloveBox DVD, there is no evidence that these resources were consulted by consumers pre-purchase, nor intended to be [citation].

*Mazza* at 626 (internal citations omitted).

Honda's Opening Brief is replete with citations and arguments that pertain to affirmative representations, rather than the omissions that are the essence of this case. *See* Opening Br. at 4-12. As discussed above, the district court certified this class action not because of what Honda said, but rather what Honda did not say to

consumers prior to their purchase of vehicles equipped with the CMBS safety feature. *Mazza*, 242 F.R.D. 615.

Deceptive acts under the CLRA include affirmative misrepresentations or misrepresentation by way of omission (i.e. concealment). *Stern v. AT&T Mobility Corp.*, 2008 U.S. Dist. LEXIS 110305 *34 (C.D. Cal. 2008) ("Here, the alleged misrepresentation is in the nature of a concealment: the billing descriptions are alleged to conceal the services underlying the charges. Plainly, a charge on a customer's bill is material to the customer. Because the concealment challenged herein is material, reliance may be inferred as to the class."); *Cartwright v. Viking Indus.*, 2009 U.S. Dist. LEXIS 83286 at *37-*38 (E.D. Cal. 2009) (certifying CLRA claim because the predominant issue was not the information each class member received, but rather what defendant allegedly failed to disclose).

Where, as here, the alleged misrepresentations are Honda's failure to disclose problems with the CMBS, plaintiffs must show that Honda had a duty to disclose, which, again, may be proved through materiality. *See Falk v. General Motors, Inc.*, 496 F. Supp. 2d 1088, 1094-95 (N.D. Cal. 2007*)* (materiality determined from the perspective of reasonable consumer). A plaintiff may "successfully pursue a CLRA claim [based on a fraudulent omission]…if [the manufacturer] was 'obliged to disclose' the potential for problems." *Id.* at 1094. Such a duty to disclose exists if one of the following four circumstances is present: (1) the defendant is in a fiduciary relationship with the plaintiff; (2) the defendant has exclusive knowledge of material facts not known to the plaintiff;[38] (3) the defendant actively conceals a material fact from the plaintiff; or (4) the defendant makes partial representations but also suppresses some material facts. *Id* at 1095

---

[38] The Ninth Circuit has similarly held that under California law "a duty to disclose can... arise when one party has superior knowledge" of material facts. *Funk v. Sperry Corp.*, 842 F.2d 1129, 1134 (9th Cir. 1988).

(citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337, 60 Cal. Rptr. 2d 539 (1997)) (four obligation-to-disclose factors listed in *Falk* often referred to as "*Judkins* Factors"). Here, Honda's duty to disclose arises under the second and fourth *Judkins* Factors.[39]

Under the second *Judkins* Factor, the district court determined that Honda had exclusive knowledge of material information about the CMBS that it did not make available to consumers pre-purchase. *Mazza* at 626. Similarly, with respect to the fourth *Judkins* Factor, Honda's alleged misrepresentations are its failure to disclose the severe limitations of the CMBS. Therefore, to the extent Honda's affirmative representations matter, they are only evidence of what Honda failed to disclose to consumers pre-purchase. *See Mazza* at 626 ("the pre-purchase references to the omissions were far less prominent than the resources only designed for, and only generally available to, people who had already paid $4000 extra for an RL with the CMBS"). *See also*, *e.g.*, *Schnall v. Hertz Corp.*, 78 Cal. App. 4th, 1144, 1164 (2000) (concealment of information "relevant to the…decision" faced by consumers is actionable); *Stickrath v. Globalstar, Inc.*, 2008 U.S. Dist. LEXIS 12190 (N.D. Cal. N.D. Feb. 6, 2008) (failure to disclose poor satellite service a material fact actionable under the CLRA).[40]

Nor does Honda's contention that it *eventually* revealed the alleged

---

[39] Materiality is viewed through the perceptions of a "reasonable consumer." *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003) (CLRA).

[40] Plaintiffs' CLRA claim is based largely on defendant's alleged uniform failure to disclose facts that a reasonable consumer might find material. Thus, the common questions for determining whether class members may recover under the CLRA include: (1) whether defendant was aware of the alleged defect; (2) whether defendant had a duty to disclose its knowledge; (3) whether defendant failed to do so; (4) whether the alleged failure to disclose would be material to a reasonable consumer; and (5) whether defendant's actions violated the CLRA. *See Chamberlan*, 223 F.R.D. at 526-27. The Court found that these common questions predominate over any individual issues pursuant to Rule 23(b)(3). *Accord Mazza* at 618.

omissions excuse the deception.  *Day v. AT&T*, 63 Cal. App. 4th 325 (1998) (actionable omission where material consumer information is revealed only in materials predominantly available *post-purchase*).  Vaguely conceding that the CMBS had limitations, Honda contends the omissions were in fact revealed, but not in Honda's advertisements and other distinctly *pre-purchase* materials.  Rather, Honda's "disclosures" concerning the CMBS's limitations were limited to post-purchase resources.[41]  This is insufficient.  Moreover, "The fact a defendant may be able to defeat the showing of causation as to a few individual class members does not transform the common question into a multitude of individual ones; Plaintiffs satisfy their burden of showing causation as to each by showing materiality as to all".  *Mass. Mutual* at 1292.

Here, even though Honda had sole possession of the class members' contact information,[42] Honda has presented no evidence that any significant portion of the

---

[41] Plaintiff has never disputed that the Acura RL Owner's Manual admits the tendency to "overlap" of the CMBS stages or that "it can shut-off in bad weather." However, Plaintiffs' core contention is that information about this overlap has *never* been revealed with the necessary completeness, and, moreover, it was not revealed at all in any of the resources that potential RL/CMBS buyers consulted *pre-purchase*. *See Falk v. General Motors, Inc.*, 496 F. Supp. 2d 1088, 1097 (N.D. Cal. 2007) ("It is true that the prospective purchasers, with access to the internet, could have read the many complaints . . . [However,] many consumers would not have performed an internet search before beginning a car search. Nor were they required to do so" under California's consumer protection statutes); *Tobacco II*, 46 Cal. 4th 298, 328 ("an allegation of reliance is not defeated merely because there was alternative information available to consumer-plaintiff, even regarding an issue as prominent as whether cigarette smoking causes cancer."); *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (although defendant argued that only two members of the prospective class had complained of the alleged conduct, "the common question which is at the heart of this case does not change: were [defendant's] schools operated pursuant to an ongoing scheme to defraud and deceive prospective students?").

[42] Here, Plaintiff propounded discovery seeking the names and contact information of all class members, which would have permitted comprehensive interviews with and statistically and methodologically rigorous surveys of the class members. This would have allowed Plaintiffs to deliver to Honda the merits evidence that it now demands. However, Honda refused to produce the information; Plaintiff moved to compel, and the motion was denied. *See* SER 388-391.

class had *pre-purchase* access to the information about the CMBS performance limitations. *Accord Mass. Mutual*, 97 Cal. App. 4th at 1295 ("there is no evidence any significant part of the class had access to all the information plaintiffs believe they needed before purchasing" at-issue insurance policies).

Honda relies extensively on *Mirkin v. Wasserman*, 5 Cal. 4th 1083 (1993), which was not a consumer omission case, but rather a common law securities fraud action. In contrast to the facts here, the *Mirkin* plaintiffs conceded that that they "had never read or heard the alleged misrepresentations." *Id.* at 1094. The *Mirkin* plaintiffs alleged that the defendants had fraudulently inflated the market price of corporate stock by issuing false financial information. The court framed the issue as follows:

> The question before us is whether plaintiffs, who cannot allege that they actually read or heard the alleged misrepresentations, have pled a cause of action for deceit. Rather than relying on defendants' statements about Maxicare and the value of its securities, plaintiffs allege that they 'relied on the integrity of the securities market and the securities offering process, and the fidelity, integrity and superior knowledge of defendants...'

*Id* at 1090.

The Court rejected the argument that reliance should be presumed under the "fraud-on-the-market"[43] theory used in federal securities actions. Such a

---

[43] "Fraud on the market" is generally when shareholders in publicly traded companies rely on public material misstatements that affect the price of the stock. *See, e.g., Stoneridge Inv. Partners, LLC v. Scientific Atlanta, Inc.*, 552 U.S. 148, 128 S. Ct. 761, 769 (2008). The fraud-on-the-market theory, recognized by the Supreme Court in *Basic, Inc. v. Levinson*, 485 U.S. 224, is based upon the hypothesis that in an open and developed securities market (such as the New York Stock Exchange or NASDAQ), the price of a company's stock will be determined by all material information about the company.

In securities fraud class actions, plaintiffs typically invoke the "fraud-on-the-market" presumption of class-wide reliance upon the alleged misleading statements or omissions at issue in the case. Under the theory, because investors are presumed to rely upon the "integrity" of that market price in making their investment decisions, courts may presume for purposes of certifying a class that investors relied upon on public material misrepresentations whether affirmative or by way of omission.

presumption, the Court held, was unnecessary in a common-law deceit action because there are other statutory remedies for securities fraud that eliminate or lessen the showings required under common-law. *Id*. at 1103.

*Mirkin* has no application to the present case. Plaintiffs did not advance a "fraud-on-the-market" theory as a basis for class-wide reliance at the district court level and do not in opposition to Honda's appeal.

Significantly, however, *Mirkin* acknowledged that in an omissions case the issue is not whether the plaintiff saw and relied on affirmative misrepresentations. Rather, a plaintiff alleging omissions need only establish that "had the omitted information been disclosed, he would have been aware of it and behaved differently." *Id*. at 1093. Similarly, Plaintiffs argued and the district court held that Honda's uniform omission created a predominant common question of materiality upon which class-wide reliance could be presumed.

California decisions since *Mirkin* express the same understanding of misrepresentation by way of omission claims. *See*, *e.g.*, *Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85, 97 (2001) ([in common-law concealment case, "[t]here is no problem with reliance, since the only type of reliance required is that 'the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact").

Therefore, no matter how many different affirmative representations Honda made to class members, Honda's marketing and advertising was identical with regard to the material, actionable issue here: at no time were the CMBS's

---

The fraud-on-the-market presumption is rebuttable. As explained in *Basic*, the presumption can be rebutted by showing, among other things, that the market and investors actually knew the truth and could not have been deceived by the alleged misleading statements or omissions.

limitations disclosed to potential buyers.[44]

No less unavailing is Honda's contention that the district court's "presumption of reliance to 'mixed claims' that are premised on both affirmative misrepresentations and omissions" constitute the application of "impermissible legal criteria" required for reversal. (Opening Br. at 49, *citing Poulos v. Caesars World, Inc.*, 379 F.3d 654, 666 (9th Cir. 2004)

In *Poulos*, a panel of this Court affirmed the district court's denial of class certification on the basis that a presumption of reliance was not available due to the lack of a uniform misrepresentation either affirmative in nature or by way of omission. Thus, the court reasoned, individual reliance issues would predominate over common questions were the parties to litigate the case as a class action. *Id.* at 664. *Poulos* concerned a proposed class of video poker machine users, who alleged that they were induced into using the machines with misrepresentations regarding the likelihood of winning. (*id.* at 659-662) and is inapposite. That case's reasoning, with respect to the predominance issue, focused on the peculiar nature of a civil RICO claim, and the unique context of gambling:

> *Due to the unique nature of gambling transactions and the allegations underlying the class claims,* this is not a case in which there is an obvious link between the alleged misconduct and harm. Rather, linking the Casinos' alleged misrepresentations to plaintiffs' losses requires forging a chain of inferences that, viewed together, amount to individualized reliance. . . . *[G]ambling is not a context in which we can assume that potential class members are always similarly situated here. . .* Thus to prove proximate causation *in this case,* an individualized showing of reliance is required. . . [W]e note that *our holding is both narrow and case-specific,* and that we have been careful to frame the controlling issue in terms of causation, not reliance. . . *As the unique facts of this case*

---

[44] The *Mirkin* holding in no way limited, or even influenced, the later ruling in *Mass. Mutual*, which was recently embraced by the California Supreme Court without reference to *Mirkin* — a conspicuous omission if Honda's contention about the sweeping influence of *Mirkin* were accurate. *See In re Tobacco Cases II*, 46 Cal. 4th 298, 326 (Cal. 2009) (leading California UCL standing case citing *Mass Mutual* but neither quoting nor citing *Mirkin*).

> demonstrate, *"the infinite variety of claims that may arise make it virtually impossible to announce a black-letter rule that will dictate the result in every case."*

*Id.* at 665 (emphasis added). Furthermore, this is *not* a case about affirmative misrepresentations *and* concealment (so called "mixed" claims). As described at length throughout this brief and set forth clearly in the district court's certification order, the misrepresentation here was an omission. *And see Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330, 1333 (9th Cir. 1977), *infra* at 29.

Honda also misreads *Meyer v. Sprint Spectrum*, 45 Cal. 4th 634 (2009). In *Meyer*, plaintiffs sued a cell phone service provider under the CLRA, alleging that the arbitration agreement binding customers was unconscionable, even though defendant had not enforced those provisions against them. *Meyer*, 45 Cal. 4th at 638. The question before the court was thus whether the CLRA accords standing to permit a preemptive suit to strike the allegedly unconscionable terms. *Id.* at 639. The court ruled that the CLRA did not confer standing in such instances, as "the statute provides that in order to bring a CLRA action, not only must a consumer be exposed to an unlawful practice, but some kind of damage must result." *Id.* at 641. However, *Meyer* also held that plaintiffs need not allege actual damage. *Id.* at 640 ("'any damage' indicates a category that includes, but is greater than, 'actual damages'").

Here, Plaintiffs *have* alleged damages resulting from Honda's deceptive and unlawful practices. Specifically, Plaintiffs have alleged that because of Honda's failure to disclose material information about the limitations of the CMBS, consumers bought it when they otherwise would not have, or paid more than they otherwise would have. The *Meyer* holding does not preclude Plaintiffs from proving the existence of those damages by way of a presumption of reliance based

on the materiality of a class-wide, uniform omission.[45]

## 2. The District Court's Class Certification Ruling Properly Found the Predominance of Common Questions as to Plaintiff's UCL Claim

Honda contends that Plaintiff's claim under the UCL (and sister FAL claim) cannot be certified because reliance raises individual issues such as "whether consumers were even exposed to any particular advertising over a three-year period … [and] which consumers (if any) found the alleged misrepresentations and omissions in certain advertising material to their decision to purchase the package including the CMBS…"  Opening Br. at 40.  However, *Tobacco II* makes clear that "reliance" is not even an element of a UCL "fraudulent" prong claim and the UCL's "likely to deceive" standard remains in full effect.  *In re Tobacco Cases II*, 46 Cal. 4th 298, 320 (Cal. 2009) ("*Tobacco II*").[46]  Under *Tobacco II*, reliance is merely something that the class representative must establish for standing to bring a UCL "fraudulent" prong claim.[47]  Unnamed class members need not establish

---

[45] Honda's reliance on *Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798 (2007), is also misplaced because, there, the plaintiff did not suffer any loss because "she suspected respondents' packaging and marketing was false or misleading, and she bought respondents' products solely to pursue litigation upon the vindication of her suspicions."  *Id*. at 808-809.

[46] In *Tobacco II*, the California Supreme Court considered whether the statewide initiative known as "Proposition 64," which expressly proscribed a "private attorney general"-type action under the UCL in which a plaintiff suffering no injury prosecutes a representative action, also created new standing requirements for unnamed class members in a UCL action.  *See generally Tobacco II*, 46 Cal. 4th at 298.

[47] Indeed, *Tobacco II* holds that a defendant's misrepresentation *or nondisclosure* is the "immediate cause" of the plaintiffs' injury-producing conduct if "in its absence the plaintiff 'in all reasonable probability would not have engaged in the injury-producing conduct."  *Tobacco II*, 46 Cal. 4th at 326.  The California Supreme Court further specified that "immediate cause" did not mean "only cause."  *Id*.  "It is not…necessary that [the plaintiff's] reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor in influencing his conduct…it is enough that the representation has played a substantial part, and so has been a substantial factor, in influencing his decision. Moreover, a presumption, or at least an inference, of reliance arises, wherever

reliance at any time, including at trial for liability purposes. Thus reliance is irrelevant in the predominance analysis of a UCL "fraudulent" prong case, as here.

"[Proposition 64] was not intended to have any effect on absent class members." *Tobacco II*, 46 Cal. 4th at 319. At trial, therefore, all that must be proved here is that "members of the public are likely to [have been] deceived" by Honda's omissions. *Id.* at 312. Recovery is "available without individualized proof of deception, reliance, and injury." *Tobacco II*, 46 Cal. 4th at 320.[48]

California's intermediate appellate courts have followed the California Supreme Court's direction with respect to the UCL, specifically the holding that Proposition 64 did not alter the UCL's substantive liability standards, and that pre-Proposition 64 precedents continue to govern. *See*, *e.g.*, *Morgan v. AT&T Wireless Services, Inc.*, 177 Cal. App. 4th 1235 1247 (2009), *citing Tobacco II*, 46 Cal. 4th at 312 ("pre-Proposition 64 caselaw that describes the kinds of conduct outlawed under the UCL is applicable to post-Proposition 64 cases…The only difference is that, after Proposition 64, plaintiffs (but not absent class members in a class action)

---

there is a showing that a misrepresentation was material." *Tobacco II*, 46 Cal. 4th at 326, *quoting Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951 (1997).

Here, the "injury producing conduct" engaged by plaintiffs was their purchase of Acura vehicles equipped with the CMBS. That conduct caused injury in that each plaintiff would have bought their Acura RL with the CMBS at another price, or not at all, had the truth about the CMBS been known. Plaintiffs have each testified that they would not have purchased (or would pay less for) their cars if Honda disclosed to them the CMBS' limitations; had Honda, in effect, disclosed that the CMBS's $4000 price overstated its value, unbeknownst to consumers. Accordingly, Plaintiffs are entitled to an inference of reliance for having identified omissions by Honda, the materiality of which can be proved or disproved on a simultaneous, class-wide basis. *See Tobacco II*, 46 Cal. 4th at 326.

[48]The California Supreme Court was deliberate in preserving the "likely to deceive" standard for "fraudulent" prong cases, as well as the pre-Proposition 64 distinction between a UCL "fraudulent" prong claim and common law fraud. *See Tobacco II*, 46 Cal. 4th at 312 ("The fraudulent business practice prong of the UCL has been understood to be distinct from common law fraud. 'A [common law] fraudulent deception must be actually false, known to be false by the perpetrator and reasonably relied upon by a victim who incurs damages. None of these elements is required to state a claim for . . . relief' under the UCL.").

must establish that they meet the Proposition 64 standing requirements).

Likewise, federal district courts in California have construed *Tobacco II* and certified a class under the UCL's "fraudulent prong," without the need to find reliance by the unnamed class members. "Plaintiffs may prove with generalized evidence that Defendants' conduct was 'likely to deceive' members of the public…Common issues will thus predominate on the UCL claim." *Plascencia v. Lending 1st Mortgage*, 2009 WL 2569732, *10 (N.D. Cal. Aug. 21, 2009). Notably, the *Plascencia* court certified a common-law fraud claim based on inferred class-wide reliance, but found it *unnecessary* to discuss inferred reliance in certifying a UCL claim. *See id.* at *10-*11.

Nonetheless, Honda effectively attempts to urge a federal reversal of *Tobacco II*, with the contention that its holding is incompatible with Article III standing requirements and Rule 23 jurisprudence. *See* Opening Br. at 53 ("the court of appeals have uniformly rejected the notion that a federal class action may be brought against persons who lack standing in their own right.").

However, it is broadly recognized that absent class members "need not make any individual showing of standing, because the standing issue focuses on whether the plaintiff is before the court, not whether represented parties or absent class members are properly before the court." Newberg & Conte, Newberg on Class Actions (4th ed. 2002) § 2:7 at 88; *In re General Motors Corp. Dex-Cool Prod. Liab. Litig.*, 241 F.R.D. 305, 310 (S.D. Ill. 2007) (standing "is assessed solely with respect to class representatives, not unnamed members of the class"); *In re Tobacco Cases II*, 46 Cal. 4th 298, 318-19 (Cal. 2009) ("federal case law is clear that the question of standing in class actions involves the standing of the class representative and not the class members."); *see also Kohen v. Pacific Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009) ("a class will often include persons who have not been injured by the defendant's conduct…Such a possibility or indeed

26

inevitability does not preclude class certification").[49]

And even if Honda's novel arguments to disregard *Tobacco II* and graft a federal reliance requirement onto UCL claims had merit, the district court *did* make a finding that materiality could be established class-wide. And, as the court explained, by establishing materiality on a class-wide basis California law allows for a presumption of reliance by the unnamed class members.

In California "a presumption of reliance is appropriate in cases sounding in fraud where the plaintiffs 'have primarily alleged omissions, even though the [p]laintiffs allege a mix of misstatements and omissions." *Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir. 1999). In *Cartwright v. Viking Indus.*, 2009 U.S. Dist. LEXIS 83286 (E.D. Cal. Sept. 11, 2009), the district court granted the plaintiffs' motion for class certification for UCL claims (as well as CLRA and common law fraudulent omission claims) because of allegedly defective windows manufactured by the defendant. The court held that even though the claims were grounded in fraud allegations, plaintiffs had sufficiently demonstrated that common questions predominated because the primary issue was not the information each class member received, but rather, what material information the defendant allegedly failed to disclose to the putative class members. Specifically, the Court found that defendant fraudulently and deceptively concealed material information about the

---

[49] "PIMCO argues that before certifying a class the district court judge was required to determine which class members had suffered damages. But putting the cart before the horse in that way would violate the economics of class action procedure. It is true that injury is a prerequisite to standing. But as long as one member of a certified class has a plausible claim to have suffered damages, the requirement of standing is satisfied." *Kohen*, 571 F.3d at 676 (Posner, J.). Honda also misreads *Oshana v. Coca-Cola co.*, 472 F.3d 506 (7th Cir. 2006). In *Oshana*, the Seventh Circuit affirmed the district court's denial of class certification because the plaintiff's proposed class of millions of people included individuals "who knew fountain Diet Coke contained saccharin and bought it anyway." *Id*. at 514. Here, the district court determined that there was "little-to-no evidence" that any of the class members' could have known about the CMBS' limitations. *Mazza* at 626. *See also* ER 111:19-112:7 (Honda unable to identify a single class member who did, or could have, accessed the post-purchase materials, pre-purchase).

windows, including the fact that its window products were "not water tight and require the appropriate sealant to be properly applied." *Id.* at *37-*38.

So, even if the UCL required a showing reliance, Honda cannot avoid the inference of reliance on a uniform and allegedly material omission.

### 3. The District Court's Class Certification Ruling Properly Found the Predominance of Common Questions as to Plaintiff's Unjust Enrichment Claim

A claim for common law unjust enrichment under California law entails: (1) the receipt of a benefit; and (2) unjust retention of the benefit at the expense of another. *Lectrodryer v. Seoul Bank*, 77 Cal. App. 4th 723, 726, 91 Cal. Rptr. 2d 881 (2000). Remedies include a constructive trust and restitution. *See Brady v. Brown*, 50 F.3d 13 (9th Cir. 1995). In light of these requirements, the district court made the same thorough factual and legal findings with respect to the unjust enrichment cause of action as with the consumer protection statutes. Again, the district court concluded that common questions predominate after considering Honda's contentions:

> Defendant argues that Plaintiffs' Unjust Enrichment Claims require claimant-specific proof . . . Defendant argues it would not be "unjust" for Honda to retain a "benefit" from consumers who were fully aware of the system's limitations and range of functions at the time of purchase, or who were not concerned about how CMBS worked as long as it achieved its advertised purpose of alerting drivers to the risk of collision, or reducing impact if a collision was unavoidable. Defendant argues the same holds true for consumers who purchased an RL because they were interested in some other feature of the CMBS, such as "Adaptive Cruise Control," and got exactly what they wanted. *See* Def.'s Opp., 9:23-10:6.

*Mazza* at 627. Next, the district court turned to Plaintiff's contentions:

> Plaintiffs' Motion papers argue that common questions predominate as to the unjust enrichment claim because Honda's failure to reveal that the CMBS does not perform reliably "induces reliance on the part of consumers, which results in consumers' greater propensity to purchase the Acura RL with

the $4000 CMBS option."

*Id*. After having exhaustively analyzed the competing evidence, the district court concluded that "[f]or the same reasons discussed above, the Court finds that common issues of fact predominate as to Plaintiffs' Unjust Enrichment claims." *Mazza* at 627.

The district court thus relied on neither "clearly erroneous facts" nor did it apply "impermissible legal criteria" to those facts. *See Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d at 1333 (reversing denial of class certification under abuse of discretion standard where district court neither relied on clearly erroneous facts nor applied "impermissible legal criteria"). The district court's analysis is extensive and detailed, examining each of Honda's specific contentions, before concluding that any revelation of the omissions Plaintiffs allege was in post-purchase, not pre-purchase, materials. *See Mazza*, 254 F.R.D. at 620. *Accord Rivera v. Bio-Engineered Supplements & Nutrition*, 2008 U.S. Dist LEXIS 95083 (C.D. Cal. Nov. 13, 2008) (Selna, J.) (certifying nationwide class under Rule 23(b)(2) and applying California law to unjust enrichment cause of action).

B.     The District Court's Class Certification Ruling Properly Applied
       California Law to a National Class

1.     **The District Court Properly Applied California's Choice-of-Law
       Rule**

California law may apply to the claims of a national class where the state has a "significant contact or significant aggregation of contacts to the claims of each class member such that application of the forum law is not arbitrary or unfair" and "so long as the interests of other states are not found to outweigh California's interest in having its law applied." *Washington Mutual Bank v. Super. Ct.*, 24 Cal. 4th 906, 921 (2001), *quoting Phillips Petroleum*, *supra* at 821-22. "[S]o long as the requisite significant contacts to California exist, a showing that is properly

borne by the class action proponent, California may constitutionally require the other side [Defendant] to shoulder the burden of demonstrating that foreign law, rather than California law, should apply to class claims." *Wash. Mutual*, *supra* at 921; *see also Wershba*, *supra*, at 241-242, *citing Clothsrigger*, *supra*, at 614.

"California follows a three-step 'governmental interest analysis' to address conflict of laws claims and ascertain the most appropriate law applicable to the issues where there is no effective choice-of-law agreement…" *Wash. Mutual*, *supra*, at 919 (citations omitted).

Under the first step of the governmental interest analysis, the foreign law proponent — here, Honda — "must identify the applicable rule of law in each potentially concerned state and must show it materially differs from the law of California." *Wash. Mutual*, *supra* at 919. "The fact that two or more states are involved does not in itself indicate that there is a conflict of laws problem." *Id*. at 919-920.[50] If "the trial court finds the laws are *materially different*, it must proceed to the second step and determine what interest, if any, each state has in having its own law applied to the case." *Id*. at 920 (emphasis added). "This means the trial court may properly find California law applicable without proceeding to the third step in the analysis if the foreign law proponent [Defendant] fails to identify any actual conflict or to establish the other state's interest in having its own laws applied." *Id.*

---

[50] *See Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 242 (2001) (differences among states' consumer protection laws not material and therefore not sufficient basis to deny national class treatment; certifying nationwide CLRA and UCL settlement class); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (same). *And see In re Activision Securities Litigation*, 621 F. Supp. 415 (N.D. Cal. 1985) ("Despite defendants' showing that material differences may indeed exist between California law and the law of other states, defendants have failed to indicate why California law would not apply in this case. Defendants must do more than show a variance in the law. They must show that the interest of other states in having their laws followed in this case is greater than California's interest in applying its own laws").

"Only if the trial court determines that the laws are materially different and that each state has an interest in having its own law applied, thus reflecting an actual conflict, must the court take the final step and select the law of the state whose interests would be 'more impaired' if its law were not applied…" *Id.*

Although in its Opening Brief Honda concedes, the district court "properly 'looked to the forum state's choice of law rules to determine the controlling substantive law,'" Opening Br. at 19, *quoting Zinser*, 253 F.3d at 1187, Honda attempts to surreptitiously invoke the alternate, "most significant relationship" test, which is laid out in the Restatement (Second) of Conflict of Laws (Opening Brief at 30-33.), and unambiguously is not the proper analytical framework when a case is pending in a California court. *See In re Mercedes-Benz Tele AID Contract Litigation*, 257 F.R.D. 46, 57 (N.J. Dist. 2009) (California uses the "government interest" for its choice of law analysis while Illinois, Missouri, New Jersey, and Washington, use the Restatement's "most significant relationship" test.)

Honda is mistaken with its contention that "the court misapplied California's choice-of-law analysis" as applied to the facts of this case.[51] *See Zinser*, 253 F.3d 1187 ("We review factual findings underlying a choice of law determination pursuant to the 'clearly erroneous' standard.") In fact, the district court properly applied California's controlling governmental interest test, and specifically found that: (1) Honda had not satisfied its burden as to the first step of the choice of law analysis, which requires that the various state laws be *material* to this litigation; (2) Honda did not meet its burden as to the second step of the choice of law analysis, which requires that other states have an interest in applying their laws in this case; and (3) Honda did not satisfy its burden as to the third step in the choice of law analysis, which requires that other states' interests be more impaired if their laws

---

[51] Opening Br. at 19.

were not applied *to this litigation involving consumers' claims against a California defendant that charged extra for a defective braking system. See Mazza* at 620-25.

"The application of a forum state's laws is presumed where the defendant has a 'significant contact or significant aggregation of contacts to the claims asserted by each member of the plaintiff class…'" *Mazza* at 620, *quoting Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985). The district court amply identified the California contacts pervading this case:

> Defendant's allegedly deceptive practices originate in, and emanate from, California. *See* Pls.' P&A, 20:16-23. Defendant is a California corporation, with its principal place of business and corporate headquarters in Torrance, California, including its headquarters for sales, marketing, research and development. According to Plaintiffs, "Virtually every event connected with the CMBS notably its design and marketing - happened in California." *Id.* at 2:13-14. Plaintiffs also note that the advertising agency hired by Honda to create the print, radio, and television advertising for the Acura RL and the CMBS is based in Santa Monica, California, and that the agency retained for internet-based advertising is based in Culver City, California.

*Mazza*, 254 F.R.D. at 620. Accordingly, the district court properly began with the presumption that the laws of the forum state, California, would apply.

Notwithstanding that presumption, the district court also conducted the full choice of law analysis. Honda acknowledges that a federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law. Opening Br. at 19; *see also Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001). It is also uncontested that California applies a three-step governmental interest analysis to determine to which law to apply. Opening Br. at 19; *see Washington Mutual Bank v. Super. Ct.*, 24 Cal. 4th 906, 919 (Cal. 2001).

The district court performed precisely this analysis, and properly concluded that, even where there are plausible conflicts, it is California's interests that would

32

be most impaired were its laws not applied.  Specifically, the district court characterized Honda as "ultimately argu[ing] that class certification is not appropriate because the laws of each plaintiff's home state should apply to its residents' claims, precluding a finding of predominance of common issues of law." *Mazza* at 624.  The district court concluded that Honda "has not shown how these interests are implicated "*in this litigation.*"  *Id.*

Yet from that narrow, case-specific holding, reached after the detailed analysis required by California's governmental-interest choice of law standard, the Opening Brief presents this hyperbole:  "the court concluded that the nonresident class members' home states have no interest in having their laws applied to the claims of in-state consumers."  Opening Br. at 15.  That states other than California do not have an interest in having their laws applied to *this litigation* is of course not the same thing as a comprehensive, universally applicable finding that states "have no interest in having their laws applied to the claims of in-state consumers" at all, under any circumstances, as the Opening Brief implies.  Even so, the district court undertook all three parts of the mandated choice of law analysis, the final two of which are premised on a finding of material differences among the states, evincing a thoroughness not required under the governmental interest analysis.  Thus even if there were material differences among the states, contrary to the district court's express finding, the district court's additional analysis concluded that the governmental-interest analysis requires the application of California law to this litigation.

## 2. The District Court Properly Determined That No Material Variations Exist Among the Various State's Laws in This Litigation

While there are minor variations in the elements of the various states' consumer statutes and common law unjust enrichment laws, those differences are

not material.  *See Hanlon v. Chrysler*, 150 F.3d 101, 1022-23 (9th Cir. 1998) ("[I]diosyncratic differences between state consumer protection laws are not sufficiently substantive to predominate over the shared claims.")

Honda argues that "state consumer protection laws vary materially" (Opening Br. at 21) and that "state unjust enrichment jurisprudence varies materially (Opening Br. at 25).  Neither assertion withstands scrutiny.

First, Honda's cited authorities are conspicuously from outside the Ninth Circuit, notably that to *In re St Jude Medical, Inc*., 425 F.3d 1116, 1120 (8th Cir. 2005), Honda's primary citation for the proposition that "'the states have material variances between their consumer protection laws."  Opening Br. at 21, *citing St. Jude*.  Moreover, had Honda performed the full choice of law analysis, and pressed beyond the mere fact of a relatively few cursory conflicts among the country's overwhelmingly similar consumer protection statutes, that complete analysis would have revealed that there are none of the "irreconcilable conflicts" that are necessary to meet only the first prong of the governmental interest analysis.  Honda has presented a scattered sampling of ostensible "conflicts," none of which have been shown to give rise to a material, consequential conflict sufficient to upset the presumption that California law is to be applied here.

Merely because "two or more states are involved does not in itself indicate that there is a conflict of law problem."  *Washington Mutual*, 24 Cal. 4th at 919.  The purported conflict must be *material*.  For example, Honda contends that "under the UCL, named plaintiffs in a class action must plead and prove 'actual reliance' to have standing to pursue a UCL claim," while in other jurisdictions, including Ohio, Florida, New Jersey, Massachusetts and  New York do not require reliance.  Opening Br. at 21-22.  This requirement only applies to the named

plaintiff and here the named Plaintiffs *have* alleged reliance.[52]  As for everyone else in the class, "'California courts have repeatedly held that relief under the UCL is available without individualized proof of deception, reliance and injury.'"  *In Re Tobacco II Case*, 46 Cal.4th 298, 318 (2009), *quoting Massachusetts Mutual Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 282, 1288 (2002).  Moreover, the UCL requirement of reliance for class representatives is the same as the federal court Article III standing requirement for any representative plaintiff who brings a class action in federal court.  *See In Re Tobacco II Case*, 46 Cal.4th 318 ("Proposition 64 was not intended in any way to alter the rules surrounding class action certification [under the UCL].  Those rules do not require that unnamed class members establish standing but, insofar as standing is concerned, focus on the class representative.  This is demonstrated by federal law, to which we look when seeking guidance on issues of class action procedure.").

Honda also argues that the district court "glossed over material differences" when it concluded that a CLRA violation, which serves as a predicate under the UCL's unlawful prong, provides each of the remedies that Honda, brimming with feigned concern for out of state class members, contends would be available only under the laws of other states.  Opening Br. at 24.  In combination, however, the UCL and CLRA provide consumers powerful protection from "unfair methods of competition and unfair or deceptive acts or practices."  Cal. Civ. Code § 1770, subd. (a), Bus. & Prof. Code § 17200).  The two acts are often alleged in the same lawsuit, and a CLRA violation can serve as the "unlawful" prong and also furnish the "fraudulent" basis of a UCL action.  *Daugherty v. Amer. Honda Co., Inc.*, 144 Cal. App. 4th 824, 837-838 (2006).  Thus, Honda's argument that the UCL only provides for restitution and injunctive relief is a deceptively truncated picture of

---

[52] SER 350:21-351:19; 35:21-36:8.

the relief that Plaintiffs seek on behalf of the class. Also alleged and certified are CLRA violations, which are virtually coextensive with UCL violations and provide for all of the remedies that Honda argues non-California residents will be deprived of.

For instance, the CLRA provides for actual damages, injunctive relief, restitution of property, punitive damages, and any other relief that the court deems proper.[53] The CLRA also awards court costs and attorney's fees to a prevailing plaintiff.[54] The remedies under the CLRA and UCL are cumulative.[55]

Honda also argues that the scope of actionable conduct differs between jurisdictions; that the definition of "unfair" under the UCL is an open question, while some of the states follow the FTC standard set in *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244-45, 92 S. Ct. 898, 31 L. Ed. 2d 170 (1972), and others follow the FTC's more recent three-part test, found at 15 U.S.C. § 45(n) (Washington). Opening Br. at 21-25. In addition, although California's UCL does not require scienter, some form of scienter is required under the laws of states including New Jersey, Illinois, Pennsylvania, and Virginia. Opening Br. at 22-23. Honda also indicates differences in the pre-filing notice requirements, the statutes of limitations, and the fact that although UCL claims may be prosecuted on a class basis, several states do not permit consumer class actions, including Virginia (a primary jurisdiction), as well as non-primary jurisdictions of Georgia, Iowa, Kentucky, Louisiana, and Mississippi. Opening Br. at 24. Again, Honda has failed to show how these differences are material to this litigation. For example,

---

[53] *See* Cal. Civ. Code. §1780(a)(1)-(5).

[54] *See* Cal. Civ. Code. §1780(d).

[55] *See* Cal. Civ. Code §1752 and Cal. Bus. & Prof. Code, §17205, *et seq.* (remedies under the CLRA and UCL supplemental to those available under other statutory and case law); *see also* Cal. Bus. & Prof. Code, §17534.5 (remedies under the FAL also cumulative).

with respect to the statute of limitations, all putative class members are covered by California's CLRA (3 years, Cal. Civ. Code § 1783) and UCL (4 years, Cal. Bus. & Prof. Code § 18208) statutes of limitations. Thus, any variations regarding the various state's statute of limitation are not material *to this litigation*. Moreover, those jurisdictions that may have a scienter requirement have interpreted their consumer protection statues to protect consumers for whose benefit the consumer protection statutes were enacted and have no interest in denying their consumers protection against an out-of-state defendant.

"[I]diosyncratic differences between state consumer protection laws are not sufficiently substantive to predominate over the shared claims." *Hanlon v. Chrysler*, 150 F.3d 101, 1022-23 (9th Cir. 1998); *see also Wershba*, 91 Cal. App. 4 at 244 ("Even though there may be differences in consumer protection laws from state to state, this is not necessarily fatal to a finding that there is a predominance of common issues among a nationwide class."). "[A]lthough some class members may possess slightly differing remedies based on state statute or common law, the actions asserted by the class representatives are not sufficiently anomalous to deny class certification. On the contrary, to the extent distinct remedies exist, they are local variants of a generally homogenous collection of causes. . . . " *Hanlon*, 150 F.3d at 1022.

Honda further argues that "punitive damages could not be imposed based on a violation of one of the CLRA's substantive prescriptions if the conduct was lawful where it occurred." Opening Br. at 25. First, Honda fails to identify a single state where its deceptive conduct would have been lawful. Second, courts in California have certified nationwide classes under California law with punitive damages remedies particularly where, as here, the defendant had significant contacts with the state. For example, *Church v. Cons. Freightways, Inc*., 1992 U.S. Dist. LEXIS 18234 at *16 (N.D. Cal. 1992) held that the defendants' contacts

and interests were sufficient to meet the *Shutts* standard and thus applying California law to class members outside of California was consistent with due process. Many of the defendants in *Church* either resided or conducted business in California and some of the alleged misrepresentations emanated from California. *Id.* Additionally, the Court held, California has an interest in addressing the alleged fraudulent conduct of its residents. *Id.* The court thus found that application of California law to a nationwide class was constitutional even though a large percentage of class members did not reside in California. *Id.* *Church* is persuasive where, as here, the defendants' principal place of business is in California, as that is where the conduct giving rise to punitive damages occurred.

Thus, where the requisite contacts exist with a particular state, courts do not hesitate to apply that state's law to a nationwide class. In *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 612-13 (1987) the court engaged in a similar analysis to find that California law could constitutionally be applied to a nationwide class asserting claims of fraud, unfair business practices, and negligent misrepresentation. *Clothesrigger, Inc.*, 191 Cal. App. 3d at 613. *Clothesrigger* was an action against long distance telephone communications companies by subscribers who alleged they were wrongfully charged for certain unanswered long distance calls without disclosure. *Id.* at 609. There, the court found a sufficient aggregation of contacts based on evidence that (1) defendants did business in California; (2) one defendant had its principal office in California; (3) a significant number of class members resided in California; and (4) the agents of one defendant who prepared the promotional and advertising literature at issue did so in California. *Id.* at 613.[56]

---

[56] *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 242 (2001) held that there were significant contacts with California by the defendant to satisfy constitutional concerns and support certification of a nationwide class. The plaintiffs alleged that Apple violated the CLRA and UCL when it discontinued its

Similarly, this class action involves a significant degree of contacts between the class claims and the state of California, thereby making the application of California's consumer protection laws constitutional.  Honda is a California corporation with its principal place of business in California.  Contrary to defendant's screed about "false federalism," a large state's insistence that a large company located within its borders obey its laws will not "sacrifice federalism."  Opening Brief at 19.[57]

Nor are any differences in unjust enrichment laws material.  "Although there are numerous permutations of the elements of the [unjust enrichment] cause of action in the various states, there are few real differences.  In all states, the focus of an unjust enrichment claim is whether the defendant was unjustly enriched.  At the core of each state's law are two fundamental elements—the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain

---

practice of providing free telephone technical support.  *Id.* at 231.  There, as in *Clothesrigger*, the defendant's principal place of business was in California and a substantial number of the class members were located in California.  *Id.* at 242.  The brochures promising free technical support were prepared in and distributed from California.  *Id.*  Importantly, the core decision at issue, the policy to discontinue free technical support, was made at defendant's headquarters in California.  *Id.*  Also similar to *Clothesrigger*, even though transactions may have occurred outside California, the representations upon which the causes of action rested necessarily emanated from California.  *Id.* at 243.  More recently, the court in *Parkinson v. Hyundai Motor America*, 2008 U.S. Dist LEXIS 101098 at *47-49 (C.D. Cal. 2008) held that California law may constitutionally apply to a nationwide class with consumer products claims under the CLRA and UCL where the defendant's relevant operations, as here, occurred in California.

[57] Courts in other jurisdictions have also granted class certification to nationwide consumer classes under one uniform body of law.  *See In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 75 (D. N.J. 2009) (certifying national class for New Jersey Consumer Fraud Act and unjust enrichment claims); *Cuesta v. Ford Motor Co.,* 209 F.3d 278 (Okla. 2009) (certifying nationwide class of truck owners for defective accelerator pedals); *Mooney v. Allianz Life Ins. Co.,* 244 F.R.D. 531 (D. Minn. 2007) (certifying national class of purchasers of annuity products under Minnesota Prevention of Consumer Fraud Act); *Dal Pontev. American Mortg. Exp. Corp.,* 2006 U.S. Dist. LEXIS 57675 at *6 (D.N.J. 2006) (certifying nationwide class for New Jersey Consumer Protection Act and unjust enrichment claims).

that benefit without compensating the plaintiff. The focus of the inquiry is the same in each state. Application of another variation of the cause of action than that subscribed to by a state will not frustrate or infringe upon that state's interests. In other words, regardless of which state's unjust enrichment elements are applied, the result is the same. Thus, there is no real conflict surrounding the elements of the cause of action." *See In Re Mercedes-Benz Tele Aid Contract Litigation*, 257 F.R.D. 46, 58-60 (applying New Jersey's unjust enrichment law to the nationwide class under both California's governmental interest test and the Restatements significant relationship test).

Because there is no material conflict relating the elements of unjust enrichment, the district court properly applied California law to those claims. It has long been recognized that unjust enrichment is an equitable cause of action meant to provide restitution to a party who has conferred a benefit on another under circumstances where the retention of that benefit would be inequitable, not punish those who were wrongfully enriched. Restatement (First) of Restitution § 1 (1937); *see also Stone v. White*, 301 U.S. 532, 535-36, 57 S. Ct. 851, 81 L. Ed. 1265, 1937-1 C.B. 224 (U.S. 1927) (characterizing modern action for unjust enrichment as successor to common law action of indebitatus assumpsit, and stating that the action's "use to recover upon rights equitable in nature to avoid unjust enrichment by the defendant at the expense of the plaintiff, and its control in every case by equitable principles…have long been recognized in this Court.") (internal citations omitted); *Tull v. United States*, 481 U.S. 412, 422, 107 S. Ct. 1831, 95 L. Ed. 2d 365 (U.S. 1987) (at common law, "[r]emedies intended to punish culpable individuals, as opposed to those intended simply to extract compensation or restore the status quo, were issued by courts of law, not courts of equity").

Two additional factors weigh in favor of the application of California law to

Plaintiff's unjust enrichment claim. First, California is the only state that has an interest not only in compensating its citizens, but also in regulating a resident corporation. *See Blount v. Peerless Chems. (P.R.), Inc.*, 316 F.2d 695, 697 (2d Cir. 1963) (a "state has an interest in subjecting to its judicial process a corporation whose activities in that state expose its residents to a risk of physical harm or economic loss; the state's interest in regulating such objectionable conduct within its borders is apparent even though the plaintiff may be a nonresident."). Furthermore, the benefits provided by Plaintiff and the prospective class members, which they allege unjustly enriched Honda — their payments for the CMBS — were accepted by Honda in California.[58]

### 3. The District Court Properly Determined That No Other State Had an Interest in Having Its Laws Applied in This Litigation

Even if Honda established the first prong of the three-part governmental interest choice of law test — that the consumer protection laws across the 50 states are materially different with respect to this litigation—it fails to establish that one or several states other than California has, or even might have, a superior interest in the application of its own law.

Honda provides no specific competing state interest that ought to trump California's, and overcome the presumption that California law applies Specifically, Honda fails to establish either other states' "significant interests" or the requisite impairment of other states' interests such that the application of California law is precluded. For example, Honda contends that scienter is not required for a UCL, FAL or CLRA claim, while knowledge and intent for omissions are a required element of other states' consumer protections statutes,

---

[58] Honda also relies on *Rivera v. Bio Engineering Supplements & Nutrition, Inc., et.* al., 2008 WL 4906433(C.D. Cal. Nov. 18, 2008), but the district court there altogether failed to apply the three-step Washington Mutual choice of law analysis that the Ninth Circuit applied in *Zinster*.

including New Jersey's Consumer Fraud Act. Opening Brief at n.7. However, Honda fails to show how New Jersey's interest is implicated in this litigation where, for example, both New Jersey and California have declared that their main interest is to protect consumers against unfair and deceptive business practices and there is no New Jersey defendant implicated in this litigation. *Scibek v. Longette*, 339 N.J. Super. 72, 78 (2001). ("[New Jersey Fraud] Act is to be liberally construed in favor of the consumer" because the legislature's "concern was the victimized consumer, not the occasionally victimized seller."); Cal. Civ. Code § 1760 (same). Thus, insofar as the application of California law facilitates a class action that would provide the possibility of full recovery for consumers, other jurisdictions' interests in their consumers' omission claims being remedied are served, and the secondary interest in applying their own laws diminishes.[59]

Given the shared objective among all states to protect their consumers, therefore, as a fundamental matter every state can be presumed to prefer that their residents' rights as consumers be protected and allegations be adjudicated by California, rather than not at all. And for several states — states with too few Acrua RL/CMBS owners to justify class treatment — "not at all" would be the likely alternative in the absence of a California class action. *See*, *e.g.*, *In re Pizza Time Theatre Sec. Litig.*, 112 F.R.D. 15, 20 (N.D. Cal. 1986) ("each jurisdiction would rather have the injuries of its citizens litigated and compensated under

---

[59] Honda's citation to *Tucci v. Club Mediterranee, S.A.*, 107 Cal. Rptr. 2d 401 (2009) is inapposite. In *Tucci*, a California resident attempted to apply California's worker's compensation laws in a personal injury lawsuit against a non-California corporate defendant for injuries that occurred in the Dominican Republic. *Id.* 184. In refusing to apply California's worker's compensation laws to the dispute, the California Court of Appeal held that the "Dominican Republic's policy of providing limited and predictable legal liability and financial responsibility for [corporate defendant] employers] doing business in that state outweighs California's interest." Here, the district court applied California's consumer protection statutes to a California corporation for conduct that occurred in California.

another state's laws than not litigated or compensated at all"…"defendants cannot show that any jurisdiction has a greater interest in applying its own law than in assuring the maintenance of a class action").

Therefore, each state from which class members will be drawn has an equal stake in this litigation; namely, the interest in assuring that their citizens are compensated. Consequently, the only means of distinguishing between the various state interests at play is by applying the law of the forum where the alleged wrongdoing took place. *See Cooney v. Osgood Mach., Inc*., 81 N.Y.2d 66, 612 N.E.2d 277, 282-83, 595 N.Y.S.2d 919 (N.Y. 1993) ("Assuming that the interest of each State in enforcement of its law is roughly equal…the situs of the tort is appropriate as a 'tie breaker' because that is the only State with which both parties have purposefully associated themselves in a significant way."). Here, California is the "situs" of the alleged wrongdoing in this case. Honda is headquartered in California, and all decisions related to the marketing of the CMBS were made and implemented by Honda or its agents, in California. Moreover, approximately 25 percent[60] of the class members reside in California, far more than any other state.

## 4. The District Court Properly Determined That No Other State's Interests Would Be More Impaired Than California's in This Litigation

Even if Honda had identified actual, pervasive conflicts, it fails to perform the required analysis of the relative governmental interests underlying the statutes and case law that are the basis for a proffered conflict of laws. The purpose of this missing analysis is to determine which state has the greater interest in the application of its law. Without reference to the *purpose* for which a particular statutory provision was or was not enacted, the choice of law analysis would be

---

[60]     SER 225:12-223:14.

incomplete and speculative.[61]

In *Hurtado v. Super. Ct.*, 11 Cal. 3d 574, 581 (1974), the California Supreme Court performed the same governmental interest analysis as the district court did here to a trial court's ruling that it would apply California law (with unlimited damages) rather than Mexican law (with limited damages) to a lawsuit brought by a Mexican accident victim who had been injured in California. *Id.* at 576-77. The California Supreme Court held that the trial court correctly applied California law on the ground that a foreign state (in this instance the Republic of Mexico) would not have an interest in denying its own residents unlimited recovery against non-residents in another state. *Id.* at 576-77.[62]

Applied here, even one of the few states that can be said to have a generalized interest in a consumer protection statute with a strict reliance requirement cannot be said to have an interest in *this litigation* upon an examination of the relative purposes behind the competing statutes, and the interests at stake. Virginia, for instance, adopted a reliance requirement because of a concern that, without such a requirement, its businesses would be unduly burdened. *See* Va. Code. Ann. § 59.1-197. However, Virginia's interest in shielding *Virginia businesses* from excessive litigation is of no moment in *this litigation*.

In *Mercedes-Benz*, the district court held that New Jersey law must be

---

[61] *See Washington Mutual* at 24 Cal. 4th 906, 920 ("in making the comparative impairment analysis, the trial court must determine the relative commitment of the respective states to the laws involved and **consider the history and current status of the states laws and the function and purpose of those laws**") (emphasis added).

[62] Where, as here, the presence or absence of a reliance requirement is at issue in a choice of law analysis concerning states' consumer protection statutes, it is imperative that the choice of law analysis address the purpose behind the inclusion, or omission, or a reliance requirement, as well as the overall purpose behind consumer protection statutes. *See Hurtado*, 11 Cal. 3d at 581, *supra*.

applied in a nationwide consumer class action against Mercedes. In that case, the district court recognized that there *were* significant differences in the consumer protection statutes from various states. Even so, the court held that New Jersey law should apply based in large part upon New Jersey's strong interest in ensuring that its corporations do not engage in fraudulent consumer conduct from within its borders.

Applying the governmental interest test, the district court in *In Re Mercedes-Benz*, 257 F.R.D. 46, 63 found that New Jersey's consumer protection statute was "designed to serve two purposes: compensating victims of fraud and regulating companies within New Jersey." *Id*. at 64. Given New Jersey's strong policy of ensuring that resident corporations do not engage in consumer fraud, and the fact that the false statements emanated from Mercedes-Benz's marketing arm in New Jersey, the district court ruled that New Jersey law should apply with respect to the consumer law claims. The district court concluded "[w]hile each of the various jurisdictions from which class members will be drawn have an equal interest in compensating their citizens, only New Jersey has the additional interest of regulating a corporation which is headquartered – and allegedly committed the actions in question – within its borders." *Id*. at 64.

Here, members of the proposed class reside in approximately 43 states, and the District of Columbia. Therefore, no state has a greater relationship to the litigation than any other by virtue of its ties to potential class members. Since Honda is headquartered in California, the conduct at issue took place in California, and approximately 25% of the class members reside in California, California is connected to both sides of the dispute and its twin interests of assuring that its citizens are compensated for any wrongdoing and in regulating a resident corporation support the application of California law. *Accord Palmer v. Beverly Enter.*, 823 F.2d 1105, 1108 (7th Cir. 1987) (recognizing California's interest in

regulating its corporations and applying California law under Illinois choice of law rules).

And even if there *were* a conflict among the states unjust enrichment laws, California's "government interest" test would support the application of California law to Plaintiff's unjust enrichment claim. Under the test, the district court must determine the states from which class members will be drawn that have the greatest interest in having their laws applied. *Kearney v. Solomon Smith Barney, Inc.*, 39 Cal. 4th 95 (2006). This requires the Court to weigh the factors contained in the Restatement and determine which state has the "most significant relationship" to Plaintiff's unjust enrichment claim. *See Townsend v. Sears, Roebuck and Co.*, 227 Ill. 2d 147 (2007) In this litigation, that is unambiguously California for all the reasons stated above.

## CONCLUSION

The district court properly found predominating common questions relating to Plaintiff's claims, including materiality, which would give rise to a class-wide presumption of reliance. The district court then conducted the controlling test as to choice-of-law, and correctly ruled that California law applies to all of the claims alleged in connection with Honda's misrepresentations by way of omission about the CMBS. Accordingly, the class certification ruling should be affirmed in all respects.

Dated: October 28, 2009

By: /s/Payam Shahian                    By: /s/Michael F. Ram

Initiative Legal Group, APC             Ram & Olson LLP
Marc Primo                              Michael F. Ram
Robert E. Byrnes
Payam Shahian

Attorneys for Plaintiffs/Appellees

CERTIFICATE OF COMPLIANCE PURSUANT TO FED. R. APP.

32(a)(7)(C) AND CIRCUIT RULE 32-1 FOR CASE NO. 09-55376

Pursuant to Fed. R. App. P. 32 (a)(7)(C) and Ninth Circuit Rule 32-1, I certify that Appellee's Brief is proportionately spaced; has a typeface of 14 points; and contains 14,906 words.

Dated:  October 28, 2009

By: /s/Marc Primo

Marc Primo

Attorneys for Plaintiffs/Appellees

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, Appellee is not aware of any related cases pending in this Court.

# EXHIBIT D

Docket No. 09-55376

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

———————————————————————

MICHAEL MAZZA, ET AL., ETC.,
Plaintiffs-Appellees,

vs.

AMERICAN HONDA MOTOR CO., INC.,
Defendant-Appellant.

———————————————————————

On Appeal from the United States District Court for the
Central District of California
No. 2:07-CV-7857-VBF (JTLx)

———————————————————————

## BRIEF OF CONSUMER ATTORNEYS OF CALIFORNIA
## AS *AMICUS CURIAE* IN SUPPORT OF APPELLEES

———————————————————————

Kimberly A. Kralowec (No. 163158)
SCHUBERT JONCKHEER KOLBE &
KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA  94111
Telephone:  (415) 788-4220

David M. Arbogast (No. 167571)
ARBOGAST & BERNS, LLP
6303 Owensmouth Ave., 10th Floor
Woodland Hills, CA 91367-2263
Telephone:  (818) 961-2000

Attorneys for Amicus Curiae
Consumer Attorneys of California

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................1

II.     STATEMENT OF INTEREST .............................................................3

III.    The District Court's order granting CLASS certification is, in
        all respects, correct. ...........................................................................4

        A.      The District Court Properly Applied California
                Law ............................................................................................4

        B.      The District Court Properly Certified the CLRA
                Claims. ......................................................................................8

        C.      The District Court Properly Certified the UCL
                Claims .....................................................................................12

                1.      Under *Tobacco II,* Unnamed Class Members
                        Are Not Required to Satisfy the New
                        Standing Requirement of Proposition 64. ....................12

                2.      Proposition 64 Did Not Change the UCL's
                        "Likely to Deceive" Liability Standard for
                        "Fraudulent" Prong Cases. .............................................14

                3.      Honda Incorrectly Argues, in Direct
                        Contravention of *Tobacco II*, that Unnamed
                        Class Members Must Prove Actual Reliance
                        or Recover No Remedy. .................................................19

        D.      The District Court Properly Certified the Unjust
                Enrichment Claim. ..................................................................23

IV.     CONCLUSION .................................................................................24

# TABLE OF AUTHORITIES

**Cases**

*Armstrong v. Davis*,
    275 F.3d 849 (9th Cir. 2001)....................................................................14

*Bank of the West v. Superior Court*,
    2 Cal. 4th 1254(1992) ..................................................................... 15, 22

*Bates v. United Parcel Service, Inc.*,
    511 F.3d 974 (9th Cir. 2007)....................................................................14

*Californians for Disability Rights v. Mervyn's, LLC*,
    39 Cal.4th 223(2006) .................................................................................4

*Caro v. Proctor & Gamble*,
    18 Cal. App. 4th 644 (1993) ....................................................................11

*Chamberlan v. Ford Motor Co.*,
    402 F.3d 952(9th Cir. 2005)......................................................................9

*Closthrigger v. GTE*,
    191 Cal. App. 3d 605(1987)......................................................................7

*Cohen v. DIRECTV, Inc.*,
    ___ Cal.App.4th ___, 2009 WL 3069116 (Sept. 28, 2009).....................18

*Committee on Children's Television, Inc. v. General Foods Corp.*,
    35 Cal. 3d 197 (1983)......................................................................... 15, 18

*Day v. AT&T Corp.*,
    63 Cal. App. 4th 325 (1998) ....................................................................17

*Doe I v. Wal-Mart Stores, Inc.*,
    572 F.3d 677 (9th Cir. 2009)......................................................................23

*Falk v. Gen. Motors Corp.*,
    496 F. Supp. 2d 1088 (N.D.Cal. 2007) .....................................................12

*First Nationwide Sav. v. Perry*,
    11 Cal. App. 4th 1657, 15 Cal. Rptr. 2d 173 (1992)..................................23

*Fletcher v. Security Pacific National Bank*,
    23 Cal. 3d 442 (1976).................................................................. 15, 21, 22

*Garamendi v. Mission Ins. Co.*,
    131 Cal. App. 4th 30, Cal. Rptr. 3d 395 (2005)..........................................5

*Great-West Life & Annuity Ins. Co. v. Knudson*,
    534 U.S. 204 (2002) ...................................................................................23

*Hirsch v. Bank of America*,
    107 Cal. App. 4th 708 (2003) ....................................................................24

*Hogya v. Superior Court*,
    142 Cal.App.3d 122 (1977)................................................................. 9, 10

*Hurtado v. Superior Court*,
    11 Cal. 3d 574 (1974)...................................................................................5

*In re Computer Memories Sec's. Litig.*,
    111 F.R.D. 675 (N.D. Cal. 1986)................................................................6

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ..................................................................... passim

*Kasky v. Nike, Inc.*,
  27 Cal. 4th 939 (2002) ...............................................................................15

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) .................................................................... 22, 24

*Kraus v. Trinity Management Services, Inc.*,
  23 Cal. 4th 116 (2000) ...............................................................................21

*Lectrodryer v. SeoulBank*,
  77 Cal. App. 4th 723, 91 Cal. Rptr. 2d 881 (2000).....................................3

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)............................13

*Marsh v. Burrell*, 805 F. Supp. 1493 (N.D. Cal. 1992)...................................6

*Mass. Mut. Life Ins. Co. v. Sup. Ct.*,
  97 Cal. App. 4th 1282, 119 Cal. Rptr. 2d 190 (2002)................. 1, 9, 10, 11

*Mazza v. American Honda Motor Co.,*
  254 F.R.D. 610 (C.D. Cal. 2009) ....................................................... passim

*Morgan v. AT&T Wireless Services, Inc.*,
  177 Cal. App. 4th 1235, 99 Cal. Rptr. 3d 768 (2009)................... 17, 18, 19

*Norwest Mortgage, Inc. v. Superior Court*,
  72 Cal. App. 4th 214 (1999) ..................................................................7, 8

*Parkinson v. Hyundai Motor America*,
  258 F.R.D. 580 (C.D. Cal. 2008) ......................................................... 9, 12

*People v. Superior Court (Jayhill)*,
  9 Cal. 3d 283 (1973)..................................................................................22

*Plascencia v. Lending 1st Mortgage*,
___ F.R.D. ___, 2009 WL 2569732 (N. D. Cal. Aug. 21, 2009)...............18


*Washington Mutual Bank v. Superior Ct.*,
24 Cal. 4th 906 (2001) ................................................................5


*Williams v. Gerber Products Co.*,
552 F.3d 934 (9th Cir. 2008).......................................................2


*Zinser v. Accufix Research Institute, Inc.*,
253 F.3d 1180 (9th Cir. 2001).....................................................4

## Statutes

Bus. & Prof. Code §17200, *et seq.* ..............................................1, 3

Bus. & Prof. Code §17203....................................................................22

Bus. & Prof. Code §17500, *et seq.* .................................................1

Cal. Civ. Code § 1770(a) ............................................................8, 9

Cal. Civ. Code §1750, *et seq*. .......................................................1

## Treatises

1 George E. Palmer, Law of Restitution § 1.1(1st ed. 1978 & Supp. 2009).23

## I.      INTRODUCTION

The District Court's order granting class certification was correct and should be affirmed.

As an initial matter, the District Court properly applied California law to class claims brought against Defendant-Appellant American Honda Motor Co. ("Honda"), a California corporation headquartered in California, because Honda's decisions to omit important, material information about its product occurred in and emanated from California.  *Mazza v. American Honda Motor Co.,* 254 F.R.D. 610, 620-25 (C.D. Cal. 2009)

The District Court also properly granted class certification[1] of claims brought under California's Consumer Legal Remedies Act ("CLRA"), Civil Code §1750, *et seq.*; Unfair Competition Law ("UCL"), Bus. & Prof. Code §17200, *et seq.*; and False Advertising Law ("FAL"), Bus. & Prof. Code §17500, *et seq.*; and for Unjust Enrichment.  *Mazza*, 254 F.R.D. at 615.

First, based upon well-established California law, *Mass. Mut. Life Ins. Co. v. Sup. Ct.*, 97 Cal. App. 4th 1282, 119 Cal. Rptr. 2d 190 (2002), the District Court properly found an inference of reliance and "that common

---

[1]      The certified class consists of "[a]ll persons in the United States, who between August 17, 2005 and class certification, purchased or leased, not for resale, Acura RL vehicles equipped with the Collision Mitigation Braking System." *Mazza*, 254 F.R.D. at 615.

1

issues of fact predominate as to the question of materiality under the CLRA Cause of Action." *Mazza*, 254 F.R.D. at 626.  In reaching this conclusion, the Court considered the "little or no evidence" submitted by Honda that the omitted information about the Collision Mitigation Braking System ("CMBS") on Acura RL vehicles was disclosed, *pre-purchase*; specifically, that the CMBS  shuts off and does not work in bad weather, including fog, rain and snow, "precisely when such a system would be most helpful." (Appellee's Brief, p. 2).  The District Court did not abuse its discretion in holding that this is material information, in that a reasonable consumer would have considered it important to know before spending an extra $4,000.00 to purchase an Acura RL equipped with the CMBS.

Second, while the District Court's opinion was issued before the California Supreme Court's decision in *In re Tobacco II Cases*, 46 Cal. 4th 298 (2009) ("*Tobacco II*"), the District Court, like this Court in *Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008), correctly held that the "likely to deceive" standard was unchanged by the Proposition 64 amendments to the UCL.  *Mazza*, 254 F.R.D. at 626; *see also Tobacco II*, 46 Cal.4th 298 *passim*.  Indeed, *Tobacco II* is wholly consistent with, and fully supports, the trial court's order granting class certification of the UCL claim in this case.

2

Third, the District Court's finding of a predominance of common issues with respect to the unjust enrichment claim was properly based upon well-established California law.  *See Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726, 91 Cal. Rptr. 2d 881 (2000).  The finding was properly based upon the same facts supporting the CLRA, UCL and FAL claims—*i.e.* Honda's failures to disclose important, material information to consumers, before they purchased or leased the subject vehicles, that would make it unjust for Honda to retain the benefits it obtained from plaintiffs and class members.   As such, the District Court found that the common facts necessary to prove this claim predominated.

## II.    STATEMENT OF INTEREST

CAOC, founded in 1962, is a voluntary non-profit membership organization of approximately 3,000 consumer attorneys practicing in California.  Its members predominantly represent individuals subjected to a variety of unlawful and harmful business practices, including consumer fraud, personal injuries, wage and hour violations, and insurance bad faith.

CAOC has taken a leading role in advancing and protecting the rights of injured citizens in both the courts and the Legislature.  This has often occurred through class and other representative actions under this state's Unfair Competition Law (Bus. & Prof. Code §§17200 *et seq.*) (UCL).  Most

3

recently, CAOC participated as amicus in *Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal.4th 223 ("*Mervyn's*") (2006) and *In re Tobacco II Cases*, 46 Cal.4th 298 ("*Tobacco II*") (2009), the two leading cases in which the Supreme Court construed Proposition 64, which amended the UCL. CAOC has also participated as an amicus in cases pending at the intermediate appellate level.

CAOC has a substantive and abiding interest in ensuring that the amendments made to the UCL by means of Proposition 64 are correctly interpreted according to their plain terms, and in a manner consistent both with the Supreme Court's precedents and with the strong public policies underlying the UCL, which that Court has consistently affirmed.

## III.   THE DISTRICT COURT'S ORDER GRANTING CLASS CERTIFICATION IS, IN ALL RESPECTS, CORRECT.

### A.   The District Court Properly Applied California Law.

This Court has held that federal district courts in California are to look to California's choice-of-law rules.  *See*, *e.g.*, *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001).

The California Supreme Court has articulated a three-step "governmental interest analysis" that California follows, "to address conflict of laws claims and ascertain the most appropriate law applicable to the

4

issues where there is no effective choice-of-law agreement." *Washington Mutual Bank v. Superior Ct.*, 24 Cal. 4th 906, 919 (2001).

Under the first step, "the foreign law proponent must identify the applicable rule of law in each potentially concerned state and must show it materially differs from the law of California." *Id.* "The fact that two or more states are involved does not in itself indicate that there is a conflict of laws problem." *Id.* at 919-20. If "the trial court finds the laws are materially different, it must proceed to the second step and determine what interest, if any, each state has in having its own law applied to the case." *Id.* at 920. "This means the trial court may properly find California law applicable . . . if the foreign law proponent fails to identify any actual conflict or to establish the other state's interest in having its own laws applied." *Id.*; *accord Garamendi v. Mission Ins. Co.*, 131 Cal. App. 4th 30, 41, 31 Cal. Rptr. 3d 395, 403 (2005); *see also Hurtado v. Superior Court* 11 Cal. 3d 574, 584 (1974) ("[W]hen the defendant is a resident of California and the tortious conduct giving rise to the . . . action occurs here, California's deterrent policy of full compensation is clearly advanced by application of its own law.").

Courts in this Circuit have distilled California's choice-of-law test, including the applicable presumption that California law applies, and the

attendant burden on the party arguing for the application of another state's law:

> California courts decide choice of law questions by means of the governmental interests analysis. This choice of law analysis embodies the presumption that California law applies unless the proponent of foreign law can show otherwise. In general, California will apply its own law, unless a party timely invokes the law of a foreign jurisdiction. When a litigant invokes foreign law, he or she must demonstrate that the [foreign] rule of decision will further the interest of the foreign state and therefore that it is an appropriate one for the forum to apply. . . . The burden of proving that a foreign jurisdiction's law applies is therefore on the party invoking the foreign rule of decision.

*Marsh v. Burrell*, 805 F. Supp. 1493, 1496 (N.D. Cal. 1992) (citations and internal quotation marks omitted); *accord In re Computer Memories Sec's. Litig.*, 111 F.R.D. 675, 684 (N.D. Cal. 1986) ("[U]nder California choice of law rules, the party seeking to invoke the law of another jurisdiction bears the burden of going forward with the argument that the foreign jurisdiction's law conflicts with the relevant California law, that both California and the foreign jurisdiction have an interest in having their own laws applied, and that the interests of the foreign jurisdiction will be more impaired than those California if its law is not applied.") (citing cases).

Therefore, as the foreign law proponent, Honda was required to identify some other state's law, show that there was an actual conflict between the two states' laws, and establish that the other state has a superior interest in having its own law applied to this case. As the District Court held, Honda failed to show material difference between state laws applicable to the issues of this case. The District Court further explained the reasons that Honda did not satisfy the second or third steps in the analysis. Indeed, "California's more favorable laws may properly apply to benefit nonresident plaintiffs when their home states have no identifiable interest in denying persons such full recovery." *Closthrigger v. GTE*, 191 Cal. App. 3d 605, 616 (1987).

Nor is there any constitutional impediment to the application of California law to borrowers with out-of-state properties. In *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214 (1999), the court held that there was no constitutional impediment to permitting non-Californians a right of action in this state because "California has a 'clear and substantial interest preventing fraudulent practices in this state . . . [and] a legitimate and compelling interest in preserving a business climate free of fraud and deceptive practices, 'and for that reason has a legitimate interest in

7

'extending state-created remedies to out-of-state parties harmed by wrongful conduct occurring in California.'" *Id.* at 224 (citations omitted).

Here, because Honda is a California corporation, headquartered in this state, and was sued for conduct that occurred in and/or emanated from California, the District Court properly applied California law to all individuals in the National Class.  Moreover, because Honda failed to properly raise any other state's law that actually conflicted with the application of California law, or show that any other state has a superior interest in having its laws applied, the District Court below, as this Court, may end the inquiry here and properly apply California law to each class member's claim.

### B.    The District Court Properly Certified the CLRA Claims.

The CLRA makes illegal various specified "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a).  For example, the CLRA proscribes "[r]epresenting that goods or services have ... characteristics, ingredients, uses, benefits, or qualities which they do not have," Cal. Civ. Code § 1770(a)(5), and "[r]epresenting that goods or services are a particular standard, quality or grade ... if they are of another."

Cal. Civ. Code § 1770(a)(7); *see*, *e.g.*, *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 955 at n.1 (9th Cir. 2005); *Parkinson v. Hyundai Motor America*, 258 F.R.D. 580, 595 (C.D. Cal. 2008) (certifying CLRA class based on "alleged uniform failure to 'disclose numerous facts that a reasonable consumer might find material." (citing *Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 526-27 (N.D. Cal. 2004)).

California courts have also certified CLRA claims in cases based upon similar allegations of uniform failures to disclose.  *See*, *e.g.*, *Mass. Mutual Life Ins. Co. v. Superior Court*, 97 Cal.App.4th 1282 (2002) ("*Mass. Mutual*"); *Hogya v. Superior Court*, 142 Cal.App.3d 122 (1977).  Thus, the District Court's order certifying plaintiffs' CLRA claims merely followed established Ninth Circuit and California precedent, and its order was well within its sound discretion to certify this claim.

In *Hogya*, the plaintiffs alleged that the defendants sold falsely upgraded beef to Navy commissaries in San Diego.  *Id.* at 124.  The beef was represented as being of "choice" quality when in fact it was only of "good" quality.  *Id.*  Plaintiffs alleged that the defendants violated the CLRA by misrepresenting that goods were of a particular standard, quality, or grade when they were not.  *Id.* at 125-26.  The trial court found that each of the criteria for certification of a CLRA claim had been satisfied, but refused to

9

certify the class on the grounds that a class action would not substantially benefit the litigants, the class, the public, and the courts. *Id.* at 127-28. The Court of Appeal reversed, holding that all of the statutory criteria were satisfied. *Id*. at 140.

In *Mass. Mutual*, *supra*, the plaintiff brought a class action on behalf of 33,000 people who, over a fifteen-year period, purchased "vanishing premium" life insurance policies. 97 Cal. App. 4th at 1286. Mass. Mutual represented that certain dividends to be paid to the policyholders would eventually accumulate so that the accumulated dividends would pay all future premiums. *Id*. In other words, the need for out-of-pocket premium payments would "vanish." *Id*. The plaintiff alleged that, contrary to the sales presentation, Mass Mutual had no intention of maintaining the high dividend rate and that Mass Mutual actually had plans to lower the dividend rate over time. *Id*.

Mass. Mutual argued that the causation element made the plaintiffs' CLRA claim unsuitable for class treatment.   The court rejected this argument, holding that causation as to each class member is commonly proved by a finding of materiality, which is conclusive as to the whole class. *Id*. at 1292.  The court further held that: "The fact a defendant may be able to defeat the showing of causation as to a few individual class members does

not transform the common question into a multitude of individual ones;
plaintiffs satisfy their burden of showing causation as to each by showing
materiality as to all." *Id.*  Distinguishing *Caro v. Proctor & Gamble*, 18 Cal.
App. 4th 644 (1993), in which certification was denied, the court stated:

> Contrary to Mass Mutual's argument, nothing we
> said in Caro undermines the general rule
> permitting common reliance where material
> misstatements have been made to a class of
> plaintiffs.  Rather, our holding in Caro merely
> stands for the self-evident proposition that such an
> inference will not arise where the record will not
> permit it.
>
> …
>
> Here, unlike the situation we considered in Caro,
> there is no evidence any significant part of the
> class had access to all the information plaintiffs
> believe they needed before purchasing N-Pay
> premium payment plans. Indeed, there is nothing
> in the record which shows that Mass Mutual's own
> assessment of the discretionary dividends was
> disclosed to any class member. If the undisclosed
> assessment was material, an inference of reliance
> as to the entire class would arise, subject to any
> rebuttal evidence Mass Mutual might offer.

*Id.* at 1294-95.

Thus, in order for the District Court to certify plaintiffs' CLRA
claims, it needed to merely find that the undisclosed facts and omissions
were material, which in turn raises at least an inference of reliance for the
entire class.  *Id.* at 1292-93; *see also Parkinson v. Hyundai Motor America*,

11

258 F.R.D. at 595 (citing *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1094-95 (N.D.Cal. 2007) ("Where, as here, the alleged misrepresentations are primarily defendant's failure to disclose problems with the class vehicles, plaintiffs must show that defendant had a duty to disclose, which, again, may be proven through materiality.").

### C.    The District Court Properly Certified the UCL Claims

*Tobacco II* confirms the correctness of the District Court's order and, as will be discussed below, this Court should affirm the District Court's order certifying the class of consumers who were charged $4,000 for Honda's CMBS safety equipment but were not provided, before they purchased or leased these subject vehicles, important safety-related information about the propensity of CMBS not to perform reliably or to work at all in bad weather, when most rear-end collisions occur and the system was most needed.

### 1.    Under *Tobacco II*, Unnamed Class Members Are Not Required to Satisfy the New Standing Requirement of Proposition 64.

The California Supreme Court held in *Tobacco II* that only the named class representative must meet the new standing requirement imposed by Prop. 64.  *See* 46 Cal.4th at 306 ("We conclude that standing requirements are applicable only to the class representatives, and not all absent class

members.").   As the Court explained, this holding was text-based, and derives directly from the UCL's wording as amended by Proposition 64:

> [T]he references in [Business & Professions Code] section 17203 to one who wishes to pursue UCL claims on behalf of others are in the singular; that is, the 'person' and the 'claimant' who pursues such claims must meet the standing requirements of section 17204 and comply with Code of Civil Procedure section 382.  The conclusion that must be drawn from these words is that only this individual—the representative plaintiff—is required to meet the standing requirements.

*Tobacco II*, 46 Cal.4th at 35-36.

Nevertheless, confusing the UCL's standing requirements with Article III standing, Honda argues that class members who paid $4,000 for a safety system that did not work or, at best, did not work reliably, cannot have their claims adjudicated on a class-wide basis.  Honda is plain wrong.

In *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), the Supreme Court held that, to satisfy Article III's standing requirements, a plaintiff must show (1) that it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is

13

likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

In the class action context, this Court has repeatedly held that "standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 986 (9th Cir. 2007) (citing *Armstrong v. Davis*, 275 F.3d 849, 860 (9th Cir. 2001)).

Here, the District Court properly found that the named class representatives met the standing requirements and thus, Honda's standing arguments should be rejected.

### 2. Proposition 64 Did Not Change the UCL's "Likely to Deceive" Liability Standard for "Fraudulent" Prong Cases.

As *Tobacco II* makes clear, "reliance" is not an element of a UCL "fraudulent" prong claim and the "likely to deceive" liability standard remains in full force today. Here, while the District Court correctly followed the "likely to deceive" standard, its finding of materiality as to the common class-wide omissions was unnecessary because, as *Tobacco II* confirms, reliance is merely something that the class representative must establish in order to have *standing* to bring a UCL "fraudulent" prong claim. It is *not* something the unnamed class members must prove—either at the outset for standing purposes, or at trial for liability purposes. In other words,

14

reliance is irrelevant to whether common questions predominate on liability in a UCL "fraudulent" prong case like this one.

As the California Supreme Court explained, "[Proposition 64] was not intended to have *any effect* on absent class members." *Tobacco II*, 46 Cal. 4th at 319 (emphasis added). Hence, all that must be proven at trial to establish a violation of the UCL's "fraudulent" prong is that "members of the public are likely to be deceived" by the defendant's conduct. *Id.* at 312 (citing *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002)); *accord*: *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992); *Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal. 3d 197, 211 (1983); *Fletcher v. Security Pacific National Bank*, 23 Cal. 3d 442, 451 (1976). Recovery is "available without individualized proof of deception, reliance, and injury." *Tobacco II*, 46 Cal. 4th at 320 (citing *Bank of the West*, 2 Cal. 4th at 1267; *Committee on Children's Television*, 35 Cal. 3d at 211).

The California Supreme Court was very careful to preserve the "likely to deceive" liability standard for "fraudulent" prong cases, observing that imposing the new standing requirement on unnamed class members would "implicitly overrule [this] fundamental holding in our previous decisions,

15

including *Fletcher*, *Bank of the West*, and *Committee on Children's Television*." *Id.*

The Court also was very careful to qualify its discussion of reliance as applicable *only* to the named class representatives and *only* for standing purposes—not to the unnamed class members and not for purposes of liability at trial. *See*, *e.g.*, *id.* at 306 ("for purposes of establishing *standing* under the UCL … *a class representative* proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate actual reliance"); 328 ("we conclude that a plaintiff must plead and prove actual reliance to satisfy the *standing* requirement of section 17204 …"); 329 ("we … remand for further proceedings to determine whether *these* [*named*] *plaintiffs* can establish *standing* …") (emphasis added).

Finally, the Court was careful to preserve the pre-Proposition 64 distinction between a UCL "fraudulent" prong claim and common-law fraud:

> The fraudulent business practice prong of the UCL has been understood to be distinct from common law fraud. "A [common law] fraudulent deception must be actually false, known to be false by the perpetrator *and reasonably relied upon* by a victim who incurs damages. *None of these elements are required to state a claim* for … relief" *under the UCL.*

16

*Id.* at 312 (quoting *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 332 (1998)) (emphasis added).

In a very recent case, the California Court of Appeal confirmed *Tobacco II*'s holding that Proposition 64 did not alter the UCL's substantive liability standards, and that *pre*-Proposition 64 precedents (including those establishing the "likely to deceive" standard for "fraudulent" prong claims) continue to govern:

> Thus, *pre-Proposition 64 caselaw* that describes the kinds of conduct outlawed under the UCL *is applicable to post-Proposition 64 cases* such as the present case. The *only* difference is that, after Proposition 64, plaintiffs (but not absent class members in a class action) must establish that they meet the Proposition 64 standing requirements.
>
> …. As noted above, a fraudulent business practice is one that is *likely to deceive* consumers.

*Morgan v. AT&T Wireless Services, Inc.*, 177 Cal. App. 4th 1235, 99 Cal. Rptr. 3d 768, 783, 785 (2009) (citing *Tobacco II*, 46 Cal. 4th at 312, 320). The court then discussed the facts necessary to establish a UCL "fraudulent" prong violation in a section entirely separate from its discussion of the facts necessary to prove the class representative's standing. *See id.* at 784-88 (Part B.1 (discussing liability), Part B.2 (discussing standing)).

In another recent case, a federal court likewise construed *Tobacco II* and granted class certification of a UCL "fraudulent" prong claim without

17

finding common reliance—inferred or otherwise: "Plaintiffs may prove with generalized evidence that Defendants' conduct was 'likely to deceive' members of the public.   The individual circumstances of each class member's loan need not be examined because the class members are not required to prove reliance and damage.   Common issues will thus predominate on the UCL claim." *Plascencia v. Lending 1st Mortgage*, ___ F.R.D. ___, 2009 WL 2569732, *10 (N. D. Cal. Aug. 21, 2009).  Notably, the court certified the common-law fraud claim based on inferred classwide reliance, but found it unnecessary to discuss inferred reliance in certifying the UCL claim.  *See id.* at *10-*11;  *see also Morgan*, 99 Cal.Rptr.3d at 786 (noting "the distinction between common law fraud, which requires allegations of actual falsity and reasonable reliance pleaded with specificity, and the fraudulent prong of the UCL, which does not" (citing *Tobacco II*, 46 Cal. 4th at 312, 320; *Committee on Children's Television*, 35 Cal.3d at 212 n.11)).[2]  The same reasoning applies here.

---

[2]     Honda may cite *Cohen v. DIRECTV, Inc.*, ___ Cal.App.4th ___, 2009 WL 3069116 (Sept. 28, 2009), another post-*Tobacco II* decision.  *Cohen*, however, badly misinterpreted *Tobacco II*.  Although, under *Tobacco II*, "reliance" is not an element of a UCL claim, and although *Tobacco II* holds that unnamed class members need not prove "reliance," *Cohen* nonetheless holds that class certification may be defeated based on individualized questions surrounding unnamed class members' "reliance."  *See Cohen*, 2009 WL 3069116 at *10 (unnamed class members' "reliance" was "a

Under *Tobacco II*, all that the class members (and the class representatives) will have to prove for liability purposes at trial is conduct "likely to deceive" consumers.  *Tobacco II*, 46 Cal.4th at 312; *Morgan*, 99 Cal. Rptr. 3d at 783, 785.  As in *Plascencia*, common questions predominate on that issue.

Thus, in light of *Tobacco II*, "likely to deceive" remains the liability standard for UCL "fraudulent" prong cases after Proposition 64. Accordingly, the district court correctly found that common questions predominated on the UCL claim, and that purported non-common questions regarding "actual reliance" were not relevant to Honda's UCL liability. *Mazza*, 254 F.R.D. at 627.  *Tobacco II* confirms the correctness of the district court's ruling.  It should be affirmed.

> **3.      Honda Incorrectly Argues, in Direct Contravention of *Tobacco II*, that Unnamed Class Members Must Prove Actual Reliance or Recover No Remedy.**

In its opening brief, Honda contends that "[t]here is no basis to presume that absent class members were exposed to the same

_____

proper criterion for the court's consideration when examining 'commonality'").  That holding is contrary to *Tobacco II*, in which the Supreme Court expressly reinstated an order granting class certification of a UCL "fraudulent" prong claim, holding that the lower courts *erred* by considering individualized questions surrounding unnamed class members' reliance.  46 Cal.4th at 311, *passim*.  Respectfully, *Cohen* simply misread *Tobacco II* and should not be followed.

communications, or were misled by them, much less that the communications bore a causal connection to the loss of money or property that could be restored to them under the UCL." Appellant's Br. at 51. However, this is directly contrary to *Tobacco II* (and the fact that Honda failed to disclose rather than affirmatively mislead). *Tobacco II* holds that absent class members (and indeed, the named class representatives) *need not prove* actual deception, reliance *or* injury for purposes of liability at trial— *or* for purposes of awarding restitutionary relief. Honda's argument flouts the California Supreme Court's unambiguous holdings in *Tobacco II*.

As *Tobacco II* holds, nothing in the UCL's text suggests that Proposition 64 changed the rules governing entitlement to restitution. On the contrary, those rules were unchanged and are "patently less stringent" than the new rules governing standing:

> [T]he language of section 17203 with respect to those entitled to restitution—"to restore to any person in interest any money or property, real or personal, which *may have been acquired*" (italics added) by means of the unfair practice—is **patently less stringent** than the standing requirement for the class representative—"any person who has suffered injury in fact and has lost money or property *as a result of* the unfair competition." (§ 17204, italics added).

20

*Tobacco II*, 46 Cal. 4th at 320 (italics original; bold added).  As a result, and out of "'concern that wrongdoers not retain the benefits of their misconduct,'" "courts repeatedly and consistently … hold that *relief* under the UCL is available without individualized proof of deception, reliance and *injury*."  *Id.* (quoting *Fletcher*, 23 Cal. 3d at 452) (emphasis added).  To reiterate, "relief" is available *without* proof of "injury."  *Id.*

Accordingly, *Tobacco II* held that, to require absent class members to show that "they have 'lost money or property as a result of'" the defendant's conduct "would conflict with the language in section 17203 authorizing broader relief—the 'may have been acquired' language …."  *Tobacco II*, 46 Cal. 4th at 320.

Section 17203 ("may have been acquired") authorizes "broader" restitutionary relief than section 17204's language ("as a result of") might suggest.  As *Tobacco II* points out, if the electorate had intended to change the remedies, it would have amended section 17203 as well as section 17204.  *Id.* at 320 & n.14.

"[T]he UCL's focus [is] on the defendant's conduct, rather than the plaintiff's damages. . . ."  *Id.* at 312 (citing *Fletcher*, 23 Cal. 3d at 453).  Its purpose is to restore the *status quo ante*.  *Kraus v. Trinity Management Services, Inc.*, 23 Cal. 4th 116, 121 (2000) (citing *People v. Superior Court*

21

(*Jayhill*), 9 Cal. 3d 283, 286 (1973)).  The UCL does not require plaintiffs to prove what they lost; rather, it requires plaintiffs to prove what the defendant "acquired," which must then be "restored" to the persons from whom it came.  Bus. & Prof. Code §17203; *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144-45 (2003).

In *Tobacco II*, the California Supreme Court confirmed the above holdings.  It reaffirmed that, notwithstanding Proposition 64, "*restitution may be ordered* 'without individualized proof of *deception, reliance, and injury* if necessary to prevent the use or employment of an unfair practice.'" *Tobacco II*, 46 Cal. 4th at 320 n.14 (citing *Fletcher*, 23 Cal. 3d 442; *Bank of the West*, 2 Cal. 4th at 1267) (emphasis added).  When relief is ordered, "the focus [will be] on the defendant's conduct," and therefore on what the *defendant gained*, "in service of the statute's larger purpose of protecting the general public against unscrupulous business practices."  *Id.* at 298 (citing *Fletcher*, 23 Cal.3d at 453).

Honda's argument boils down to the suggestion that class members must prove actual deception and injury as a prerequisite to an order requiring the defendant to "restore" what it "acquired," even though *Tobacco II* expressly holds otherwise.  The suggestion has no bearing on class certification, and in any event, is plain wrong.

22

**D.    The District Court Properly Certified the Unjust
         Enrichment Claim.**

"Unjust enrichment is commonly understood as a theory upon which
the remedy of restitution may be granted."  *See Doe I v. Wal-Mart Stores,
Inc.*, 572 F.3d 677, 684 (9th Cir. 2009) (citing 1 George E. Palmer, Law of
Restitution § 1.1 (1st ed. 1978 & Supp. 2009)); Restatement of Restitution §
1 (1937) ("A person who has been unjustly enriched at the expense of
another is required to make restitution to the other.").  And, as this Court has
observed, "California's approach to unjust enrichment is consistent with this
general understanding: 'The fact that one person benefits another is not, by
itself, sufficient to require restitution.  The person receiving the benefit is
required to make restitution only if the circumstances are such that, as
between the two individuals, it is unjust for the person to retain it.'"  *Doe I v.
Wal-Mart Stores, Inc.*, 572 F.3d at 684 (citing *First Nationwide Sav. v.
Perry*, 11 Cal. App. 4th 1657, 15 Cal. Rptr. 2d 173, 176 (1992) (emphasis in
original).")

The U.S. Supreme Court in *Great-West Life & Annuity Ins. Co. v.
Knudson*, 534 U.S. 204 (2002) observed that equitable restitution does not
impose personal liability on the defendant, but instead restores to the
plaintiff particular funds or property in the defendant's possession.  *Id.* at

23

214; *accord Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148-49 (2003) ("The object of [equitable] restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest.")  Thus, "[a]n individual is required to make restitution when he or she has been unjustly enriched at the expense of another." *Hirsch v. Bank of America*, 107 Cal. App. 4th 708, 721 (2003).

Thus, the unjust enrichment claim concerns the "benefits" Honda obtained from plaintiffs and the class members, and whether it would be "unjust" for Honda to retain the benefits.  As such, this claim is ideally suited for class wide treatment because it, like the UCL discussed above, is focused on the defendant's conduct and not on any supposed individual issues.  Moreover, the district court's order was properly based upon the same common failures to disclose and omissions that supported the plaintiffs' CLRA and UCL claims, and is consistent with well-established legal criteria.

Accordingly, the district court's order certifying the unjust enrichment claim should be affirmed.

## IV.   CONCLUSION

For the reasons discussed above, the District Court's order certifying the CLRA, UCL and Unjust Enrichment Class should be affirmed.

24

Dated:  November 4, 2009        Respectfully submitted,

SCHUBERT JONCKHEER KOLBE
& KRALOWEC LLP
Kimberly A. Kralowec

ARBOGAST & BERNS LLP
David M. Arbogast

By: */s/ David M. Arbogast*
    David M. Arbogast

Attorneys for Amicus Curiae
Consumer Attorneys of California

25

## CERTIFICATE OF COMPLIANCE

1.      Pursuant to Fed. R. App. P. 29(d) and 9th Cir. R. 32-1, the undersigned hereby certifies that the attached brief is proportionally spaced, has a typeface of 14 or more, and contains 4864 words, exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(aa)(7)(B).

2.      The brief has been prepared in proportionally-spaced typeface using Microsoft Word 2007 in 14-point Times New Roman Font.  As permitted by Fed. R. App. P. 32(a)(7)(C), the undersigned has relied upon the word-count feature of this word-processing system in preparing this certificate.

Dated:  November 4, 2009          **ARBOGAST & BERNS LLP**

By: /s/ David M. Arbogast
    David M. Arbogast
    6303 Owensmouth Ave., 10th Floor
    Woodland Hills, CA 91367-2263
    Phone: (818) 961-2000
    darbogast@law111.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on November 4, 2009.

I certify that the participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated:  November 4, 2009          **ARBOGAST & BERNS LLP**

By: /s/ David M. Arbogast
    David M. Arbogast
    6303 Owensmouth Ave., 10th Floor
    Woodland Hills, CA 91367-2263
    Phone: (818) 961-2000
    darbogast@law111.com

EXHIBIT E

No. 09-55376

In the

United States Court of Appeals

for the Ninth Circuit

--------------------------------

**Michael Mazza, Janet Mazza, and Deep Kalsi,**
*Plaintiffs-Appellees,*

v.

**American Honda Motor Co., Inc.**
*Defendant-Appellant*

---

On Appeal from the United States District Court
for the Central District of California
Hon. Valerie Baker Fairbank
Case No. 2:07-cv-7857

---

BRIEF OF *AMICUS CURIAE*, PUBLIC CITIZEN, INC.,
IN SUPPORT OF APPELLEES
AND OF AFFIRMANCE OF THE DECISION BELOW

---

JEFFREY L. FAZIO
DINA E. MICHELETTI
FAZIO | MICHELETTI LLP
2410 CAMINO RAMON, SUITE 315
SAN RAMON, CA 94583
T: 925.543.2555
F: 925.369.0344

Attorneys for *Amicus Curiae*
Public Citizen, Inc.

# TABLE OF CONTENTS

Corporate Disclosure Statement ................................................................. vi

Interest of *Amicus Curiae* ........................................................................ 1

Summary of Argument .............................................................................. 1

Argument.................................................................................................. 3

A.    Honda Urges the Court to Apply the Wrong Conflicts Test, and
      Ignores Critical Aspects of the Conflicts Rules That Apply Here........ 3

B.    Honda Has Not Established the Existence of a Conflict Under the
      Governmental-Interest Test.................................................................. 6

      1.    Step One:  Honda Failed to Demonstrate the Existence of
            Material Difference Between California Law and That of the
            Other Potentially Affected Jurisdictions ...................................... 7

      2.    Step Two:  Honda Failed to Establish a Legitimate Interest
            in Applying Non-Forum Law .................................................... 14

      3.    Step Three:  No State's Interest Would Be More Impaired
            Than California's If Forum Law Was Not Applied to the
            Claims in This Case .................................................................. 26

Conclusion.............................................................................................. 29

Certificate of Compliance ........................................................................ 31

i

# TABLE OF AUTHORITIES

## CASES

*Abrogados v. AT&T, Inc.,*
223 F.3d 932 (9th Cir. 2000) ........................................................ 14

*Amchem Prods., Inc. v. Windsor,*
421 U.S. 591 (1997) ..................................................................... 13

*America Online, Inc. v. Superior Court,*
90 Cal. App. 4th 1 (2001) ...................................................... 23, 28

*Application Group, Inc. v. Hunter Group, Inc.,*
61 Cal. App. 4th 881 (1998) ......................................................... 23

*Bank of the West v. Superior Court,*
2 Cal. 4th 1254 (1992) ................................................................. 18

*Bernhard v. Harrah's Club,*
16 Cal. 3d 313 (1976) ................................................................... 23

*Broughton v. Cigna Healthcare Plans of Cal.,*
21 Cal. 4th 1066 (1999) ......................................................... 17, 23

*Chamberlan v. Ford Motor Co.,*
369 F. Supp. 2d 1138 (N.D. Cal. 2005) ....................................... 28

*Children's Television, Inc. v. General Foods Corp.,*
35 Cal. 3d 197 (1983) ................................................................... 18

*Clothesrigger, Inc. v. GTE Corp.,*
191 Cal. App. 3d 605 (1987) ........................................................ 25

*Diamond Multimedia Systems, Inc. v. Superior Court,*
19 Cal. 4th 1036 (1999) ........................................... 21, 22, 26, 28

*Edgar v. MITE Corp.,*
457 U.S. 624 (1982) ..................................................................... 22

*Fletcher v. Sec. Pac. Nat'l Bank,*
23 Cal. 3d 442 (1979) ............................................................ 18, 28

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) ..................................................... 13

*Hershenow v. Enterprise Rent-a-Car Co. of Boston,*
840 N.E.2d 526 (2006) ................................................................. 11

*Hurtado v. Superior Court,*
11 Cal. 3d 574 (1974) ............................................................ passim

*In re Inkjet Printer Litig.,*
   2008 WL 2949465 (N.D. Cal., July 25, 2008) ............................................. 8

*In re Onstar Contract Litig.,*
   600 F. Supp. 2d 861 (W.D. Mich. 2009) ...................................................... 27

*In re Title U.S.A. Ins. Co.,*
   36 Cal. App. 4th 363 (1995) ........................................................................ 23

*In re Tobacco II Cases,*
   46 Cal. 4th 298 (2009) ................................................................ 7, 8, 10, 18

*Kearney v. Salomon Smith Barney, Inc.,*
   39 Cal. 4th 95 (2006) ........................................................................... passim

*Kielholtz v. Superior Fireplace Co.,*
   2009 WL 839076  (N.D. Cal., Mar. 30, 2009) ........................................... 27

*Klaxon v. Stentor Elec. Mfg. Co.,*
   313 U.S. 487 (1941) ..................................................................................... 3

*Leardi v. Brown,*
   474 N.E.2d 1094 (Mass. 1985) ........................................................... 10, 11

*Massachusetts Mut. Life Ins. Co. v. Superior Court,*
   97 Cal. App. 4th 1282 (2002) ....................................................................... 9

*Mercedes-Benz Tele Aid Contract Litig.,*
   257 F.R.D. 46 (D.N.J. 2008) ................................................................ passim

*Morgan v. AT&T Wireless Servs., Inc.,*
   177 Cal. App. 4th 1235 (2009) ................................................................... 18

*Nedlloyd Lines B.V. v. Superior Court,*
   3 Cal. 4th 459 (1992) ........................................................................... 3, 4, 5

*North Am. Asbestos Corp. v. Superior Court,*
   180 Cal. App. 3d 902 (1986) ...................................................................... 23

*Norwest Mort., Inc. v. Superior Court,*
   85 Cal. App. 4th 214 (1999) .................................................................. 22, 26

*Offshore Rental Co. v. Continental Oil Co.,*
   22 Cal. 3d 157 (1978) ....................................................................... 6, 20, 24

*Paduano v. Am. Honda Motor Co., Inc., rata v. Superior Court,*
   169 Cal. App. 4th 1453 (2009) ................................................................... 18

*Parkinson v. Hyundai Motor Am.,*
   258 F.R.D. 580 (N.D. Cal. 2008) .......................................................... 13, 23

*People v. Superior Court (Jayhill),*
   9 Cal. 3d 283 (1973) .................................................................................. 18

iii

*Phillips Petroleum Co. v. Shutts,*
    472 U.S. 797 (1985) ................................................................................ 26

*Reich v. Purcell,*
    67 Cal. 2d 551 (1967) ....................................................................... 15, 24

*Robert McMillan & Son, Inc. v. United States Fid. & Guar. Co.,*
    103 Cal. App. 3d 198 (1980) ..................................................................... 23

*Smith v. Chase Manhattan Bank, U.S.A., N.A.,*
    293 A.D.2d 598 (N.Y. App. Div. 2002) ..................................................... 11

*Sommer v. Gabor,*
    40 Cal. App. 4th 1455 (1995) ............................................................ 23, 28

*State Farm Mut. Auto Ins. Co. v. Campbell,*
    538 U.S. 408 (2003) .................................................................................. 25

*Washington Mut. Bank, FA v. Superior Court,*
    24 Cal. 4th 1071 (2001) .............................................................................. 4

*Wershba v. Apple Computer, Inc.,*
    91 Cal. App. 4th 224 (2001) ............................................................... 13, 14

*Zinser v. Accufix Research Inst., Inc.,*
    253 F.3d 1180,
    *amended,* 273 F.3d 1266 (9th Cir. 2001) ........................................... 10, 14

## STATUTES

Cal. Bus. & Prof. Code § 17203 .......................................................................... 17

Cal. Bus. & Prof. Code § 17205 .......................................................................... 19

Cal. Bus. & Prof. Code § 17500 ............................................................................ 8

Cal. Bus. & Prof. Code § 17534.5 ....................................................................... 19

Cal. Bus. & Prof. Code §§ 17200-17209 (UCL) ........................................... passim

Cal. Civ. Code § 1752 ......................................................................................... 19

Cal. Civ. Code § 1760 ......................................................................................... 17

Cal. Civ. Code § 1780 .................................................................................... 10, 19

Cal. Civ. Code § 3281 ......................................................................................... 22

Cal. Corp. Code § 25000 ..................................................................................... 23

Cal. Corp. Code § 25400 ................................................................................ 21, 22

Cal. Corp. Code § 25500 ................................................................................ 21, 23

Mass. Gen. L. c. 93A .......................................................................................... 11

iv

N.Y. Gen. Bus. L. § 349 ........................................................................................ 11

## TREATISES

Restatement (Second) of the Law of Conflicts of Law § 148 .......................... 3, 5, 6

Restatement (Second) of the Law of Conflicts of Law § 187 .............................. 5, 6

## CORPORATE DISCLOSURE STATEMENT

*Amicus curiae* Public Citizen, Inc. has no corporate parent. It issues no stock, and, accordingly, no publicly-held corporation owns 10 percent or more of its stock.

**INTEREST OF AMICUS CURIAE**

Public Citizen is a nonprofit membership organization founded in 1971 to represent the interests of consumers in all branches of government. For 38 years, Public Citizen has fought for the right of consumers to seek redress in the courts, including through class actions. In the automotive area, Public Citizen has fought for effective safety and emissions standards, and for vigorous protection of consumers' rights to hold automakers accountable in court. Public Citizen's membership includes more than 10,000 members in California.

This Court's decision has the potential broadly to affect the rights of consumers, including Public Citizen's members. Public Citizen is familiar with the issues presented by this case and has confined its discussion here to choice-of-law issues bearing on the District Court's ruling on the motion of plaintiffs-appellants (collectively, "Mazza") for class certification. Public Citizen believes its perspective about those issues can be of assistance to the Court. Public Citizen has the consent of both parties to file this brief.

**SUMMARY OF ARGUMENT**

In certifying a nationwide class of consumers, the district court ruled that common questions predominate because (among other things) California law applies to all class members' claims. In reaching that conclusion, the district court found that Appellant American Honda Motor Co., Inc. ("Honda"), failed to meet

1

its burden of demonstrating (1) that other states' consumer-protection laws and unjust-enrichment jurisprudence materially differ from California's, (2) that other states have a legitimate interest in applying their laws, and (3) that other states' interests would be more impaired than California's would be if their law was not applied.

Honda's burden was heavy. In addition to being incorporated under the laws of California, Honda maintains its corporate headquarters here, where it designed the product at issue. Honda hired two California advertising agencies to help it market that product throughout the United States, while engaging in conduct that allegedly violated California consumer-protection statutes—conduct that emanated from California to affect consumers throughout the country.

In its effort to defeat application of California law, Honda relies on a conflicts analysis that does not apply to cases like this one. Although Honda professes to employ California's governmental-interest test, it actually relies on the "most significant relationship" test set forth in Section 148 of the RESTATEMENT (SECOND) OF THE LAW OF CONFLICTS OF LAW ("Restatement") and on cases involving choice-of-law agreements, which have nothing to do with this case.

The governmental-interest test shows that California law applies here. No non-forum state has a legitimate interest in applying its laws with respect to remedies for injured consumers because no state offers any greater remedies than

**2**

those available under California law.  No non-forum state has a legitimate interest

in applying its laws that protect defendants by imposing limits on recovery (such as

standing or prohibitions against class actions) because Honda is a California

corporation that allegedly engaged in unlawful conduct in California, and

California is the only state that has a legitimate interest in regulating the conduct of

its own domiciliaries.  Even if another state had a legitimate interest in applying its

law, however, it would be outweighed by California's substantial interest in

preventing fraudulent practices in this state that have an effect both here and

elsewhere.

## ARGUMENT

### A.    HONDA URGES THE COURT TO APPLY THE WRONG CONFLICTS TEST, AND IGNORES CRITICAL ASPECTS OF THE CONFLICTS RULES THAT APPLY HERE

A federal court in a diversity action must apply the forum state's conflicts-

of-law rules.  *Klaxon v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941).

California courts apply two distinct approaches to conflicts-of-law questions,

depending on whether the case involves a contractual choice-of-law provision:

> California has two different analyses for selecting which law should
> be applied in an action. When the parties have an agreement that
> another jurisdiction's law will govern their disputes, the appropriate
> analysis for the trial court to undertake is set forth in *Nedlloyd [Lines
> B.V. v. Superior Court,* 3 Cal. 4th 459 (1992)]*, **which addresses the
> enforceability of contractual choice-of-law provisions**.
> Alternatively, **when there is no advance agreement on applicable
> law, but the action involves the claims of residents from outside**

> ***California, the trial court may analyze the governmental interests of
> the various jurisdictions involved to select the most appropriate law.***

*Washington Mut. Bank, FA v. Superior Court,* 24 Cal. 4th 1071, 1077 (2001)
(emphasis added).

The distinction is important because the two analyses differ substantially.
The governmental-interest analysis requires the proponent of non-forum law to
demonstrate a conflict by showing a material difference between forum and non-
forum law *and* showing that another state has a legitimate interest in applying its
law. *Kearney v. Salomon Smith Barney, Inc.,* 39 Cal. 4th 95, 107-08 (2006). If a
true conflict exists, the proponent must then demonstrate that the non-forum state's
interest would be more impaired than the interests of the forum state if its law were
not applied. *Id.* at 107-08.

That approach is significantly different from the one described in *Nedlloyd,*
which provides that when parties have included a choice-of-law provision in a
contract, a court may find that the parties "'intended that law to apply to *all*
disputes arising out of the transaction or relationship.'" *Washington Mutual*, 24
Cal. 4th at 1078 (quoting *Nedlloyd,* 3 Cal. 4th at 469) (emphasis in original). The
court must then determine whether the choice-of-law provision is enforceable
under "the analytical approach reflected in section 187, subdivision (2) of the
Restatement Second of Conflict of Laws (Restatement)." *Id.*

4

Honda agrees that the governmental-interest analysis applies here, but nonetheless cites *Nedlloyd* for the proposition that, when deciding conflicts-of-law issues, "California courts seek guidance from "'the modern, mainstream approach adopted in the Restatement [(Second) of Conflict of Laws.]'" AOB at 30 (quoting *Nedlloyd*, 3 Cal. 4th at 464). According to Honda, California uses the "most significant relationship" test set forth in Restatement Section 148 when analyzing conflict-of-law issues in cases involving fraud-based claims. *Id.* at 30. Honda argues that the application of Section 148 demonstrates that non-forum states have a more significant relationship to the claims, and hence (according to Honda) a greater interest in applying their law than does California, because "in almost every instance each class member's home state—and not California—would be both the place where the plaintiff acted in reliance upon the defendant's representations and the place where the plaintiff received the representations." *Id.* (citations and quotation marks omitted).

In fact, in *Nedlloyd*, California adopted Restatement Section *187—not* Section 148—and *only* for cases involving contractual choice-of-law provisions. *See Nedlloyd*, 3 Cal. 4th at 464-65 ("In determining the enforceability of arm's-length contractual choice-of-law provisions, California courts shall apply the principles set forth in Restatement section 187, which reflect a strong policy favoring enforcement of such provisions."). Thus, the cases on which Honda relies

5

that involve choice-of-law agreements or Restatement Section 148 are inapplicable. *See, e.g., Offshore Rental Co. v. Continental Oil Co.*, 22 Cal. 3d 157, 161 (1978) ("Questions of choice of law are determined in California, as plaintiff correctly contends, by the 'governmental interest analysis' rather than by the trial court's 'most significant contacts theory.'"); *Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 57-58 (D.N.J. 2008) (California's governmental-interest analysis requires the courts to consider only facts that pertain to determining the interests of each state in applying its law, whereas the Restatement Section 148's "most significant relationship" test "requires the Court to consider a number of factors in addition to the policies underlying the various states' laws.").

### B.   HONDA HAS NOT ESTABLISHED THE EXISTENCE OF A CONFLICT UNDER THE GOVERNMENTAL-INTEREST TEST

Under the governmental-interest approach, the forum applies its own law unless the proponent of foreign law establishes a compelling reason it should not. *E.g., Hurtado v. Superior Court,* 11 Cal. 3d 574, 581 (1974).

Here, Mazza alleged that California is the state (1) in which Honda is incorporated; (2) in which Honda maintains its corporate headquarters; (3) in which Honda designed and marketed its Collision Mitigation Braking System ("CMBS"); (4) in which both agencies Honda hired to advertise the CBMS are located; and (5) from which the allegedly unlawful and deceptive conduct giving rise to Mazza's claims emanated.   *Mazza v. Am. Honda Motor Co., Inc.,* 254

**6**

F.R.D. 610, 620 (N.D. Cal. 2008). Honda does not dispute those facts. *See* AOB at 4-14. Rather, Honda contends that the district court erred by engaging in a choice-of-law analysis that "presumed away the individualized inquiries required under the varying laws of 44 jurisdictions." *Id.* at 15.

Honda is mistaken. By relying on the wrong conflicts test, and by ignoring critical aspects of the conflicts analysis that does apply to this case, it is *Honda* that has "presumed away" issues that are fundamental to the choice-of-law inquiry. Honda has not carried its burden of demonstrating that California law does not apply to out-of-state class members' claims.

### 1. *Step One: Honda Failed to Demonstrate the Existence of Material Difference Between California Law and That of the Other Potentially Affected Jurisdictions*

Honda contends there is "substantial variation" between California's consumer-protection statutes—the Consumers Legal Remedies Act ("CLRA), Cal. Civ. Code §§ 1750-1784, and the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17209)[1]—and those of the other potentially affected jurisdictions. AOB at 21. More specifically, Honda contends that procedural and substantive aspects of consumer-protection laws differ from state to state. *Id.* at

---

[1] "A violation of the UCL's fraud prong is also a violation of the false advertising law." *In re Tobacco II Cases,* 46 Cal. 4th 298, 312 n. 8 (2009) (citing Cal. Bus. & Prof. Code § 17500).

7

21-25. Honda makes essentially the same argument with respect to "unjust enrichment jurisprudence." *Id.* at 25-29.[2]

The district court ruled that Honda had not established that the laws of non-forum states differ from California law because Honda failed to demonstrate that the purported differences were ***material***. *Mazza,* 254 F.R.D. at 622. Honda's attempts to challenge the district court's holding by pointing to ways that other states' laws are supposedly more protective of consumers than California's are unavailing.

Honda observes that some states' consumer-protection laws do not contain a reliance requirement, whereas the UCL and the CLRA do. AOB at 21-22. However, to the extent that reliance is an issue in a UCL claim, it applies only to whether the class representative has standing; there is no reliance requirement for absent class members. *See, e.g., Tobacco II*, 46 Cal. 4th at 320 (California "courts repeatedly and consistently [have held] that relief under the UCL is available without individualized proof of deception, reliance and injury.") (citations and

---

[2] In *In re Inkjet Printer Litig.*, 2008 WL 2949465 (N.D. Cal., July 25, 2008), the court declined to certify a nationwide class based solely on ostensible differences between California law and other states' laws. Rather than requiring the proponent of ***non-forum law*** to surmount each of the three steps in the governmental-interest analysis, however, the court placed the burden on the ***plaintiffs*** to demonstrate that ***forum law*** applied, and concluded that it did not after reaching the ***first step*** of the analysis. *See Inkjet*, 2008 WL 2949465 at *7.

internal quotation marks omitted). Moreover, reliance may be *inferred* under both the UCL and the CLRA in any event. *See id.* at 327 ("a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material.") (citation and internal quotation marks omitted); *Massachusetts Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1292-93 (2002) (same, regarding CLRA).

Nor would application of California's consumer-protection laws leave out-of-state class members with fewer remedies than they would have under their own laws. AOB at 23-24. As the district court found, "a CLRA violation, which serves as a predicate UCL violation under the UCL's 'unlawful' prong, provides for each of the remedies that Defendant contends would be unavailable with the application of California law to a nationwide class." *Mazza,* 254 F.R.D. at 622.

Nonetheless, Honda contends that the district court erred by considering the remedies that are available under the CLRA and the UCL cumulatively, instead of separately comparing each of those statutes to other states' consumer-protection statutes. AOB at 24. According to Honda, the district court failed to apply "'the conflicts test . . . to *each* claim upon which certification is sought.'" AOB at 24

**9**

(quoting *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1188, *amended,* 273 F.3d 1266 (9th Cir. 2001)) (emphasis in original).[3]

Honda does not dispute the district court's findings regarding the nature and scope of the remedies available under the CLRA. *See* Cal. Civ. Code § 1780(a)(1)-(5) (providing for actual damages, injunctive relief, restitution, punitive damages, and "[a]ny other relief the court deems proper"). Likewise, Honda cannot deny that, although the UCL's equitable nature does not provide an additional basis for recovering damages, it does provide an additional basis for restitution and injunctive relief. *Tobacco II*, 46 Cal. 4th at 312. In short, California consumer-protection law provides every member of the nationwide class with the full panoply of legal and equitable remedies.

Honda contends that Massachusetts provides for statutory damages that California does not. Honda points to *Leardi v. Brown*, 474 N.E.2d 1094, 1101 (Mass. 1985), *see* AOB at 32, which held that the Massachusetts consumer-protection statute (Mass. Gen. L. c. 93A ("Chapter 93A")) "provides for recovery 'of actual damages or twenty-five dollars, whichever is greater.' Accordingly,

---

[3] By citing *Zinser* in this context, Honda appears to have misapprehended the nature of the test to which *Zinser* referred. *See Kearney*, 39 Cal. 4th at 110 (second step of analysis requires courts to "carefully examin[e] what might at first blush appear to be a single subject or rule of law in order to identify the distinct state interests that may underlie separate aspects of the issue in question").

**10**

under circumstances where there has been an invasion of a legally protected interest, but no harm for which actual damages can be awarded, . . . the statute provides for the recovery of minimum damages in the amount of $25." However, in *Hershenow v. Enterprise Rent-a-Car Co. of Boston*, 840 N.E.2d 526 (2006), the Massachusetts Supreme Judicial Court explained that *Leardi* held that although statutory damages could be awarded if the plaintiff showed that the defendant had "invaded any legally protected interest," *id.* at 534, "what *Leardi* did not do was to eliminate the required causal connection between the deceptive act and an adverse consequence or loss." *Id.* The court held that the plaintiffs could *not* recover under Chapter 93A even though they had shown a *per se* violation of that statute because "the statutorily noncompliant terms in Enterprise's automobile rental contracts did not and could not deter the plaintiffs from asserting any legal rights. Nor did the plaintiffs experience any other claimed economic or noneconomic loss." *Id.* at 534-35.[4]

---

[4] Equally baseless is Honda's contention that New York's consumer-protection statute (N.Y. Gen. Bus. L. § 349 ("Section 349")) should be applied because it "has relaxed standing requirements which require that plaintiffs prove actual injury, but not necessarily pecuniary harm." AOB at 37. As under Chapter 93A, however, a claim is not actionable unless the alleged violation of Section 349 has resulted in economic harm or the inability to exercise legal rights. *E.g., Smith v. Chase Manhattan Bank, U.S.A., N.A.,* 293 A.D.2d 598, 599 (N.Y. App. Div. 2002).

11

California law is no different. *See Meyer v. Sprint Spectrum L.P.,* 45 Cal. 4th 634, 643 (2009) (declining to extend recovery under CLRA "to situations in which an allegedly unlawful practice under the CLRA has not resulted in some kind of tangible increased cost or burden to the consumer").[5]

Honda also fails to demonstrate material differences between California law and that of other jurisdictions with respect to Mazza's unjust enrichment claims. As the district court correctly found, although courts in different jurisdictions may not always phrase their unjust enrichment decisions identically, there are no ***material*** differences between California law and non-forum law. *Mazza,* 254 F.R.D. at 622.

> In all states, the focus of an unjust enrichment claim is whether the defendant was unjustly enriched. At the core of each state's law are two fundamental elements—the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff. . . . [R]egardless of which state's unjust enrichment elements are applied, the result is the same. Thus, there is no real conflict surrounding the elements of the cause of action.

*Mercedes-Benz,* 257 F.R.D. at 58 (citation and internal quotation marks omitted).

---

[5] Honda contends that Florida would have a legitimate interest in applying its law because its consumer-protection statute provides recovery for unconscionable acts and practices and the CLRA does not. AOB at 32. But Honda fails to explain how that distinction has any practical impact on the claims at issue here—particularly in light of the strict liability the UCL imposes for acts of unfair competition, which the UCL defines expansively. (See discussion at Section B.2., below).

**12**

At bottom, the district court correctly found that Honda failed to meet its burden of establishing a ***material*** difference between California consumer-protection law and unjust-enrichment jurisprudence and the corresponding law of non-forum states, because there is none. *Mazza,* 254 F.R.D. at 622.   Other courts, including this one, have reached similar conclusions for similar reasons. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998) ("[T]here is no structural conflict of interest based on variations in state law, for the named representatives include individuals from each state, and the differences in state remedies are not sufficiently substantial so as to warrant the creation of subclasses."); *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 242 (2001) ("Rudolph's comparison of the laws of different jurisdictions is not persuasive.   In fact California's consumer protection laws are among the strongest in the country."); *Parkinson v. Hyundai Motor Am.,* 258 F.R.D. 580, 598 (N.D. Cal. 2008) (certifying a nationwide class because "the Court does not find a conflict between California's consumer protection laws and the applicable laws of the non-forum states and decision").[6]

---

[6] Honda urges the Court to disregard *Hanlon* and *Wershba* on the ground that they involved review of certification orders that were the product of less rigorous review because they involved settlement, rather than litigation, classes. *See* AOB at 19-20 n. 3 (citing *Amchem Prods., Inc. v. Windsor*, 421 U.S. 591, 620 (1997)).   As this Court made clear in *Hanlon,* however, "the inquiry is ***especially***

*(Footnote continues on next page.)*

13

**2.**     *Step Two:  Honda Failed to Establish a Legitimate Interest in Applying Non-Forum Law*

If there is a material difference between forum and non-forum law, the court must examine each aspect of each claim to determine the existence and extent of the interests a state may have in applying its law to those claims, to determine whether a true conflict exists. *Kearney*, 39 Cal. 4th at 110.  If the proponent of foreign law cannot establish that a non-forum state has a legitimate interest in applying its law, the analysis ends and the law of the forum applies. *See, e.g., Abrogados v. AT&T, Inc.,* 223 F.3d 932, 935 (9th Cir. 2000) ("If only one jurisdiction has a legitimate interest in the application of its rule of decision, there is a 'false conflict' and the law of the interested jurisdiction is applied.") (citation and internal quotation marks omitted); *Hurtado,* 11 Cal. 3d at 580-82 (same). Here, Honda cannot establish a true conflict.

Honda contends that "'every state has an interest in having its law applied to its resident claimants[,]'" and determining the scope and adequacy of compensation for them.  AOB at 29 (quoting *Zinser*, 253 F.3d at 1187).  But

---

critical when the a class settlement is tendered along with a motion for class certification. *Amchem* instructs us to give *heightened* scrutiny to cases in which class members may have claims of different strength." 150 F.3d at 1020 (emphasis added). *See also Wershba*, 91 Cal. App. 4th at 240 ("California courts have recognized that class action settlements should be scrutinized *more* carefully if there has been no adversary certification") (emphasis added; citation and internal quotation marks omitted).

**14**

whether a state has a legitimate interest in applying its own law to a dispute is entirely dependent on the facts underlying a dispute—which is precisely the reason California adopted the governmental-interest analysis. *See Reich v. Purcell,* 67 Cal. 2d 551, 555 (1967) ("We conclude that the law of the place of the wrong is not necessarily the applicable law for all tort actions.").

The California Supreme Court's decision in *Hurtado* is illustrative. *Hurtado* was a wrongful death case arising from an automobile collision between the plaintiff, a Mexican citizen, and the defendants, who were California residents *See* 11 Cal. 3d at 578. Mexican law limited damages in a wrongful death action. *Id.* at 578-79. Nonetheless, the court found that only California had a legitimate interest in applying its law because the California defendant's conduct that gave rise to the lawsuit occurred in California:

> The creation of wrongful death actions insofar as plaintiffs are concerned is directed toward compensating decedent's beneficiaries. California does not have this interest in applying its wrongful death statute here because plaintiffs are residents of Mexico. However, the creation of wrongful death actions is not concerned solely with plaintiffs. As to defendants the state interest in creating wrongful death actions is to deter conduct. We made this clear in *Reich*: 'Missouri (as the place of wrong) is concerned with conduct within her borders and as to such conduct she has the predominant interest of the states involved.' . . .
>
> It is manifest that one of the primary purposes of a state in creating a cause of action in the heirs for the wrongful death of the decedent is to deter the kind of conduct within its borders which wrongfully takes life. It is also abundantly clear that a cause of action for wrongful death without any limitation as to the amount of recoverable damages strengthens the deterrent aspect of the civil

**15**

> sanction: the sting of unlimited recovery more effectively penalizes
> the culpable defendant and deters it and others similarly situated from
> such future conduct. Therefore when the defendant is a resident of
> California and the tortious conduct giving rise to the wrongful death
> action occurs here, California's deterrent policy of full compensation
> is clearly advanced by application of its own law. This is precisely
> the situation in the case at bench. California has a decided interest in
> applying its own law to California defendants who allegedly caused
> wrongful death within its borders.

*Id.* at 583-84 (citations, internal quotation marks, and ellipses omitted). Under

*Hurtado*, "[t]he key step in this process is delineating the issue to be decided." 11

Cal. 3d at 672-73. *See also Kearney,* 39 Cal. 4th at 110 ("*Hurtado* teaches the

importance of carefully examining what might at first blush appear to be a single

subject or rule of law in order to identify the distinct state interests that may

underlie separate aspects of the issue in question.").

    *Mercedes-Benz* correctly followed this analysis when it applied California's

governmental-interest test to claims under New Jersey's Consumer Fraud Act,

noting that "the NJCFA is designed to serve two purposes: compensating victims

of consumer fraud and regulating companies within New Jersey." 257 F.R.D. at

64. Because the defendant was located in New Jersey and engaged in the allegedly

fraudulent conduct there, the court applied New Jersey law to claims of a

nationwide class because New Jersey had the only legitimate interest in regulating

resident companies. *Id.* at 63-64.

The CLRA and the UCL serve similar interests in providing recovery to victims and regulating unlawful, fraudulent, and unfair conduct within California. The interests informing the CLRA can be found in the CLRA itself. *See* Cal. Civ. Code § 1760 (the CLRAs purposes are "to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection"). The CLRA achieves those purposes by providing for not only compensatory and punitive damages, but also injunctive relief, the purpose of which "is not to resolve a private dispute but to remedy a public wrong." *Broughton v. Cigna Healthcare Plans of Cal.*, 21 Cal. 4th 1066, 1080 (1999).

The UCL also serves the interests of recovery and deterrence, imposing strict liability for engaging in "unfair competition," which the UCL defines

> as any "unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising. . . ." (§ 17200.) The Legislature intended this sweeping language to include anything that can properly be called a business practice and that at the same time is forbidden by law. . . .
>
> Section 17203, which incorporates the broad, statutory definition of "unfair competition," permits "any court of competent jurisdiction" to enjoin "[a]ny person performing or proposing to perform an act of unfair competition. . . ." (§ 17203.) The section also authorizes courts to make such orders as "may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." (*Ibid.*) The purpose of such orders is "to deter future violations of the unfair trade practice statute and to foreclose retention by the violator of its ill-gotten gains." ***The Legislature considered this purpose so important that it authorized courts to order restitution without individualized proof of deception, reliance, and***

**17**

*injury if necessary to prevent the use or employment of an unfair practice.*

*Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1266-67 (1992) (citing *Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal. 3d 197, 211 (1983); *Fletcher v. Sec. Pac. Nat'l Bank,* 23 Cal. 3d 442 (1979); *People v. Superior Court (Jayhill)*, 9 Cal. 3d 283, 288-89 & n. 3 (1973)) (emphasis added); *see also Paduano v. Am. Honda Motor Co., Inc.*, 169 Cal. App. 4th 1453, 1468 (2009) ("Section 17200 is not confined to anticompetitive business practices, but is also directed toward the public's right to protection from fraud, deceit, and unlawful conduct.    Thus, California courts have consistently interpreted the language of section 17200 broadly.  The statute imposes strict liability.  It is not necessary to show that the defendant intended to injure anyone.") (citations and internal quotation marks omitted).[7]

After first arguing that California law does not provide *enough* remedies to justify application of forum law (an argument that, as shown above, fails the first step of the conflicts analysis), Honda argues that laws of non-forum states that would *limit* class members' recovery should govern the claims of class members who reside in those states. *See, e.g.,* AOB at 35-37.  On the contrary, California

---

[7] The scope of the UCL's substantive provisions remain unchanged in the wake of Proposition 64.  *Tobacco II,* 46 Cal. 4th at 313-14; *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1252-53 (2009).

**18**

has a strong interest in applying its law to regulate the conduct of Honda at issue here, and other states lack a legitimate interest in providing additional protections to Honda.

As discussed above, California's consumer-protection statutes provide the full panoply of legal and equitable remedies. *See* Cal. Civ. Code § 1780(a)(1)-(5) (CLRA); *Kraus v. Trinity Mgmt. Servs., Inc.*, 23 Cal. 4th 116, 126 (2000) (UCL). Those remedies are cumulative. Cal. Civ. Code § 1752; Cal. Bus. & Prof. Code §§ 17205, 17534.5. Thus, even if every other state has an interest in maximizing class members' recovery, that interest would not conflict with the application of California law because no state provides greater relief to class members than California does.

Conversely, even if it were true that one or more unidentified states would deem the conduct at issue in this case to be lawful (and it is not), those states would have no legitimate interest in applying their law because Honda is not domiciled there and did not engage in the alleged conduct there. *Hurtado*, 11 Cal. 3d at 586-87. For the same reason, Honda's contention that other states impose limitations on recovery (such as standing (AOB at 37); scienter (*id.* at 22-23); limitations on prosecuting claims in a class action (*id.* at 23); statutes of limitation (*id.*); and the scope of prohibited conduct (*id.* at 31-38)), fails to establish those states' interest in applying their law to their residents' claims. *Id.* at 22-38.

**19**

A limitation on recovery "reflects the state's interest in protecting defendants from excessive financial burdens." *Kearney*, 39 Cal. 4th at 110. Where a defendant's actionable conduct occurred outside a state's borders, that state has no legitimate interest in protecting the defendant by limiting the plaintiffs' recovery. *Compare Hurtado,* 11 Cal. 3d at 586-87 ("Because Mexico has no interest in applying its limitation of damages in wrongful death actions to nonresident defendants or in denying full recovery to its resident plaintiffs, the trial court both as the forum, and as an interested state, correctly looked to its own law.") *with Offshore Rental,* 22 Cal. 3d at 163-64 (finding Louisiana had legitimate interest in applying statute prohibiting recovery for loss of key employee's services, which reflected "policy to protect negligent ***resident tort-feasors acting within Louisiana's borders*** from the financial hardships caused by the assessment of excessive legal liability or exaggerated claims resulting from the loss of services of a key employee," because defendant was a Louisiana corporation and its conduct occurred in Louisiana) (emphasis added; citation omitted).

Because the wrongful conduct alleged in this case occurred in and emanated from California, where Honda maintains its corporate headquarters, other states have no legitimate interest in applying limitations on recovery. *Hurtado,* 11 Cal. 3d at 586-87; *see also Mercedes-Benz,* 257 F.R.D. at 64 ("New Jersey's interest in regulating Mercedes, a corporation located within its borders, requires the

**20**

application of New Jersey law to Plaintiffs' consumer fraud claims under the 'government interest' choice of law test utilized by California.").

Honda recognizes that California has a legitimate interest in regulating the conduct that occurs within its borders, but it contends that "[t]here is a strong presumption against the extraterritorial application of state statutes." AOB at 34. Similarly, Honda argues that "applying California law to the entire nationwide class asserted here would severely undermine the varying and equally considered policy judgments of 43 other jurisdictions." *Id.* at 36.

California choice-of-law doctrine decisively rejects Honda's arguments. As the California Supreme Court explained in a case involving the nationwide application of California securities-fraud statutes (Cal. Corp. Code §§ 25400, 25500), the presumption against extraterritorial application of California law "has never been applied to an injured person's right to recover damages suffered as a result of an unlawful act or omission committed in California." *Diamond Multimedia Systems, Inc. v. Superior Court,* 19 Cal. 4th 1036, 1059 (1999). The court explained that

> Civil Code section 3281 provides that "[e]very person who suffers detriment" from unlawful acts or omissions in California may recover damages from the person at fault. Product liability actions against California manufacturers by persons injured elsewhere by a defective product manufactured in California are a prime example of actions authorized by Civil Code section 3281.

**21**

*Id.* at 1059-60. The court then addressed California's interest in applying its antifraud statutes to residents of other states:

> Even were there some indirect burden on interstate commerce, that burden would not be constitutionally impermissible. ***While petitioners and several amici curiae argue that California has no legitimate interest in protecting out-of-state investors, it has a clear and substantial interest in preventing fraudulent practices in this state which may have an effect both in California and throughout the country.*** That is the purpose of section 25400. While substantial criminal penalties are available, the Legislature might reasonably conclude that imposing civil liability for all trading losses occasioned by proscribed manipulative conduct will be a substantial deterrent to violation. . . .
>
>     ***California also has a legitimate and compelling interest in preserving a business climate free of fraud and deceptive practices.*** California business depends on a national investment market to support our industry. The California remedy for market manipulation helps to ensure that the flow of out-of-state capital necessary to the growth of California business will continue. The Court of Appeal rejected a claim similar to that of petitioners and recognized the importance of extending state-created remedies to out-of-state parties harmed by wrongful conduct occurring in California in *Clothesrigger, Inc. v. G.T.E. Corp.* (1987) 191 Cal.App.3d 605 [236 Cal.Rptr. 605]. . . .
>
>     We conclude for all of these reasons that out-of-state purchasers and sellers of securities whose price has been affected by the unlawful market manipulation proscribed by section 24500 may avail themselves of the remedy afforded by section 25500. ***The remedy is not limited to transactions made in California.*** . . .

*Id.* at 1063-64 (emphasis added) (citing *Edgar v. MITE Corp.*, 457 U.S. 624, 644 (1982)). *See also Norwest Mort., Inc. v. Superior Court*, 85 Cal. App. 4th 214, 222, 228 n. 17 (1999) ("California law was potentially applicable to claims in *Diamond* and *Clothesrigger* because the injury-producing conduct occurred in

California. Similar reasons justified potential application of California law to the claims in the other cases cited by plaintiffs.") (citing *Bernhard v. Harrah's Club,* 16 Cal. 3d 313, 317-18 (1976); *Hurtado,* 11 Cal. 3d at 578; *Application Group, Inc. v. Hunter Group, Inc.,* 61 Cal. App. 4th 881, 894-905 (1998); *Sommer v. Gabor,* 40 Cal. App. 4th 1455, 1461-62 (1995); *In re Title U.S.A. Ins. Co.,* 36 Cal. App. 4th 363, 372 (1995); *Shields v. Singleton,* 15 Cal. App. 4th 1611, 1621 (1993); *North Am. Asbestos Corp. v. Superior Court,* 180 Cal. App. 3d 902, 906 (1986); *Robert McMillan & Son, Inc. v. United States Fid. & Guar. Co.,* 103 Cal. App. 3d 198, 200-01 (1980)); *Parkinson,* 258 F.R.D. at 598 (same).

The same is true here. *See, e.g., America Online, Inc. v. Superior Court,* 90 Cal. App. 4th 1, 14-15 (2001) ("The CLRA parallels the Corporate Securities Law of 1968 [Cal. Corp. Code § 25000, *et seq.*] insofar as the CLRA is a legislative embodiment of a desire to protect California consumers and furthers a strong public policy of this state. 'The CLRA was enacted in an attempt to alleviate social and economic problems stemming from deceptive business practices . . . .' Certainly, the CLRA provides remedial protections that are *at least* as important as those under the Corporate Securities Act of 1968.") (quoting *Broughton,* 21 Cal. 4th at 1077)) (emphasis in original).

Accordingly, Honda cannot establish that California has no legitimate interest in applying its law to out-of-state class members' claims, much less that

**23**

other states have a greater interest in applying their law. Although all states could potentially have an interest in conduct that affects them in some way, the key question is whether that interest is *legitimate* in light of the interests at issue in a particular case. That is precisely how the governmental-interest test differs from the traditional "place of the wrong" test. Thus, as California courts have made clear repeatedly since Chief Justice Traynor wrote the opinion for a unanimous court in *Reich* more than 40 years ago, a state has no *legitimate* interest in deterrence where a non-resident defendant engages in conduct outside its borders. 67 Cal. 2d at 555-56; *Kearney*, 39 Cal. 4th at 110; *Offshore Rental*, 16 Cal. 4th at 161; *Hurtado*, 11 Cal. 3d at 586-87.

Despite California's interest in regulating Honda's conduct and the lack of interest of other states in protecting it, Honda goes so far as to assert that application of California may violate the Due Process Clause. AOB at 24-25. Honda takes aim at the availability of punitive damages under the CLRA, suggests that the conduct that forms the basis for Mazza's claims may be lawful in some (unidentified) states, and argues that the Due Process Clause would, therefore, prohibit California from awarding punitive damages to class members who reside in those states:

> [I]f plaintiffs recovered punitive damages under the CLRA, extending them to a nationwide class would violate the Due Process Clause because "[a] State cannot punish a defendant *for conduct that is lawful where it occurred*. . . . Nor, as a general rule, does a State

**24**

have a legitimate interest in imposing punitive damages *for unlawful acts committed outside of the State's jurisdiction*."

*Id.* (quoting *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 421 (2003)) (emphasis added).

*State Farm* is inapplicable to this case. The question addressed in *State Farm* was whether a $145 million punitive-damage award was so excessive that it violated the Due Process Clause where, in a non-class insurance bad faith action, the award of compensatory damages was $1 million and the award of punitive damages *was based in part on the insurer's bad-faith conduct toward other insureds who had nothing to do with the litigation, which occurred out-of-state and bore no relation to the insureds' harm*. *See* 538 U.S. at 411, 422-23. The present case has nothing to do with California attempting to regulate out-of-state conduct that bears no relation to the plaintiffs' harm through the imposition of punitive damages in an individual action. Rather, this is a class action in which *the conduct giving rise to the claims occurred within—and emanated from— California* and bears a *direct* relation to each class member's harm.

Under the circumstances, if Honda's liability were established in this case, California would have a legitimate interest in imposing punitive damages to punish that conduct and to deter others from engaging in it. *E.g., Clothesrigger, Inc. v. GTE Corp.,* 191 Cal. App. 3d 605, 613-15 (1987) (observing that "to apply its law constitutionally to the claims of nonresident class members, the forum state must

**25**

have 'a significant contact or aggregation of contacts to the claims asserted by each

member of the plaintiff class, contacts creating state interests in order to ensure the

choice of forum law is not arbitrary or unfair'" and noting California's interest in

deterring fraud and unfair business practices) (quoting *Phillips Petroleum Co. v.

Shutts*, 472 U.S. 797, 821-22 (1985)).[8]

### 3.    *Step Three:   No State's Interest Would Be More Impaired Than California's If Forum Law Was Not Applied to the Claims in This Case*

Because no other state has a legitimate interest in applying its law, the most

that could be said of Honda's argument is that it presents a false conflict.  Even if

there were a true conflict, however, the third step of the governmental-interest test

---

[8] *See also Diamond,* 19 Cal. 4th at 1063-64 ("Even assuming arguendo that California had no interest in protecting investors in other states, the Legislature may reasonably conclude that California does have a legitimate interest in discouraging unlawful conduct that has a potential to harm California investors as well as persons in other states.  Extending the civil liability remedy to all investors serves that purpose") (citations omitted); *accord Mercedes-Benz,* 257 F.R.D. at 64 ("The intended deterrent effect of the NJCFA would be compromised if Mercedes were allowed to escape liability for the treble damages, attorneys' fees, and litigation costs mandated by New Jersey law simply because its alleged misconduct defrauded citizens of states whose laws do not provide for similar punitive damages").  *Cf. Norwest,* 85 Cal. App. 4th at 225 n. 13 ("*Diamond* supports inclusion of Category II members [*i.e.,* out-of-state class members harmed by in-state conduct] as claimants entitled to state a UCL claim.  Although they may be non-California residents, the injury arose from offending conduct occurring in California").

would demonstrate that California's interests would be more impaired if its law was not applied.

Honda contends that the states in which class members consummated the transactions in which they purchased their vehicles have a legitimate interest in applying their law those class members' claims because those transactions constitute in-state conduct that they have an interest in regulating. *See* AOB at 30-34. But Honda has not even attempted to establish the factual basis for that contention by showing that it was involved in those transactions, either by selling the vehicles directly to class members or by selling them through dealers who were Honda's agents. To the contrary, Honda said just the opposite when it moved to dismiss this case. *See* MPAs ISO Motion to Dismiss (available at district court docket entry No. 8) at 15 ("AHM distributes vehicles to *independent* authorized dealers who, in turn, enter into transactions with consumers. *AHM did not sell or lease vehicles to plaintiffs, and was not a party to a transaction with plaintiffs*. . . . It is fatal to plaintiffs' CLRA claim that their claims do not arise from 'a transaction' with AHM.") (emphasis added).[9]

_____

[9] Contrary to Honda's assertion, the distribution of products to independent retailers who resell the products to consumers is not fatal to a claim under the CLRA. *See, e.g., Kielholtz v. Superior Fireplace Co.*, 2009 WL 839076, \*6 (N.D. Cal., Mar. 30, 2009); *In re Onstar Contract Litig.*, 600 F. Supp. 2d 861, 872-73 (W.D. Mich. 2009); *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1144
*(Footnote continues on next page.)*

27

But even if Honda could establish that it was involved in the sales transactions it claims create a more significant contact with other states, whatever interest non-forum states may have had in applying their laws would pale in comparison to California's interests in regulating Honda's conduct—particularly in light of the fact that a substantial percentage of sales transactions occurred in California as well. Again, unlike non-forum states, California is the state under whose laws Honda is incorporated and is the state in which Honda maintains its corporate headquarters. Honda also designed the CMBS in California, hired two California advertising agencies to market it throughout the country, and California was where Honda is alleged to have engaged in the fraudulent conduct on which each of the claims for relief is based.

Under the circumstances, California's interests would be *far* more impaired if California law were not applied to the claims in this action. *See, e.g., Diamond,* 19 Cal. 4th at 1063-64; *Fletcher,* 23 Cal. 3d at 450-51; *AOL,* 90 Cal. App. 4th at 14-15; *see also Sommer,* 40 Cal. App. 4th at 1464-70 (declining to apply German law limiting recovery to defamation claim even though defamatory comments were published in Germany by German publication and all parties owned property in Germany, because all parties were residents of California, where the defamatory

(N.D. Cal. 2005).

28

comments were made, and hence Germany had no legitimate interest in applying its law). Indeed, even courts that apply the "most significant contacts" test that Honda urges the Court to apply here have reached this conclusion where the conduct of the defendant in its home state is the focal point of the litigation. *See Cuesta v. Ford Motor Co.,* 209 P.2d 278, 283-86 (Okla. 2009) (finding that Michigan's interest in the conduct of its resident automaker gave Michigan the greatest interest in applying its law to claims by nationwide class of plaintiffs).

## CONCLUSION

Given that Honda is domiciled in California and all the conduct that gave rise to each claim in this case occurred here, Honda had a heavy burden to carry when it sought to establish that California law does not apply to this action. As California courts have made clear for more than four decades, the proponent of the application of foreign law must do more than simply enumerate perceived differences between the laws of the forum and the laws of potentially affected foreign jurisdictions. Honda has failed to do that.

"When one of two states related to a case has a legitimate interest in the application of its law and policy and the other has none, there is no real problem; the law of the interested state should be applied." *Hurtado,* 11 Cal. 3d at 580 (citation and internal quotation marks omitted). There is "no real problem" here,

**29**

and California law should be applied.   Accordingly, the district court's ruling should be affirmed.

Dated:  November 6, 2009

**FAZIO | MICHELETTI LLP**

by____/s/ Jeffrey L. Fazio_____
            Jeffrey L. Fazio

Jeffrey L. Fazio (jlf@fazmiclaw.com)
Dina E. Micheletti (dem@fazmiclaw.com)
Fazio | Micheletti LLP
 2410 Camino Ramon, Suite 315
San Ramon, CA  94583
T: 925.543.2555
F: 925.369.0344

Attorneys for *Amicus Curiae,*
Public Citizen, Inc.

**30**

## CERTIFICATE OF COMPLIANCE

I certify that, pursuant to Fed. R. App. P. 29(d) and 9th Cir. R. 32-1, the attached amicus brief is proportionally spaced, has a typeface of 14 points, and contains less than 7,000 words.

Dated:  November 6, 2009

/s/ Jeffrey L. Fazio

Jeffrey L. Fazio (jlf@fazmiclaw.com)
Dina E. Micheletti (dem@fazmiclaw.com)
Fazio | Micheletti LLP
2410 Camino Ramon, Suite 315
San Ramon, CA  94583
T: 925.543.2555
F: 925.369.0344

Attorneys for *Amicus Curiae,*
Public Citizen, Inc.

31

## CERTIFICATE OF SERVICE

Undersigned counsel hereby certifies that the Brief of Public Citizen,

Inc. as *Amicus Curiae* in Support of Appellant was electronically filed with the

Clerk of the Court for the United States Court of Appeals for the Ninth Circuit

by using the appellate CM/ECF system on November 6, 2009. Additionally, the

following counsel were served by overnight delivery on November 6, 2009:

Roy M. Brisbois
Eric Y. Kizirian
Lewis Brisbois Bisgaard & Smith LLP
221 North Figueroa Street, Suite 1200
Los Angeles, California 90012
(213) 580-3981
Counsel for Appellant

Donald M. Falk
Mayer Brown LLP
Two Palo Alto Square
3000 El Camino Real, Suite 300
Palo Alto, CA 94306
(650) 331-2000
Counsel for Appellant

Marc Primo
Payam Shahian
Initiative Legal Group LLP
1800 Century Park East, 2nd Floor
Los Angeles, CA 90067
(310) 556-5637
Counsel for Appellees

Michael F. Ram
Ram & Olson LLP
555 Montgomery Street, Suite 820
San Francisco CA 94111
Counsel for Appellees

Dated:  November 6, 2009

**FAZIO | MICHELETTI LLP**

by___ /s/ Jeffrey L. Fazio_____
        Jeffrey L. Fazio

Attorneys for *Amicus Curiae,*
Public Citizen, Inc.